UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| NICHOLAS BERGERON and BARBARA MYCEK, individually and on behalf of others similarly situated,<br><br>        Plaintiffs,<br><br>  v.<br><br>ROCHESTER INSTITUTE OF TECHNOLOGY,<br><br>        Defendant. | Case No. 6:20-cv-06283 |

**MEMORANDUM OF LAW IN SUPPORT OF
ROCHESTER INSTITUTE OF TECHNOLOGY'S MOTION TO DISMISS
PLAINTIFFS' CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ......................................................................................1

STATEMENT OF FACTS ............................................................................................2

    Plaintiffs Are An RIT Student And A Parent Of An RIT Student....................................2

    RIT's Students Are Bound By The Student Financial Responsibility Agreement
    And Incorporated Refund Policy. .....................................................................3

    RIT Responds To The COVID-19 Pandemic And Related Government Orders. ..............4

    Plaintiffs' Complaints And The Consolidated Amended Complaint. ................................4

ARGUMENT......................................................................................................5

    I.    Neither Plaintiff Has Standing To Bring The Claims Asserted...............................5

        A.    Bergeron Has Not Suffered Any Injury In Fact..........................................5

        B.    Mycek, The Parent Of An Adult RIT Student, Lacks Standing. .................6

    II.    Plaintiffs' Claims Seek Judicial Intervention Into Academic Decisions
        Regarding Mode Of Instruction, Which Are Not Actionable................................7

    III.    Plaintiffs Fail To State Claims For Breach Of Any Enforceable Contract
        Terms. ...........................................................................................9

        A.    RIT's Student Financial Responsibility Agreement and Refund
            Policy Bars Plaintiff's Breach of Contract Claim.....................................10

        B.    Plaintiffs Fail To Identify Any Specific And Discrete Promise
            Made By RIT To Provide Exclusively In-Person, On-Campus
            Instruction And Programs In The Spring 2020 Semester. ........................13

        C.    Plaintiffs' Contract Claims Fail For Lack Of Cognizable Damages. ........15

    IV.    Plaintiffs' Unjust Enrichment Claims Must Be Dismissed....................................17

        A.    Unjust Enrichment Cannot Be Pled In The Alternative Under New
            York Law Where There Is No Dispute A Contract Governs.....................18

        B.    Plaintiffs Had No Reasonable Expectation Of Receiving A Tuition
            Or Fees Refund Pursuant To RIT's Refund Policy. .................................18

    V.    Plaintiffs' Conversion Claims Fail As A Matter Of Law. ....................................20

        A.    The Economic Loss Rule Bars Plaintiffs' Conversion Claims..................20

        B.    Plaintiffs Fail To Establish The Elements Of Conversion........................20

    VI.    Plaintiffs Fail To State A Claim Under N.Y. Gen. Bus. Law §§ 349-350, *et
        seq*. ............................................................................................22

        A.    UDAAP Does Not Apply To This Private Contract Dispute. ...................22

B. Plaintiffs Fail To Establish That RIT Made Any Materially Misleading Statements. ................................................................23

C. The UDAAP Safe Harbor Bars Plaintiffs' Claims. ....................................23

VII. None Of Plaintiffs' Claims Entitle Plaintiffs To An Award Of Punitive Damages. ................................................................................................24

VIII. Plaintiffs' Demands For An Injunction And Declaratory Relief Must Be Dismissed. ..............................................................................................24

CONCLUSION ...............................................................................................24

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*2470 Cadillac Res., Inc. v. DHL Exp. (USA), Inc.*,
  115 A.D.3d 582 (1st Dep't 2014) ...................................................................................13

*4C Foods Corp. v. Package Automation Co.*,
  No. 14 CIV. 2212 CM, 2014 WL 6602535 (S.D.N.Y. Nov. 18, 2014)...................................13

*Adson5th, Inc. v. Bluefin Media, Inc.*,
  No. 16-CV-143 (LJV), 2017 WL 2984552 (W.D.N.Y. July 13, 2017).....................................5

*Affiliated Capital Servs. Corp. v. W. Atl. City Assocs.*,
  760 F. Supp. 1067 (W.D.N.Y. 1991) .................................................................................18

*Alsides v. Brown Inst. Ltd.*,
  592 N.W.2d 468 (Minn. Ct. App. 1999) ..........................................................................16

*Am. Home Prods. Corp. v. Johnson & Johnson*,
  672 F. Supp. 135 (S.D.N.Y. 1987)....................................................................................23

*Ansari v. New York Univ.*,
  No. 96 CIV. 5280 (MBM), 1997 WL 257473 (S.D.N.Y. May 16, 1997) ...............................11

*Apffel v. Huddleston*,
  50 F. Supp. 2d 1129 (D. Utah 1999)...................................................................................6

*B & C Realty, Co. v. 159 Emmut Props. LLC*,
  106 A.D.3d 653 (1st Dep't 2013) .....................................................................................20

*Bailey v. N.Y. Law Sch.*,
  No. 16-CV-4283, 2017 WL 835190 (S.D.N.Y. Mar. 1, 2017).......................................10, 12

*Basso v. New York Univ.*,
  No. 16-CV-7295 (VM), 2017 WL 1019505 (S.D.N.Y. Feb. 24, 2017)............................11, 13

*Bd. of Managers of Trump Tower at City Ctr. Condo. by Neiditch v. Palazzolo*,
  346 F. Supp. 3d 432 (S.D.N.Y. 2018)................................................................................18

*Beukas v. Bd. of Trs. of Farleigh Dickinson Univ.*,
  605 A.2d 708 (N.J. Super. Ct. 1992) ................................................................................14

*Bono v. Monarch Life Ins. Co.*,
  No. 05-CV-281S, 2006 WL 839412 (W.D.N.Y. Mar. 27, 2006) ...........................................24

*Citadel Mgmt. Inc. v. Telesis Tr., Inc.*,
123 F. Supp. 2d 133 (S.D.N.Y. 2000)..................................................................................20

*Doe v. Univ. of the S.*,
687 F. Supp. 2d 744 (E.D. Tenn. 2009)..................................................................................6

*Donohue v. Copiague Union Free Sch. Dist.*,
47 N.Y.2d 440 (1979) ............................................................................................................8

*Doyle v. Mastercard Int'l Inc.*,
700 F. App'x 22 (2d Cir. 2017) ............................................................................................5

*E.J. Brooks Co. v. Cambridge Sec. Seals*,
31 N.Y.3d 441 (2018) ..........................................................................................................17

*ExamWorks, Inc. v. Soltys*,
No. 17-CV-0080, 2017 WL 4712206 (W.D.N.Y. Aug. 10, 2017) .........................................18

*Gally v. Columbia Univ.*,
22 F. Supp. 199 (S.D.N.Y. 1998)...............................................................................8, 9, 10

*Gokool v. Okla. City Univ.*,
716 F. App'x 815 (10th Cir. 2017) ......................................................................................19

*Gomez-Jimenez v. N.Y. Law Sch.*,
103 A.D.3d 13 (1st Dep't 2012) ...........................................................................16, 22, 23

*Gomez-Jimenez v. N.Y. Law Sch.*,
36 Misc. 3d 230 (Sup. Ct. N.Y. Cnty. 2012) ..........................................................15, 16, 22

*Goshen v. Mut. Life Ins. Co. of N.Y.*,
98 N.Y.2d 314 (2002) ..........................................................................................................22

*Guzman v. Harris*,
No. 16CV3499GBDRLE, 2017 WL 4386369 (S.D.N.Y. Sept. 29, 2017) .............................24

*Heary Bros. Lighting Prot. Co., Inc. v. Intertek Testing Servs., N.A., Inc.*,
4 N.Y.3d 615 (2005) ............................................................................................................17

*Hinterberger v. Catholic Health Sys.*,
284 F.R.D. 94 (W.D.N.Y. 2012)...........................................................................................20

*Hunter v. Bd. of Educ. of Mont. Cty.*,
439 A.2d 582 (Md. 1982) .....................................................................................................15

*IDG USA, LLC v. Schupp*,
No. 10-CV-76S F, 2012 WL 5217223 (W.D.N.Y. Oct. 22, 2012)........................................17

*Jallali v. Nova Se. Univ., Inc.*,
   992 So. 2d 338 (Fla. 4th Dist. Ct. App. 2008) ..........................................................................14

*Jeffers v. Am. Univ. of Antigua*,
   125 A.D.3d 440 (1st Dep't 2015) ..............................................................................................18

*In re JetBlue Airways Corp. Privacy Litig.*,
   379 F. Supp. 2d 299 (E.D.N.Y. 2005) .......................................................................................19

*Kalimantano GmbH v. Motion in Time, Inc.*,
   939 F. Supp. 2d 392 (S.D.N.Y. 2013)........................................................................................20

*Keefe v. N.Y. Law Sch.*,
   71 A.D.3d 569 (1st Dep't 2010) ................................................................................................10

*Klyczek v. Shannon*,
   No. 1:15-CV-0963 (GTS), 2016 WL 7012650 (W.D.N.Y. Dec. 1, 2016) ...................................3

*Kowalski v. Tesmer*,
   543 U.S. 125 (2004)......................................................................................................................7

*Legurnic v. Ciccone*,
   63 F. Supp. 3d 241 (E.D.N.Y. 2014) .........................................................................................24

*Mathews v. ADM Milling Co.*,
   No. 1:15-CV-00969 EAW, 2019 WL 2428732 (W.D.N.Y. June 11, 2019).................................4

*McCabe v. Marywood Univ.*,
   166 A.3d 1257 (Pa. Super. Ct. 2017).........................................................................................19

*McCormick v. Dresdale*,
   No. 09–474 S, 2010 WL 1740853 (D.R.I. Apr. 28, 2010) ..........................................................6

*Merryman v. J.P. Morgan Chase Bank, N.A.*,
   No. 15-CV-9188 (VEC), 2016 WL 5477776 (S.D.N.Y. Sept. 29, 2016)...................................21

*Mihalakis v. Cabrini Med. Ctr. (CMC)*,
   151 A.D.2d 345 (1st Dep't 1989) ..............................................................................................15

*Miller v. Loyola Univ. of New Orleans*,
   829 So.2d 1057 (La. Ct. App. 2002)..........................................................................................19

*N.Y. Univ. v. Cont'l. Ins. Co.*,
   87 N.Y.2d 308 (1995) ................................................................................................................22

*Nungesser v. Columbia Univ.*,
   169 F. Supp. 3d 353 (S.D.N.Y. 2016)........................................................................................10

*Paladino v. Adelphi Univ.*,
    89 A.D.2d 85 (2d Dep't 1982) .......................................................................................8

*Papaspiridakos v. Educ. Affiliates, Inc.*,
    No. 10-CV-5628, 2013 WL 4899136 (E.D.N.Y. Sept. 11, 2013) ......................................8, 10

*Papelino v. Albany Coll. of Pharmacy of Union Univ.*,
    633 F.3d 81 (2d Cir. 2011)...........................................................................................10

*Pappas v. Tzolis*,
    20 N.Y.3d 228 (2012) ................................................................................................18

*Paynter v. N.Y. Univ.*,
    66 Misc. 2d 92 (1st Dep't 1971) .................................................................................7, 9

*Pepin v. Hansing*,
    No. 13CA3552, 2013 WL 5433354 (Ohio Ct. App. Sept. 20, 2013) ....................................21

*Quiroz v. Beaverton Foods, Inc.*,
    No. 17CV7348NGGJO, 2019 WL 1473088 (E.D.N.Y. Mar. 31, 2019) ................................24

*Rajamin v. Deutsche Bank Nat'l Tr. Co.*,
    757 F.3d 79 (2d Cir. 2014)............................................................................................7

*Roe v. Loyola Univ. New Orleans*,
    No. CIV. A. 07-1828, 2007 WL 4219174 (E.D. La. Nov. 26, 2007) ................................14, 19

*Rojas v. Roman Catholic Diocese of Rochester*,
    783 F. Supp. 2d 381 (W.D.N.Y. 2010) ...........................................................................2

*Rolph v. Hobart & William Smith Colls.*,
    271 F. Supp. 3d 386 (W.D.N.Y. 2017) ..........................................................................10

*Schweizer v. Sikorsky Aircraft Corp.*,
    No. 6:10-CV-6547 MAT, 2014 WL 5460504 (W.D.N.Y. Oct. 27, 2014) .............................12

*Searle v. Regents of Univ. of Cal.*,
    23 Cal. App. 3d 448 (1972) .........................................................................................14

*Spokeo, Inc. v. Robins*,
    136 S. Ct 1540 (2016)...................................................................................................5

*Town of Chester, N.Y. v. Laroe Estates, Inc.*,
    137 S. Ct. 1645 (2017)..................................................................................................5

*Turner v. Nazareth Coll.*,
    No. 10-CV-6357T, 2011 WL 310787 (W.D.N.Y. Jan. 28, 2011) ......................................8, 11

*Vought v. Teachers Coll., Columbia Univ.*,
127 A.D.2d 654 (2d Dep't 1987)....................................................................................6, 9

*Wagner Coll. v. Wagner Coll. Faculty Ass'n, NYSUT AFT, AFL-CIO*,
No. SP 527/29, 1980 WL 112320 (Sup. Ct. Richmond Cnty.)...............................................14

*Warth v. Seldin*,
422 U.S. 490 (1975)...............................................................................................5

*Wright v. Capella Univ., Inc.*,
378 F. Supp. 3d 760 (D. Minn. 2019)....................................................................19

*Zinter v. Univ. of Minn.*,
799 N.W.2d 243 (Minn. Ct. App. 2011)..................................................................19

*Zwiker v. Lake Super. State Univ.*,
No. 1:20-cv-21813-JEM, Dkt. No. 35-1 (Mich. Ct. Cl. Sept. 1, 2020) ...........................11, 12

## Statutes

N.Y. Gen. Bus. Law §§ 349-350 *et seq.* ................................................................. *passim*

## Rules

Fed. R. Civ. P. 12(b)(6)..........................................................................................5

## Other Authorities

*CDC COVID Data Tracker: United States COVID-19 Cases and Deaths by State*,
Centers for Disease Control and Prevention,
https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html.........................7

Lindsay McKenzie. *COVID-19 & Online Education Decisions*, Inside Higher Ed
(July 30, 2020) https://www.insidehighered.com/news/2020/07/30/survey-
data-reveal-impact-covid-19-perceptions-online-education..................................................16

New York Covid Map and Case Count, New York Times,
https://www.nytimes.com/interactive/2020/us/new-york-coronavirus-
cases.html...........................................................................................................7

Defendant Rochester Institute of Technology ("RIT") respectfully submits this memorandum of law in support of its motion to dismiss the Consolidated Amended Class Action Complaint ("CAC") of Plaintiffs Nicholas Bergeron and Barbara Mycek.

## PRELIMINARY STATEMENT

RIT is hardly the only university to be targeted in a wave of putative class action lawsuits brought against universities and colleges for acting responsibly—and complying with government mandates—in suspending in-person instruction in response to the COVID-19 pandemic.  As the Court is well aware, the global COVID-19 outbreak resulted in stay-at-home orders in New York and elsewhere through the spring of 2020.  Academic institutions, including RIT, were ordered to close their campuses.  RIT could not, and did not, endanger its students, faculty, and staff by maintaining in-person instruction in the face of this unprecedented health crisis.  And it could not, and did not, reopen its campus in violation of state and local government orders.

Rather than abandon the disrupted semester altogether—over half of which had already been completed at the time of the shutdown—RIT responded by undertaking extraordinary efforts to pivot quickly to a newly-created distance learning modality and to complete the remainder of the spring term on schedule.  Following the transition to distance learning, RIT students continued to attend the same classes and receive live remote instruction from the same RIT faculty.  RIT continued paying its fixed operating costs and providing core student services, including access to faculty and administration, office hours, mental health support, tutoring, student health services, library services, writing center support, career services, and other services and activities.  RIT students ultimately received the academic credits for which they paid tuition and fees.  Despite the global disruptions caused by COVID-19, and as a result of RIT's herculean efforts to make the best of a situation beyond its control, the only substantial change to the academic program was the *mode of instruction*, a matter squarely within the academic discretion of a university and its faculty.

Plaintiffs' claims must be dismissed because Plaintiffs fail to assert any right to relief cognizable in New York.  Their CAC is a thinly disguised educational malpractice action which is not justiciable.  Plaintiffs' attempts at second-guessing RIT's academic decision-making contravene New York policy against such claims absent certain exceptions not applicable here. Allowing this action to proceed would set an unjust precedent adverse to public policy.  The Court should not permit students and their parents to second-guess RIT's decisions on how to provide effective instruction, how to comply with government orders, and how to keep their communities safe, especially in these unprecedented circumstances.  To rule otherwise would undermine academic freedom and thrust the Court into a morass of subjective, individualized and ultimately fruitless exercises as to the comparative "value" of different modes of instruction during less than half a semester.  As such, the CAC should be dismissed with prejudice.

## STATEMENT OF FACTS[1]

**Plaintiffs Are An RIT Student And A Parent Of An RIT Student.**

Bergeron, a Massachusetts resident, is an undergraduate student at RIT, *see* CAC ¶ 10, who did *not* pay tuition, the activity fee, or health services fee during the spring 2020 term.  *See* Declaration of Ellen Granberg in Support of RIT's Motion to Dismiss the CAC ("Granberg Decl.")[2] ¶ 3.  Mycek, a Pennsylvania resident, is *not* an RIT student, *see* CAC ¶ 10, but the parent of an RIT undergraduate.  *See* Compl., Case No. 6:20-cv-06324 (Dkt. No. 1) ("*Mycek* Complaint")

---

[1] RIT assumes as true the allegations in the CAC for purposes of this motion only, except where such facts are contravened by Plaintiffs' prior pleadings, and documents cited or referred to in the CAC.  Nothing herein constitutes an admission that any facts alleged in the CAC are true.

[2] The Court may consider the Granberg Declaration and the exhibits annexed thereto, which are incorporated by reference in the CAC at Paragraphs 60 and 76.  *Klyczek v. Shannon*, No. 1:15-CV-0963 (GTS), 2016 WL 7012650, at *5 (W.D.N.Y. Dec. 1, 2016).

¶ 9.[3]  Neither Plaintiff claims they were unable to complete the spring 2020 semester courses, or that they did not receive the academic credits for which tuition and fees were paid.

**RIT's Students Are Bound By The Student Financial Responsibility Agreement And Incorporated Refund Policy.**

RIT is an institute of higher education located in Henrietta, New York.  CAC ¶ 6.  Every RIT student is required to accept RIT's Student Financial Responsibility Agreement, through which students "acknowledge[] their financial obligations and understanding of the related policies of the university."  Granberg Decl. Ex. B ("SFRA").  Incorporated into the SFRA is RIT's Refund Policy.  *Id.*

Because RIT's operating expenses are planned annually, *see* Granberg Decl. Ex. D, and, out of consideration for students' changing needs, RIT's Refund Policy supports students who withdraw or take a leave of absence.  *See* Granberg Decl. Ex. C ("Refund Policy"); *id.* at Ex. A ("RIT Bulletin") at 354[4].  Students seeking tuition, fees, housing, or board refunds must officially withdraw or take a leave of absence to be eligible for a partial tuition refund.  *See id.*  Full or partial refunds may be issued in accordance with the Refund Policy.  Neither Plaintiff asserts that they qualified for a refund.  *Cf.* CAC ¶ 45.  RIT also expressly "reserves the right to alter any of its courses at any time."  RIT Bulletin at 491.  Accordingly, no refunds are promised for changes in the location or mode of instruction.

In addition to the SFRA and Refund Policy, RIT issues an annual bulletin which includes, *inter alia*, the academic calendar and course descriptions, and reiterates RIT's Refund Policy.  *See* CAC, ¶¶ 60, 76; RIT Bulletin at 354.  Marketing statements on RIT's website *are not* part of the

---

[3] The allegations in Mycek's original complaint are binding judicial admissions.  *Rojas v. Roman Catholic Diocese of Rochester*, 783 F. Supp. 2d 381, 407 (W.D.N.Y. 2010).

[4]  The undergraduate bulletin governs the named Plaintiffs' claims, and, as such, RIT does not rely on its graduate student bulletin in responding.  RIT reserves all rights.

3

contractual terms between RIT and its students, per specific disclaimer language stated therein. *See* Granberg Decl., Ex. E.

**RIT Responds To The COVID-19 Pandemic And Related Government Orders.**

RIT's spring 2020 semester began on or about January 13, 2020, and was scheduled to conclude on or about May 6, 2020.  CAC ¶¶ 34-35.  On March 16, 2020, the Governor of New York directed every school in the state, including RIT, to close by March 18, 2020, and Executive Order 202.28 ordered all schools in the state to remain closed for the remainder of the 2019-2020 academic year.  *See* Burns Decl., Ex. A-E.[5]

RIT announced on March 11, 2020 that it was extending spring break until March 22, and that classes would transition to distance learning beginning March 23 until further notice.  *See* Granberg Decl. Ex. F.  On March 15, 2020, after Monroe County and surrounding counties declared local states of emergency, RIT announced that classes would stay in the remote learning format for the remainder of the semester.  *See id.* at Ex. G.

On March 20, 2020, RIT announced that it was reviewing each student account and in its discretion issuing refunds for housing, meal plans, and parking permits based on processes and guidelines developed for this emergency, including adjustments based on need-based financial aid. *See id.* at Ex. H.  RIT explained that tuition refunds would not be issued because classes were continuing, related expenses were continuing, and because the time to withdraw from classes and request tuition refunds had lapsed.  *Id.*

**Plaintiffs' Complaints And The Consolidated Amended Complaint.**

On May 1, 2020, Bergeron filed a class action complaint against RIT seeking *pro rata* tuition and fees refunds for the spring 2020 academic term.  *See* Dkt. No. 1.  On May 19, 2020,

---

[5] The Court may take judicial notice of government orders.  *Mathews v. ADM Milling Co.*, No. 1:15-CV-00969 EAW, 2019 WL 2428732, at *4 (W.D.N.Y. June 11, 2019).

Mycek filed a separate class action against RIT demanding the same relief. *See Mycek* Complaint. Plaintiffs then filed an amended consolidated complaint designating the *Bergeron* Action as the primary action. The CAC asserts causes of action for breach of contract, unjust enrichment, conversion, and violations of N.Y. Gen. Bus. Law §§ 349-350 *et seq.* ("UDAAP").

## ARGUMENT[6]

### I. Neither Plaintiff Has Standing To Bring The Claims Asserted.

Plaintiffs must have standing as to *each claim* and *each form of relief* sought. *Town of Chester, N.Y. v. Laroe Estates*, *Inc.*, 137 S. Ct. 1645, 1650 (2017). This rule applies to named plaintiffs in putative class actions, who must have standing as to each and every claim and relief sought on behalf of the putative class. *Warth v. Seldin*, 422 U.S. 490, 502 (1975) ("Petitioners must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent."). To establish standing, the plaintiff must "have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct 1540, 1547 (2016).

### A. Bergeron Has Not Suffered Any Injury In Fact.

Bergeron cannot establish the first requirement of standing—injury in fact. While the CAC falsely alleges that Bergeron paid substantial tuition for the spring 2020 semester, *see* CAC ¶¶ 45, 124, RIT's records[7] establish that he did not, in fact, pay any tuition or fees for that semester. *See* Granberg Decl. ¶ 3. His tuition and fees were paid entirely through an outside scholarship and an

---

[6] The Court is familiar with the standard of review on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). As such, and for the sake of brevity, RIT omits reciting the standard of review.

[7] The Court may consider materials extrinsic to the complaint that pertain to jurisdictional facts in determining whether a plaintiff has standing. *Adson5th, Inc. v. Bluefin Media, Inc.*, No. 16-CV-143 (LJV), 2017 WL 2984552, at *7 (W.D.N.Y. July 13, 2017).

RIT grant. *Id.* Not having paid the tuition and fees for which he seeks a refund, Bergeron suffered no injury and therefore has no standing. *See Doyle v. Mastercard Int'l Inc.*, 700 F. App'x 22, 24-25 (2d Cir. 2017) (plaintiff who has not personally suffered injury lacks standing to sue on behalf of putative class).

### B.    Mycek, The Parent Of An Adult RIT Student, Lacks Standing.

It is axiomatic that Mycek and other parents of adult RIT students lack standing to assert claims against universities concerning their adult children's education. The relationship between a university and its students is contractual in nature, and the contract exists only with the student. *Vought v. Teachers Coll., Columbia Univ.*, 127 A.D.2d 654, 654 (2d Dep't 1987). The mere act of paying her son's tuition did not render Mycek a party to any underlying contract with RIT. This is made explicit by the fact that parties to the SFRA are RIT and its *students*—not parents or any other payors. *See generally*, SFRA. Indeed, such payment-based standing has been squarely rejected by courts throughout the country. *See, e.g., Doe v. Univ. of the S.*, 687 F. Supp. 2d 744, 761 (E.D. Tenn. 2009) ("It is fairly evident that the 'payment of tuition does not create a contractual relationship between parents and a college' when the parents' child is over the age of majority.") (*quoting Apffel v. Huddleston*, 50 F. Supp. 2d 1129, 1133 (D. Utah 1999)); *McCormick v. Dresdale*, No. 09–474 S, 2010 WL 1740853, at *2 (D.R.I. Apr. 28, 2010) (dismissing parents' claim against university for lack of standing).

To allow Mycek to bring claims against RIT that belong to her adult son would lead to an untenable tripartite relationship that eviscerates adult students' ability to chart their own educational course, regardless of who pays their tuition. If Mycek is deemed to have standing, then non-student tuition-payors—parents, lenders, employers, the government, *etc.*—could dispute virtually any of a university's policies or decisions, such as admissions policies, credit requirements, course requirements, and disciplinary decisions, even if the student has no dispute.

6

This is not—nor should it be—the law.  This Court should adopt the principles in *Doe* and find that Mycek lacks standing to bring claims against RIT concerning her adult son's education.

Mycek also lacks standing to bring the unjust enrichment, conversion, and UDAAP claims, as each requires a showing that *Mycek* was injured.  A party "must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'" *Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004) (citation omitted); *accord Rajamin v. Deutsche Bank Nat'l Tr. Co.*, 757 F.3d 79, 86 (2d Cir. 2014).  Here, the injury alleged—not being provided in-person instruction on RIT's campus—was sustained not by Mycek but only by her adult child.

## II. Plaintiffs' Claims Seek Judicial Intervention Into Academic Decisions Regarding Mode Of Instruction, Which Are Not Actionable.

While Plaintiffs attempt to disavow any claim for "educational malpractice," *see* CAC ¶ 113, that is precisely what their claims allege:  Plaintiffs seek recovery under a theory that the remote learning modality implemented in the wake of COVID-19 and government shut-down orders delivered education of lesser "value" than the in-person education they received during the first half of the spring 2020 semester.  *See, e.g.,* CAC ¶ 50(b)-(d).  Without a diminution in the value of that education, they suffered no loss and have no claims against RIT.

Consequently, Plaintiffs' claims at their core challenge RIT's academic judgment regarding the *mode of instruction* needed to minimize disruption and continue instruction in the face of government shut-down orders and a pandemic that, to date, has caused the deaths of more than 208,000 Americans[8] and 32,000 New Yorkers.[9]  Plaintiffs demand that the Court second-

---

[8] *See CDC COVID Data Tracker: United States COVID-19 Cases and Deaths by State*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html (updated daily).

[9] *See* New York Covid Map and Case Count, New York Times, https://www.nytimes.com/interactive/2020/us/new-york-coronavirus-cases.html (updated daily).

guess that judgment[10] and assess the quality and efficacy of RIT's remote instruction as subjectively experienced by each student in less than half a semester. That is precisely the type of second-guessing of educational efficacy and academic decision-making in which New York courts do not engage. As such, Plaintiffs' case rests impermissibly on educational malpractice claims.

Under well-established law, New York courts do not intervene in the academic affairs of schools where the gravamen of claims relate to the perceived quality or value of instruction:

> New York courts consistently decline to entertain actions sounding in tort-based "educational malpractice," where "the essence of the complaint is that the school breached its agreement by failing to provide an *effective* education." *Paladino v. Adelphi Univ.*, 89 A.D.2d 85, 454 N.Y.S.2d 868 (2d Dep't 1982). This policy recognizes that "professional educators – not judges – are charged with the responsibility for determining the *method of learning* that should be pursued for their students." *Id.* at 873. ". . . [T]o entertain a cause of action for educational malpractice would require the courts not merely to make judgments as to the validity of broad educational policies . . . but, more importantly, to sit in review of the day-to-day implementation of these policies." *Donohue v. Copiague Union Free Sch. Dist.*, 47 N.Y.2d 440, 418 N.Y.S.2d 375, 391 N.E.2d 1352, 1354 (1979).

*Papaspiridakos v. Educ. Affiliates, Inc.*, No. 10-CV-5628, 2013 WL 4899136, at *3 (E.D.N.Y. Sept. 11, 2013) *aff'd*, 580 F. App'x 17 (2d Cir. 2014) (emphasis added); *see also Turner v. Nazareth Coll.*, No. 10-CV-6357T, 2011 WL 310787, at *4 (W.D.N.Y. Jan. 28, 2011) ("It is well settled that claims for educational malpractice are not recognized under New York law, and *claims that sound in tort* and *ask the Court to involve itself in the subjective professional judgments of trained educators will not survive a motion to dismiss merely because the plaintiff couches her claims in terms of breach of contract*.") (citation omitted; emphasis added). Simply put, no matter how Plaintiffs label their claims, "[w]here the essence of the complaint is that the school breached its agreement by failing to provide an effective education, the complaint must be dismissed as an

---

[10] RIT has inherent authority to maintain order on its campus and protect the health and safety of its students, staff, and community. *See Paynter v. N.Y. Univ.*, 66 Misc. 2d 92, 92 (1st Dep't 1971).

impermissible attempt to avoid the rule that there is no claim in New York for 'educational malpractice.'" *Gally v. Columbia Univ.*, 22 F. Supp. 199, 207 (S.D.N.Y. 1998).

In an analogous case, the New York Appellate Term held that the court could not second-guess New York University's decision to close its campus for the remainder of the academic year amidst nationwide riots in May 1970. In overturning the lower court, the Appellate Term held:

> Private colleges and universities are governed on the principle of self-regulation, free to a large degree, from judicial restraints (Education Law, s 226, subd. 10), and they have inherent authority to maintain order on their campuses. In the light of the events on the defendant's campus and in college communities throughout the country on May 4th to 5th, 1970, the court erred in substituting its judgment for that of the University administrators and in concluding that the University was unjustified in suspending classes for the time remaining in the school year prior to the examination period.

*Paynter,* 66 Misc. 2d 92 (1st Dep't 1971). In dismissing the complaint, the court effectively found no legal theory under which plaintiff was entitled to a tuition refund. *See generally, id. Paynter* is directly applicable here and requires dismissal of the CAC in its entirety.

Plaintiffs cannot escape this conclusion by pretending that their claims are something other than what they plainly are. Plaintiffs do not, and cannot, assert that they or their adult children were denied access to an education, or that they did not receive credits for the courses completed. *See Vought*, 127 A.D.2d at 654 (explaining that the bargained-for exchange when a student enrolls and pays tuition is that a student will comply with policies prescribed by the university and the university will confer a degree). RIT lived up to its end of the bargain as a matter of law.

## III.  Plaintiffs Fail To State Claims For Breach Of Any Enforceable Contract Terms.

New York courts recognize that the relationship between a student and a university is contractual in nature. *Gally*, 22 F. Supp. 2d at 206. The basic bargained-for exchange is that "if the student complies with the terms prescribed by the university, [the student] will obtain the degree [the student] seeks." *Id.*; *see also Vought*, 127 A.D.2d at 654. The terms that the student

must comply with are set forth in the university's bulletins, catalogs, regulations, and policies. *Vought*, 127 A.D.2d at 654.  Only if the school agreed to provide "certain specified services, such as for example, a designated number of hours of instruction, and the school failed to meet its burden" may a contract action be appropriate against the university.  *Gally*, 22 F. Supp. 2d at 206.

Plaintiffs' breach of contract claims here fail as a matter of law because: (1) Plaintiffs can identify no contract provision in which RIT guaranteed in-person classes to its on-campus students unconditionally, and (2) Plaintiffs failed to satisfy the specified conditions for a refund under RIT's published tuition refund policy.

> ### A.      RIT's Student Financial Responsibility Agreement and Refund Policy Bars Plaintiff's Breach of Contract Claim.

To state a breach of contract claim against a university, Plaintiffs must identify "specific promises set forth in a school's bulletins, circulars and handbooks, which are material to the student's relationship with the school."  *See Bailey v. N.Y. Law Sch.*, No. 16-CV-4283, 2017 WL 835190, at *9 (S.D.N.Y. Mar. 1, 2017) (quoting *Keefe v. N.Y. Law Sch.*, 71 A.D.3d 569, 570 (1st Dep't 2010)).  "General policy statements" and "broad and unspecified procedures and guidelines" are not sufficient.  *Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 93 (2d Cir. 2011); *see also Rolph v. Hobart & William Smith Colls.*, 271 F. Supp. 3d 386, 407 (W.D.N.Y. 2017) ("aspirational statements" in school handbook not sufficient).

New York courts take a critical eye in assessing whether a breach of contract claim asserted against a university sufficiently pleads a "specific promise," and have repeatedly dismissed claims that disguise general complaints about a university's policies and procedures as breach of contract claims.  *See, e.g., Bailey*, No. 16-CV-4283, 2017 WL 835190, at *9 (allegation that plaintiff entered into contract with New York Law School "for education services she did not receive" was too vague); *Papaspiridakos*, No. 10-CV-5628, 2013 WL 4899136, at *4 (dismissing breach of

10

contract claim where the student did not identify any "specific promise"); *Nungesser v. Columbia Univ.*, 169 F. Supp. 3d 353, 370 (S.D.N.Y. 2016) (generalized statements in university's gender-based misconduct policy insufficient to create a "separate and independent contractual obligation"); *Turner*, 2011 WL 310787, at *4 (same).  To pass muster as a "specific promise," the statement must be a discrete representation as to issues such as the number of hours of instruction, the condition of facilities, and qualifications of faculty.  *See, e.g., Basso v. New York Univ.*, No. 16-CV-7295 (VM), 2017 WL 1019505, at *3 (S.D.N.Y. Feb. 24, 2017) (statement that faculty were "working professionals and that the faculty, equipment, and facilities would be of the same quality" as New York campus was sufficiently specific); *Ansari v. New York Univ.*, No. 96 CIV. 5280 (MBM), 1997 WL 257473, at *1 (S.D.N.Y. May 16, 1997) (promises of "didactic and actual hands-on clinical training" and seminars at specific times every day sufficiently specific).

The only specific promise relevant to this dispute is *Plaintiffs'* promise to pay tuition and fees upon registration or receipt of services.  Every RIT student must agree to abide by the terms of RIT's SFRA.  *See* SFRA.  Each student agrees:

> I understand and agree that when I register for any class at the Rochester Institute of Technology (RIT; university), or receive any service from RIT including student meals plan and/or housing charges or have deferred payments due or incur any liability for damages, I accept full responsibility to pay all tuition, fees and other associated costs assessed at any time as a result of my registration and/or receipt of services, or liability notwithstanding any anticipated third-party resource, including but not limited to financial aid, family gift, employer reimbursement or any other external resource.  I promise to pay for all assessed tuition, fees and other associated costs by the published or assigned due date.

*Id.* at 1.  Students also agree to comply with the terms of RIT's withdrawal and refund policies. *Id.*  Nowhere in the SFRA—the express agreement defining Plaintiffs' obligations concerning tuition and fees—is there any promise that RIT would guarantee in-person instruction in the middle of a pandemic and despite government stay-at-home orders.  *See generally, id.*  As recently held by the Michigan Court of Claims in another COVID-19 related tuition refund case, "a claim for a

11

breach of contract cannot be sustained where the language purportedly breached does not appear in the parties' agreement." *Zwiker v. Lake Super. State Univ.*, No. 1:20-cv-21813-JEM, Dkt. No. 35-1 at 9 (Mich. Ct. Cl. Sept. 1, 2020); *see also Schweizer v. Sikorsky Aircraft Corp.*, No. 6:10-CV-6547 MAT, 2014 WL 5460504, at *7 (W.D.N.Y. Oct. 27, 2014), *aff'd*, 634 F. App'x 827 (2d Cir. 2015) (court cannot impose different reading of contract when its terms are clear and unambiguous). *Zwiker* is directly applicable here. As with the tuition contract considered in *Zwiker*, the SFRA here governs, and provides that students "accept full responsibility for all tuition—and fees []—as a result of registration and/or receipt of services." *Zwiker*, Case No. 1:20-cv-21813-JEM, Dkt. No. 35-1 at 9;[11] SFRA at 1. There is no dispute that instruction was provided, and as explained in *Zwiker*, there is no term in the SFRA promising *in-person* instruction. *Id.*

The SFRA expressly incorporates by reference RIT's Refund Policy. The Refund Policy requires students to withdraw or take a leave of absence to qualify for any partial or full tuition refund, and sets forth the circumstances pursuant to which withdrawal or a leave of absence may be granted. *See* RIT Bulletin at 354. Neither Bergeron nor Mycek's son withdrew or took a leave of absence, and, consequently, neither qualified for a refund. RIT made no promise to refund tuition or fees in any other circumstances. Thus, after having completed and received credits for the spring 2020 semester, Plaintiffs have no contractual claim for a refund. *Bailey*, No. 16-CV-4283, 2017 WL 835190, at *9.

While the Refund Policy is expressly incorporated by reference into the SFRA, the SFRA expressly disclaims and supersedes "all prior understandings, representations, negotiations, and

---

[11] Notably, the *Zwiker* court also dismissed all claims seeking fee refunds, because the tuition contract required payment upon registration *or* receipt of services. *Zwiker v. Lake Super. State Univ.*, Case No. 1:20-cv-21813-JEM, Dkt. No. 35-1 at 9. The SFRA contains substantially identical language, and requires students to pay tuition *and* fees upon "registration and/*or* receipt of services." SFRA at 1.

12

correspondence between the student and RIT." SFRA at 3. As explained persuasively by *Zwiker*, course descriptions and general information provided in RIT's marketing materials cannot be incorporated into an agreement when there is no indication that such materials were intended to be incorporated. *See Zwiker*, Case No. 1:20-cv-21813-JEM, Dkt. No. 35-1 at 10; *see also 2470 Cadillac Res., Inc. v. DHL Exp. (USA), Inc.*, 115 A.D.3d 582, 582 (1st Dep't 2014) (terms not incorporated by reference do not become part of contract). Accordingly, RIT made no specific promise to Plaintiffs to provide exclusively in-person instruction.

**B.      Plaintiffs Fail To Identify Any Specific And Discrete Promise Made By RIT To Provide Exclusively In-Person, On-Campus Instruction And Programs In The Spring 2020 Semester.**

Even if the marketing materials and course descriptions cited in the CAC could be deemed terms of the agreement between RIT and its students, none of the statements cited by Plaintiffs contain a specific and discrete promise that RIT would exclusively provide in-person instruction and on-campus activities despite the on-set of a global pandemic and government stay-at-home orders. *See* CAC ¶¶ 21-32, 65-104.[12]

Moreover, RIT expressly disclaims as a contract obligation each of the statements from RIT's website on which Plaintiffs rely:

> RIT makes the rit.edu website available as a source of information about RIT, as a virtual classroom for distance learning, and as a place for members of the RIT community to express their own views and opinions. The rit.edu website is provided AS IS, and *nothing on the rit.edu website is intended to be a representation, offer, inducement, promise, or contract of any kind.*

---

[12] The Gleason College student handbook from 2018, *see* CAC n.20, is irrelevant to Plaintiffs' claims, which relate only to the spring 2020 semester. Further, while Plaintiffs call out the Student Activity Fee and Student Health Services Fee, the "Fees Class," as defined, appears to include other unidentified and unspecified fees, which falls far short of Plaintiffs' pleading obligation. *See, e.g., 4C Foods Corp. v. Package Automation Co.*, No. 14 CIV. 2212 CM, 2014 WL 6602535, at *5 (S.D.N.Y. Nov. 18, 2014) (plaintiffs cannot rely on non-specific claims to survive motion to dismiss, as the law prohibits fishing expeditions).

Granberg Decl., Ex. E (emphasis added); *see also Basso*, No. 16-CV-7295, 2017 WL 1019505, at *3 (barring breach of contract claims based on bulletins which contained express disclaimer).

Lastly and dispositively, RIT "reserves the right to alter any of its courses at any time." RIT Bulletin at 491. Pursuant to this express reservation, RIT had every right to change the location or mode of instruction for any of its courses, in its sole discretion, during the spring 2020 semester. This contract provision, as a matter of law, precludes Plaintiffs' claim that RIT's shift to remote course instruction constitutes a breach of contract. *See, e.g., Wagner Coll. v. Wagner Coll. Faculty Ass'n, NYSUT AFT, AFL-CIO*, No. SP 527/29, 1980 WL 112320, at *1 (Sup. Ct. Richmond Cnty.) (acknowledging enforceability of reservation of rights by university); *Searle v. Regents of Univ. of Cal.*, 23 Cal. App. 3d 448, 452 (1972) (university has discretion to change policy); *Jallali v. Nova Se. Univ., Inc.*, 992 So. 2d 338, 342-43 (Fla. 4th Dist. Ct. App. 2008) (university not liable for changing policies where handbook reserved right to "revise or modify" policies "at any time"); *Beukas v. Bd. of Trs. of Farleigh Dickinson Univ.*, 605 A.2d 708, 708-09 (N.J. Super. Ct. 1992) (reservation of right to eliminate any college within university subject to giving adequate notification precluded contract claim).

Ultimately, Plaintiffs got the benefit of their bargain with RIT. In a case directly on point, and also dealing with emergency circumstances, the Eastern District of Louisiana dismissed a law student's breach of contract complaint demanding a tuition refund as a result of being displaced after Hurricane Katrina and having to complete the semester as a visiting student at another law school. *See Roe v. Loyola Univ. New Orleans*, No. CIV. A. 07-1828, 2007 WL 4219174, at *2 (E.D. La. Nov. 26, 2007). In dismissing the breach of contract claim, the court held that Loyola could adopt a special policy to address the impact of Hurricane Katrina on its campus operations, and that plaintiff received the benefit of his bargain with Loyola because he was allowed to

14

complete his semester courses (albeit at a different university, under a special visiting student policy) and receive credit from Loyola. *Id.* RIT did even more than Loyola. In response to emergency conditions, RIT adopted a special policy and online program involving the same RIT faculty and courses that allowed students to complete their spring 2020 semester remotely, a change in the mode of instruction expressly permitted pursuant to RIT's reservation of rights. Plaintiffs received the benefit of their bargain with RIT when they completed the spring 2020 semester and received credits for all completed courses.

### C.    Plaintiffs' Contract Claims Fail For Lack Of Cognizable Damages.

Even if Plaintiffs had identified a specific promise that obligated RIT to provide exclusively in-person instruction and unrestricted campus access, their breach of contract claims still fail because the alleged damages are impermissibly speculative and Plaintiffs have not pled, nor can they establish, that RIT caused their alleged damages. This is so for two reasons:

*First,* Plaintiffs cannot plead that they have been "damaged" without asking this Court to value the quality of the education received. The harm alleged by Plaintiffs—*i.e.*, a purported difference in the subjective "value" of distance learning and services provided in the midst of a pandemic, versus in-person instruction and services provided under normal conditions, *see* CAC ¶¶ 50(b)-(d)—is impermissibly speculative. Citing principles drawn from the judicial deference to educational institutions discussed above in the context of "educational malpractice" claims, courts in New York and elsewhere have held that damages arising from claimed deficiencies in the value of education are speculative and thus insufficient as a matter of law to support claims against educational institutions. *See, e.g., Gomez-Jimenez v. N.Y. Law Sch.*, 36 Misc. 3d 230, 248-252, 260 (Sup. Ct. N.Y. Cnty. 2012) ("*Gomez-Jimenez I*") (dismissing claims seeking tuition refund because damages based on "true value" of law degree were "entirely too speculative and remote to be qualified as a remedy under the law"); *Mihalakis v. Cabrini Med. Ctr. (CMC)*, 151

15

A.D.2d 345 (1st Dep't 1989) (damages measured by difference in value of medical internship program as marketed versus actual value were speculative); *Hunter v. Bd. of Educ. of Mont. Cty.*, 439 A.2d 582, 584-85 (Md. 1982) (dismissing claims concerning quality of education due to "the inherent uncertainty in determining the cause and nature of any damages"); *Alsides v. Brown Inst. Ltd.*, 592 N.W.2d 468, 472 (Minn. Ct. App. 1999) (same).

The New York Supreme Court's analysis in *Gomez-Jimenez I* is particularly instructive. In *Gomez-Jimenez I*, as here, plaintiff disputed *the value* of the instruction received. *See Gomez-Jimenez I*, 36 Misc. 3d at 250. In holding that damages based on the perceived value of education are impermissibly speculative, the Court explained as follows:

> To measure damages *based on the difference in value* between a degree which guarantees a good legal job, as defined by plaintiffs, and one that does not, against the background of the remote, supervening impact of the Great Recession, would require the court to engage in naked speculation. This the court cannot do.

*Id.* at 252 (emphasis added). Here too, COVID-19 and its impact on RIT (and the world) renders any attempt to measure damages based on the purported difference in value between remote learning under COVID-19 conditions and in-person instruction in normal times nothing more than fruitless speculation. The circumstances are indisputably exceptional, and the impact varies dramatically among students. Indeed, for many, remote learning may be *more valuable*, especially during a health and safety emergency.[13] Consequently, there is no baseline or delta "value" from which to conduct any useful or fair comparison, making any alleged damages speculative, at best. This lack of cognizable, non-speculative damages defeats Plaintiffs' contract claims.

---

[13] *See, e.g.,* Lindsay McKenzie. *COVID-19 & Online Education Decisions*, INSIDE HIGHER ED (July 30, 2020) https://www.insidehighered.com/news/2020/07/30/survey-data-reveal-impact-covid-19-perceptions-online-education ("The Public Viewpoint: COVID-19 Work and Education survey found that Americans' perceptions of the quality and value of in-person, online or hybrid education vary widely. *The majority of respondents, 35 percent, felt that online education offered the best value for money.*") (emphasis added).

Second, even if the Court were to entertain Plaintiffs' speculative damages theory, the causal requirement for a breach of contract claim requires pleading that the *defendant's* action or failure to act caused the plaintiff's alleged injury. *Heary Bros. Lighting Prot. Co., Inc. v. Intertek Testing Servs., N.A., Inc.*, 4 N.Y.3d 615, 619-20 (2005). No breach of contract claim may lie where the independent act of a third party prevents the defendant from fully complying with or performing the terms of the subject agreement. *See id.* (third party's rejection of proposed testing standard, which standard defendant was hired to provide certification of compliance, vitiated causation requirement of breach of contract claim).

Here, Plaintiffs concede that the suspension of in-person instruction was caused by the COVID-19 pandemic. *See* CAC ¶ 37 ("However, *as a result* of the COVID-19 pandemic, Defendant announced on March 15, 2020 that it was moving all classes online for the remainder of the semester."). Further, RIT's suspension of in-person instruction—the act on which Plaintiffs' alleged breach is premised—was required by Governor Cuomo's executive order of March 16, 2020 directing RIT and every other public and private education institute of all levels to suspend in-person instruction no later than March 18, 2020. *See* Burns Decl., Ex. A. Accordingly, it was the COVID-19 pandemic, and the resulting governmental shut-down orders, that caused any damages Plaintiffs claim they suffered, not anything done by RIT.

## IV.    Plaintiffs' Unjust Enrichment Claims Must Be Dismissed.

To state an unjust enrichment claim in New York, Plaintiffs must plead that (1) RIT was enriched, (2) at Plaintiffs' expense, and (3) that it is against equity and good conscience to permit RIT to retain what is sought to be recovered. *E.J. Brooks Co. v. Cambridge Sec. Seals*, 31 N.Y.3d 441, 445-46 (2018) (citations omitted). A claim for unjust enrichment "is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." *Id.* "The

17

mere fact that the plaintiff's activities bestowed a benefit on the defendant is insufficient to establish a cause of action for unjust enrichment." *IDG USA, LLC v. Schupp*, No. 10-CV-76S F, 2012 WL 5217223, at *11 (W.D.N.Y. Oct. 22, 2012). Plaintiffs' unjust enrichment claims must be dismissed because Plaintiffs' claims arise out of and are governed by contract, and Plaintiffs had no reasonable expectation of any tuition or fees refund.

> **A.      Unjust Enrichment Cannot Be Pled In The Alternative Under New York Law Where There Is No Dispute A Contract Governs.**

"A party may not recover in . . . unjust enrichment where the parties have entered into a contract that governs the subject matter." *Pappas v. Tzolis*, 20 N.Y.3d 228, 234 (2012). While a plaintiff may plead unjust enrichment and breach of contract in the alternative, "[c]ourts in this Circuit often dismiss unjust enrichment claims at the pleadings stage where it is clear that there is no dispute as to the existence of a contract between the parties or the fact that the contract applies to the subject matter of the lawsuit." *ExamWorks, Inc. v. Soltys*, No. 17-CV-0080, 2017 WL 4712206, at *5 (W.D.N.Y. Aug. 10, 2017) (citing examples). A dispute over liability is irrelevant if there is no dispute over the enforceability of an express contract. *Affiliated Capital Servs. Corp. v. W. Atl. City Assocs.*, 760 F. Supp. 1067, 1076 (W.D.N.Y. 1991).

RIT and the Plaintiffs agree that contract terms determine the relationship between RIT and its students regarding tuition and fees. The absence of a dispute on that material fact precludes an alternative claim for unjust enrichment. *See, e.g., Jeffers v. Am. Univ. of Antigua*, 125 A.D.3d 440, 442 (1st Dep't 2015) (dismissing unjust enrichment claim for tuition refund where school's "fact book" governed student-school relationship).

> **B.      Plaintiffs Had No Reasonable Expectation Of Receiving A Tuition Or Fees Refund Pursuant To RIT's Refund Policy.**

Plaintiffs' unjust enrichment claims fail as a matter of law because Plaintiffs had no reasonable expectation of receiving a tuition or fees refund under RIT's published Refund Policy.

The equitable principles underlying an unjust enrichment claim do not support allowing a plaintiff to recover amounts which plaintiff had no reasonable expectation of receiving. *See Bd. of Managers of Trump Tower at City Ctr. Condo. by Neiditch v. Palazzolo*, 346 F. Supp. 3d 432, 467-79 (S.D.N.Y. 2018) (dismissing counterclaim for unjust enrichment where defendant had no reasonable expectation of compensation); *In re JetBlue Airways Corp. Privacy Litig.*, 379 F. Supp. 2d 299, 329-30 (E.D.N.Y. 2005) (dismissing claim for unjust enrichment where plaintiffs failed to allege that JetBlue "obtained any benefit that rightfully belonged to them").

Plaintiffs agreed to be bound by RIT's SFRA and Refund Policy when enrolling, which specified that tuition and fee refunds are available only if they withdrew before the fourth week of a semester. *See* Granberg Decl. Exs. A, C. Given the express and unambiguous terms of the Refund Policy, Plaintiffs had no reasonable expectation of a refund because they completed the semester. Moreover, because Plaintiffs received RIT academic credits for their spring 2020 courses, Plaintiffs cannot establish that they were impoverished by paying tuition to RIT in exchange for those credits. *Roe*, No. CIV.A. 07-1828, 2007 WL 4219174, at *3.

As a matter of policy upholding academic discretion, courts across the country are reluctant to allow unjust enrichment claims seeking tuition refunds from universities where, as here, there is no dispute that the school completed instruction for credit in exchange for tuition. *See, e.g., Miller v. Loyola Univ. of New Orleans*, 829 So.2d 1057, 1061-62 (La. Ct. App. 2002); *Gokool v. Okla. City Univ.*, 716 F. App'x 815, 819 (10th Cir. 2017); *McCabe v. Marywood Univ.*, 166 A.3d 1257, 1264 (Pa. Super. Ct. 2017); *Wright v. Capella Univ., Inc.*, 378 F. Supp. 3d 760, 775 (D. Minn. 2019); *Zinter v. Univ. of Minn.*, 799 N.W.2d 243, 247 (Minn. Ct. App. 2011). To rule otherwise would directly undermine RIT's discretion in areas of academic freedom and would run afoul of the established policy of deference to university decision makers on academic standards.

19

**V.      Plaintiffs' Conversion Claims Fail As A Matter Of Law.**

Plaintiffs' conversion claims fail for two independent reasons: (1) the claims are barred by the economic loss rule, and (2) Plaintiffs fail to allege facts establishing the essential elements of an actionable conversion.

**A.      The Economic Loss Rule Bars Plaintiffs' Conversion Claims.**

"Under New York law, damages that arise from the failure of a party to perform pursuant to a bargained-for agreement are recoverable in contract, and not in tort, unless a legal duty independent of the contract itself has been violated." *Kalimantano GmbH v. Motion in Time, Inc.*, 939 F. Supp. 2d 392, 415-16 (S.D.N.Y. 2013) (explaining economic loss rule). To avoid the application of the economic loss rule, a conversion claim must assert some "'wrong' that is separately actionable." *Citadel Mgmt. Inc. v. Telesis Tr., Inc.*, 123 F. Supp. 2d 133, 148 (S.D.N.Y. 2000). Plaintiffs' conversion claims do not stand on an independent wrong, but instead rest squarely on the same facts pled in support of Plaintiffs' breach of contract claims. *Compare* CAC First and Third Collective Causes of Action *with* Fifth Collective Cause of Action. Plaintiffs also seek identical damages under both their contract and tort claims—namely, a partial refund of tuition and fees. *Compare id.* at ¶¶ 120, 151 *with* ¶ 175. Plaintiffs' conversion claims are therefore barred by the economic loss rule.

**B.      Plaintiffs Fail To Establish The Elements Of Conversion.**

Conversion claims require pleading facts that establish: (1) plaintiff's possessory right or interest in the property, and (2) defendant's dominion over the property or interference with it, in derogation of plaintiff's rights. *Hinterberger v. Catholic Health Sys.*, 284 F.R.D. 94, 111 (W.D.N.Y. 2012). Plaintiffs' CAC fails to satisfy these essential elements of conversion.

First, there can be no conversion where an owner either expressly or impliedly consents or acquiesces to the taking, use, or disposition of his property. *B & C Realty, Co. v. 159 Emmut*

20

*Props. LLC*, 106 A.D.3d 653, 656 (1st Dep't 2013).  Plaintiffs assented to paying tuition and fees when they enrolled at RIT, agreed to be bound by the SFRA, and voluntarily turned over the pre-set tuition and fees for enrollment—relinquishing all property rights to such funds.  Plaintiffs admit as much.  *See* CAC ¶¶ 17-18, 30.

Second, Plaintiffs cannot establish that RIT committed an independently wrongful act by retaining the full amount of tuition and fees paid in accordance with its published Refund Policy. The Refund Policy expressly permitted RIT to retain 100% of tuition and fees if a student did not submit written notice of an intent to withdraw by the end of the fourth week of classes.  *See* Granberg Decl., Ex. C; RIT Bulletin at 354.  Neither Plaintiff gave any such notice.  Consequently, RIT had a lawful right to retain the full payments.

In an analogous case from the Court of Appeals of Ohio, students sought tuition refunds from a defunct medical school.  In overturning the jury verdict in favor of the students, the Court of Appeals of Ohio held that "no conversion of property can occur without some kind of 'wrongful act,'" and that "[a] lawful act [of students paying tuition] is not suddenly made wrongful simply because the school runs out of money and closes its doors."  *Pepin v. Hansing*, No. 13CA3552, 2013 WL 5433354, at *4 (Ohio Ct. App. Sept. 20, 2013).  The same principle applies here. Receiving tuition from students in exchange for providing instruction and academic credits is not wrongful.  Nor is it wrongful for a university to retain those tuition payments in accordance with an express policy when the university continues to provide instruction despite the onset of a pandemic.

Third, Plaintiffs fail to plead a "specific, identifiable sum" of damages owed.  *See Merryman v. J.P. Morgan Chase Bank, N.A.*, No. 15-CV-9188 (VEC), 2016 WL 5477776, at *12 (S.D.N.Y. Sept. 29, 2016) (dismissing conversion claim because "Plaintiffs do not identify a

21

specific sum of money that is owed to them, nor do they even specify by how much JPM alleged 'overcharged' them foreign exchange transactions."). Plaintiffs make no attempt to identify a specific amount of tuition or fees purportedly converted, and, as discussed above, it is wholly speculative as to how the Court could reasonably assess the alleged loss in "value" of education to Plaintiffs caused by a mid-semester transition to remote instruction.

**VI.   Plaintiffs Fail To State A Claim Under N.Y. Gen. Bus. Law §§ 349-350,** *et seq.*

A claim pursuant to N.Y. Gen. Bus. Law §§ 349-350 *et seq.* ("UDAAP") must establish that (1) the conduct at issue is consumer oriented, (2) the defendant is engaged in an act or practice that is deceptive in a material way, and (3) plaintiff has been injured by such conduct. *Gomez-Jimenez v. N.Y. Law Sch.*, 103 A.D.3d 13, 16 (1st Dep't 2012) ("*Gomez-Jimenez II*"); *see also Goshen v. Mut. Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 324 n.1 (2002) (GBL § 350 applies to false advertising claims, but the standard of recovery is identical to GBL § 349). Plaintiffs fail to sufficiently plead any of these requirements. Moreover, Plaintiffs' claims are barred by GBL §§ 349(d) and 350c-d.

**A.   UDAAP Does Not Apply To This Private Contract Dispute.**

"[P]rivate contract disputes unique to the parties . . . would not fall within the ambit of GBL 349." *Gomez-Jimenez II*, 103 A.D.3d 13, 16 (quoting *N.Y. Univ. v. Cont'l. Ins. Co.*, 87 N.Y.2d 308, 320 (1995)). In *Gomez-Jimenez II*, the Appellate Division determined that law school statements concerning employment statistics, targeted at prospective students, was consumer-oriented "insofar as it was part and parcel of defendant's efforts to sell its services as a law school to *prospective* students." *Id.* at 17. That is not the case here. Here, while Plaintiffs cite publicly viewable statements on RIT's website, *see* CAC ¶¶ 139-143, 185, the purportedly deceptive practice complained of is the unprecedented and unforeseeable transition to distance learning during a health emergency and government-order shutdown, which *only* impacted the discrete

22

population of students already enrolled for the spring 2020 semester and subject to the terms of that private enrollment agreement. Plaintiffs admit as much. *See* CAC ¶¶ 183, 186-187. Plaintiffs and their proposed classes are not members of the public-at-large induced into applying to RIT for the spring 2020 semester based on allegedly misleading promises of in-person instruction. They are *current* students, each of whom is bound by express contract terms to a private university. In these circumstances, UDAAP does not apply.

## B.  Plaintiffs Fail To Establish That RIT Made Any Materially Misleading Statements.

To satisfy UDAAP's pleading requirements, Plaintiffs must specifically identify the purportedly misleading statements and explain how such statements misled them and the public. *See Gomez-Jimenez II*, 103 A.D.3d at 17 (dismissing GBL § 349 claim that university's disclosure of post-graduate employment data was materially misleading). None of the marketing statements cited in the CAC promise, represent, or even state that RIT classes would be held exclusively in-person and that students would be allowed on-campus even in the face of a government-mandated campus closure amid a pandemic. *See* Section III.A., *supra*. RIT also expressly reserved the discretion to modify its academic programming and prescribed precisely the conditions for refunds of tuition and fees. Thus, there is no factual basis to support a UDAAP claim.

## C.  The UDAAP Safe Harbor Bars Plaintiffs' Claims.

UDAAP's safe harbor bars Plaintiffs' claims. GBL § 349(d) provides that, in any action brought under that section:

> [I]t shall be a complete defense that the act or practice is, or if in interstate commerce would be, subject to and complies with the rules and regulations of, and the statutes administered by, the federal trade commission or any official department, division, commission or agency of the United States as such rules, regulations or statutes are interpreted by the federal trade commission or such department, division, commission or agency or the federal courts.

23

GBL § 349(d); *see also* GBL §350c-d (containing a similar safe harbor); *Am. Home Prods. Corp. v. Johnson & Johnson*, 672 F. Supp. 135, 144 (S.D.N.Y. 1987) (while GBL § 350-c only explicity refers to regulations administered by the FTC, New York courts have construed the safe harbor to cover regulations by other federal agencies).  This safe harbor bars Plaintiffs' claims.  In response to COVID-19, the U.S. Department of Education's Office of Federal Student Aid specifically approved universities' implementation of distance learning for the spring 2020 semester.  *See* Burns Decl. Ex. F.  RIT's compliance with the Department of Education's guidance in response to COVID-19 renders Plaintiffs' UDAAP claim inactionable under GBL §§ 349(d) and 350c-d.

**VII.    None Of Plaintiffs' Claims Entitle Plaintiffs To An Award Of Punitive Damages.**

Plaintiffs cannot recover punitive damages pursuant to a breach of contract claim, *Bono v. Monarch Life Ins. Co.*, No. 05-CV-281S, 2006 WL 839412, at *2 (W.D.N.Y. Mar. 27, 2006); an unjust enrichment claim, *Legurnic v. Ciccone*, 63 F. Supp. 3d 241, 251 (E.D.N.Y. 2014); or a UDAAP claim, *Guzman v. Harris*, No. 16CV3499GBDRLE, 2017 WL 4386369, at *1 (S.D.N.Y. Sept. 29, 2017).  Any demand for punitive damages arising from conversion fails for the same reasons the conversion claims fail.  *See* Section V, *supra*.

**VIII.    Plaintiffs' Demands For An Injunction And Declaratory Relief Must Be Dismissed.**

Plaintiffs' claims each relate to tuition and fees paid for the spring 2020 semester, which has already concluded.  *See* CAC ¶ 35.  Plaintiffs nevertheless seek an unspecified injunction and declaratory relief, which are not available for alleged past wrongs.  *Quiroz v. Beaverton Foods, Inc.*, No. 17CV7348NGGJO, 2019 WL 1473088, at *3 (E.D.N.Y. Mar. 31, 2019).

<u>**CONCLUSION**</u>

For all of the reasons discussed herein, Rochester Institutes of Technology respectfully requests that the Court dismiss Plaintiffs' Consolidated Amended Complaint in its entirety and with prejudice.

24

Dated:  New York, New York
         October 5, 2020

SANTIAGO BURGER LLP

By: /s *Fernando Santiago*
Fernando Santiago
fernando@litgrp.com
2280 East Avenue, 2nd Floor
Rochester, NY 14610
Tel:  (585) 563-2400
Fax:  (585) 563-7526


HOLLAND & KNIGHT LLP

By: /s/ Qian Shen
Robert J. Burns
Qian (Sheila) Shen
robert.burns@hklaw.com
qian.shen@hklaw.com
31 West 52nd Street
New York, NY 10019
Tel:  (212) 513-3200
Fax:  (212) 385-9010

Paul G. Lannon (*pro hac vice* forthcoming)
paul.lannon@hklaw.com
10 St. James Avenue, 11th Floor
Boston, MA 02116
Tel:  (617) 523-2700
Fax:  (617) 523-6850

#79002625_v6

25