# Exhibit B

Milanov v. Univ. of Mich., No. 8:20-cv-1494-30SPF, 2020
Mich. Ct. Cl. LEXIS 1 (Ct. Cl. July 27, 2020)

As of: September 17, 2020 2:29 PM Z

## *Milanov v. Univ. of Mich.*

State of Michigan, Court of Claims

July 27, 2020, Decided

Case No. 20-000056-MK

**Reporter**
2020 Mich. Ct. Cl. LEXIS 1 *

KLIMENT MILANOV, and TRENT INGELL, Plaintiffs, v UNIVERSITY OF MICHIGAN, and THE REGENTS OF THE UNIVERSITY OF MICHIGAN, Defendants.

## Core Terms

semester, tuition, in-person, enrichment, refund, unjust, online, documentary, winter, satisfaction, quotation, contractual, impracticability, expenditures, subrule, rent

**Judges:** **[*1]** Hon. Michael J. Kelly, Judge.

**Opinion by:** Michael J. Kelly

## Opinion

**OPINION AND ORDER**

Pending before the Court is defendants' motion for summary disposition filed pursuant to *MCR 2.116(C)(8)* and *(C)(10)*. For the reasons that follow, the motion is DENIED. Given the comprehensive and informative briefing submitted by the parties, this matter will be decided without oral argument. See LCR 2.119(A)(6).

I. BACKGROUND AND PLAINTIFFS' COMPLAINT

Plaintiffs in this putative class action are students at defendant university. Their complaint arises out of actions defendants took in response to the onset of the COVID-19 pandemic. Plaintiffs allege that defendants' actions deprived them of benefits for which they had already paid, including the benefit of in-person instruction, housing, meals, and student activities. Plaintiffs seek refunds of the amounts they paid, on a pro-rata basis, for the remainder of the 2020 winter/spring semester.

Plaintiffs allege that, in approximately March 2020, defendant university announced that it would cancel all live, in-person instruction and would transition to online distance learning for the remainder of the semester. In addition, defendants instructed students who lived in residence halls and on-campus housing **[*2]** to move out if they were able to do so. Plaintiffs contend that nearly half of the semester remained at this time, yet defendants did not offer adequate refunds of tuition and fees for the services that were no longer available to students. Plaintiffs note that defendants offered a $1,200 credit—which both plaintiffs accepted in this case—for students who followed the directive to move out of the residence halls by March 25, 2020. However, plaintiffs contend that this credit is not commensurate with the financial losses they have suffered, nor is it equal to a prorated, unused amounts for room and board. Plaintiffs allege that defendants failed to offer a refund for the difference in value between online distance learning and live, in-person instruction in a classroom setting.

Plaintiffs have now filed this putative class action in which they allege that the benefits and services for which they paid tuition and which they expected to receive were no longer available to them. They allege that the online classes are not the equivalent of live, in-person instruction. In particular, plaintiff Kliment Milanov alleges that two of his classes were essentially cancelled because defendant university's **[*3]** online method of instruction failed to provide an adequate learning environment. Plaintiffs assert that the decisions to transition to online classes and to encourage students to leave campus were "responsible" ones; nevertheless,

they allege it is unlawful for defendants to retain the full tuition and fees paid by plaintiffs under the circumstances.

Plaintiffs filed a six-count complaint as a putative class action. Count I alleges breach of contract on behalf of what plaintiffs contend is the "Tuition Class." In this count, plaintiffs allege that they, and others like them, entered into contracts with defendant university in which they agreed to pay tuition, in exchange for which defendant university would provide live, in-person instruction in a classroom setting. Despite plaintiffs paying the required amounts, plaintiffs allege that defendant university breached the agreement by providing online instruction for the second half of the winter semester. Plaintiffs allege that they have been deprived of the value of the method of instruction for which they paid tuition. They seek disgorgement of the difference between the value of half a semester of online learning versus the value of **[*4]** half a semester of live, in-person instruction.

Count II of the complaint alleges breach of contract with respect to what plaintiffs contend is the "Room and Board Class." Plaintiffs allege that they entered into contracts with defendant university wherein plaintiffs agreed to prepay funds for room and board. However, they allege that they were not provided room and board for the second half of the semester, and that defendants should provide a refund for the unused days of room and board.

Count III of the complaint alleges breach of contract by what plaintiffs have called the "Fee Class." This count alleges that plaintiffs paid certain fees to defendant university in exchange for services. However, defendant university retained the fees without providing to plaintiffs the benefit anticipated in the parties' agreement. Plaintiffs seek a refund in the form of disgorgement of the prorated, unused amounts of fees charged and collected.

Count IV of the complaint alleges, in the alternative to Count I, unjust enrichment with respect to the "Tuition Class" described in Count I. They allege that equity demands the return of the value of the difference between half a semester of online distance **[*5]** learning and the value of half a semester of live, in-person instruction. Plaintiffs allege defendant university has been unjustly enriched by retaining monies paid by plaintiffs for live, in-person instruction without providing the services for which those funds were paid.

Count V is asserted in the alternative to Count II, and it

is alleged with respect to the "Room and Board Class." Plaintiffs allege that defendant university received a benefit to which it was not entitled at the expense of plaintiffs who paid a full semester of room and board, but who received the benefit of only half a semester of room and board. Plaintiffs allege that equity demands the return of the prorated, unused amounts paid for room and board.

Count VI of the complaint is alleged by the "Fee Class" in the alternative to Count III. Plaintiffs assert that defendant university should return any monies paid for fees for the winter semester for services that plaintiffs were not provided. The retention of these funds is inequitable, allege plaintiffs.

## II. DEFENDANTS' MOTION FOR SUMMARY DISPOSITION

This matter is now before the Court on defendants' motion for summary disposition filed pursuant to *MCR 2.116(C)(8)* and *(C)(10)*. Defendants **[*6]** have raised a number of arguments in support of summary disposition, raising from assertions that this Court should abstain from reviewing educational matters, to failure to state a claim, and to contract defenses such as impossibility and/or commercial impracticability. The Court will review each of the arguments below.

Under *MCR 2.116(C)(8)*, summary disposition is properly granted when "[t]he opposing party has failed to state a claim on which relief can be granted." A motion predicated on subrule (C)(8) tests the legal sufficiency of plaintiffs' claims based on the factual allegations contained in the complaint. *El-Khalil v Oakwood Hosp, 504 Mich 152, 159*; *934 NW2d 665 (2019)*. "When considering such a motion, a trial court must accept all factual allegations as true, deciding the motion on the pleadings alone." *Id. at 160*. The Court may only grant the motion "when a claim is so clearly unenforceable that no factual development could possibly justify recovery." *Id.*

As it concerns subrule (C)(10), summary disposition is warranted where, "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." *MCR 2.116(C)(10)*. The moving party under subrule (C)(10) must identify specific **[*7]** issues and "must support its motion with affidavits, depositions, admissions, or other documentary evidence in support of the grounds asserted." *Barnard Mfg Co Inc v Gates Performance Engineering, Inc, 285 Mich App 362, 369*; *775 NW2d*

*618 (2009)*, citing *MCR 2.116(G)(3)*. "If the moving party properly supports its motion, the burden then shifts to the opposing party to establish that a genuine issue of disputed fact exists." *Id. at 370* (citation and quotation marks omitted).

## III. ANALYSIS

### A. DEFENDANTS' CONTENTION THAT COURTS MUST ABSTAIN FROM REVIEWING EDUCATIONAL MATTERS IS WITHOUT MERIT HERE

Defendants first argue that, as it concerns plaintiffs' claims concerning the switch from live, in-person instruction to online distance learning must be dismissed because this Court should abstain from reviewing educational matters absent a clear violation of a student's due process rights. In support of this assertion, defendants cite the United States Supreme Court's decision in *Regents of the Univ of Mich v Ewing, 474 U.S. 214*; *106 S Ct 507*; *88 L Ed 2d 523 (1985)*. However, the Court concludes that the case is inapposite to the issues presented in the matter at hand. In *Ewing*, the plaintiff was not permitted to retake an examination at defendant university, and he argued that defendant university's decision deprived him of property without due process of law. *Id. at 215*. Assuming that the plaintiff could **[*8]** assert a due process claim, the Supreme Court remarked that defendant university's decision regarding the plaintiff was an academic judgment. *Id. at 225*. The Court explained that, "[w]hen judges are asked to review the substance of a genuinely academic decision, such as this one, they should show great respect for the faculty's professional judgment." *Id.* Furthermore, the Court noted that it must remain cognizant of its responsibility to safeguard the academic freedom—"a special concern of the First Amendment"—in matters involving educational institutions. *Id. at 226* (citation omitted). In that case, this "narrow avenue for judicial review" foreclosed any conclusion that defendant university's decision to dismiss the plaintiff rose to the level of a due process violation. *Id. at 227*.

Returning to the instant case, the Court finds the citation to *Ewing* inapposite. Plaintiffs are not asserting a due process violation or arguing that the University's decision to switch methods of instruction ran afoul of any constitutional rights. Instead, they are arguing that the university promised one method of instruction, charged tuition and fees commensurate with that method of instruction, yet provided a different (allegedly lesser) method **[*9]** of instruction. This is a claim potentially sounding in contract or in quasi-contract, not

in due process. The *Ewing* decision does not stand for the notion that *any* decision regarding academics is beyond review for a court.[1] That is, while *Ewing* describes a number of areas into which a Court should be hesitant to intrude, principles of contract and quasi-contract are not among those areas.

### B. THE REGENTS' CONSTITUTIONAL AUTHORITY DOES NOT BAR PLAINTIFFS' CLAIMS AS A MATTER OF LAW

Defendants next ask this Court to dismiss the entirety of plaintiffs' complaint because this Court, or any court, lacks authority to interfere with defendant regents' decisions regarding expenditures and operation of defendant university. In essence, defendants ask the Court to conclude that they are shielded by a type of immunity that leaves them impervious to nearly any type of claim. The Court disagrees, and finds the section of the Constitution and the caselaw cited by defendants inapplicable to the matter at hand.

In making their argument, defendants cite *Const 1963, art 8, § 5*, which grants defendant regents "general supervision of its institution and the control and direction of all expenditures from the institution's funds." **[*10]** Defendants also rely on caselaw interpreting this provision, and they primarily cite the Court of Appeals' decision in *Sprik v Regents of Univ of Mich, 43 Mich App 178*; *204 NW2d 62 (1972)*. In that case, students in "family housing units" for married students at defendant university brought a class action against defendant regents. The issue in that case concerned an adjustment to lease agreements made between the regents and members of the class concerning a rent increase; such a rent increase could, pursuant to the terms of the leases, be made at the university's sole discretion upon the requisite notice being given. *Id. at 182*. The rent increase in that case was paid to the Ann Arbor School District in lieu of property taxes. *Id.*

While challenging the validity of the increase, the plaintiffs conceded that the terms of their lease gave

---

[1] While the same is unnecessary for rendering a decision at this stage of the litigation, the Court notes troubling aspects of defendants' position. For instance, adopting defendants' position could lead to the conclusion that the university could simply cancel all classes and then retain tuition and fees, having made the academic judgment that instruction was unnecessary or unwarranted.

defendant regents the authority to raise their rent. *Id. at 185*. However, they argued that their rent could only be raised for purposes connected with the housing provided to them, and not in the manner done by defendant regents. *Id.* Citing art 8, § 5, the Court of Appeals held that defendant regents had "the entire control and management of University affairs, including the management of property and expenditure of funds, to the exclusion **[\*11]** of all other departments of the State." *Id. at 186*. Hence, the Court held that the funds in issue could be spent "for any object which is not subversive" of the university's purpose. *Id. at 187*. And in that case, payment of funds to support schools in the community in which the university was located promoted community relations and encouraged local education—both purposes that were squarely within constitutional bounds. *Id. at 188*.

Returning to the matter at hand, the Court agrees with plaintiffs that defendants' citation to art 8, § 5 and to the holding in *Sprik* are not controlling in the case at bar. The case at bar is distinguishable from *Sprik* because plaintiffs are not challenging an expenditure made by defendants. Instead, they are arguing that defendants breached contractual agreements and/or unjustly retained a benefit by failing to provide plaintiffs the full benefit of their bargain. Defendants have failed to present a compelling argument as to why art 8, § 5's provisions about defendant regents' control over university expenditures would insulate them from claims sounding in contract or quasi-contract.

## C. STUDENTS CAN, AND DO, ENTER INTO CONTRACTS WITH UNIVERSITIES

Defendants next argue that, assuming **[\*12]** their constitutional and immunity arguments do not apply, plaintiffs' claims must be dismissed because this state's jurisprudence does not recognize the existence of a contract between universities and students. To this end, they argue that courts have repeatedly held that student handbooks, codes, or other informational materials given to students do not create contracts between universities and students.

The Court disagrees and finds the authorities defendants cite inapposite. The instant case is not one where plaintiffs are alleging that they had a contractual right to continued enrollment or to graduation. Cf. *Cuddihy v Wayne State Univ Bd of Governors, 163 Mich App 153*; *413 NW2d 692 (1987)*. As plaintiffs point out, "[i]t is a bedrock principle of American contract law that parties are free to contract as they see fit, and the courts are to enforce the agreement as written absent . .

. a contract in violation of law or public policy." *Corwin v DaimlerChlysler Ins Co, 296 Mich App 242, 256*; *819 NW2d 68 (2012)* (citation and quotation marks omitted). Moreover, plaintiffs have attached to their responsive briefing a number of documents, such as housing contracts and meal plan contracts, between students and defendants. These documents expressly state that they are, in fact, binding agreements between students and defendant university. **[\*13]** In short, if the law does not recognize contractual relationships between universities and students, this would appear to be news to defendants, based on the record before the Court.[2] That is not to say that plaintiffs have established their breach of contract claims or the existence of the pertinent contracts in this case; rather, it is simply a rejection of defendants' legal argument that such agreements cannot exist.

## D. DEFENDANTS' ARGUMENTS ABOUT THE ADEQUACY OF PLAINTIFFS' PLEADINGS ARE WITHOUT MERIT

Defendants next argue that summary disposition on plaintiffs' contract claims is warranted under *MCR 2.116(C)(8)* because plaintiffs failed to attach copies of pertinent agreements to their pleadings. To this end, *MCR 2.113(C)(1)* provides that if a claim is based on a written instrument, "a copy of the instrument or its pertinent parts must be attached to the pleading[.]" The rules provide exceptions for agreements that are "in the possession of the adverse party and the pleading so states," and "inaccessible to the pleader and the pleading so states, giving the reason[.]" *MCR 2.113(C)(1)(b)-(c)*. Here, the Court concludes that dismissal is unwarranted because, although the pertinent agreements were not attached to the pleadings[3] it **[\*14]** is apparent that the complaint repeatedly references the alleged agreements as being defendants' agreements, i.e., that defendants possess

---

[2] This is particularly so in light of *Sprik*, a case in which the validity of lease agreements between the plaintiff students and defendant regents was conceded by all of the parties involved.

[3] In fact, it is not apparent that plaintiffs have identified an express contractual agreement establishing their right to live, in-person instruction. Should it become clear at some point in the future that such an agreement does not exist, it could be grounds for revisiting summary disposition on Count I of the complaint as it concerns an express contractual right to live, in-person instruction. However, the Court will not dismiss Count I at the current time, for the reason that the allegations contained within the complaint are sufficient to fulfill plaintiffs' pleading obligations.

the purported agreements. In addition, plaintiffs have attached to their responsive briefing portions of certain contractual agreements with defendants. Consequently, the Court declines to find that summary disposition is warranted at this time.[4]

Defendants' remaining arguments regarding plaintiffs' pleadings fare no better. Defendants argue that plaintiffs failed to state a claim on which relief can be granted because they: (1) failed to plead the essential elements of a valid contract; and (2) failed to plead damages. A contract claim requires a plaintiff to establish "that (1) there was a contract, (2) the other party breached the contract, and (3) the breach resulted in damages to the party claiming breach." _Bank of America, NA v First American Title Ins Co, 499 Mich 74, 100_; _878 NW2d 816 (2016)_. A contract is valid if the following elements exist: "(1) parties competent to contract, (2) a proper subject matter, (3) legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation." _Id. at 101_ (citation and quotation marks omitted).

Having reviewed Counts I-III of the complaint, the Court disagrees that these claims fail to **[*15]** plead the elements of a breach of contract cause of action. For instance, ¶ 65 of the complaint identifies the parties to the contract, the subject-matter (live, in-person instruction, room and board, and "fees"), the consideration provided by each side, and each side's obligations. Paragraph 67 expressly alleges a breach by defendant university, and ¶¶ 69-70 allege damages suffered by plaintiffs. Counts II and III are likewise adequately pled. See, e.g., Complaint, ¶¶ 74-78; 81-84. The aforementioned elements, including the element of damages—which is repeatedly mentioned throughout the complaint—are sufficient to satisfy this state's notice-pleading requirements. See _Dailey v Dykema Gossett, 287 Mich App 296, 305_; _788 NW2d 679 (2010)_ (citation and quotation marks omitted) (explaining that the "primary function of a pleading in Michigan is to give notice of the nature of the claim or defense sufficient to permit the opposite party to take a responsive position.").

E. DEFENDANTS' REAL-PARTY-IN-INTEREST ARGUMENTS LACK MERIT

Defendants next ask the Court to dismiss because they contend plaintiffs' complaint fails to identify the real parties in interest. To this end, they note that the complaint refers to the proposed class as students, as well as those **[*16]** who paid tuition on behalf of students. "A real party in interest is one who is vested with the right of action on a given claim, although the beneficial interest may be in another." _In re Beatrice Rottenberg Living Trust, 300 Mich App 339, 356_; _833 NW2d 384 (2013)_. Here, the two named plaintiffs alleged in ¶¶ 9-20 that they paid certain tuition, costs, and fees for the winter 2020 semester pursuant to agreements with defendant, that they did not receive the benefits for which they paid, and that they suffered damages as a result. Given these allegations, it is apparent plaintiffs are the ones with a vested right of action on their alleged claims. See _id._ Defendants' real-party-in-interest defense is without merit as a result.

F. THE ALTERNATIVE CLAIMS FOR UNJUST ENRICHMENT ARE PROPERLY PLED

Defendants next argue that plaintiffs failed to plead claims for unjust enrichment such that summary disposition is warranted on these claims pursuant to _MCR 2.116(C)(8)_, and/or that summary disposition is warranted on the unjust enrichment claims pursuant to _MCR 2.116(C)(10)_. The elements of an unjust enrichment claim are: "(1) receipt of a benefit by the defendant from the plaintiff, and (2) which benefit it is inequitable that the defendant retain." _Meisner Law Group PC v Weston Downs Condos Assn, 321 Mich App 702, 721_; _909 NW2d 890 (2017)_. "Not all enrichment is unjust in nature, and the **[*17]** key to determining whether enrichment is unjust is determining whether a party unjustly received and retained an independent benefit." _Karaus v Bank of New York Mellon, 300 Mich App 9, 23_; _831 NW2d 897 (2012)_. Unjust enrichment "describes the result or effect of a failure to make restitution of or for property or benefits received under such circumstances as to give rise to a legal or equitable obligation to account therefor." _Id._ (citation and quotation marks omitted). In general, the question of whether one has been unjustly enriched is a question of fact. _Morris Pumps v Centerline Piping, Inc, 273 Mich App 187, 193_; _729 NW2d 898 (2006)_.

Here, defendants ask the Court to dismiss the unjust enrichment claims because they contend plaintiffs failed to allege that the monies collected by defendant university were used for anything other than legitimate purposes. Hence, the retention of the benefits was not inequitable, argue defendants. In support, defendants

---

[4] Furthermore, given plaintiffs' attachment of these documents to their responsive briefing, the Court would entertain plaintiffs' alternative request for leave to amend to attach the agreements even if it were inclined to grant summary disposition at this time.

Joshua Levine

cite an unpublished Court of Appeals decision, *Moss v Wayne State Univ*, unpublished per curiam opinion of the Court of Appeals, issued December 1, 2009 (Docket No. 286034). In that case, Wayne State University (WSU) faced uncertainty about certain state funding, so it increased tuition by 12.8% and added a per-credit-hour contingency fee. *Moss*, unpub op at 1. The contingency fee **[*18]** was eliminated for the winter semester after the uncertainty over receiving state funds was resolved. *Id.* The already-collected fees were used "to pay off a foundation loan, to add to a rainy-day fund, and for improvement of classrooms and technology, research and clinical trials, and student retention programs." *Id.* The Court of Appeals panel remarked that the contingency fees collected by WSU in that case were used for "programs and projects to further the educational goals of the mission." *Id.* at 3. Thus, the plaintiffs and other students in that case gained a benefit from the funds—because they were put to uses that benefited the students—such that WSU was not the sole recipient of a benefit in that case. *Id.* As a result, it was not inequitable for WSU to retain the contingency fees in that case. *Id.*

The Court is unmoved by the nonbinding decision in *Moss*, see *MCR 7.215(C)(1)* (declaring that an unpublished decision from the Court of Appeals is not binding under the rule of stare decisis), and concludes that: (1) plaintiffs' complaint adequately pleads causes of action for unjust enrichment; and (2) the current documentary evidence does not support the request for summary disposition under subrule **[*19]** (C)(10). Here, the allegations by plaintiffs are that defendants did not provide the full extent of the services that were secured by plaintiffs' payment of amounts for tuition, fees, and room and board. While plaintiffs might have received a benefit from attending classes in an online environment, the case is distinguishable from the nonbinding *Moss* decision because plaintiffs allege that they received a lesser education than that which they stood to receive from live, in-person instruction. Indeed, "[r]estitution restores a party who yielded excessive and unjust benefits to his or her rightful position." *Wright v Genesee Co, 504 Mich 410, 419*; *934 NW2d 805 (2019)*. Here plaintiffs have alleged that they yielded excess in comparison to what they received. Defendants' documentary evidence has not negated this element of plaintiffs' claim. Furthermore—and as it concerns the room-and-board claim—defendants have not presented evidence in support of their brief, one-sentence argument that their retention of excess amounts paid for room and board provided a benefit to plaintiffs. See *Barnard, 285 Mich App at 370* ("If the moving party fails

to properly support its motion for summary disposition, the nonmoving party has no duty to respond and the trial court should deny the **[*20]** motion."). Thus, summary disposition is not warranted on this basis.

G. DEFENDANTS' DEFENSES TO PLAINTIFFS' CONTRACT THEORIES DO NOT WARRANT SUMMARY DISPOSITION

As an alternative to the arguments set forth above, defendants assert the affirmative defense of supervening impossibility and/or impracticability to plaintiffs' breach of contract claims. "A promisor's liability may be extinguished in the event his or her contractual promise becomes objectively impossible to perform." *Roberts v Fanners Ins Exchange, 275 Mich App 58, 73*; *737 NW2d 332 (2007)*. A party asserting this affirmative defense need not show "absolute impossibility"; instead, the party must demonstrate "impracticability because of extreme and unreasonable difficult, expense, injury or loss involved." *Id. at 74* (citation and quotation marks omitted). Here, defendants argue that the COVID-19 pandemic and Governor Whitmer's Executive Orders rendered live, in-person instruction and the provision of room and board impossible and/or impracticable.

In response to defendants' arguments, plaintiffs argue that they are not contesting whether defendants could provide the contracted-for services. Instead, they argue that they should be entitled to a refund of the services, for which plaintiffs pre-paid, that defendant **[*21]** university stopped providing in light of the pandemic. As plaintiffs point out, caselaw holds that, even when performance has become impossible, a party who was deprived of the promised performance is entitled to a refund of consideration for services not rendered due to impossibility. *Vowels v Arthur Murray Studios of Mich, Inc, 12 Mich App 359, 363*; *163 NW2d 35 (1968)*. Defendants have not articulated a compelling argument as to why impossibility or impracticability would be a valid defense to this type of refund claim. As a result, summary disposition is not appropriate based on defendants' stated affirmative defenses.

H. DEFENDANTS' ARGUMENT BASED ON ACCORD AND SATISFACTION DOES NOT WARRANT SUMMARY DISPOSITION IN THEIR FAVOR

Defendants next argue that they are entitled to summary disposition on Counts II and V of the complaint with respect to amounts paid by plaintiffs for room and board because of the doctrine of accord and satisfaction. According to defendants, the $1,200 refund bars plaintiffs from pursuing this action. Further, they argue

2020 Mich. Ct. Cl. LEXIS 1, *21

that the "tender-back" rule required plaintiffs to return the $1,200 prior to filing suit, which they have not done.

The doctrine of accord and satisfaction is an affirmative defense to a contract claim. *Faith Reformed Church of Traverse City, Mich v Thompson, 248 Mich App 487, 491*; *639 NW2d 831 (2001)*. "An 'accord' is **[*22]** an agreement between parties to give and accept, in settlement of a claim or previous agreement, something other than that which is claimed to be due, and 'satisfaction' is the performance or execution of the new agreement." *Id. at 491-492*. A defendant asserting accord and satisfaction, must demonstrate:

> (1) its good-faith dispute of (2) an unliquidated claim of the plaintiff, (3) its conditional tender of money in satisfaction of the claim, and (4) the plaintiff's acceptance of the tender (5) while fully informed of the condition. A defendant need not show a plaintiff's express acceptance of the condition; rather, the law of accord and satisfaction is that where a creditor accepts a conditional tender, the creditor also agrees to the condition. However, the expression of the condition must be clear, full, and explicit. [*Id. at 492* (internal citations and quotation marks omitted).]

On the evidence before the Court, defendants are not entitled to summary disposition on their accord and satisfaction claim. Firstly, defendants have produced no evidence of a communication of a good-faith dispute of any claims by plaintiffs. Indeed, it appears from the only documentary evidence before the Court that $1,200 was simply **[*23]** offered to students who moved out of university-owned housing. Furthermore, and more significantly, the record lacks a "clear, full, and explicit" expression that the refund was offered in full and final resolution of any claims plaintiffs might have against defendant. Cf. *Faith Reformed Church, 248 Mich App at 493-494*. The only documentary evidence regarding the $1,200 credit to student accounts states that the refund was being "offered" to students who moved out of university housing by March 25. The record is void of documentary evidence indicating that, by moving out and by accepting the $1,200, students were agreeing to a full and final resolution of any claims they might have against defendants with respect to prepaid amounts for room and board. Thus, the record lacks evidence of the "accord" part of an accord-and-satisfaction defense, and summary disposition under subrule (C)(10) is not warranted on this record. See *Hoerstman Gen Contracting, Inc v Hahn, 474 Mich 66, 71*; *711 NW2d 340 (2006)* (describing the operation of the accord-and-

satisfaction doctrine).

I. DEFENDANTS' ARGUMENTS REGARDING PLAINTIFF INGELL

Defendants next argue that they are entitled to summary disposition on plaintiff Ingell's claims for the reason that he did not pay tuition or fees during the winter 2020 semester; instead, **[*24]** his tuition and fees for the semester were covered by scholarships and grants. At the outset, any scholarships or grants awarded to plaintiff Ingell cannot bar his claims for room and board reimbursement. Indeed, defendants' own documentary evidence, at ¶ 9 of Vicky Crupper's affidavit, reveals that plaintiff Ingell used federal student loan money, i.e., non-scholarship funds, to pay at least part of his room and board expenses for the winter semester. In addition, the documentary evidence defendants provide does not convince the Court that plaintiff Ingell would be unable to plead and prove damages. Notably, while the documentary evidence shows that plaintiff Ingell's tuition was paid by scholarship and grant monies during the 2020 winter semester, the evidence does not answer the question of whether the particular use of scholarship and grant money at that time was to the detriment of the future use of scholarship and grant money. In other words, the evidence does not speak to whether there is a finite source of scholarship and grant money, nor does it inform whether the use of the money in the winter 2020 semester could potentially reduce any amounts plaintiff Ingell could use at **[*25]** a later date. Additionally, caselaw provides that nominal damages will sustain a cause of action, meaning that, even if plaintiff Ingell did not sustain actual damages, he can still maintain an action upon showing a violation of rights by way of a breach of contractual promise to provide live, in-person instruction. See *4041-49 W Maple Condo Ass'n v Countrywide Home Loans, Inc, 282 Mich App 452, 460*; *768 NW2d 88 (2009)*.

IV. CONCLUSION

IT IS HEREBY ORDERED that defendants' motion for summary disposition is DENIED.

This is not a final order and it does not resolve the last pending claim or close the case.

July 27, 2020

/s/ Michael J. Kelly

Michael J. Kelly

Judge, Court of Claims

Joshua Levine

2020 Mich. Ct. Cl. LEXIS 1, *25

**End of Document**

Joshua Levine