## **<u>Composite Exhibit E</u>**

<u>Mellowitz v. Ball State Univ. & Bd. of Trs. of Ball State Univ.</u>, No. 49D114-2005-PL-015026, 2020 Ind. Super. LEXIS 854 (Mario Sup. Ct. Civil Div. 14 Aug. 12, 2020)
& Motion to Dismiss

As of: September 21, 2020 7:09 PM Z

## *Mellowitz v. Ball State Univ. & Bd. of Trs. of Ball State Univ.*

Superior Court of Indiana, Marion County

August 14, 2020, Decided; August 14, 2020, Filed

CAUSE NO. 49D14-2005-PL-015026

**Reporter**
2020 Ind. Super. LEXIS 854 *

KELLER J. MELLOWITZ, on behalf of himself and all others similarly situated. Plaintiff, v. BALL STATE UNIVERSITY and BOARD OF TRUSTEES OF BALL STATE UNIVERSITY, Defendants.

**Judges:  [*1]** MATTHEW C. KINCAID, Special Judge.

**Opinion by:** MATTHEW C. KINCAID

## Opinion

### ORDER DENYING DEFENDANTS' MOTION TO DISMISS

This matter comes before the Court on Defendants' Motion to Dismiss, The Court, having reviewed the same and being duly advised in the premises, now finds that the Motion should be and now is DENIED.

IT IS THEREFORE SO ORDERED, ADJUDGED AND DECREED that Defendant's Answer is due September 14, 2020.

Date: August 14, 2020

/s/ Matthew C. Kincaid

**MATTHEW C. KINCAID**

**Special Judge**

**Marion Superior Court**

End of Document

Filed: 7/1/2020 9:49 PM
Clerk
Marion County, Indiana

STATE OF INDIANA       )           IN THE MARION SUPERIOR COURT
                          ) SS:       CIVIL DIVISION 14
COUNTY OF MARION    )          CAUSE NO.:  49D14 -2005-PL-015026

KELLER J. MELLOWITZ, on behalf of himself  )
and all others similarly situated,    )
                          )
     Plaintiff,         )
                          )
     v.             )
                          )
BALL STATE UNIVERSITY and BOARD OF  )
TRUSTEES OF BALL STATE UNIVERSITY,  )
                          )
     Defendants.       )

### DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S COMPLAINT

### I.    INTRODUCTION

This case takes place against the backdrop of the COVID-19 pandemic, an ongoing global pandemic caused by severe acute respiratory syndrome coronavirus 2.  Needless to say, the pandemic has caused global social and economic disruption.

Against this backdrop, Ball State University's Spring 2020 semester – like much else this past spring – was unprecedented.  In March 2020, the University took swift action in response to the COVID-19 pandemic to protect the health and safety of its students, faculty, and staff. Beginning on March 16, it encouraged students to return home and implemented virtual instruction and other alternative learning options for the remainder of the Spring 2020 semester. Ball State's response was not unique; most higher education institutions across the country responded to the COVID-19 pandemic similarly.

Ball State's response followed orders and guidance from federal, state, and local governments and agencies as well as medical experts.  For the remaining 47 days of the Spring 2020 semester, Ball State, acting as an "Essential Business," was permitted to operate while

US.128518325.04

other Indiana businesses and institutions were ordered to shut down.  It adhered to the State's health and safety directives by "facilitating distance learning" for its students.  Executive Order 20-08, ¶ 14(l).[1]  By facilitating distance learning in the midst of a pandemic, Ball State answered our State's call to do its part "to ensure that the maximum number of people self-isolate in their homes or residences to the maximum extent feasible, while also enabling essential services to continue, in order to slow the spread of COVID-19 to the greatest extent possible." *Id.* ¶ 18. This, in turn, ensured that students obtained the educational experience for which they paid: completion of and credit for their Spring 2020 courses to permit them to either graduate or stay on track to graduate.

Plaintiff Keller Mellowitz, a current Ball State student, claims he did *not* receive that for which he paid.  In this lawsuit, he seeks damages related to fees paid for the education he and a putative class of other Ball State students received in the latter portion of the Spring 2020 semester.  He asserts two, separate, and alternative, claims for relief against Ball State, breach of contract and unjust enrichment, but he fails to adequately plead viable causes of action on both counts.  Despite framing his first claim as one sounding in contract, it, in fact, alleges a tort claim for educational malpractice, which Indiana does not recognize.  At any rate, the Complaint does not adequately allege that Ball State breached any contractual obligations.  Plaintiff's second claim for unjust enrichment, pled in the alternative, should be dismissed because it is wholly duplicative of his contract claim.  Even if the law did not dictate dismissal for that reason (and it does), the Court should dismiss the unjust enrichment claim because Plaintiff fails to plausibly plead that the University's retention of the fees paid was "unjust" based on the shift to remote

---

[1]    Directive for Hoosiers to Stay at Home, Exec. Order No. 20-08 (Mar. 23, 2020), https://www.in.gov/gov/files/Executive_Order_20-08_Stay_at_Home.pdf

US.128518325.04

instruction for 47 days.  As more fully explained below, Plaintiff's Complaint fails to state a claim upon which relief can be granted and must be dismissed, in its entirety.

## II.    BACKGROUND[2]

### A.    The Parties

Founded in 1918 and created and funded by acts of the Indiana General Assembly, Ball State University is a state educational institution located in Muncie, Indiana.[3]  Compl. ¶ 8; Ind. Code § 21-19-2-1.  Ball State is governed by a Board of Trustees ("Board").  Compl. ¶ 9.[4] The Board constitutes a perpetual corporate body with plenary powers under Indiana law.  Ind. Code § 21-19-2-3; Ind. Code § 21-27-3-4.[5]  These powers include the power to manage, control, and operate Ball State, and to adopt rules and regulations necessary to do so.  Ind. Code § 21-27-3-2; Ind. Code § 21-27-3-3.

Plaintiff Keller Mellowitz is a Ball State student who was enrolled during the Spring 2020 academic semester (January 6, 2020, through May 1, 2020).  Compl. ¶ 13.[6]  Plaintiff paid "tuition, student services fees, university technology fees, student recreation fees, student health fees, and student transportation fees" for the Spring 2020 semester.  Compl. ¶¶ 14-16.

---

[2]    Ball State takes the allegations in Plaintiff's Complaint as true only for the purposes of this motion.  *See City of New Haven v. Reichhart*, 748 N.E.2d 374, 377 (Ind. 2001).  This presumption, however, extends only to "well - pleaded material facts[.]"  *Morgan Asset Holding Corp. v. CoBank, ACB*, 736 N.E.2d 1268, 1271 (Ind. Ct. App. 2000) (citation omitted).

[3]    History, Landmarks, and Traditions, Ball State University, https://www.bsu.edu/about/history (last visited June 29, 2020).

[4]    The Board is comprised of nine members, appointed by the Governor of Indiana, who set the strategic direction of the University, ensure fiscal responsibility, and provide oversight to University operations, among other duties.  Ind.Code § 21-27-3 *et seq.*; Board of Trustees, Ball State University, https://www.bsu.edu/about/administrativeoffices/president/boardoftrustees (last visited June 29, 2020).

[5]    Defendants do not understand that Plaintiff pursues claims against the Trustees individually.  Indeed, no Trustee has been identified by name.  Defendants instead understand that Plaintiff pursues claims against the Board as a corporate body created by statute.

[6]    Ball State University 2019-2020 Academic Calendar, Ball State University (Oct. 12, 2018), https://www.bsu.edu/calendar/calendars/academic-calendar.

US.128518325.04

## B.    Ball State's Tuition And Fees

The Board sets Ball State's tuition, fees, and necessary charges to further its purposes.[7] Ind. Code §§ 21-14-2-1, -2, -6 through -10.  The amount of tuition and mandatory fees is set in line with target increases set by the commission for higher education and pursuant to the procedure outlined by statute.  *See* Ind. Code §§ 21-14-2-6 through -8.  Plaintiff's Complaint specifically references, in addition to tuition, "student services fees, university technology fees, student recreation fees, student health fees, and student transportation fees."  Compl. ¶ 2. Ball State's website contains additional information regarding these fees.[8]  These fees are charged at a "flat" rate per academic year or per semester regardless of how often (or whether) a student attends performances, athletic events and other programming, or utilizes the Health Center, Recreation and Wellness Center, on-campus computer labs, wi-fi, campus shuttle system, etc.[9]

## C.    Ball State's Response To COVID-19

On March 6, 2020, the Indiana State Department of Health confirmed the first case of COVID-19 in our State.[10]  Indiana Governor Eric Holcomb declared COVID-19 to be a "public

---

[7]    Indiana statute and, therefore, Ball State recognize a distinction between tuition and fees.  Plaintiff uses "fees" to encompass both tuition *and* fees, so apart from this section, Ball State uses the term "fees" as Plaintiff has used it in his Complaint, i.e., to refer to both tuition and fees.

[8]    Pay a Bill, Ball State University, https://www.bsu.edu/about/administrativeoffices/bursar/pay-a-bill (last visited June 29, 2020).

[9]    Ball State University Tuition and Fees Undergraduate, Ball State University, https://www.bsu.edu/-/media/www/departmentalcontent/bursar/pdfs/undergraduate%20tuition%202019-2020.pdf?la=en&hash=7452266B69A2303D0C3F711D7FABCFFC7F987ED0.

[10]    Press Release, Gov. Holcomb Announces First Coronavirus Case, Declares Public Health Emergency, IN.gov (Mar. 6, 2020), https://calendar.in.gov/site/gov/event/gov-holcomb-announces-first-coronavirus-case-declares-public-health-emergency/.

4

health disaster emergency[.]"[11]  Days later, the World Health Organization declared COVID-19 to be a pandemic, imploring "countries to take urgent and aggressive action."[12]

In response, Ball State took immediate steps to ensure the health and safety of its students, faculty, and staff.  On March 11, Ball State announced that it was suspending in-person classes effective March 16, for the duration of the Spring 2020 semester (*i.e.*, 47 days) and replacing them with virtual instruction and other alternative learning options.[13]  Students, however, were not directed to leave campus, and University services and offices remained open.[14]

Days later, the first coronavirus death was reported in Indiana, and Governor Holcomb issued an executive order, mandating that restaurants and bars close and elective surgical procedures be cancelled, among other things.[15]  On March 20, 2020, the Delaware County Commissioners issued a Disaster Emergency Declaration, ordering the closure and cessation of various services and business operating in Delaware County.[16]  In response, Ball State's dining services switched to "take out" only; its library, labs, and technology support modified their services; and the University secured most buildings on campus.[17]

---

[11]   Declaration of Public Health Emergency for Coronavirus Disease 2019 Outbreak, Exec. Order No. 20-02 (Mar. 6, 2020), https://www.in.gov/gov/files/20-02ExecutiveOrder(DeclarationofPublicHealthEmergencyforCOVID-19)FINAL.pdf.

[12]   WHO Director-General's opening remarks at the media briefing on COVID-19 – 11 March 2020, World Health Organization (Mar. 11, 2020), https://www.who.int/dg/speeches/detail/who-director-general-s-opening-remarks-at-the-media-briefing-on-covid-19---11-march-2020.

[13]   Press Release, Statement from Ball State President Geoffrey S. Mearns about COVID-19, Ball State University (Mar. 11, 2020), https://www.bsu.edu/news/press-center/archives/2020/3/covid-19.

[14]   *Id.*

[15]   Further Orders and Directives in Response to the Coronavirus Disease 2019 Epidemic, Exec. Order No. 20-04 (Mar. 16, 2020), https://www.in.gov/gov/files/ExecutiveOrder20-04FurtherOrdersforPublicHealthEmergency.pdf.

[16]   Press Release, Statement on Updated Action Plan for COVID-19, Ball State University (Mar. 21, 2020), https://www.bsu.edu/news/press-center/archives/2020/3/disaster-emergency-declaration.

[17]   *Id*.

5

Then, on March 23, 2020, Governor Holcomb issued Executive Order 20-08 – the "Directive for Hoosiers to Stay at Home" or the "Stay at Home Order." [18]  With certain exceptions, the Stay at Home Order required "all individuals currently living in the State of Indiana [] to stay at home or their place of residence[.]"  Executive Order 20-08, ¶ 3.  Under the Stay at Home Order, all persons were permitted to "leave their homes or residences only for Essential Activities, Essential Governmental Functions, or to participate in Essential Businesses and Operations."  *Id.* (emphasis in original).  The Stay at Home Order deemed "Educational Institutions" (including universities) to be "Essential Businesses" permitted to continue operating, but only "for purposes of facilitating distance learning, performing critical research, or performing essential functions, provided that social distancing of six-feet per person is maintained to the greatest extent possible."  *Id.* at ¶ 14(l).[19]  In response to Executive Order 20-08, Ball State announced its residence halls would close effective March 29, 2020, absent limited exceptions in extraordinary circumstances.[20]  Campus services, however, including dining and library services, remained available on a modified basis.[21]

---

[18]     Indiana's Stay at Home Order initially was in force from March 24 to April 6.  *See* Executive Order 20-08, ¶ 2. It was extended twice, from April 6 to April 20, and then again from April 20 to May 1.  *See* Continued Directive for Hoosiers to Stay at Home; Extension of Continuity of Operations of Government; and Extension of Executive Orders Pertaining to Restaurants and Alcoholic Beverages, Exec. Order 20-18, ¶ 2 (Apr. 6, 2020), https://www.in.gov/gov/files/Executive%20Order%2020-18%20Cont%20Stay%20at%20Home%20Restaurants%20Govt%20Ops.pdf; Extension of Directive for Hoosiers to Stay at Home; Continuity of Operations of Government; and Executive Orders Pertaining to Restaurants and Alcoholic Beverages, Exec. Order 20-22, ¶ 2 (Apr. 20, 2020) https://www.in.gov/gov/files/Executive%20Order%2020-22%20Extension%20of%20Stay%20at%20Home.pdf. Ball State's 2020 Spring semester ended on May 1, 2020.  *See* Ball Statue University 2019-2020 Academic Calendar, Ball Statue University (Oct. 12, 2018), https://www.bsu.edu/-/media/www/files/events/pdf/2019-20%20academic%20calendar.pdf?la=en&hash=19E04B5C914FF5FBA081C48185EA1A94F996D84A

[19]     Notably, while Executive Order 20-08 did permit leaving the home for Essential Activities, attending university classes in person is not listed as an "Essential Activity."  Directive for Hoosiers to Stay at Home, Exec. Order 20-08, ¶ 7 (Mar. 23, 2020), https://www.in.gov/gov/files/Executive_Order_20-08_Stay_at_Home.pdf.

[20]     Press Release, Statement on Additional Measures to Combat COVID-19, Ball State University (Mar. 16, 2020), https://www.bsu.edu/news/press-center/archives/2020/3/additional-measures-to-combat-covid-19.

[21]     *Id.*

US.128518325.04

**D.** **Plaintiff Does Not Allege That Ball State Cancelled The Spring 2020 Semester.**

Plaintiff avers that he was enrolled in Ball State for the Spring 2020 academic semester. Compl. ¶ 13. He does not allege that he was unable to complete his coursework in Spring 2020 or denied credit hours for which he paid. *See* Compl.

**III.** **MOTION TO DISMISS STANDARD AND ROLE OF JUDICIAL NOTICE**

In reviewing a motion to dismiss pursuant to Rule 12(B)(6) of the Indiana Rules of Trial Procedure, the standard of review is well=-settled. *Town of Plainfield v. Town of Avon*, 757 N.E.2d 705, 709-10 (Ind. Ct. App. 2001). "A motion to dismiss for failure to state a claim tests the legal sufficiency of the complaint, not the facts supporting it. Thus, the motion tests whether the allegations in the complaint establish any set of circumstances under which a plaintiff would be entitled to relief." *Allen v. Clarian Health Partners, Inc.*, 980 N.E.2d 306, 308 (Ind. 2012) (citations omitted). Where, as here "a complaint states a set of facts which, even if true, would not support the relief requested, the [claims] must be dismissed." *Green ex rel. Estate of Webster v. Hous. Auth. of City of Gary*, 10 N.E.3d 518, 521 (Ind. Ct. App. 2014) (citation omitted).

Courts ruling on motions to dismiss "look only at the pleadings, with all well-pleaded material facts alleged in the complaint taken as admitted, supplemented by any facts of which the court will take judicial notice." *Impink v. City of Indianapolis Bd. of Pub. Works*, 612 N.E.2d 1125, 1127-28 (Ind. Ct. App. 1993) (marks and citation omitted). Pursuant to Indiana Rule of Evidence 201, Ball State has filed a separate request asking the Court to take judicial notice of certain website content cited above concerning the COVID-19 pandemic, Ball State's response to the pandemic, and certain press releases, executive orders, declarations, and other regulations issued by state and local governments in response to the pandemic. *See* Defendants' Request For

7

Judicial Notice ("Request For Judicial Notice"). Ball State incorporates by reference the points and authorities in that Request For Judicial Notice as though they were set forth in this Memorandum.[22] Because government-mandated directives dictated Ball State's response to the pandemic, including its transition to online instruction in March 2020, it is particularly appropriate for the Court to take judicial notice of the existence and contours of the relevant government orders and other matters related to COVID-19.

## IV.    ARGUMENT

Plaintiff's Complaint asserts two separate claims for relief against Ball State: (1) breach of contract and (2) unjust enrichment/*quantum merit*. Plaintiff alleges he was prevented "from accessing the facilities and services for which the fees were paid" and that the services for which he paid fees "were terminated or otherwise not provided prior to the conclusion of the Spring 2020 academic semester." Compl. ¶¶ 3-4, 17. Plaintiff seeks damages for Ball State's alleged breach and, alternatively, argues that Ball State has been unjustly enriched by retaining of the full amount of fees. Compl. ¶¶ 39-40, 45. Neither states a viable claim for relief, and both, therefore, must be dismissed. Simply put, Indiana law does not permit the courts to make qualitative assessments regarding the delivery of academic content or services. Such claims for "educational malpractice" – whether pled in contract, quasi-contract or tort – fail as a matter of law.

### A.    Plaintiff's Fails To Assert A Viable Claim For Breach Of Contract.

It is well-established that to recover for a breach of contract, a plaintiff must plead and prove that (1) a contract existed, (2) the defendant breached the contract, and (3) the plaintiff

---

[22]    If the Court denies Defendants' Request For Judicial Notice, in whole or in part, Defendants respectfully request that the Court disregard any facts of which the Court declines to take judicial notice instead of converting this motion into a motion for summary judgment. While the facts that Defendants ask the Court to take judicial notice of provide helpful context for analyzing the legal deficiencies of Plaintiff's allegations, the Complaint fails to state a viable claim for relief regardless of those facts.

8

suffered damage as a result of the defendant's breach. *Collins v. McKinney*, 871 N.E.2d 363, 368 (Ind. Ct. App. 2007). Plaintiff, however, has not pled – and cannot plead – an actionable contract, much less a breach of one.

### 1. Plaintiff's attempt to convert an alleged tort into a breach of contract fails.

It is well-settled that the legal relationship between a student and an educational institution is one of implied contract. *Amaya v. Brater*, 981 N.E.2d 1235, 1240 (Ind. Ct. App. 2013) (citation omitted); *see also Gordon v. Purdue Univ.*, 862 N.E.2d 1244, 1251 (Ind. Ct. App. 2007) ("Indiana has recognized the existence of implied terms in the contract between student and university.") (citation omitted). "[A] student may establish that an implied contract existed between himself and the university that entitled the student to a specific right . . . ." *Bissessur v. Ind. Univ. Bd. of Trustees*, 581 F.3d 599, 601 (7th Cir. 2009) (citation omitted). Thus, to state a claim for breach of contract in the student-university context, the student "must point to an identifiable contractual promise that the defendant failed to honor." *Ross v. Creighton Univ.*, 957 F.2d 410, 417 (7th Cir. 1992). He must plead: "(1) what, if any, promises the University made to [the student]; (2) how these promises were communicated; (3) what [the student] promised in return; or (4) how these promises created an implied contract." *Bissessur*, 581 F.3d at 603-04.[23]

Courts interpreting Indiana law have noted explicitly that "[b]ecause contracts for education have unique qualities, they are to be construed in a manner which leaves the school sufficient discretion to properly exercise its educational responsibilities." *Jones v. Howe*

---

[23] Tellingly, Plaintiff's Complaint does not point to any catalog, handbook, policy or procedure, or anything of the like, delineating the parameters or terms of Ball State's alleged promises to provide "services and/or access to resources." Compl. ¶ 37. The Complaint emphasizes the alleged termination of various unidentified services and access to unspecified resources without attempting to allege any contractual commitment by Ball State to provide those "services" or "resources." The Complaint also fails to cite any "contractual" support of the implication that these fees were anything other than flat per-semester or per-academic year fees charged regardless of how much or how little a student uses the particular benefit.

US.128518325.04

*Military Sch.*, 604 F. Supp. 122, 125 (N.D. Ind. 1984) (marks and citations omitted); *see also Neel v. I. U. Bd. of Trustees*, 435 N.E.2d 607, 610-11 (Ind. Ct. App. 1982) (noting that courts do not "apply contract law rigidly" in this context) (citations omitted).  Here, any contract would afford Ball State sufficient discretion to adjust its delivery of academic coursework and other services in the face of the COVID-19 pandemic and related governmental orders that directed, among other things, distance learning and social distancing.  The contract, and whether it was performed under such unprecedented circumstances, is not a proper subject for after-the-fact judicial scrutiny.

Moreover, while Plaintiff pleads his claim as a breach of contract, his claim, in reality, rests on the tort of educational malpractice.  Where allegations attack the "general quality of education experiences," question are raised that "must be answered by reference to principles of duty, standards of care, and reasonable conduct associated with the law of torts."  *See CenCor, Inc. v. Tolman*, 868 P.2d 396, 398-99 (Colo. 1994) (citations omitted); *see also Andre v. Pace Univ.*, 655 N.Y.S.2d 777, 779 (N.Y. App. Div. 1996) ("Where the essence of the complaint is that the school breached its agreement by failing to provide an effective education, the court is again asked to evaluate the course of instruction.") (marks and citation omitted).  Plaintiff's claim that Ball State "terminated . . . services for which *in-person* tuition was charged," Compl. ¶ 31(a) (emphasis added), essentially alleges that Ball State failed to provide a quality education when it switched to remote instruction and other alternative learning options.  This is a tort claim dressed up in contract clothing.  However, tort claims for educational malpractice in Indiana are non-starters:  "Indiana does not recognize the tort of educational malpractice." *Timms ex rel. Timms v. Metro. Sch. Dist. of Wabash County, Ind.*, 722 F.2d 1310, 1319 n. 6 (7th Cir. 1983) ("[The district court] entered summary judgment on the state common law claim because Indiana

US.128518325.04

does not recognize the tort of educational malpractice that the plaintiffs asserted some of the defendants had committed."); *Norris v. Bd. of Educ. of Greenwood Cmty. Sch. Corp.*, 797 F. Supp. 1452, 1463 (S.D. Ind. 1992) ("Plaintiffs admit that no Indiana court has recognized the cause of action [(*i.e.*, common law tort of educational malpractice)] stated in this Count.  In fact, no published Indiana appellate decision has even discussed the possibility of establishing this cause of action.").

While a court may determine whether a student received an education *at all*, courts have long-declined to opine on the *quality* of an education.  *See Ross*, 957 F.2d at 417 ("The essence of [such a claim is] not [ ] that the institution failed to perform adequately a promised educational service, but rather that it failed to perform that service at all."); *see also Andre*, 655 N.Y.S.2d at 780 ("A different situation might be presented if defendant were to provide no educational services or failed to meet its contractual obligation to provide certain specified services[.]") (marks and citations omitted).  Good reasons for judicial restraint in this area abound and include:  (1) a lack of a satisfactory standard of care by which to evaluate an educator, (2) inherent uncertainties about causation and nature of damages, (3) the potential for a flood of litigation against schools; and (4) the potential for embroiling the courts into overseeing the day-to-day operations of schools.  *Ross*, 957 F.2d at 414-15 (7th Cir. 1992) (citations omitted).  Here, Plaintiff stops short – as he must – of alleging that he did not receive an education *at all*.  Anything more is immaterial:  The Court simply need not worry about how to adjudicate whether remote learning is less valuable than in-person learning; such a claim is not cognizable as a matter of law and must be dismissed.

### 2.   Plaintiff fails to plead adequately any breach.

Having failed to plead contractual terms that deprived Ball State the discretion to adjust its Spring 2020 semester offerings in response to the COVID-19 pandemic, it follows that

11

Plaintiff's Complaint also fails to adequately articulate Ball State's alleged breach. Even if Plaintiff had alleged the operative terms of a contract whereby Ball State made actionable promises regarding the provision of services and resources, as well as the failure to provide such services and resources, doing so would not automatically state a viable claim for breach of contract. *Park v. Ind. Univ. Sch. of Dentistry*, 692 F.3d 828, 831 (7th Cir. 2012).

As courts interpreting Indiana law repeatedly have recognized in the student-university context, the essence of a breach of contract claim is "'not that the institution failed to perform adequately a promised educational service, but rather that it failed to perform that service *at all*." *Park v. Ind. Univ. Sch. of Dentistry*, 781 F. Supp. 2d 783, 786 (S.D. Ind. 2011) (quoting *Ross*, 957 F.2d at 417), *aff'd*, 692 F.3d at 831. Indeed, "Indiana courts have taken a flexible approach to the scope of contractual promises between students and universities," refusing to apply hornbook rules "mechanically where the principal is an educational institution and the result would be to override an academic determination." *Park*, 692 F.3d at 831 (marks and citation omitted) Rather, "[i]n addressing breach of contract claims between students and universities, 'the sole function of the courts is to determine whether the educational institution acted illegally, arbitrarily, capriciously, or in bad faith.'" *Doe v. Ind. Univ. – Bloomington*, No. 1:18-cv-03713-TWP-MJD, 2019 WL 341760, at *7 (S.D. Ind. Jan. 28, 2019) (quoting *Amaya*, 981 N.E.2d at 1240). Stated differently, "ruling on a breach of educational contract requires 'an objective assessment of whether the institution made a good faith effort to perform on its promise.'" *Park*, 781 F. Supp. 2d at 786 (quoting *Ross*, 957 F.2d at 417).

Applying these well-established legal principles, courts have not hesitated to grant a 12(B)(6) motion to dismiss a student's breach of contract claim against a university. For example, in *Park*, 692 F.3d at 831, the Seventh Circuit upheld the district court's dismissal of a

12

student's breach of contract claim against a university.  The student alleged that the university had breached its contract by dismissing her without following the disciplinary procedures outlined in its handbook and code of conduct.  *Id.*  The Seventh Circuit explained that, even if the university had not followed the "procedures outlined in its handbooks to the letter," that "does not automatically lead to a finding of breach":  Literal adherence is not required where the decision rests on expert judgments.  *Id.*  Thus, the Seventh Circuit declined to second-guess the university's decision, absent some indication that it was arbitrary or in bad faith.  *Id*. (citation omitted).  Finding none in the complaint, it summarily concluded that the student "ha[d] no state law claim for breach of contract" and affirmed the dismissal for failure to state a claim.  *Id.*

Plaintiff's Complaint similarly lacks any indication that Ball State's actions to protect its students, faculty, and staff – and taken in response to government orders and medical experts' recommendations – during the midst of a global pandemic were arbitrary or in bad faith.  Rather, he simply alleges that Ball State breached "the contract" when it terminated and/or failed to provide services and/or access to resources.  Compl. ¶¶ 38-39.  Without first alleging that Ball State made a contractual commitment to provide services or access to resources no matter the circumstances and regardless of prevailing health and safety requirements, recommendations, and considerations, this bare allegation fails to adequately allege breach.  And even if Plaintiff had properly alleged that Ball State promised to provide services or access to resources unconditionally, he fails to plead any facts suggesting that Ball State's alleged termination of those services or access to resources was carried out arbitrarily or in bad faith.  Nor can he.

Faced with an unprecedented challenge, Ball State acted to ensure its students remained safe and on track to graduate and earn their paid-for credits.  Case law in Indiana and elsewhere establishes that its decisions deserve deference, even under the Rule 12(B)(6) standard.  The

13

principles are bedrock.  Indeed, nearly 50 years ago, when campuses were forced to suspend classes following anti-war demonstrations (at a time when online instruction was not possible), the Supreme Court of New York reversed a lower court's issuance of a refund to a student, explaining that "the [lower] court erred in substituting its judgment for that of the University administrators and in concluding that the University was unjustified in suspending classes for the time remaining in the school year prior to the examination period." *Paynter v. New York Univ.*, 319 N.Y.S.2d 893 (N.Y. App. Div. 1971).  In a passage that rings true today, it concluded: "[W]hile in a strict sense, a student contracts with a college or university for a number of courses to be given during the academic year, the services rendered by the university cannot be measured by the time spent in a classroom." *Id.*  So too here.  Plaintiff cannot, as a matter of law, assert a breach of contract claim against the University simply because he received 47 days of remote instruction and allegedly was deprived of unidentified services during the midst of a global pandemic.  His breach of contract claim must be dismissed.

### B.    Plaintiff's Unjust Enrichment Claim Fails.

Despite *pleading* that he entered into a contractual relationship with Ball State, Plaintiff alternatively brings an unjust enrichment claim, alleging Ball State's retention of the full amount of fees he paid is unjust.  Compl. ¶¶ 37, 45.  This claim fails, too.

### 1.    Plaintiff has an adequate remedy at law (indeed, he pled it).

As the Indiana Court of Appeals has explained, unjust enrichment is "a legal fiction used to refer to a situation *where no contract actually exists* but where justice nevertheless warrants a recovery under the circumstances as though there had been a promise." *DiMizio v. Romo*, 756 N.E.2d 1018, 1024-25 (Ind. Ct. App. 2001) (marks and citation omitted) (emphasis added).  It follows, therefore, that when a contract exists between the parties, unjust enrichment does not apply. *Id*. at 1025 (finding the trial court improperly invoked the theory of unjust enrichment

14

because a valid contract existed); *see also Eagle Aircraft, Inc. v. Trojnar*, 983 N.E.2d 648, 660 (Ind. Ct. App. 2013) (holding that "the equitable doctrine of unjust enrichment does not apply" because "a contract controlled the relationship" between the parties) (citation omitted).

This fundamental principle requires the dismissal of Plaintiff's unjust enrichment claim. To begin, Plaintiff *pleads* he entered into a contractual relationship with Ball State regarding the payment of fees. Compl. ¶ 37 ("Plaintiff and the members of the Proposed Class each entered into contractual relationships with Ball State . . ."); *see also id*. ¶ 41 (incorporating this allegation into his unjust enrichment claim). Ball state does not dispute that; indeed, **Indiana courts explicitly have recognized that the relationship between a student and an institute of higher learning is characterized as one of implied *contract*.** *Amaya* , 981 N.E.2d at 1240 (citation omitted). This dooms Plaintiff's unjust enrichment claim.

Plaintiff's apparent attempt to plead unjust enrichment in the alternative is of no moment, either. While "plaintiffs seeking recovery for breach of contract often plead unjust enrichment in the alternative," the claim for unjust enrichment must be dismissed if it "covers the same subject matter as the" contract. *CoMentis, Inc. v. Purdue Research Found.*, 765 F. Supp. 2d 1092, 1102 (N.D. Ind. 2011) (dismissing plaintiff's unjust enrichment claim because it covered the same subject matter as the parties' agreement). This unquestionably is the case here. The subject matter of this contract is identical to that which underlies Plaintiff's unjust enrichment claim: the payment of fees for the Spring 2020 semester. *See* Compl. ¶ 37 (premising his breach of contract claim on his allegation that he "paid the fees"); *id*. ¶ 43 (premising his unjust enrichment claim on "the payment of one or more of the fees paid by Plaintiff"). While Plaintiff may disagree with Ball State as to the nature and scope of the implied contract, there can be no question that such an implied contract exists under Indiana law and that it governs Plaintiff's alleged claim.

15

*See, e.g.*, *Decatur Ventures, LLC v. Stapleton Ventures, Inc.*, 373 F. Supp. 2d 829, 849 (S.D. Ind. 2005) ("Plaintiffs' unjust enrichment claim becomes superfluous when neither side disputes the existence of a valid contract, even if it is being alleged in the alternative.") (citation omitted). Having entered into a contract regarding the payment of fees for the Spring 2020 semester, Plaintiff cannot pursue the quasi-contractual remedy of unjust enrichment to seek a "refund" of those fees.

Nor does Plaintiff get to invoke this theory because his contract-based claim fails. Courts easily have dispensed of such attempts. *See CoMentis*, 765 F. Supp. 2d at 1103 ("CoMentis may not seek unjust enrichment *just in case* the contract does not afford it the relief it seeks; a valid contract still governs the parties' rights with respect to the subject matter at issue.") (citation omitted). The existence of a "valid contract precludes the substitution of and implication in law of terms regarding the subject matter covered by the [ ] terms of the contract." *See Zoeller v. E. Chicago Second Century*, 904 N.E.2d 213, 221 (Ind. 2009) (marks and citations omitted); *see also Brown v. Mid American Waste Sys.*, 924 F. Supp. 92, 94-95 (S.D. Ind. 1996) ("The existence of express terms in a valid contract thus precludes the substitution of implied terms regarding matters covered by the contract's express terms.") (citation omitted). Plaintiff's remedy (if any) lies in his breach of contract claim, and his unjust enrichment claim must be dismissed.

> **2.      Plaintiff cannot allege sufficient facts that it was inequitable for Ball State to retain the full amount of fees.**

Even assuming Plaintiff's unjust enrichment claim is proper (and it is not), his claim still fails. To state a claim of unjust enrichment, a plaintiff must identify a measurable benefit conferred on the defendant under such circumstances that the defendant's retention of the benefit

16

US.128518325.04

without payment would be *unjust*. *Zoeller*, 904 N.E.2d at 220. Plaintiff has not, and cannot, do this.

Critically, Plaintiff's Complaint does not allege that any fees collected were used for any unjust purpose. Rather, Plaintiff apparently (and erroneously) presumes that because Ball State transitioned to remote instruction for 47 days, it somehow was "enriched" by retaining such fees. Not so. Ball State certainly was not unjustly "enriched" by retaining the fees paid for the instruction it continued to deliver.

*Moss v. Wayne State Univ. & Wayne State Univ. Bd. of Governors*, No. 286034, 2009 WL 4344193 (Mich. Ct. App. Dec. 1, 2009) (unpublished) is instructive. In *Moss*, the university added a per credit hour contingency fee for the 2007-2008 academic year, after facing funding uncertainty. While the contingency fee was eliminated for the winter semester, the university retained the fees collected in the fall. After the university received the uncertain state funding, plaintiffs brought a claim of unjust enrichment. The court of appeals dismissed it, though, explaining that the university was not unjustly enriched by the retention of the contingency fees: "[t]he fees collected were used for programs and projects to further the educational goals of the institution." *Id.* at *2. It added:

> plaintiff and other students gained a general benefit from the university's expenditures, which included spending in areas that would directly benefit students, such as on classroom and technological improvements. The university was not the sole recipient of a benefit: the students also benefitted from these expenditures. Therefore, it was not inequitable for the university to retain the contingency fees under this theory.

*Id*.

The same logic applies here. Plaintiff does not allege that instruction ceased altogether after the University transitioned to online learning or that he did not receive the credit hours for

17

US.128518325.04

which he worked and paid.  And even assuming some "deprivation," Plaintiff has not alleged, and cannot allege or show, "unjust" enrichment in the midst of this global pandemic.

In sum, Plaintiff has failed to state that it was inequitable or unjust for Ball State to retain these fees, a necessary element of an unjust enrichment claim.  *See, e.g.*, *Richardson v. Lutheran Univ. Ass'n*, No. 2:14-CV-92-PRC, 2015 WL 6473638, at *9 (N.D. Ind. Oct. 26, 2015) (granting summary judgment on plaintiff's unjust enrichment claim, where no motion to dismiss had been filed, noting "[a] student pays money to the University in exchange for the opportunity to earn credits in courses through satisfactory academic performance, and Richardson received this opportunity.").  Plaintiff's unjust enrichment claim must be dismissed for this reason too.

## V.    <u>CONCLUSION</u>

Neither the law nor the bare facts alleged in Plaintiff's Complaint support Plaintiff's claims.  Because Plaintiff has failed to state a claim upon which relief can be granted, Ball State respectfully asks the Court to dismiss Plaintiff's Complaint in its entirety.

Respectfully submitted,

FAEGRE DRINKER BIDDLE & REATH LLP

<u>/s/ Amanda L. Shelby</u>
Paul A. Wolfla (#24709-49)
Jane Dall Wilson (#24142-71)
Amanda L. Shelby (#27726-49)
Sarah V. Bowers (#31232-49)
300 North Meridian Street, Suite 2500
Indianapolis, IN 46204
Telephone: (317) 237-0300
Facsimile: (317) 237-1000
paul.wolfla@faegredrinker.com
jane.wilson@faegredrinker.com
amanda.shelby@faegredrinker.com
sarah.bowers@faegredrinker.com

*Attorneys for Defendants, Ball State University and Board of Trustees of Ball State University*

18

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing has been served this 1st day

of July, 2020, through E-service using Indiana E-Filing System upon:

Eric S. Pavlack
Colin E. Flora
PAVLACK LAW, LLC
50 E. 91st St., Ste. 317
Indianapolis, IN 46240
eric@pavlacklawfirm.com
colin@pavlacklawfirm.com


/s/ Amanda L. Shelby

19

US.128518325.04