# Exhibit G

## Garland v. Western Michigan Univ., 20-0063-MK (Mi. Ct. Cl. Sept. 15, 2020)

# STATE OF MICHIGAN

# COURT OF CLAIMS

KAI GARLAND, and all others who are similarly
situated

**OPINION AND ORDER**

Plaintiffs,

v

Case No.  20-000063-MK

WESTERN MICHIGAN UNIVERSITY, and THE
BOARD OF TRUSTEES OF WESTERN
MICHIGAN UNIVERSITY,

Hon. Cynthia Diane Stephens

Defendants.

_____/

Pending before the Court in this putative class action is defendants' motion for summary

disposition filed pursuant to MCR 2.116(C)(8).  For the reasons that follow, the motion is

DENIED.

## I.    BACKGROUND

Plaintiff is a student at defendant Western Michigan University (WMU).  This case arises

out of plaintiff's demand for a refund of pre-paid tuition, room and board, and fees after plaintiff

left WMU's campus following the university's transition to online learning during the onset of the

COVID-19 pandemic in March 2020.  The university offered distance learning for the remainder

of the Spring 2020 semester, starting in mid-March.  It also urged students to move out of on-

campus housing.  Plaintiff agrees in her complaint that she accepted, the university's offer of a

$1,000 refund for moving out of on-campus housing but asserts that amount was inadequate to

-1-

compensate for both the accommodations and meal and educational services and fees for which she paid but the value of which she did not receive.

Plaintiff's complaint alleges that WMU retained the value of payments made by plaintiff and other purported class members for tuition, room and board, and fees, while failing to provide the services that were promised to students. Plaintiff purports to bring the action on behalf of three classes of claimants: (1) the "tuition" class, i.e., those students who paid tuition and expected live, in-person instruction; (2) the "room and board" class, i.e., those students who moved out of university housing and who did not receive a refund for prepaid amounts; and (3) the "fee" class, i.e., those students who paid fees for the Spring 2020 semester but who did not receive the expected services associated with those fees.

Count I of the complaint alleges breach of contract with respect to tuition paid by plaintiff. According to plaintiff, she entered into a contractual agreement—which agreement is in the possession of WMU—with WMU pursuant to which the university agreed to provide live, in-person instruction in exchange for the payment of tuition. WMU purportedly breached this agreement, however, by moving the second half of all Spring 2020 classes to online, distance learning platforms and by refusing to refund tuition amounts prepaid by plaintiff and other class members. Plaintiff alleges that she has been damaged because she was deprived of the value of live, in-person instruction in a classroom setting.

Count II alleges breach of contract with respect to room and board. Plaintiff alleges that this count arises out of a contract that is in WMU's possession. Pursuant to this agreement, she prepaid an amount for room and board, and WMU was to provide on-campus housing and meals.

WMU allegedly breached this agreement, however, by not providing housing and meals for the entire semester.

Count III alleges breach of contract with respect to certain fees paid during the Spring 2020 semester. Once again, plaintiff alleges that the pertinent contracts are in WMU's possession. In short, plaintiff alleges that WMU charged certain fees, but failed to provide the agreed-upon services related to the various fees. Plaintiff alleges that she was damaged because she was deprived of the value of the services the fees were intended to cover, and that WMU has refused to provide a refund.

Counts IV-VI, which are alleged in the alternative, assert claims of unjust enrichment with respect to tuition, room and board, and fees. Plaintiff alleges that defendants retained prepaid amounts for tuition, room and board, and fees to which they were not entitled, given that the services intended to be covered by the funds were never provided. Plaintiff contends that equity demands defendants return the portion of funds to which they were not entitled.

This matter is before the Court on defendants' motion for summary disposition filed pursuant to MCR 2.116(C)(8). Defendants first argue that this Court should refrain from entertaining plaintiff's claims and insist that the Court should not interfere with the autonomy of the university to control and manage its affairs. Second, defendants argue that enrollment in the university does not create contractual rights and obligations as a matter of law. Defendants assert that they did not breach any agreements that might have existed. Finally, defendants argue that plaintiff's unjust enrichment claims fail as a matter of law because plaintiff failed to allege that WMU retained any monies for an improper purpose.

## II.    ANALYSIS

Defendants move this Court for summary disposition under MCR 2.116(C)(8).  "A motion under MCR 2.116(C)(8) tests the legal sufficiency of a claim based on the factual allegations in the complaint." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019) (emphasis omitted).  "When considering such a motion, a trial court must accept all factual allegations as true, deciding the motion on the pleadings alone." *Id*. at 160.  Summary disposition is appropriate under subrule (C)(8) only if the plaintiff's claim "is so clearly unenforceable that no factual development could possibly justify recovery." *Id*.

## A.  UNIVERSITY AUTONOMY

The Court first turns to defendants' argument that it should refrain from interfering with university autonomy and that it should decline to question the manner in which WMU conducts its affairs.  In support, defendants cite Const 1963, art 8, § 6, and *Sprik v Regents of Univ of Mich*, 43 Mich App 178; 204 NW2d 62 (1972), aff'd on other grounds 390 Mich 84; 210 NW2d 332 (1973).  In *Sprik*, 43 Mich App at 182, the University of Michigan, pursuant to leases with certain students, increased rent for students living in certain university-owned housing.  The University used the rent increase to make a payment to the Ann Arbor School District.  *Id*.  The plaintiffs in that case objected to the money being paid to the school district.  *Id*. at 183.  After accepting the plaintiffs' concession that their leases with the University of Michigan allowed the increase, the Court of Appeals held that the University Regents had constitutional authority to control and manage university affairs, including the expenditure of the funds at issue.  *Id*. at 186.

The Court does not agree with defendants' contention in the instant case that the holding in *Sprik* precludes the relief requested by plaintiff.  Nor does the Court agree that the holding in *Sprik* precludes it from considering whether the refund issued to plaintiff for room and board

-4-

adequately compensated plaintiff for any damages to which she may or may not be entitled.  As the parties' briefing acknowledges, the pleadings and arguments in this case are strikingly similar to those in other cases filed against other public universities in the Court of Claims.  The Court finds instructive and persuasive the reasoning employed in *Milanov v Univ of Mich*, opinion and order of the Court of Claims, issued July 27, 2020 (Docket No. 20-000056-MK), p. 8:

> The case at bar is distinguishable from *Sprik* because plaintiffs are not challenging an expenditure made by defendants.  Instead, they are arguing that defendants breached contractual agreements and/or unjustly retained a benefit by failing to provide plaintiffs the full benefit of their bargain.  Defendants have failed to present a compelling argument as to why [the Michigan Constitution's] provisions about defendant regents' control over university expenditures would insulate them from claims sounding in contract or quasi-contract.

This case is not about WMU's budget allocations , instead it concerns whether the university promised something that it failed to deliver.  Defendants' argument that this Court should abstain from interfering in the type of allegations made by plaintiff in the complaint is unpersuasive.

### B.  CONTRACT CLAIMS REGARDING TUITION AND FEES

Defendants next argue that plaintiff failed to state actionable contract claims.  Defendants first argue that Counts I and III, with respect to tuition and fees, fail to state a claim because this state's jurisprudence rejects the notion that enrollment at a university creates an express or implied contract between the university and a student.  In support of their position, defendants cite unpublished (and non-binding) Court of Appeals decisions, as well as *Cuddihy v Wayne State Univ*, 163 Mich App 153; 413 NW2d 692 (1987).  In *Cuddihy*, the Court of Appeals held that the payment of fees did not entitle a student to graduate, nor could there be an enforceable promise in an academic advisor's statement that the plaintiff in that case could "graduate soon," regardless of whether she maintained her grades and passed her examinations.  *Id*. at 157-158.

The Court agrees with plaintiff in the instant case that *Cuddihy* and the rest of defendants' cases are unpersuasive, and it is unconvinced by defendants' assertions that no contracts can exist between universities and their students. Unlike in *Cuddihy*, plaintiff in the instant matter is not alleging the right to graduate or to continue in her studies. Rather, she alleges that she was promised a certain form of instruction and the benefit of certain fees, but that WMU failed to uphold its end of the bargain. Borrowing from the opinion and order in *Milanov* once again, the Court agrees that "it is a bedrock principle of American contract law that parties are free to contract as they see fit, and the courts are to enforce the agreement as written absent . . . a contract in violation of law or public policy." *Corwin v DaimlerChrysler Ins Co*, 296 Mich App 242, 256; 819 NW2d 68 (2012) (citation and quotation marks omitted; cleaned up). See also *Milanov*, opinion and order of the Court of Claims, pp. 8-9. Plaintiff alleges that there were express contracts making the promises contained in the complaint, and that defendants breached those agreements. Based on these allegations, she has properly alleged contract claims that can be enforced by the Court, and at this stage of the litigation, summary disposition is not warranted on these claims.

## C. ACADEMIC FREEDOM AND AUTONOMY

Defendants next argue that any claims related to tuition refunds must fail for the reason that plaintiff asks the Court to interfere with WMU's academic autonomy. Citing *Regents of Univ of Mich v Ewing*, 474 US 214; 106 S Ct 507; 88 L Ed 2d 523 (1985), defendants argue that the First Amendment protects certain essential freedoms for universities, including the freedom to determine how courses are to be taught. According to defendants, any dispute regarding the decision to move classes online in the Spring 2020 semester is non-justiciable, because the Court cannot challenge WMU's academic decisions.

-6-

The Court disagrees that plaintiff's complaint asks the Court to interfere with WMU's academic autonomy, or that the First Amendment concerns cited in *Ewing* are implicated here.  In *Ewing*, the plaintiff was dismissed from the University of Michigan after failing a written examination.  *Ewing*, 474 US at 215.  The issue in that case was whether the University of Michigan deprived the plaintiff of due process of law because it departed from past practice when it denied him the opportunity to retake the exam.  *Id*.  The Supreme Court of the United States cautioned that it had a responsibility to safeguard the academic freedom—which it remarked was a "special concern of the First Amendment"—of universities and educational institutions.  *Id*. at 226 (citation and quotation marks omitted).  And, the Court held that it was not suited "to evaluate the substance of the multitude of academic decisions that are made daily by faculty members of public educational institutions . . . ."  *Id*.  Here, in contrast to *Ewing*, however, plaintiff is not asking the Court to interfere with or evaluate the substance of an educational decision.  Instead, she is alleging that she was promised one form of instruction, and that she had an express contractual[1] agreement for the same, but that WMU switched the method of instruction without providing a refund.  As did the Court in *Milanov*, the Court concludes that *Ewing* is inapposite and that defendants' arguments predicated on that case are not persuasive.  The Court declines to extend *Ewing* to contract express contract claims.

### D.  PLAINTIFF'S PLEADINGS

Next, defendants urge the Court to dismiss because plaintiff failed to attach the alleged contracts to her complaint.  In addition, defendants argue that plaintiff's complaint failed to plead

---

[1] Again, on review under MCR 2.116(C)(8), the Court accepts as true plaintiff's allegation that an express contract existed and that the contract is in defendants' possession, as alleged in the complaint and as permitted by MCR 2.113(C)(1)(b).

the fundamental elements of a contract, such as formation, whether promises were made in writing, which specific promises were made, and how those promises were made.  Defendants' arguments are meritless.  MCR 2.113(C)(1) provides that, when a claim is based on a written instrument, such as plaintiff's breach of contract claims, a copy of the instrument or its pertinent parts "must be attached to the pleading . . . ."  However, the requirement to attach the instrument is excused if the instrument is "in the possession of the adverse party and the pleading so states."  MCR 2.113(C)(1)(b).  Here, plaintiff's complaint expressly states that the alleged contracts are in defendants' possession and she alleges specific promises that suffice to state a claim.  Thus, her complaint has—albeit without much room to spare—satisfied the Court Rule, and defendants' assertions about plaintiff's failure to attach the documents are not fatal to the contract claims under MCR 2.116(C)(8) review.  If the alleged agreements do not exist, and defendants have produced evidence to support their assertions, then they can make the appropriate motion under the appropriate Court Rule.  However, for purposes of MCR 2.116(C)(8) review, and accepting the facts alleged as true as it is required to do, the Court rejects defendants' contentions about the adequacy of plaintiff's pleadings.

## E.  THE "HOUSING CONTRACT"

With respect to plaintiff's contentions about a contractual agreement for room and board, defendants have taken a different approach.  As it concerns Count II, which alleges a breach of contract for room and board, defendants attach to their briefing as Exhibit F a "Housing Contract."  This agreement, which is referenced in plaintiff's complaint, may be considered by the Court at this stage of the litigation.  See MCR 2.113(C)(2); *Laurel Woods Apartments v Roumayah*, 274 Mich App 631, 635; 734 NW2d 217 (2007).  Defendants argue that the "Housing Contract" is not a traditional contract, but instead is a set of rules with which plaintiff must comply in order to

remain eligible for university housing.  Defendants note that the Housing Contract reserves to WMU the right to remove students from on-campus housing if doing so is deemed to be in the best interests of WMU or its students.  In addition, they note that the Housing Contract gave WMU the right to amend or modify the agreement when "activities endanger" the health, welfare, or safety of students.  However, as plaintiff points out, the Housing Contract also provides that, in the event a public emergency or "other unforeseen occurrences beyond the control of" WMU prevent a student from using housing facilities, "this Contract for housing shall immediately terminate and You shall be responsible for charges *prorated to date of termination*."  (Emphasis added). Paragraph 67 of the complaint alleges that plaintiff was "not provided housing for the entire semester" due to the COVID-19 pandemic.  She also alleges that defendant gave a "directive" for students to move out of residence halls.  In sum, plaintiff has alleged facts that, if true, would support her claim for a prorated refund of prepaid room and board charges.  She has also alleged that that which was offered to her was inadequate.  Thus, at this stage of the proceedings, defendants have not presented a reason for this Court to dismiss Count II.

Furthermore, the Court finds defendants' renewed citation to *Sprik* inapplicable here as well.  The question presented in this case is not a challenge to the propriety of defendants' decision to modify the Housing Contract or to limit on-campus housing.  Rather, as alleged in the complaint, this case is concerned with plaintiff's assertion that a refund was owed under the terms of the parties' agreement.  Defendants cannot, by citing the autonomy of the university under authorities such as *Sprik*, escape alleged contractual liability.

## F.  ACCORD AND SATISFACTION

Next, the Court disagrees that defendants are entitled to summary disposition on Counts II and V—which pertain to room and board—because of the doctrine of accord and satisfaction.

Defendants note that plaintiff was offered, and that she accepted, $1,000 as a refund after she moved out of on-campus housing.  Accord and satisfaction is an affirmative defense to a breach of contract claim.  *Hoerstman Gen Contracting, Inc v Hahn*, 474 Mich 66, 70; 711 NW2d 340 (2006).  "An accord is a contract that requires a meeting of the minds of those who enter into it." *Id*.  A satisfaction "is the discharge of the debt occurring after acceptance of the accord." *Id*. 71. In order to prove the existence of an accord and satisfaction:

> a defendant must show (1) its good-faith dispute of (2) an unliquidated claim of the plaintiff, (3) its conditional tender of money in satisfaction of the claim, and (4) the plaintiff's acceptance of the tender (5) while fully informed of the condition.  A defendant need not show a plaintiff's express acceptance of the condition; rather, the law of accord and satisfaction is that where a creditor accepts a conditional tender, the creditor also agrees to the condition.  However, the expression of the condition must be clear, full, and explicit.  [*Faith Reformed Church of Traverse City, Mich v Thompson*, 248 Mich App 487, 492; 639 NW2d 831 (2001) (citations and quotation marks omitted).]

At this stage of the proceedings, the Court agrees that there is a lack of an explicit and clear condition indicating that, if the money offered to plaintiff was accepted, it would discharge her entire claim.  Indeed, the pleadings do not contain sufficient details on this matter to allow the Court to reach the conclusion suggested by defendants, and no documentary evidence was submitted to suggest otherwise, much less could that documentary evidence even be considered on MCR 2.116(C)(8) review.  As a result, defendants' attempt to rely on this affirmative defense is unavailing at this state of the litigation.

## G.  UNJUST ENRICHMENT

Finally, defendants argue that plaintiff has failed to state actionable unjust enrichment claims.  Citing an unpublished Court of Appeals decision, defendants argue that there is no unjust enrichment when monies collected by a university are used for items in furtherance of the university's educational mission and/or functions of the university.  Defendants argue that plaintiff

has not, and cannot, identify funds that were used for non-university purposes, so her unjust enrichment claims must fail as a matter of law.

The primary authority on which defendants rely is *Moss v Wayne State Univ*, unpublished per curiam opinion of the Court of Appeals, issued December 1, 2009 (Docket No. 286034). In *Moss*, Wayne State University decided to increase tuition and to add a per-credit-hour contingency fee, given its uncertainty about receiving state funding. *Moss*, unpub op at 1. The contingency fee was only collected in the Fall 2007 semester, and the proceeds from the fees were used "to pay off a foundation loan, to add to a rainy-day fund, and for improvement of classrooms and technology, research and clinical trials, and student retention programs." *Id*. The plaintiffs in that case challenged the university's retention of the contingency fee funds despite the university's subsequent receipt of state funds. *Id*. In a single paragraph, the Court of Appeals panel held that the plaintiff's claims for unjust enrichment failed because he and other students "gained a general benefit" from the university's expenditures. *Id*. at 3. As a result, the university "was not the sole recipient of a benefit" and it was not inequitable for the university to retain the contingency fees. *Id*.

The Court begins by pointing out that the *Moss* decision is not binding under the rule of stare decisis. MCR 7.215(C)(1). Moreover, whatever persuasive value the decision might have is limited by its dissimilarities to the instant case. In contrast to the plaintiffs in *Moss*, plaintiff in the instant case alleges inequity resulting, not just from WMU's retention of the funds, but from WMU's retention of funds after providing students with less than what was expected. Notably, plaintiff alleges that she paid for but did not receive: a full semester of live, in-person instruction; on-campus housing; meal plans; and services. Accepting the allegations contained in the complaint as true—which this Court must do under MCR 2.116(C)(8)—plaintiff stated a claim for

-11-

unjust enrichment based on the claim that she paid for, and defendants retained, excess in comparison to what plaintiff received. See *Wright v Genesee Co*, 504 Mich 410, 419; 934 NW2d 805 (2019). See also *Milanov*, opinion and order of the Court of Appeals, pp. 13-14.

III.    CONCLUSION

IT IS HEREBY ORDERED that defendants' motion for summary disposition is DENIED.

This is not a final order and it does not resolve the last pending claim or close the case.

September 15, 2020

Cynthia Diane Stephens
Judge, Court of Claims