UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| NICHOLAS BERGERON and BARBARA MYCEK, individually and on behalf of others similarly situated,<br><br>              Plaintiffs,<br><br>      v.<br><br>ROCHESTER INSTITUTE OF TECHNOLOGY,<br><br>              Defendant. | Case No. 6:20-cv-06283 |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
ROCHESTER INSTITUTE OF TECHNOLOGY'S MOTION TO DISMISS
PLAINTIFFS' CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................... iii

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT .............................................................................................................................1

    I.      Plaintiffs' Damages Are Impermissibly Speculative and Lead to Absurd
          Results. ..................................................................................................................1

    II.     Plaintiffs' Assertion that Parents of University Students Have Standing Is
          Factually and Legally Incorrect. ..........................................................................4

    III.    Plaintiffs Cannot Avoid the Dispositive Application of the Educational
          Malpractice Doctrine. ..........................................................................................5

    IV.    Plaintiffs' Breach of Contract Claim Fails as a Matter of Law. ...........................7

          A.     Plaintiffs Concede the Consolidated Amended Complaint Fails to
                 Plead a Specific Promise That Was Breached. ..........................................8

          B.     The Express Student Financial Responsibility Agreement Is
                 Dispositive. ...............................................................................................9

          C.     The Refund Policy Applies. .....................................................................11

          D.     The Reservation of Rights Is Enforceable. ..............................................11

    V.     Plaintiffs Cannot Save Their Unjust Enrichment Claim. ....................................12

    VI.    Plaintiffs Fail to Cure the Deficiencies in Their Conversion Claim. ...................13

    VII.   Plaintiffs' UDAAP Claims Are Barred as a Matter of Law. ...............................14

CONCLUSION ........................................................................................................................15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Affiliated Capital Servs. Corp. v. W. Atl. City Assocs.*,
 760 F. Supp. 1067 (W.D.N.Y. 1991) ....................................................................12

*Alessi v. Monroe Cty.*,
 No. 07-CV-6163, 2010 WL 161488 (W.D.N.Y. Jan. 13, 2010) ..............................8

*Ansari v. New York Univ.*,
 No. 96 CIV. 5280 (MBM), 1997 WL 257473 (S.D.N.Y. May 16, 1997) ................2

*Boston Univ. Chapter, Am. Ass'n of Univ. Professors v. N.L.R.B.*,
 835 F.2d 399 (1st Cir. 1987) ...................................................................................6

*Chong v. Northeastern Univ.*,
 No. 20-10844-RGS, Dkt. No 36 (D. Mass. Oct. 1, 2020) ...................................9, 10

*Deen v. New Sch. Univ.*,
 No. 05 CIV. 7174 KMW, 2007 WL 1032295 (S.D.N.Y. Mar. 27, 2007) ..........11, 12

*Dutra v. Trustees of Boston Univ.*,
 No. 20-cv-10827, Dkt. No. 47 (D. Mass. Nov. 4, 2020) .........................................9

*Ericson v. Syracuse Univ.*,
 35 F. Supp. 2d 326 (S.D.N.Y. 1999) ........................................................................5

*In re Ford Fusion & C-Max Fuel Econ. Litig.*,
 No. 13-MD-2450 KMK, 2015 WL 7018369 (S.D.N.Y. Nov. 12, 2015) ..................9

*Gally v. Columbia Univ.*,
 22 F. Supp. 2d 199 (S.D.N.Y. 1998) ...................................................................8, 11

*Hinterberger v. Catholic Health Sys.*,
 284 F.R.D. 94 (W.D.N.Y. 2012) ............................................................................13

*Horrigan v. E. Mich. Univ.*,
 No. 20-000075-MK, Dkt. No. 45-3 (Mich. Ct. Cl. Oct. 9, 2020) ...........................9

*Paynter v. N.Y. Univ.*,
 66 Misc. 2d 92 (1st Dep't 1971) ..............................................................................7

*Rivoli v. Gannett Co., Inc.*,
 327 F. Supp. 2d 233 (W.D.N.Y. 2004) .....................................................................5

*Roe v. Loyola Univ. New Orleans*,
No. CIV. A. 07-1828, 2007 WL 4219174 (E.D. La. Nov. 26, 2007) ....................................6, 7

*Rosado v. Barry Univ. Inc.*,
No. 20-21813, Dkt. No. 51 (S.D. Fl. Oct. 30, 2020)..................................................................13

*Ross v. Creighton Univ.*,
957 F.2d 410 (7th Cir. 1992) ......................................................................................................2

*Salerno v. Fla. S. Coll.*,
No. 8:20-CV-1494-30SPF, 2020 WL 5583522 (M.D. Fla. Sept. 16, 2020)..........................4, 5

*Uddin v. N.Y. Univ.*,
47 Misc.3d 38 (1st Dep't 2014) ..................................................................................................5

*Vought v. Teachers Coll., Columbia Univ.*,
127 A.D.2d 654 (2d Dep't 1987)................................................................................................3

*Zumbrun v. Univ. of S. Cal.*,
25 Cal. App. 3d 1 (1972) ............................................................................................................5

*Zwiker v. Lake Super. State Univ.*,
No. 1:20-cv-21813-JEM, Dkt. No. 35-1 (Mich. Ct. Cl. Sept. 1, 2020) ....................................9

**Treatises**

Rstmt. (3d) of Restitution § 34 cmt. c.......................................................................................12

**Other Authorities**

*Federal CARES Act Funding: Student Distribution,* RIT READY,
https://www.rit.edu/ready/federal-cares-act-funding
(last accessed Oct. 30, 2020).......................................................................................................1

*RIT COVID-19 Alert Levels*, RIT READY,
https://www.rit.edu/ready/rit-covid-19-alert-levels
(last accessed Nov. 13, 2020) ...................................................................................................15

**PRELIMINARY STATEMENT**[1]

RIT is sympathetic to students and all people whose lives were unforeseeably interrupted by COVID-19 and government stay-at-home orders.  In an effort to minimize the severe impact of COVID-19, RIT took extraordinary measures to allow all students to complete their classes in full and on schedule.  RIT wholly absorbed the costs of these transition efforts and minimized the burden on students by distributing over $5.2 million in CARES Act relief funds directly to them.[2] Students paid their agreed-upon tuition and fees, no more.

Plaintiffs' specious attempt to spin the cost of attendance at RIT as generating a windfall for RIT is not only prejudicial, but plainly incorrect.  The tuition and fees paid by students cover only approximately 50% of RIT's operating expenses.  *See* Opp. at 1 n.5.  But this case is not about that. It is about RIT's discretion to implement measures to protect the health and well-being of its students, faculty, and staff, and Plaintiffs' attempt to seek a windfall in the face of an unprecedented global pandemic, despite getting the benefit of their bargain.

**ARGUMENT**

I.      **Plaintiffs' Damages Are Impermissibly Speculative and Lead to Absurd Results.**

To evade the dispositive law cited in RIT's moving brief, Plaintiffs restyle their claims as involving only milquetoast transactional claims.  *See* Opp. at 9.  But despite Plaintiffs' conclusory claim that they "do not ask the Court to review the educational decisions made by [RIT]," *see id.*, the nature of the relief sought by Plaintiffs belies that claim.  Plaintiffs' damages demand—a refund of an unspecified percentage of tuition and fees based on an unidentified formula somehow

---

[1] Capitalized terms and abbreviations not otherwise defined carry the same meaning as in Plaintiff's moving memorandum of law.

[2] *See Federal CARES Act Funding: Student Distribution,* RIT READY, https://www.rit.edu/ready/federal-cares-act-funding (last accessed Oct. 30, 2020).

correlating to the interruption of in-person instruction for a little over a month—remains impermissibly speculative because it would require the Court to make a judgment as to value of the education RIT's students received during the period of COVID disruption, a value judgment that the educational malpractice doctrine places squarely out-of-bounds.

Plaintiffs argue that they seek to recover the difference in the "fair market value" between in-person instruction versus remote learning. *See* CAC ¶ 119. Their opposition brief, while claiming that Plaintiffs do not challenge the quality of the remote education they received, doubles down on this formulation by stating that Plaintiffs seek a "pro-rata refund to account for the reasonable value of the product they actually received."

By Plaintiffs' own admission, then, their claims put the *value and quality* of the remote platform RIT implemented in the wake of COVID-19 (and resulting shut-down orders) squarely on the table. Assessment of Plaintiffs' claimed damages would demand a determination of the value and quality of the remote learning RIT's students received for a little over a month during RIT's emergency response to a global pandemic and government orders (as subjectively experienced by each of these students, whose own notions of quality and value are highly individualized), and a comparison to the value and quality they each might have received from in-person instruction during pre-COVID times (which, again, would require individualized assessment). This alone makes clear that impermissible educational malpractice claims are really at issue here, notwithstanding Plaintiffs' attempts at re-branding. *See Ross v. Creighton Univ.*, 957 F.2d 410, 414 (7th Cir. 1992) (speculative nature of damages sought indicates impermissible educational malpractice rather than actionable breach of contract); *Ansari v. New York Univ.*, No. 96 CIV. 5280 (MBM), 1997 WL 257473, at *3 (S.D.N.Y. May 16, 1997) (educational malpractice doctrine bars claims that ask the court to "evaluate the course of instruction").

There is no viable method for the Court to determine the "fair market value," or "reasonable value," of Plaintiffs' subjective loss of "education experiences," *see* CAC ¶ 163, if any, caused by remote learning for the last month or so of classes in spring 2020.  There is no objective "market" price for this unique set of circumstances where schools were forced by government order and a pandemic to alter the mode of instruction while a semester was underway.

And Plaintiffs' shorthand reference to RIT's pricing for asynchronous online-only courses in the pre-COVID world (*see* CAC ¶¶ 65-66) does not help.  RIT's pre-COVID pricing for online-only students cannot provide a meaningful objective indicator of the "value" Plaintiffs received here: a brand new distance learning modality that RIT quickly implemented (at considerable cost) to allow its students to complete their spring 2020 course work, based on live remote instruction from the same RIT faculty that had been providing in-person instruction earlier in the semester.

To be clear, Plaintiffs make no allegations that they, or other members of the putative class they purport to represent, lost credits, earned lower grades, could not complete their major, did not graduate on time, or had any measurable loss. Nor could they, as the remote learning platform RIT put in place to complete the spring 2020 semester was designed precisely to allow its students to finish what they had started, on time and with minimal disruption.

There are no allegations that RIT's tuition or fees can be broken down into components of "value" that each RIT student purportedly "bargained for."  *See, e.g.,* Opp. at 9; CAC ¶ 50.  To the contrary, RIT undergraduate students like Bergeron and Mycek's son are charged flat tuition and fees per semester, *see* Opp. at 4 n.7, in exchange for instruction and credits, and that is so regardless of which classes each student takes, which activities they participate in, and which facilities and services they use.  *See Vought v. Teachers Coll., Columbia Univ.*, 127 A.D.2d 654, 654 (2d Dep't 1987) (contract with student is tuition paid for instruction and credits).  But Plaintiffs' damages

3

theory, if allowed to proceed, would allow a student to break down the tuition and fees into component parts and to seek incremental refunds whenever anything—be it a global pandemic, or a snowstorm, or a faculty illness, or a syllabus change—supposedly diminishes the "value" of what the student hoped to receive. This outcome is flatly contrary to RIT's express refund policies and student financial agreements. *See* SFRA at 1; RIT Bulletin at 353-54. And it is flatly contrary to New York law, which prohibits precisely this sort of second-guessing of educational value and quality.

## II.    Plaintiffs' Assertion that Parents of University Students Have Standing Is Factually and Legally Incorrect.[3]

Whether "custom exists in which parents are expected to pay" tuition for their adult children's education, *see* Opp. at 13, is irrelevant to the threshold question of whether Mycek has suffered any injury-in-fact as a result of RIT's transition to distance learning. As pled, the only injury asserted is a deprivation of in-person instruction and on-campus services—benefits alleged to have been conferred on Mycek's *son*, not Mycek herself.

Tellingly, while Plaintiffs annex *Salerno v. Fla. S. Coll.*, No. 8:20-CV-1494-30SPF, 2020 WL 5583522 (M.D. Fla. Sept. 16, 2020) to their Opposition, *see* Opp. at Ex. A, they conveniently ignore the holding in *Salerno* that *the parent-plaintiff lacked Article III standing to bring any claim*

---

[3] RIT withdraws its motion to dismiss Bergeron's claims based on lack of standing. RIT's investigation of the matters raised in the CAC is ongoing at this nascent stage of litigation. It is undisputed that, for the spring 2020 semester, Bergeron paid $22,454 in tuition and $413 in fees. *See* Opp. at 4 n.7. It is also undisputed that Bergeron received $23,242.50 in scholarship and grants. *See id*. at 4. The CAC does not seek recoupment of housing payments, which Plaintiffs concede were partially refunded. *See id*.

Based upon RIT's investigation to date, of the $23,424.50 Bergeron received in scholarships and grants, $20,496.50 was applied to tuition and fees, with the remainder applied to housing. Thus, for the spring 2020 semester, it appears that Bergeron paid $2,370.50 out-of-pocket for tuition and fees. RIT's investigation into these and other matters is continuing, and RIT reserves its right to challenge Bergeron's standing at a later appropriate time should additional relevant facts come to light.

because the loss of in-person instruction and on-campus services was an injury to the student, not to the parent. *See id.* at *3-4 ("[T]he lack of injury to Salerno is clear regardless of whether Salerno provided financial support to her daughter."). *Salerno*'s standing analysis is directly applicable here, and its outcome indicates the correct result in Mycek's case: no standing.

The cases cited by Plaintiffs to support Mycek's standing are inapposite. *Uddin* did not consider the issue of standing at all, and *Zumbrun* was an action brought under California law *by the student* in which the court made a single, isolated reference to parents in dicta. *See generally Uddin v. N.Y. Univ.*, 47 Misc.3d 38 (1st Dep't 2014); *Zumbrun v. Univ. of S. Cal.*, 25 Cal. App. 3d 1, 11 (1972). Likewise, *Ericson v. Syracuse Univ.*, 35 F. Supp. 2d 326 (S.D.N.Y. 1999) was an action brought by the *students* alongside their parents, and the parents appeared to have asserted intentional infliction of emotional distress claims arising from their own injuries—not injuries allegedly sustained by their children. *See id.* at 330. Having thus failed to establish a factual basis for Article III standing, Mycek and all of her claims must be dismissed with prejudice.

## III.   Plaintiffs Cannot Avoid the Dispositive Application of the Educational Malpractice Doctrine.

As noted generally above, the Court should reject Plaintiffs' unsupported *legal* conclusion that they do not plead educational malpractice where, as here, the facts alleged establish the opposite. *See Rivoli v. Gannett Co., Inc.*, 327 F. Supp. 2d 233, 239 (W.D.N.Y. 2004) ("the Court is not obligated to draw unreasonable inference in plaintiff's favor, or to accept plaintiff's conclusions of law"). While attempting to disguise it with considerations of commercial "value," the fact of the matter is that Plaintiffs' claims sound in educational malpractice because they allege RIT delivered a deficient education of sub-par "value" after RIT exercised its academic discretion to change the mode of instruction during a pandemic. *See, e.g.,* CAC ¶ 50(b)-(d).

5

First, RIT's decision was an academic one.  How to teach—the mode of instruction—is a core principle of academic freedom for faculty and institutions.  *Roe v. Loyola Univ. New Orleans*, No. CIV. A. 07-1828, 2007 WL 4219174, at *2 (E.D. La. Nov. 26, 2007) (policies governing how and where students receive instruction "is a discretionary decision to be made by Loyola"); *see also, e.g., Boston Univ. Chapter, Am. Ass'n of Univ. Professors v. N.L.R.B.*, 835 F.2d 399, 401 (1st Cir. 1987) ("[T]he faculty has *absolute authority* over such matters as grading, *teaching methods*, graduation requirements, and student discipline.") (emphasis added).  It is precisely this type of academic decision-making which courts prudently abstain from reviewing.

Second, at issue are alleged deficiencies in the education delivered.  Plaintiffs do not dispute that, after the transition to distance learning, RIT offered the same courses taught by the same faculty, issued the same number of credits for each course, and awarded degrees when earned.  Instead, Plaintiffs rely on purported deficiencies in the education RIT provided during the time of COVID disruptions related to face-to-face interactions, access to facilities, student governance and unions, extra-curricular activities, access to culture, diversity, social development, networking, and hands-on learning.  *See* CAC ¶ 25.  To put a dollar amount on such experiences is inherently a question of how a student *values* these services—some students may attend office hours every week while others attend as needed (or never); some students participate in spectator sports and athletic programs while others do not; a relatively small group of students participate in student government; the permutations of participation in extracurricular activities by students is endless.  Regardless of which of these experiences Plaintiffs engaged in (if any), they still paid a pre-set tuition rate and pre-set fees, which are the same for all students within the school.  *See* RIT Bulletin at 353 (flat annual tuition for all undergraduates).  As such, any attempt to parse flat tuition rates and fees across each individual student's personal engagement in the RIT community

6

necessarily requires an evaluation of how each student assessed the value and quality of each discrete engagement. *See also,* Section I, *supra*. Indeed, despite their attempt to recast their claims, Plaintiffs tacitly admit that this case is about a purportedly "lower quality education." *See* Opp. at 9.

Plaintiffs' attempt to distinguish *Paynter* is misplaced. The *Paynter* court held it was error to "substitut[e] its judgment for that of the University administrators," which violated the university's "inherent authority to maintain order on their campuses." *Paynter v. N.Y. Univ.*, 66 Misc. 2d 92, 92 (1st Dep't 1971). Those same principles apply here and require dismissal pursuant to the educational malpractice doctrine. Likewise, Plaintiffs' attempt to distinguish *Roe,* No. CIV. A. 07-1828, 2007 WL 4219174, misrepresents the facts and holding of that case. There was no option for students to return to Loyola's campus after Hurricane Katrina. *Id.* at \*1. *Cf.* Opp. at 23. Plaintiff's claim in *Roe* was premised on Loyola's failure to provide classes on campus in New Orleans, which is precisely what Plaintiffs here allege with respect to RIT. *See Roe*, No. CIV. A. 07-1828, 2007 WL 4219174 at \*2 ("The plaintiff argues that he paid Loyola for education and services during the Fall 2005 semester and Loyola did not provide such to him and, because of this, he was damaged."). The *Roe* court barred all claims because the university had reserved discretion to change how it delivered educational services, and the court could not undermine the university's discretion regarding the mode and method instruction. *See id.* at \*2. RIT exercised the same academic discretion here, and is thus entitled to deference. *See* RIT Bulletin at 1 (reserving rights to modify courses "plus unforeseen changes in other aspects of RIT life").

## IV.    Plaintiffs' Breach of Contract Claim Fails as a Matter of Law.

Plaintiffs fundamentally misunderstand why their breach of contract claim fails. There is no dispute that the relationship between university and student is contractual in nature, but Plaintiffs fail to identify in their CAC, or by reference to the contract between RIT and its students,

any specific promise by RIT not to change the mode of instruction in any particular course or access to any particular facility or service. Absent such a specific promise, there is no viable contract claim. Instead, here, there is a bargained-for exchange in the SFRA that ties a student's obligation to pay tuition and fees to RIT's provision of course registration—not to the provision of exclusively in-person instruction, or to unlimited campus access. *See* SFRA at 1.

### A.   Plaintiffs Concede the Consolidated Amended Complaint Fails to Plead a Specific Promise That Was Breached.

There is no dispute that contract claims against educational institutions are subject to high threshold standards of specificity. This high bar is what delineates legitimate breach of contract claims against universities from disguised educational malpractice claims. It is met only where a plaintiff pleads a specific breach of a specific promise. *See, e.g., Gally v. Columbia Univ.,* 22 F. Supp. 2d 199, 206 (S.D.N.Y. 1998) (school promised "a designated number of hours of instruction, and the school failed to meet its burden"). But instead of specificity, Plaintiffs offer only vagaries.

Plaintiffs' opposition makes abundantly clear that they cannot ground their contract claims in any specific promise made in the operative contract between RIT and its students; indeed, Plaintiffs acknowledge precisely that by vaguely stating that their contract claim is "in part implied and in part as set forth in the amalgamation of various documents, handbooks, catalogs, agreements, advertisements, and other publications." Opp. at 17. By failing to point to specific allegations evidencing specific promises, Plaintiffs concede that their pleading fails to identify any enforceable promise of in-person instruction. *See id.* (single conclusory reference to statements in CAC); *Alessi v. Monroe Cty.*, No. 07-CV-6163, 2010 WL 161488, at *1 n.1 (W.D.N.Y. Jan. 13, 2010) (failure to oppose argument concedes the point).

Underscoring their pleading deficiencies, Plaintiffs suggest that the Court can "assume that [RIT] would have made the specific promise" on in-person instruction. Opp. at 17. This peculiar

formulation falls far short of carrying Plaintiffs' burden of showing a specific contractual foundation for their contract claim.  It is Plaintiffs' burden to identify specific statement(s) from RIT's contract that rises to the level of enforceable contract terms—not the Court's, and not RIT's. Plaintiffs have not, and cannot, carry that burden.  Because they have failed to identify even a single contractual provision promising exclusively in-person instruction or unlimited campus access, Plaintiffs' contract claim fails.[4]

      **B.**      **The Express Student Financial Responsibility Agreement Is Dispositive.**

Plaintiffs cannot evade the SFRA's dispositive effect.  As Plaintiffs acknowledge, multiple courts have dismissed tuition refund contract claims identical to Plaintiffs' claims based on the terms of an express tuition or financial responsibility contract.  *See, e.g., Chong v. Northeastern Univ.*, No. 20-10844-RGS, Dkt. No 36 (D. Mass. Oct. 1, 2020); *Horrigan v. E. Mich. Univ.*, No. 20-000075-MK, Dkt. No. 45-3 (Mich. Ct. Cl. Oct. 9, 2020); *Zwiker v. Lake Super. State Univ.*, No. 1:20-cv-21813-JEM, Dkt. No. 35-1 (Mich. Ct. Cl. Sept. 1, 2020).[5]

The analysis in *Chong* is directly on point.  The plaintiff in *Chong* alleged that he paid tuition and fees in exchange for in-person instruction.  *See* No. 20-10844-RGS, Dkt. No 36 at 4-5.

---

[4] Plaintiffs also fail to allege that any of the cited statements were directed at or relied on by the individual Plaintiffs, which itself warrants dismissal of Plaintiffs' breach of contract claims.  *See In re Ford Fusion & C-Max Fuel Econ. Litig.*, No. 13-MD-2450 KMK, 2015 WL 7018369, at *34 (S.D.N.Y. Nov. 12, 2015) (class action plaintiffs must allege what documents or statements were directed at them, individually, and "mere reference to advertisements generally" is insufficient); *see also, e.g., Dutra v. Trustees of Boston Univ.*, No. 20-cv-10827, Dkt. No. 47 (D. Mass. Nov. 4, 2020) (dismissing breach of contract claim because plaintiffs failed to tie allegations to named plaintiffs on an individual basis).

[5] Plaintiffs' attempt to distinguish these cases is misleading.  The *Zwiker* plaintiff did dispute whether her claims fell within the scope of the tuition contract as Plaintiffs dispute here, but the court applied the terms of the express agreement.  *See* No. 1:20-cv-21813-JEM, Dkt. No. 35-1 at 10.  The *Chong* plaintiffs made the same argument as Plaintiffs' here, that despite the language of the financial responsibility agreement, "in-person instruction nonetheless became part of the parties' contract" because classes were assigned to physical locations.  *See* No. 20-10844-RGS, Dkt. No 36 at 7.  The court rejected this argument.  *Id.* at 8.

Plaintiffs here alleged the same.  CAC ¶ 59.  However, in both cases an express contract governs the terms of a student's financial obligations.  As in *Chong*, the SFRA here, as a matter of law, "ties the payment of tuition to registration for courses, not to the receipt of any particular method of course instruction."  *Chong*, No. 20-10844-RGS, Dkt. No 36, at 6-7; *see also* SFRA at 1 ("*when I register for any class* . . . or receive *any* service from RIT . . . I accept full responsibility to pay all tuition, fees and other associated costs") (emphasis added).  There is no promise in the SFRA that, in exchange for tuition and fees, Plaintiffs will receive in-person or any other specific mode of instruction, and there is no legal basis for Plaintiffs or the Court to impose any such term.

Plaintiffs present a grab-bag of arguments to escape the plain terms of the SFRA.  All are unavailing.  Consideration for the SFRA is plain on its face:  tuition and fees are paid in consideration for class registration, or receipt of any service from RIT.  *See* SFRA at 1.  Plaintiffs' assertion that "there is no indication within the SFRA that [RIT] intends to be bound by any of its terms," *see* Opp. at 11, is likewise unfounded—it is undisputed that RIT allowed Bergeron and Mycek's son to register for classes and provided services including instruction and ancillary services for the entire semester.  Plaintiffs' assertion that their claims here fall outside the scope of the SFRA is likewise misplaced:  while Plaintiffs are correct that the SFRA includes the students' promise to pay, it also includes RIT's promise to provide course registration and services, and simply because the SFRA does not obligate RIT to provide a certain type of service does not render it inapplicable.  Plaintiffs' argument that the SFRA does not supersede the spring 2020 course catalog (presumably because the spring 2020 catalog was published after the SFRA was signed) is contradicted by the fact that the RIT Bulletin is for the full 2019-2020 year.  And Plaintiffs' claim that there is no price in the SFRA is also meritless, as the stated "price" of the agreement is "all tuition, fees, and other associated costs."  *See* SFRA at 1.

10

### C.    The Refund Policy Applies.

Plaintiffs' argument that the Refund Policy only applies to situations where the student "breaches" their agreement is illogical and contradicted by the SFRA. The students' only promise is to pay tuition and fees. The refund policy is expressly incorporated into the SFRA as the only circumstance under which tuition or fees may be refunded. That Bergeron and Mycek's son did not withdraw within the time frame for partial refunds during the spring 2020 term (or at all) does not make the policy inapplicable to them—it simply means that, under the clear and unambiguous terms of RIT's policy, Plaintiffs got what they paid for and are not entitled to a refund.

### D.    The Reservation of Rights Is Enforceable.

Plaintiffs' straw man aside, RIT does not disclaim "all contractual relations" with its students. *Cf.* Opp. at 21. There is, of course, a contract in place between RIT and its students, and that contract—in particular, the SFRA and the refund policy—should be enforced according to its terms. RIT's point is that the reservation of rights language included in RIT's website and bulletin also makes very clear what the operative contract does *not* say by permissibly disclaiming any promise to provide a specific mode of instruction or educational experience. *See Gally*, F. Supp.2d at 206 n.7 (disclaimer is enforceable if it "would disclaim the existence of a specific promise" but not if it "unilaterally disclaim[s] *all* contractual relations between the parties") (emphasis added).

Plaintiffs' specious argument that RIT's reservation of rights permitted changes only between semesters is contradicted by the clear and unambiguous language of the reservation, which permits RIT to make changes "at any time." RIT Bulletin at 1, 491. Plaintiffs cite no authority for their illogical proposition that "at any time" means "not in the middle of a semester."

Plaintiffs' reliance on *Deen v. New Sch. Univ.*, No. 05 CIV. 7174 KMW, 2007 WL 1032295, at *3 (S.D.N.Y. Mar. 27, 2007) is inapposite. The *Deen* court found the disclaimer to be ambiguous because it was unclear whether the disclaimer meant to allow the school to stop

11

association with the Actors Studio Drama School, or only aspects of the Actor's Studio program. *Id.* Here, the RIT reservation of rights is unambiguous, and applies specifically to changes in courses. RIT Bulletin at 1, 491. Moreover, the "fundamental identity" addressed in *Deen* is absent here, where Plaintiffs remained enrolled at RIT, were taught the same courses by the same faculty, and will ultimately graduate with an RIT diploma.

## V.     Plaintiffs Cannot Save Their Unjust Enrichment Claim.

There is no dispute between the parties that a contractual agreement governs the relationship between the parties. *See* Opp. at 24 (admitting Plaintiffs seek to enforce a contract). The only dispute here is whether Plaintiffs have properly pled a breach of that contract. An unjust enrichment claim cannot survive a motion to dismiss where the only dispute goes to liability, not enforceability. *Affiliated Capital Servs. Corp. v. W. Atl. City Assocs.*, 760 F. Supp. 1067, 1076 (W.D.N.Y. 1991).[6] The unjust enrichment claim is thus barred by contract.

Plaintiffs cannot save the unjust enrichment claim by now arguing that they are entitled to restitution due to impossibility of performance. *See* Opp. at 24-25. Impossibility is an affirmative defense not yet raised. Referencing a remedy to a defense not yet raised does not cure the pleading deficiencies in this claim.[7]

---

[6] Plaintiff's reliance on other COVID tuition refund cases allowing unjust enrichment claims to survive the motion to dismiss is inapposite, as those courts analyzed different pleadings, state laws and standards of review. *See* Opp. at 13.

[7] Notably, RIT's discussion of the executive orders' impact on the closure of its campus goes only to the Plaintiffs' failure to sufficiently plead a causal nexus between *RIT's* actions and the alleged injury. *Compare* Opp. at 24 *with* Moving Br. at 17. RIT does not assert, for purposes of its motion to dismiss, that its performance should be excused due to impossibility, because RIT fully performed its contractual obligations.

Even if, however, an impossibility defense were raised, it would not entitle Plaintiff to any partial refund of tuition and fees because the parties allocated the risk of non-performance to the student in their express agreements. *See* Rstmt. (3d) of Restitution § 34 cmt. c. ("[I]nterrupted performance results in no unjust enrichment—even when the sequence of performance is

12

Plaintiff misquotes *Rosado v. Barry Univ. Inc.*, No. 20-21813, Dkt. No. 51 (S.D. Fl. Oct. 30, 2020), which made no such comparison to Cadillacs and Oldsmobiles in sustaining plaintiff's unjust enrichment claim. *See id.* at 10-11. In any event, *Rosado* is inapposite to the situation here, involving the applicability of a student financial responsibility agreement that expressly tied the payment of tuition and fees to course registration. The contract in place here expressly allocates the risk between the parties, and overrides Plaintiffs' unjust enrichment claims as a matter of law.

## VI.      Plaintiffs Fail to Cure the Deficiencies in Their Conversion Claim.

RIT's retention of tuition and fees was not a separately actionable wrong because RIT's right to retain tuition is permitted by the express terms of the SFRA and Refund Policy, which do not provide for any refunds outside an early withdrawal. Further, Plaintiffs do not allege: (i) any factual or legal basis amounting to an "ownership right" to tuition or fees *after* paying them to RIT pursuant to a written SFRA, and *after* completing the academic term and receiving credits from RIT; (ii) that they tendered any demand for a refund before filing this action; or (iii) that RIT disposed of their property. *See* Opp. at 26. Absent such allegations, Plaintiffs cannot state a claim for conversion. *See Hinterberger v. Catholic Health Sys.*, 284 F.R.D. 94, 111 (W.D.N.Y. 2012).

Plaintiffs' Opposition instead appears to recast their conversion claim as one of misappropriation, which is not pled on the face of the CAC. Such a claim also fails as a matter of law because Plaintiffs concede that they were provided course registration, instruction, and academic credits—which is precisely what they paid for.

Plaintiffs also do not dispute that they have failed to plead a specifically identifiable amount converted. *See* Moving Br. at 21-22. As such, Plaintiffs' conversion claim must be dismissed.

---

obviously unbalanced—if the agreement, whether expressly or by implication, allocates the risk of interruption to the party whose performance is the more advanced.").

**VII.    Plaintiffs' UDAAP Claims Are Barred as a Matter of Law.**

Plaintiffs do not dispute that the UDAAP safe harbor bars Plaintiffs claims.  *See* Opp. Br. Section VI.  The safe harbor is dispositive and requires dismissal of these claims with prejudice. *See* Moving Br. at 23-24.

Even if the safe harbor did not apply, Plaintiffs' UDAAP claims fail.  *First*, Plaintiffs' claims and the proposed class are specifically limited to those who paid tuition[8] on behalf of "students enrolled . . . for the Spring 2020 semester."  CAC ¶ 45.  Plaintiffs make no attempt to explain how a shift to distance learning made in the middle of a semester, affecting only the population of students enrolled during that semester could impact the wider consuming public.

*Second*, Plaintiffs have not alleged in the CAC any materially misleading statements. There are no allegations that any of the documents described in the CAC contain any statement that was *false when made*: none of those documents contains a promise of exclusively in-person instruction or unlimited campus access, and even if they did, any such statements were plainly overtaken by a global pandemic that had not yet begun when RIT promulgated its materials for the 2019-2020 academic year.

And *third*, Plaintiffs' assertion that, "had [they] known that Defendant's claims regarding the provision of the on-campus experience were false or subject to change, Plaintiffs would not have paid the price for in-person, on campus learning or the campus related fees" is patently false. Plaintiffs *did* know that the RIT experience could change, as is made clear through RIT's reservation of rights to change its courses.  *See* RIT Bulletin at 1, 419.  If Plaintiffs chose to ignore or failed to read such disclosure, that is Plaintiffs' fault, not RIT's.  But still more to the point,

---

[8] RIT reserves all rights to dispute the scope of the proposed class.  Plaintiffs' class would include parents, the government, employers, and lenders, which would lead to absurd results.

14

despite knowing from experience that the ongoing COVID-19 pandemic could cause RIT to suspend in-person instruction during the fall 2020 semester,[9] *both* Bergeron and Mycek's son enrolled in the fall semester, and voluntarily paid the full rates of in-person tuition and fees.

## CONCLUSION

For all of the reasons discussed herein and in its opening brief, Rochester Institutes of Technology respectfully requests that the Court dismiss Plaintiffs' Consolidated Amended Complaint in its entirety and with prejudice.

Dated: New York, New York
       November 19, 2020

SANTIAGO BURGER LLP

By: /s *Fernando Santiago*
Fernando Santiago
fernando@litgrp.com
2280 East Avenue, 2nd Floor
Rochester, NY 14610
Tel:  (585) 563-2400
Fax:  (585) 563-7526


HOLLAND & KNIGHT LLP

By: /s/ Qian Shen
Robert J. Burns
Qian (Sheila) Shen
robert.burns@hklaw.com
qian.shen@hklaw.com
31 West 52nd Street
New York, NY 10019
Tel:  (212) 513-3200
Fax:  (212) 385-9010

Paul G. Lannon (*pro hac vice* forthcoming)
paul.lannon@hklaw.com
10 St. James Avenue, 11th Floor
Boston, MA 02116

---

[9] *See, e.g.,* RIT COVID-19 Alert Levels, RIT READY, https://www.rit.edu/ready/rit-covid-19-alert-levels (last accessed Nov. 13, 2020).

15

Tel:  (617) 523-2700
Fax:  (617) 523-6850

16