UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x
NICHOLAS BERGERON AND                       :
NICK QUATTROCIOCCHI, on behalf of           :
themselves and on behalf of all others      :
similarly situated,                         :
                                            :
                Plaintiffs,                 :          Lead Case No. 6:20-cv-06283
                                            :
        v.                                  :          (JURY TRIAL DEMANDED)
                                            :
ROCHESTER INSTITUTE OF TECHNOLOGY,          :
                                            :
                Defendant.                  :
                                            :
-----------------------------------------------------------------x

## SECOND CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

Plaintiffs Nicholas Bergeron and Nick Quattrociocchi ("Plaintiffs") by and through undersigned counsel, bring this action against Rochester Institute of Technology ("Defendant" or the "Institute") on behalf of themselves and all others similarly situated, and make the following allegations based upon information, attorney investigation and belief, and upon Plaintiffs' own knowledge:

## PRELIMINARY STATEMENT

1.      Plaintiffs bring this case as a result of Defendant's decision not to issue appropriate refunds for the Spring 2020 semester after canceling in-person classes and changing all classes to an online/remote format, closing most campus buildings, and requiring all students who could leave campus to leave as a result of the Novel Coronavirus Disease ("COVID-19").

2.      This decision deprived Plaintiffs and other members of the Classes from recognizing the benefits of on-campus enrollment, access to campus facilities, student activities, and other benefits and services in exchange for which they had already paid fees and tuition.

1

3. Defendant has either refused to provide reimbursement for the tuition, fees and other costs that Defendant failed to provide during the Spring 2020 semester, or has provided inadequate and/or arbitrary reimbursement that does not fully compensate Plaintiffs and members of the Classes for their loss.

4. This action seeks refunds of the amount Plaintiffs and other members of the Classes are owed on a *pro-rata* basis, together with other damages as pled herein.

## PARTIES

5. Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

6. Rochester Institute of Technology is an institution of higher learning located in Henrietta, New York.

7. Upon information and belief, Defendant has an estimated endowment of $957 Million[1] and more than 16,000 enrolled students during the 2019-2020 academic year.[2]

8. Moreover, upon information and belief, Defendant was allocated more than $10.3 million of federal stimulus funds under the CARES Act.[3]

9. From this bailout, Defendant has allocated only $5.2 million (the bare minimum required by law) to be distributed to students, presumably intending to retain the remaining $5.2 million for itself.[4]

---

[1] https://www.rit.edu/fa/controller/sites/rit.edu.fa.controller/files/files/docs/FY19%20RIT%20Financial%20Statements_Final.pdf

[2] Rochester Institute of Technology: About, https://www.rit.edu/about-rit.

[3] https://www2.ed.gov/about/offices/list/ope/allocationsforsection18004a1ofcaresact.pdf

[4] https://www.rit.edu/news/rit-students-eligible-federal-cares-act-funding#:~:text=Rochester%20Institute%20of%20Technology%20will,during%20the%20COVID%2D19%20pandemic.

10.     Plaintiff Bergeron is an individual and a resident and citizen of the state of Massachusetts and was a student enrolled at Rochester Institute of Technology during the Spring 2020 term.

11.     Plaintiff Nick Quattrociocchi is a student and a resident of Penfield, New York 14526. Plaintiff was enrolled as a full-time undergraduate student at Rochester Institute of Technology during the Spring 2020 semester.

## JURISDICTION AND VENUE

12.     Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

13.     This Court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because at least one class member is of diverse citizenship from one Defendant, there are more than 100 Class members, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.

14.     This Court has personal jurisdiction over Defendant because Defendant conducts business in New York and has sufficient minimum contacts with New York.

15.     Venue is proper in this District under 28 U.S.C. 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## BACKGROUND FACTS

16.     Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

17.     Plaintiffs were each enrolled as full-time or part-time students for the Spring 2020 academic semester at Defendant's institution.

18.     As a precondition for enrollment, Plaintiffs were required to and did pay substantial tuition for the Spring 2020 semester either out of pocket or by utilizing student loan financing, as did all members of the putative Tuition Class (defined below).

19.     According to publicly available information, the average undergraduate tuition cost for the Spring 2020 semester at Rochester Institute of Technology varies from approximately $22,133 - $25,282. Students also pay approximately $7,326 in related costs and fees, including room and board. The average tuition and fee cost for a graduate student for the Spring 2020 semester is approximately $50,136 in tuition and approximately $676 in related costs and fees.

20.     There are hundreds, if not thousands, of institutions of higher learning in this country.

21.     Some institutions of higher learning provide curriculum and instruction that are offered on a remote basis through online programming which do not provide for physical attendance by the students.

22.     Defendant's institution offers both in-person, hands-on programs, and fully online distance-learning programs, which it markets and prices as separate and distinct products.

23.     These products are not identical or interchangeable.  In fact, students enrolled in the online degree program are not allowed to enroll in on-campus or blended classes.[5]

24.     Defendant has recognized and admitted the inherent difference between its in-person and online products, and markets them separately throughout its website and other publications and circulars, including its academic catalogs.

25.     Upon information and belief, Defendant's tuition rate for the online programs is between 36% and 43% less than the cost of attaining the same degree in the regular, on-campus program:[6]

---

[5] Id.
[6] Id.



26. Accordingly, when students pay tuition in exchange for enrollment in the on-campus program, such students expect to receive, and Defendant has promised to provide, benefits and services above and beyond basic academic instruction, which include but are not limited to:

    a. Face-to-face interaction with professors, mentors, and peers;

    b. Access to facilities such as computer labs, study rooms, laboratories, libraries, etc.;

    c. Student governance and student unions;

    d. Extra-curricular activities, groups, intramurals, etc.;

    e. Student art, cultures, and other activities;

    f. Exposure to community members of diverse backgrounds, cultures, and schools of thought;

    g. Social development and independence;

    h. Hands-on learning and experimentation; and

    i. Networking and mentorship opportunities.

27. Defendant markets the on-campus experience as a benefit of enrollment:[7]

---

[7] https://www.rit.edu/experiential-learning.

## Where learning becomes practice – you become a professional.

At RIT, experiential learning enables students to apply what they've learned through lectures, labs, assignments, and projects to a variety of rich experiences outside the classroom. These meaningful exchanges expand students' knowledge and broaden their perspectives by refining their professional and intellectual competencies, cultivating their leadership abilities, advancing their career development, and further developing their talents.

28.     Plaintiffs and members of the proposed Tuition Class did not choose to attend another institution of higher learning, or seek an online degree, but instead chose to attend Defendant's institution and specifically chose the on-campus program and enrolled on that basis.

29.     Plaintiffs' education was changed from in-person, hands-on learning to online instruction during the Spring 2020 term.

30.     When this happened, Plaintiffs were forced from campus and deprived of the benefit of the bargain for which they had paid, and in exchange for which Defendant had accepted, tuition as set forth more fully above.

31.     In addition to tuition, Plaintiffs were required to pay certain mandatory fees, including but not limited to a Student Activity Fee and a Student Health Services Fee.

32.     According to Defendant's website, the Student Activity Fee "supports programs, events, and services that enhance the quality of student life at RIT.[8]

33.     The Student Health Services Fee "covers office visits and many of the basic services students may need."[9]

---

[8] https://www.rit.edu/fa/sfs/explanation-fees
[9] https://www.rit.edu/studentaffairs/studenthealth/about/feespayment

34.     As a result of the actions and announcements of Defendant during the Spring 2020 term, Plaintiffs and members of the Fees Class (defined below) lost the benefit of the services for which the fees had been paid for the majority of the semester.  For example, Plaintiffs and the Class could not participate in student activities and events, and were not able to seek basic on-campus health and treatment services.

## FACTUAL ALLEGATIONS

35.     Upon information and belief, Defendant's Spring term began with the first day of classes on or about January 13, 2020.[10]

36.     Upon information and belief, Defendant's Spring term was scheduled to conclude with the last day of examinations on or about May 6, 2020 and commencement ceremonies on May 9, 2020.[11]

37.     Accordingly, Defendant's Spring semester was scheduled and contracted to consist of approximately 118 days.

38.     However, as a result of the COVID-19 pandemic, Defendant announced on March 15, 2020 that it was moving all classes online for the remainder of the semester.  Defendant "strongly discouraged" students from returning to campus following the scheduled end of Spring break, except to retrieve their possessions and move out.  Students were required to move out of on-campus housing no later than April 5, 2020.[12]

39.     Based on the dates set forth above, upon information and belief, Defendant's move to online classes and constructive eviction of students on March 15, 2020 deprived Plaintiffs and other members of the Classes from access to campus facilities and in-person instruction for

---

[10] https://www.rit.edu/calendar
[11] Id.
[12] https://www.rit.edu/news/rit-encourages-students-not-return-campus-courses-resume-march-23-through-alternative-modes

approximately 50% of the semester for which they had contracted.

40.      Although Defendant continued to offer some level of academic instruction via online classes, Plaintiffs and members of the proposed Tuition Class were deprived of the benefits of on-campus enrollment for which they paid as set forth more fully above.

41.      These realities notwithstanding, Defendant has refused and continues to refuse to offer any refund whatsoever with respect to the tuition that had already been paid.

42.      Likewise, Plaintiffs and members of the proposed Fees Class were deprived of utilizing services for which they have already paid, such as access to campus facilities, student activities, health services and other opportunities.

43.      Nonetheless, Defendant has refused and continues to refuse to offer any refund whatsoever with respect to the fees that had already been paid.

44.      As said in New York Magazine, "*Universities are still in a period of consensual hallucination with each saying, 'We're going to maintain these prices for what has become, overnight, a dramatically less compelling product offering.'*"[13]

<u>**CLASS ACTION ALLEGATIONS**</u>

45.      Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

46.      Plaintiffs brings this action on behalf of themselves and as a class action, pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure on behalf of the following Classes:

>    **The Tuition Class:**
>
>    All people who paid tuition for or on behalf of students enrolled in classes at the Institute for the Spring 2020 semester but were denied live, in-person instruction

---

[13] James D. Walsh, "The Coming Disruption," New York Magazine, May 11, 2020, available at https://nymag.com/intelligencer/2020/05/scott-galloway-future-of-college.html?utm_source=fb.

and forced to use online distance learning platforms for the latter portion of that semester.

**The Fees Class:**

All people who paid fees for or on behalf of students enrolled in classes at the Institute for the Spring 2020 semester.

47.    Excluded from the Classes is Rochester Institute of Technology and any of their respective members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; and the judicial officers, and their immediate family members, and Court staff assigned to this case.  Plaintiffs reserve the right to modify or amend the Class definitions, as appropriate, during the course of this litigation.

48.    Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

49.    This action has been brought and may be properly maintained on behalf of the Classes proposed herein under Federal Rule of Civil Procedure 23.

**Numerosity: Fed. R. Civ. P. 23(a)(1)**

50.    The members of the Classes are so numerous and geographically dispersed that individual joinder of all members is impracticable.  Plaintiffs are informed and believe that there are thousands of members of the Classes, the precise number being unknown to Plaintiffs, but such number being ascertainable from Defendant's records.  Members of the Classes may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, internet postings, and/or published notice.

**Commonality and Predominance: Fed. R. Civ. P. 23(a)(2)**

51.    This action involves common questions of law and fact, which predominate over any

9

questions affecting individual members of the Classes, including, without limitation:

(a)     Whether Defendant engaged in the conduct alleged herein;

(b)     Whether there is a difference in value between enrollment in an online distance learning program and enrollment in a live, on-campus instructional program;

(c)     Whether Defendant breached its contracts with Plaintiffs and the other members of the Tuition Class by retaining the portion of their tuition representing the difference between the value of online distance learning and on-campus, in-person enrollment;

(d)     Whether Defendant was unjustly enriched by retaining tuition payments of Plaintiffs and the Tuition Class representing the difference between the value of online distance learning and on-campus, in-person enrollment;

(e)     Whether Defendant breached its contracts with Plaintiffs and the other members of the Fees Class by retaining fees without providing the services, benefits and/or programs the fees were contracted to cover;

(f)     Whether Defendant was unjustly enriched by retaining fees of Plaintiffs and the other members of the Fees Class without providing the services, benefits and/or programs the fees were intended to cover;

(g)     Whether certification of any or all of the classes proposed herein is appropriate under Fed. R. Civ. P. 23;

(h)     Whether Class members are entitled to declaratory, equitable, or injunctive relief, and/or other relief; and

(i)     The amount and nature of relief to be awarded to Plaintiffs and the other

10

members of the Classes.

## Typicality: Fed. R. Civ. P. 23(a)(3)

52.     Plaintiffs' claims are typical of the claims of other members of the Classes because, among other things, all such members were similarly situated and were comparably injured through Defendant's wrongful conduct as set forth herein.

## Adequacy: Fed. R. Civ. P. 23(a)(4)

53.     Plaintiffs are adequate representatives of the Classes because their interests do not conflict with the interests of other members of the Classes they seek to represent.  Plaintiffs have retained counsel competent and experienced in complex litigation and Plaintiffs intend to prosecute the action vigorously.  The interests of the Classes will be fairly and adequately protected by Plaintiffs and their counsel.

## Superiority: Fed. R. Civ. P. 23(b)(3)

54.     A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action.  The damages or other financial detriment suffered by Plaintiffs and other members of the Classes are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for members of the Classes to individually seek redress for Defendant's wrongful conduct.

55.     Even if members of the Classes could afford individual litigation, the Court system likely could not.  Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system.  By contrast, the class action device presents far fewer management difficulties and provides the benefits of

11

single adjudication, economy of scale, comprehensive supervision by a single court, and finality of the litigation.

**Certification of Specific Issues: Fed. R. Civ. P. 23(c)(4)**

56.     To the extent that any described Class herein does not meet the requirements of Rules 23(b)(2) or (b)(3), Plaintiffs seek the certification of issues that will drive the litigation toward resolution.

**Declaratory and Injunctive Relief: Fed. R. Civ. P. 23(b)(2)**

57.     Defendant has acted or refused to act on grounds generally applicable to Plaintiffs and the other members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described herein, with respect to the members of the Classes as a whole.

**FOR A FIRST COLLECTIVE CAUSE OF ACTION**
**BREACH OF CONTRACT**

**(Plaintiffs and Other Members of the Tuition Class)**

58.     Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

59.     Plaintiffs bring this count on behalf of themselves and other members of the Tuition Class.

60.     Plaintiffs and the other members of the Tuition Class entered into contracts with Defendant which provided that Plaintiffs and other members of the Tuition Class would pay tuition for or on behalf of students and, in exchange, Defendant would enroll such students and admit them to campus; granting them the full rights and privileges of student status, including but not limited to access to campus facilities, access to campus activities, and live, in-person instruction in a physical classroom.

61.     These rights and privileges of student status that comprise the contractual terms are set

forth by Defendant through its website, academic catalogs, student handbooks, correspondence, marketing materials and other circulars, bulletins, and publications.

62.     These rights and privileges form the basis of the bargain on which prospective students agree to accept Defendant's offer of enrollment in exchange for the payment of tuition and fees.

63.     One such right is the ability to be physically present on campus, and fully enjoy the facilities, services, and opportunities provided thereon, including the campus' location and surrounding opportunities within Rochester.

64.     Defendant's website and recruitment brochures are the primary means through which Defendant targets prospective new students and attempts to influence such students to apply for enrollment at the Institute as opposed to other institutions of higher learning.

65.     Through these publications, Defendant markets to and enrolls students in two separate and distinct products.

66.     Defendant specifically markets certain classes and degree programs as being offered on a fully online basis.[14]

## Online and Continuing Education

—

Leveraging decades of experience in distance learning, RIT Online captures the world-class quality of RIT and customizes it for online learning. The same remarkable faculty at RIT's main campus teach all online courses and programs.

**Learn more about RIT Online ›**

---

[14] https://www.rit.edu/academics.

67.     Indeed, Defendant dedicates an entire section of its website to these programs, known as "RIT Online" which can be accessed at https://www.rit.edu/ritonline/.

68.     Conversely, Defendant's publications with respect to non-online classes are full of references to the on-campus experience, including numerous references to student activities; campus amenities; class size; campus diversity, campus location, and the like.

69.     Students seeking further information about the on-campus programs offered by the Institute are directed to the academics website, https://www.rit.edu/academics.

70.     Here, students find more promises that the Institute promises on-campus students:

As one of the world's leading technological institutions, RIT is a vibrant, connected community that is home to diverse, ambitious, and creative students from more than 100 countries. It offers an incredible array of academic programs; a diverse, committed, and accessible faculty; sophisticated facilities; and an unusual emphasis on experiential learning.

71.     Additionally, Defendant markets its "Experiential Learning" to prospective students, which is full of hands-on experiences including: cooperative education, internships, international experiences, undergraduate research, entrepreneurship, service learning, clinical experiences, competitions, simulations and multidisciplinary projects.[15]

72.     For example, Defendant promises undergraduate students access to labs to practice and learn hands-on skills:[16]

---

[15] https://www.rit.edu/experiential-learning.
[16] Id.

## Undergraduate Research

At RIT, undergraduate research means students will conduct research assignments that their peers at other universities often don't see until graduate school. By providing undergraduates the opportunity to work directly with faculty members in their labs to investigate, explore, and discover, students learn hands-on skills that become the foundation of scientific research.

**RIT's Undergraduate Research Symposium >**
**Learn more >**

73. Another example of Defendant's "Experiential Learning" promises is hands-on learning in medical and clinical settings:[17]

## Clinical Experiences

Hands-on learning in medical and clinical settings for students majoring in RIT's health and medical sciences programs enable students to engage in a variety of experience required for professional licensing, such as data gathering, physical examinations, differential diagnosis, patient management, maintenance of medical records, performance of diagnostic and therapeutic procedures, and the provision of patient education and counseling.

**Rochester Regional Health/RIT Alliance >**

74. With Defendant's "Experiential Learning," Defendant promises admitted students a vibrant campus life:[18]

---

[17] Id.
[18] https://www.rit.edu/admission/freshman.

We'll provide the gifted faculty,
unconventional degree
programs, career-focused
experiential learning and a
vibrant campus life.

**You bring you.**

75. Students seeking further information about the Institution are directed to the "RIT Life" page, https://www.rit.edu/rit-life.

76. Here, Defendant markets the following statistics:

- 300+ clubs and organizations;

- 13,000+ on-campus and off-campus events;

- 27 theater, dance, music, or other arts organizations perform on campus;

- 21 locations for dining options on campus which include:

- 6 restaurants and dining halls;

- 5 markets and convenience stores;

- 6 express dining locations;

- Full time catering department;

- 3 venues that offer full concessions and all campus dining;

- 31 diverse inter/national social fraternities and sororities;

- 2,600+ international students from 102 countries that complement the campus climate; and

- Engaged and vibrant religious, secular, and spiritual communities on campus.

77. Upon information and belief, there were no references or disclaimers in any of Defendant's websites, circulars, bulletins, publications, brochures, or other advertisements prior

to January 21, 2020, that even referenced the possibility of in-person classes being changed to fully online classes at Defendant's discretion or for any other reason whatsoever after the start of a given term.[19]

78.     In fact, it is clear that, prior to the COVID-19 interruption, Defendant had no plans whatsoever to offer its in-person classes via an online delivery model.

79.     Those prospective students who were interested in enrolling at the Institute after consuming the marketing materials described above were invited to complete applications, and some were selected for and offered admission.

80.     When a student is offered admission to the Institute after consuming the marketing materials described above were invited to complete applications, and some were selected for and offered admission.

81.     Accepted students receive an admission letter from Marian M. Nicoletti, the Director of Undergraduate Admissions.

82.     Upon information and belief, in this letter, Defendant promises the admitted student that they "have access to some of the finest laboratories, technology and computing facilities available on any university campus."

83.     Upon information and belief, in this letter, Defendant goes on to state that *on campus* admitted students will find incredible resources that are available to provide you with a rich and well-rounded university experience.

84.     Upon information and belief, in this letter, Defendant promises that the diverse array of students, faculty and quality of residential life contribute in many ways to a rewarding *campus experience*.

---

[19] January 21, 2020 is the approximate date that students were permitted to withdraw from the Institute for the Spring 2020 term and receive a full tuition refund.

17

85.     Accepted students are direct to review the "Accepted Student Page" for additional information.

86.     Accepted students are also invited to attend Orientation (which is hosted on Defendant's campus) where Defendant again attempts to convince such students to accept their offers of admission by highlighting the Institute's location and the many benefits of being on campus.

87.     During this time, the students also receive an "Undergraduate Student Handbook" from their respective school or program.

88.     The Undergraduate Student Handbook for the Kate Gleason College of Engineering Class of 2022 opens with "Tips for First Year Students" and in tip #9 "Get your money's worth" on page 2 of the Handbook Defendant admits: "The University wants you to succeed and offers an abundance of services geared toward that goal. These range from math and writing skills centers to personal counseling. Let the university serve you. *You're paying for these services anyway, in the form of tuition and fees* – use them. Become an explorer and locate the major academic buildings, library and service departments."[20]

89.     The "Tips for First Year Students" go on to tell students: (i) to *attend* class regularly (Tip #1); (ii) to become part of the *campus community*, as it is "just as important as going to class, writing papers, and taking exams (Tip #6); and (iii) to phone home often (Tip #10).[21]

90.     On page 8 of the Handbook, Defendant admits that the required "Year One class serves as an interdisciplinary catalyst for first-year students to access campus resources" and to "become

---

[20] https://www.rit.edu/engineering/sites/rit.edu.engineering/files/docs/resources/KGCOE%20Undergradutae%20Student%20Handbook%202018-2019.pdf. (emphasis added)

[21] https://www.rit.edu/engineering/sites/rit.edu.engineering/files/docs/resources/KGCOE%20Undergradutae%20Student%20Handbook%202018-2019.pdf.

an integral part of the *campus community*."[22]

91.     On page 26, Defendant urges students to stay on campus as much as possible: "the more time you spend on getting to know the campus and your new friends, the more you'll feel at home at school. And why not take advantage of all the cultural and social events that happen *on campus*."[23]

92.     Accepted students are also encouraged to check out the "Accepted Student Admissions Presentation.[24]

93.     In this video, Defendant promises students that "once you step front into our classroom, you'll realize that it does not feel like that big of place."[25]

94.     Defendant promises students "we have more than 300+ clubs on campus and host over 1,300+ annual events per year."[26]

95.     Defendant offers students "over 100 recreational opportunities offered per semester."[27]

96.     Defendant acknowledges that "RIT is a residential campus offering a mix of residence halls, suites and apartments."[28]

97.     Defendant goes on to state: "RIT also offers a post office, laundry rooms, computer labs and game rooms, and fitness facilities."[29]

98.     Defendant also admits: "RIT is a strong and robust network of support on campus to help you be successful academically and personally."[30]

99.     Finally, Defendant acknowledges, "We are truly fortunate to have the breadth and

---

[22] Id.
[23] Id.
[24] https://www.rit.edu/admissions/explore-rit-virtually.
[25] Id.
[26] Id.
[27] Id.
[28] Id.
[29] https://www.rit.edu/admissions/explore-rit-virtually.
[30] Id.

19

depth of support offered on campus to our students."[31]

100.    Defendant advertises to prospective students interviews of current students at Institute in a video called "Experience Student Life at RIT."[32]

101.    In this video, Defendant showcases interviews of multiple students who make numerous promises to prospective about what to expect on the campus of Institute.

102.    For example, one student affirmed "I love the community feel that I get, either in the classroom or in one of the many clubs I'm involved in."[33]

103.    Once students make it through orientation [and for returning students], it comes time to register for classes. This is another area where Defendant specifically emphasizes the distinction between its in-person and online class offerings through the academic catalogs and course listings on the website.

104.    When students log on to the Student Information System (SIS) registration portal to select their in-person classes, each class is listed not only by description, but also by meeting time and physical classroom location.

105.    Upon registration, students in many of Defendant's on-campus schools and programs were subject to strict personal attendance requirements as set forth in various departmental policies and handbooks, evidencing Defendant's requirement and the student's acceptance of the requirement that such students physically attend such classes on campus.

106.    That Defendant offered to provide, and members of the Tuition Class expected to receive, instruction on the physical campus is further evidenced by the parties' prior course of conduct.

---

[31] Id.
[32] Id.
[33] Id.

20

107. Those classes for which students expected to receive in-person instruction began the Spring 2020 semester by offering in-person instruction.

108. Each day for the weeks and months leading up to March 15, 2020, students attended physical classrooms to receive in-person instruction, and Defendant provided such in-person instruction.

109. Likewise, upon information and belief, most students were provided with syllabi and other documents that referenced class meeting schedules, locations, and physical attendance requirements.

110. Each day for the weeks and months prior to announced closures, students had access to the full campus.

111. Accordingly, it is clear that Defendant offered to provide live, in-person education, together with a full on-campus experience and that members of the Tuition Class accepted that offer by paying tuition and attending classes during the beginning of the Spring 2020 semester.

112. Based on this mutual assent, Plaintiffs and other members of the Tuition Class fulfilled their end of the bargain when they paid tuition for the Spring 2020 semester, either by paying out of pocket or by using student loan financing, or otherwise.

113. However, the Institute breached the contract with Plaintiffs and other members of the Tuition Class by moving all classes for the Spring 2020 semester to online distance learning platforms, and restricting the on-campus experience without reducing or refunding tuition accordingly.

114. This cause of action does not seek to allege "academic malpractice."

115. Rather, it is clear from the facts and circumstances that Defendant offered two separate and distinct products, one being live, in-person, on-campus education, with its featured ancillary

21

and related services, and the other being online distance education.

116.    Plaintiffs and members of the Tuition Class accepted Defendant's offer for live in-person on-campus education and paid valuable consideration in exchange.

117.    However, after accepting such consideration from Plaintiffs and other members of the Tuition Class, Defendant provided a materially different product, which deprived Plaintiffs and other members of the Tuition Class of the benefit of the bargain for which they had already paid.

118.    Defendant retained tuition monies paid by Plaintiffs and other members of the Tuition Class, without providing them the full benefit of their bargain.

119.    Defendant's refusal to issue appropriate pro-rated refunds is in bad faith.

120.    Plaintiffs and other members of the Tuition Class have suffered damage as a direct and proximate result of Defendant's breach amounting to the difference in the fair market value of the services and access for which they contracted, and the services and access which they actually received.

121.    As a direct and proximate result of Defendant's breach, Plaintiffs and other members of the Tuition Class are legally and equitably entitled to damages, to be decided by the trier of fact in this action, to include disgorgement of the difference between the fair market value of the online learning provided versus the fair market value of the live, in-person instruction in a physical classroom on a physical campus with all the attendant benefits for which they contracted.

### FOR A SECOND COLLECTIVE CAUSE OF ACTION
### UNJUST ENRICHMENT

**(Plaintiffs and Other Members of the Tuition Class)**

122.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

123.    Plaintiffs bring this count on behalf of themselves and other members of the Tuition

Class.

124. This claim is pled in the alternative to, and to the extent it is determined a contract does not exist or otherwise apply, the contract-based claim set forth in the First Cause of Action above.

125. Plaintiffs and other members of the Tuition Class paid substantial tuition for live, in-person instruction in physical classrooms on a physical campus with all the attendant benefits.

126. Plaintiffs and other members of the Tuition Class conferred a benefit on Defendant when they paid this tuition.

127. Defendant has realized this benefit by accepting such payment.

128. However, Plaintiffs and other members of the Tuition Class did not receive the full benefit of their bargain.

129. Instead, Plaintiffs and other members of the Tuition Class conferred this benefit on Defendant in expectation of receiving one product, *i.e.*, live in-person instruction in a physical classroom along with the on-campus experience of campus life as described more fully above, but they were provided with a materially different product carrying a different fair market value, *i.e.*, online instruction devoid of the on-campus experience, access, and services.

130. Defendant has retained this benefit, even though Defendant has failed to provide the services for which the tuition was collected, making Defendant's retention unjust under the circumstances.

131. As a result of closing campus and moving classes online, Defendant saved significant sums of money in the way of reduced utility costs, reduced maintenance and staffing requirements, reduced or eliminated hours for hourly employees, reduced or eliminated hours for paid work study students, and otherwise.

132. Simply put, it is significantly cheaper to operate a remote, on-line campus than a fully

23

open physical campus.  But even if it was not, it is not the product that students were offered and not the product the students expected to receive.

133.    Equity and good conscience require that the Institution return a portion of the monies paid in tuition to Plaintiffs and other members of the Tuition Class.

134.    This is particularly true where, as here, Defendant is supported by a $957 million endowment, while its students on information and belief, do not have access to such immense financial resources, and further where, on information and belief, a substantial portion of its students have incurred substantial debt to finance an educational experience that they did not receive.

135.    At the same time, Defendant received significant aid from the federal government, of which Defendant has indicated that it intends to retain roughly $5.2 million for itself, as opposed to passing it along to students.

136.    Defendant should be required to disgorge this unjust enrichment to the extent that Defendant has retained more than the fair market value for the product that Defendant was able to provide.

**FOR A THIRD COLLECTIVE CAUSE OF ACTION**
**BREACH OF CONTRACT**

**(Plaintiffs and Other Members of the Fees Class)**

137.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

138.    Plaintiffs bring this count on behalf of themselves and other members of the Fees Class.

139.    In addition to tuition, Defendant charges a number of mandatory fees.

140.    In its publications and, particularly on its website, Defendant specifically describes the nature and purpose of each fee.

141.    Some fees apply broadly to all or certain groups of students, while other fees are program or course based.

142.    Such fees are set forth not only in amount but also in description and purpose through the various academic catalogs and on the website.

143.    As such, it is axiomatic that the monies Plaintiffs and other members of the Fees Class paid towards these fees were intended by both the students and Defendant to cover the services, access, benefits and programs for which the fees were described and billed.

144.    By way of example, according to Defendant's website, the Student Activity Fee "supports programs, events, and services that enhance the quality of student life at RIT."[34]  The Student Health Services Fee "covers office visits and many of the basic services students may need."[35]

145.    As such, in accepting these terms and paying these fees, a contract was formed between Plaintiffs, including the Fees Class, and Defendant, which provided that Plaintiffs and other members of the Fees Class would pay these fees for or on behalf of themselves and, in exchange, Defendant would provide or make available the services, access, benefits and/or programs related to those fees, as promised.

146.    It is undisputed that Defendant did not provide any programs, events or services for the second half of the Spring 2020 semester, or *any* quality of student life at all.  Likewise, it is undisputed that Defendant's health services facilities were closed for in person visits during this time.

147.    Plaintiffs and other members of the Fees Class fulfilled their end of the bargain when they paid these fees for the Spring 2020 semester, either by paying out of pocket or by using

---

[34] https://www.rit.edu/fa/sfs/explanation-fees
[35] https://www.rit.edu/studentaffairs/studenthealth/about/feespayment

25

student loan financing, or otherwise.

148.     However, Defendant breached the contract with Plaintiffs and other members of the Fees Class by moving all classes for the Spring 2020 semester to online distance learning platforms, constructively evicting students from campus, closing most campus buildings and facilities, and cancelling most student activities, programs and other benefits for which the fees were paid.

149.     By retaining fees paid by Plaintiffs and other members of the Fees Class, without providing them the full benefit of their bargain, Defendant has failed to perform its contractual obligations.

150.     Defendant's refusal to offer appropriate pro-rated refunds is in bad faith.

151.     Plaintiffs and other members of the Fees Class have suffered damage as a direct and proximate result of Defendant's breach, namely being deprived of the value of the services, access, benefits and/or programs the fees were intended to cover.

152.     As a direct and proximate result of Defendant's breach, Plaintiffs and other members of the Fees Class are legally and equitably entitled to damages, to be decided by the trier of fact in this action, to include disgorgement of the pro-rata amount of fees that were collected but for which services were not provided.

### FOR A FOURTH COLLECTIVE CAUSE OF ACTION
### UNJUST ENRICHMENT

### (Plaintiffs and Other Members of the Fees Class)

153.     Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

154.     Plaintiffs bring this count on behalf of themselves and other members of the Fees Class.

155.     This claim is pled in the alternative to, and to the extent it is determined a contract does not exist or otherwise apply, the contract-based claim set forth in the Third Cause of Action above.

156.     Defendant has received a benefit at the expense of Plaintiffs and other members of the Fees Class to which it is not entitled.

157.     Plaintiffs and other members of the Fees Class paid substantial student fees for on-campus services, access, benefits and/or programs and did not receive the full benefit of the bargain.

158.     Plaintiffs and other members of the Fees Class conferred this benefit on Defendant when they paid the fees.

159.     Defendant realized this benefit by accepting such payment.

160.     Defendant has retained this benefit, even though Defendant has failed to provide the services, access, benefits and/or programs for which the fees were collected, making Defendant's retention unjust under the circumstances.

161.     As a result of closing campus and moving classes online, Defendant saved significant sums of money in the way of reduced utility costs, reduced maintenance and staffing requirements, reduced or eliminated hours for hourly employees, reduced or eliminated hours for paid work study students, and otherwise.

162.     Simply put, it is significantly cheaper to operate a remote, on-line campus than a fully open physical campus.  But even if it was not, it is not the product that students were offered and not the product the students expected to receive.

163.     Equity and good conscience require that Defendant return a portion of the monies paid in fees to Plaintiffs and other members of the Fees Class.

164.    This is particularly true where, as here, Defendant is supported by a $957 million endowment, while its students on information and belief, do not have access to such immense financial resources, and further where, on information and belief, a substantial portion of its students have incurred substantial debt to finance an educational experience that they did not receive.

165.    At the same time, Defendant received significant aid from the federal government, of which Defendant has indicated that it intends to retain roughly $5.2 million for itself, as opposed to passing it along to students.

166.    Defendant should be required to disgorge this unjust enrichment to the extent that Defendant has retained more than the fair market value for the product that Defendant was able to provide.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of members of the Classes, pray for judgment in their favor and against Defendant as follows:

A.    Certifying the Classes as proposed herein, designating Plaintiffs as Class representatives, and appointing undersigned counsel as Class Counsel;

B.    Declaring that Defendant is financially responsible for notifying the Class members of the pendency of this action;

C.    Declaring that Defendant has wrongfully kept monies paid for tuition and fees;

D.    Requiring that Defendant disgorge amounts wrongfully obtained for tuition and fees;

E.    Awarding injunctive relief as permitted by law or equity, including enjoining Defendant from retaining the pro-rated, unused monies paid for tuition and fees;

28

F.      Scheduling a trial by jury in this action;

G.      Awarding Plaintiffs' reasonable attorney's fees, costs and expenses, as permitted by law;

H.      Awarding pre and post-judgment interest on any amounts awarded, as permitted by law; and

I.      Awarding such other and further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury in this action of all issues so triable.

Dated January 14, 2021

Respectfully Submitted,

**ANASTOPOULO LAW FIRM, LLC**

BY: /s/ Roy T. Willey IV
Roy T. Willey IV*
Eric M. Poulin*
32 Ann Street
Charleston, SC 29403
Telephone: (843) 614-8888
Email:  eric@akimlawfirm.com
        roy@akimlawfirm.com

-and-

**BURSOR & FISHER, P.A.**
Philip L. Fraietta
Alec M. Leslie**
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email:  pfraietta@bursor.com
        aleslie@bursor.com

**BURSOR & FISHER, P.A.**
Sarah N. Westcot**
2665 S. Bayshore Drive, Suite 220
Miami, FL 33133
Telephone: (305) 330-5512
Facsimile: (305) 676-9006
Email: swestcot@bursor.com

-and-

**FERR & MULLIN, P.C.**

Robert L. Mullin
7635 Main Street Fishers
P.O. Box 440
Fishers, NY 14453
Telephone: (585) 869-0210
Facsimile: 95850 869-0211
Email: rlmullin@ferrmullinlaw.com
-and-

**MOREA SCHWARTZ BRADHAM
FRIEDMAN & BROWN LLP**

John M. Bradham*
444 Madison Avenue, 4th Floor
New York, NY 10022
Telephone: (212) 695-8050
Email: jbradham@msbllp.com

-and-

**TOPTANI LAW PLLC**

Edward Toptani*
375 Pearl Street, Suite 1410
New York, NY 10038
Telephone: (212) 699-8930
Email: edward@toptanilaw.com

-and-

30

**THE SULTZER LAW GROUP, P.C.**

Jason P. Sultzer, Esq.
Joseph Lipari, Esq.
Jeremy Francis, Esq.
85 Civic Center Plaza, Suite 200
Poughkeepsie, New York 12601
Tel: (845) 483-7100
Fax: (888) 749-7747
sultzerj@thesultzerlawgroup.com
liparij@thesultzerlawgroup.com
francisj@thesultzerlawgroup.com

-and-

**LEEDS BROWN LAW, P.C.**

Jeffrey K. Brown, Esq.
Michael A. Tompkins, Esq.
Brett R. Cohen, Esq.
One Old Country Road, Suite 347
Carle Place, NY 11514
(516) 873-9550
jbrown@leedsbrownlaw.com
mtompkins@leedsbrownlaw.com
bcohen@leedsbrownlaw.com

*\*Admitted via Pro Hac Vice*

*\*\*Pro Hac Vice Application Forthcoming*

31