UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

NICHOLAS BERGERON and NICK
QUATTROCIOCCHI, on behalf of themselves and
on behalf of all others similarly situated,

               Plaintiffs,

     v.

ROCHESTER INSTITUTE OF TECHNOLOGY,

               Defendant.

Case No. 6:20-cv-06283

**STATEMENT OF UNDISPUTED MATERIAL FACTS
IN SUPPORT OF ROCHESTER INSTITUTE OF TECHNOLOGY'S
MOTION FOR SUMMARY JUDGMENT**

Defendant Rochester Institute of Technology ("RIT") respectfully submits this statement of undisputed material facts pursuant to Local Rule 56.1 in support of its motion for summary judgment.

## PLAINTIFFS EACH EXECUTED AN EXPRESS CONTRACT WHICH CONTAINS NO PROMISE OF IN-PERSON INSTRUCTION

1.      On or about November 7, 2019, Bergeron executed a Student Financial Responsibility Agreement ("SFRA") governing the 2019-2020 academic year.  *See* Declaration of Qian (Sheila) Shen ("Shen Decl.") Ex. 1 ("Bergeron Dep. Tr.") 48:22 – 49:8; Shen Decl. Ex. 4 ("Bergeron Dep. Ex. 5").

2.      On or about October 29, 2019, Quattrociocchi executed an SFRA governing the 2019-2020 academic year.  Shen Decl. Ex. 13 ("Quattrociocchi Dep. Tr.") 59:25 – 61:4, 5:7 – 14; Shen Decl. Ex. 16 ("Quattrociocchi Dep. Ex. 8").

3.      The SFRA that both Plaintiffs executed provides:

> I understand and agree that *when I register for any class at the Rochester Institute of Technology (RIT; university), or receive any service from* RIT including student meals plan and/or housing charges or have deferred payments due or incur any liability for damages, *I accept full responsibility to pay all tuition, fees, and other associated costs assessed at any time as a result of my registration and/or receipt of services* . . . .

Bergeron Dep. Ex. 5; Quattrociocchi Dep. Ex. 8 (emphasis added).

4.      Plaintiffs do not interpret the SFRA to contain any promise of in-person instruction or services.  Bergeron Dep. Tr. 49:19 – 50:14; Quattrociocchi Dep. Tr. 96:15 – 97:11.

5.      The SFRA incorporates by reference RIT's Refund/Tuition Adjustment Policies ("Refund Policy").  Bergeron Dep. Tr. 50:19 – 51:3; Bergeron Dep. Ex. 5; Shen Decl. Ex. 7 ("Bergeron Dep. Ex. 8"); Quattrociocchi Dep. Tr. 168:8 – 169:2; Quattrociocchi Dep. Ex. 8; Shen Decl. Ex. 19 ("Quattrociocchi Dep. Ex. 13").

6.      RIT's Refund Policy does not provide that students are entitled to a refund if RIT cancels classes for a limited time.  Bergeron Dep. Tr. 89:11-14; Quattrociocchi Dep. Tr. 169:20 – 170:2.

7.      RIT's Refund Policy does not provide that students are entitled to a refund if RIT changes the modality of instruction.  Bergeron Dep. Tr. 89:11-14; Quattrociocchi Dep. Tr. 169:20 – 170:2.

## PLAINTIFFS HAVE NOT ESTABLISHED ANY SPECIFIC PROMISE OF IN-PERSON INSTRUCTION

8.      Bergeron claims that RIT's "brochures, catalogs, websites, advertising, social media posts, syllabi, etc. as outlined in the Complaint" contain promises of in-person instruction. *See* Shen Decl. Ex. 5 ("Bergeron Dep. Ex. 6") at Response to Interrogatory No. 4.[1]

9.      Bergeron asserts that the class locations and the absence of an express remote option in his class syllabi are promises of in-person instruction.  Bergeron Dep. Tr. 80:9 – 81:23.

10.     Before applying to RIT, Bergeron likely only reviewed the pages of RIT's website concerning its cyber-security program and tuition schedule and RIT's course bulletin.  Bergeron Dep. Tr. 29:22 – 33:14, 35:9-14.  Those documents did not contain any promise of in-person instruction.  Bergeron Dep. Tr. 29:22 – 33:14, 75:22 – 77:5.

11.     Prior to applying to RIT, no representative of RIT promised Bergeron that he would receive exclusively in-person instruction while attending RIT.  Bergeron Dep. Tr. 33:11-14, 35:18-23.

12.     Bergeron cannot identify any brochures from RIT containing a promise of in-person instruction or services.  Bergeron Dep. Tr. 64:16 – 66:10.

---

[1] Bergeron's interrogatory responses were complete.  Bergeron Dep. Tr. 58:23 – 59:4.

2

13.     Bergeron cannot identify any specific promise of in-person instruction in his spring 2020 course descriptions as stated in the course catalog. *See* Bergeron Dep. Tr. 66:11 – 71:24, Shen Decl. Ex. 8 ("Bergeron Dep. Ex. 9").

14.     Bergeron cannot identify any specific promise of in-person instruction or services in the RIT Undergraduate Bulletin for the 2019-2020 academic year contains ("Bulletin"). Bergeron Dep. Tr. 83:24 – 86:8; Shen Decl. Ex. 6 ("Bergeron Dep. Ex. 7").

15.     Bergeron cannot identify any specific promise of in-person instruction or services on RIT's website.  Bergeron Dep. Tr. 71:24 – 74:4.

16.     Bergeron cannot identify any specific promise of in-person instruction or services in RIT's social media posts.  Bergeron Dep. Tr. 77:6 – 78:22.

17.     Bergeron claims he was promised in-person instruction during the spring 2020 semester because during his prior years at RIT – when there was no pandemic – his classes were held in-person.  Bergeron Dep. Tr. 93:13- 94:13.

18.     Bergeron, however, enrolled in a fully online class for the spring 2020 semester. Bergeron Dep. Tr. 56:12-16.

19.     Before applying to RIT, Quattrociocchi did not review any RIT written materials, any portion of RIT's website, or any emails from RIT.  Quattrociocchi Dep. Tr. 33:6-17.

20.     Quattrociocchi asserts that RIT promised in-person instruction by offering a mechanical engineering program which he believes must be completed in-person.  Quattrociocchi Dep. Tr. 124:13 - 126:23, 141:4-25.

21.     Quattrociocchi asserts that RIT promised in-person instruction by virtue of the fact that RIT provides a separate online program.  Quattrociocchi Dep. Tr. 126:24 – 127:9.

22.     Quattrociocchi asserts that the class locations and designation of a class as in-person on RIT's course registration portal are promises of in-person instruction.  Quattrociocchi Dep. Tr. 138:10 – 141:3.

23.     Quattrociocchi asserts that RIT promised in-person instruction by using words such as "experiment," "conduct," "test," "evaluate," "hands-on," and "determine" in certain course descriptions.  Quattrociocchi Dep. Tr. 133:20 – 134:21, 143:15 – 146:21, 155:3 – 163:24.

24.     Quattrociocchi cannot identify any specific statements concerning in-person instruction in the documents he received from RIT over the course of applying for admission.  *Id.* at 33:18 – 36:7, 50:15 – 51:18, 52:9 – 53:2, 56:17 – 59:10, 65:17-23.

25.     Quattrociocchi cannot identify any specific statements concerning in-person instruction in marketing letters and brochures he received from RIT prior to applying.  Quattrociocchi Dep. Tr. at 33:18 – 36:7.

26.     Quattrociocchi cannot identify the contract he contends obligated RIT to provide him in-person instruction.  Quattrociocchi Dep. Tr. 116:12 – 118:6.

27.     Quattrociocchi cannot identify any specific promise of in-person instruction  in his letter of admission to RIT.   Quattrociocchi Dep. Tr. 61:11 – 63:7; Shen Decl. Ex. 14 ("Quattrociocchi Dep. Ex. 4").

28.     Quattrociocchi cannot identify any specific promise of in-person instruction or services on RIT's website.  Quattrociocchi Dep. Tr. 124:13 – 129:12, 141:4-25.

29.     Quattrociocchi cannot identify any specific promise of in-person instruction or services in the course descriptions for his lecture classes from spring 2020.  Quattrociocchi Dep. Tr. 136:22 – 138:9.

4

30.     Quattrociocchi cannot identify any specific promise of in-person instruction or services in RIT's handbooks.  Quattrociocchi Dep. Tr. 148:17 – 149:6.

31.     Quattrociocchi cannot identify any specific promise of in-person instruction or services in correspondence from RIT.  Quattrociocchi Dep. Tr. 149:7 – 150:10.

32.     Quattrociocchi cannot identify any specific promise of in-person instruction or services in RIT's marketing materials.  Quattrociocchi Dep. Tr. 150:11 – 154:22.

33.     Quattrociocchi cannot identify any specific promise of in-person instruction or services in RIT's publications.  Quattrociocchi Dep. Tr. 175:4 – 176:17.

34.     The Bulletin, on its first page, states it is not a contract.  It specifically disclaims any contractual promises:

> This Undergraduate Bulletin **does not constitute a contract between the university and its students on either a collective or individual basis**.  It represents RIT's best academic, social, and financial planning at the time of publication.  Course and curriculum changes, modifications of tuition, fees, dormitory, meal, and other charges, plus **unforeseen changes in other aspects of RIT life, sometimes occur** after the Graduate [*sic*] Bulletin has been printed but before the changes can be incorporated in a later edition of the same publication. **Because of this, Rochester Institute of Technology does not assume a contractual obligation with its students for the contents of this Undergraduate Bulletin** . . . .

Bergeron Dep. Tr. 86:8 – 88:1; Bergeron Dep. Ex. 7; Quattrociocchi Dep. Tr. 163:25 – 167:5; Shen Decl. Ex. 18 ("Quattrociocchi Dep. Ex. 12").

35.     RIT's website is not a contract.  Bergeron Dep. Tr. 74:5 – 75:21; Shen Decl. Ex. 9 ("Bergeron Dep. Ex. 10").

**PLAINTIFFS HAVE NOT ESTABLISHED ANY SPECIFIC PROMISE OF
IN-PERSON SERVICES**

36.      The only fees for which Plaintiffs seek a partial refund are the Student Health Fee

and Student Activity Fee.  Bergeron Dep. Tr. 130:16 – 131:1; Quattrociocchi Dep. Tr. 205:9 –

206:10.

37.      The Student Health Fee supports the salaries for costs associated with RIT's student

health center, including staff wages and materials.  Bergeron Dep. Tr. 131:2-13; Quattrociocchi

Dep. Tr. 206:16 – 207:11; *see also* Dkt. No. 48 n. 9; Shen Decl. Ex. 23 ("Concepcion Dep. Ex.

4"); Concepcion Decl. ¶ 8.

38.      The student health center continued to operate after RIT's transition to distance

learning in March 2020.  Bergeron Dep. Tr. 132:1-21; Concepcion Dep. Ex. 4.

39.      The Student Activity Fee revenues are managed by RIT's student government.

Concepcion Decl. ¶ 11.

40.      The Student Activity Fee supports various student activities including student

government activities, funding for student groups, student events, fraternities and sororities

administration, etc.  *See* Concepcion Decl. ¶ 10; *see also* Dkt. No. 48 n. 34.

41.      Unspent revenues from the Student Activity Fees collected are held in reserve for

the continued benefit of RIT students.  Concepcion Decl. ¶ 11

42.      Student activities and programs continued to be held after RIT's transition to

distance learning in March 2020.  Bergeron Dep. Tr. 133:5-11.  Concepcion Decl. ¶ 12

43.      Quattrociocchi cannot identify any documents or statements promising on-campus

amenities.  Quattrociocchi Dep. Tr. 120:10 – 121:21.

44.      Quattrociocchi assumes that he was entitled to in-person activities because he paid

a Student Activity Fee.  Quattrociocchi Dep. Tr. 120:10 – 121:7.

6

## RIT TRANSITIONS TO DISTANCE LEARNING IN RESPONSE TO COVID-19 & RELATED GOVERNMENT ORDERS AT SUBSTANTIAL EXPENSE

45.     On or about March 11, 2020, RIT announced that it was extending spring break by one week , through March 22, so that RIT's faculty and staff could make adjustments to the delivery of instruction and services.  Shen Decl. Ex. 2 ("Bergeron Dep. Ex. 2"); Shen Decl. Ex. 20 ("Quattrociocchi Dep. Ex. 14").

46.     On March 14, 2020, Monroe County and surrounding counties declared local states of emergency and Monroe County shut down all public schools.  Shen Decl. Ex. 26.

47.     On or about March 15, 2020 RIT announced that classes and services would be provided in a remote modality through the remainder of the semester.  Shen Decl. Ex. 10 ("Bergeron Dep. Ex. 11"); Shen Decl. Ex. 21 ("Quattrociocchi Dep. Ex. 15").

48.     On March 16, 2020, the Governor of New York directed every school in the state, including RIT, to close by March 18, 2020, and Executive Order 202.28 directed all schools in the state to remain closed for the remainder of the 2019-2020 academic year.  *See See Governor Cuomo Signs Executive Order Closing Schools Statewide for Two Weeks*, New York State, https://www.governor.ny.gov/news/governor-cuomo-signs-executive-order-closing-schools-statewide-two-weeks (last accessed Sept. 16, 2022); Executive Order No. 202.28 of the Governor of the State of New York, available at https://www.nyla.org/userfiles/Advocacy/EO202.28.pdf (last accessed Sept. 16, 2022).

## RIT WAS NOT UNJUSTLY ENRICHED BY RETAINING TUITION AND FEES

49.     Bergeron was accepted by RIT and another university, but chose to enroll at RIT solely because RIT had "one of the best cyber security programs in the country at the time." Bergeron Dep. Tr. at 24:16-25, 34:16 – 35:8.

50.     Bergeron received instruction in all classes, even after the transition to remote learning in the spring 2020 semester.  Bergeron Dep. Tr. 109:5-15.

51.     Bergeron's professors continued to teach and make themselves available to students.  Bergeron Dep. Tr. 109:16-24.

52.     Bergeron received grades in each class he took during the spring 2020 semester. Bergeron Dep. Tr. 48:1-21; Shen Decl. Ex. 3 ("Bergeron Dep. Ex. 4").

53.     Bergeron received credits for all classes he took during the spring 2020 semester. Bergeron Dep. Tr. 48:1-12; Bergeron Dep. Ex. 4.

54.     The spring 2020 semester was Bergeron's most successful year, academically. Bergeron Dep. Tr. 47:16-25; Bergeron Dep. Ex. 4.

55.     Quattrociocchi applied to RIT because of its mechanical engineering program and its proximity to his home town.  Quattrociocchi Dep. Tr. 26:7 – 27:9, 32:15 – 33:5.

56.     Quattrociocchi enrolled at RIT because of its mechanical engineering program, not because he was promised in-person instruction.  *See* Quattrociocchi Dep. Tr. at 46:13-23.

57.     Quattrociocchi's professors continued to teach post-transition.  Quattrociocchi Dep. Tr. 193:4-8.

58.     Quattrociocchi's labs continued post transition.  Quattrociocchi Dep. Tr. 193:14-25.

59.     Quattrociocchi received grades in each class he took during the spring 2020 semester.  Quattrociocchi Dep. Tr. 84:6 – 85:5; Shen Decl. Ex. 15 ("Quattrociocchi Dep. Ex. 7").

60.     Quattrociocchi received credits for all classes he took during the spring 2020 semester.  Quattrociocchi Dep. Tr. 84:6-16; Quattrociocchi Dep. Ex. 7.

61.     During the 2019-2020 academic year, RIT received $325,319,000 in tuition and fees.  Concepcion Decl. Ex. 1 at 3.

62.     During the 2019-2020 academic year, RIT's operating expenses totaled $588,597,000.  Decl. Concepcion Ex. 1 at 3.

63.     $407,943,000 of RIT's operating expenses for the 2019-2020 academic year were spent on salaries, wages, and benefits.  Concepcion Decl. Ex. 1 at 3.

64.     The revenues RIT received through the Student Health Fee for the 2019-2020 academic year totaled $4,663,041.  Concepcion Dep. Ex. 4.

65.     After the transition to distance learning, RIT's dorms remained open for students that could not safely go home, and thus buildings had to be powered and heated, meals had to be provided and delivered, etc.  *See* Concepcion Decl. ¶ 15.  RIT continued to incur basic building maintenance and utilities costs, and continued to pay its taxes and insurance costs.  *Id.*

66.     The Student Health Fee revenues are used to support RIT's Student Health Center, counseling, Disability Services Office, student wellness, and Center for Recreational Sports.  Concepcion Dep. Ex. 4.

67.     The expenses to operate RIT's Student Health Center, counseling, Disability Services Office, student wellness, and Center for Recreational Sports during the 2019-2020 academic year totaled $5,606,604.  Shen Decl. Ex. 22 ("Concepcion Dep. Tr.") 109:22 – 110:5; Concepcion Dep. Ex. 4.

68.     After the transition to distance learning, RIT continued to provide in-person health services to students who had to remain on campus, and expanded its telehealth services to all students for the duration of the spring 2020 semester.  Concepcion Decl. ¶ 9.

9

69.     The Student Activity Fee revenues are managed by RIT's student government. Concepcion Decl. ¶ 11.  Unspent revenues from the Student Activity Fees collected roll over each year for the continued benefit of RIT students.  *Id.* at ¶¶ 11, 12.

70.     After the transition to distance learning, RIT continued to provide students with remote student programs and activities.  Concepcion Decl. ¶ 12.

71.     RIT spend an additional nearly $450,000 in response to COVID-19 between March 1, 2020 and June 30, 2020 to ensure that all students safely and effectively transitioned to remote learning.  Concepcion Decl. ¶ 16.

72.     Additionally, RIT lost a substantial portion of its auxiliary revenues from housing and meal plan fees, as it provided *pro rata* refunds of housing for the portion of the semester transitioned online, and refunded all unused meal plan balances to students.  Concepcion Decl. ¶ 17.

73.     Bergeron was charged a total of $22,867 in tuition and fees for the spring 2020 semester.  Bergeron Dep. Tr. 125:8 – 127:5; Shen Decl. Ex. 12 ("Bergeron Dep. Ex. 16").

74.     Bergeron received $23,242.50 in scholarships during the spring 2020 semester. Bergeron Dep. Tr. 127:7-10; Bergeron Dep. Ex. 16.

75.     In addition to the tuition and fee charges, Bergeron paid for housing and a parking permit for the spring 2020 semester, both of which he received a *pro rata* refund.  Bergeron Dep. Tr. 128:15-18, 107:7-25.

## PLAINTIFFS SEEK DAMAGES BASED ON A PERCEIVED DETERIORATION IN THE QUALITY OF INSTRUCTION

76.     Bergeron believed that all of his classes had been "deeply devalued because of remote instruction methods."  Bergeron Dep. Tr. 117:19 – 118:2; Shen Decl. Ex. 11 ("Bergeron Dep. Ex. 14").  He believes this is so because of the pedagogical methods employed after the

transition to distance learning and the quality of instruction.  Bergeron Dep. Tr. 118:9 – 120:24.

For example, Bergeron believes that that his physics class was worse after the transition because

he was not able to see concepts in action in a lab.  Bergeron Dep. Tr. 116:13 – 117:2.

77.     Bergeron cannot articulate how to quantify an education, or the purported

diminution in value of his education post-transition.  Bergeron Dep. Tr. 120:14 – 121:4.

78.     Quattrociocchi believes his classes were devalued based on changes in pedagogical

methods after the transition.  Quattrociocchi Dep. Tr. 198:24 – 204:22.  Quattrociocchi asserts that

his Contemporary Issues class degraded in quality a bit, and that the rest of his spring 2020 courses

degraded substantially in quality but to varying degrees.  *Id.*

## PLAINTIFFS HAVE NOT ARTICULATED A VIABLE DAMAGES THEORY

79.     Bergeron believes he is entitled to a tuition and fees refund because classes were

"deeply devalued because of remote instruction methods.  Bergeron Dep. Tr. 117:19 – 119:23;

Bergeron Dep. Ex. 14.

80.     Likewise, Quattrociocchi believes his classes deteriorated in quality and seeks

damages because his professors employed different pedagogical methods to teach remotely after

March 2020.  Quattrociocchi Dep. Tr. 200:11 – 204:22.

81.     Plaintiffs rely on the opinion of Dr. Charles Cowan, Ph.D. to calculate the damages

they seek.  *See* Shen Decl. Ex. 25 ("Cowan Report").

82.     Dr. Cowan opines that the value of instruction RIT provided after March 22, 2020

is equivalent to the published tuition rate for RIT Online, RIT's separate online only program.

Cowan Report ¶ 17; *see also* Shen Decl. Ex. 24 ("Cowan Dep. Tr.") 67:20 – 69:10.  Dr. Cowan

opines that Plaintiffs are entitled to a refund of the difference between what they paid to RIT for

spring 2020 tuition and the RIT Online published tuition rate, *pro rata* for the portion of the semester conducted remotely in response to COVID-19 and related government orders. *Id.*

83.     RIT Online is an entirely separate program offering a limited number of courses and degrees targeted to a different demographic of students. While RIT's campus-based programs are targeted to generally full-time students pursuing their first Bachelor's degree, RIT Online is designed for and targeted to part-time and non-traditional students, many of whom are pursing graduate degrees, secondary degrees, or continuing professional education. Declaration of Therese Hannigan ("Hannigan Decl.") ¶ 4.

84.     The RIT Online curricula are developed by faculty who also teach campus-based courses, but the RIT Online courses are specifically designed for an online audience and tailored to students who are typically working professionals. Hannigan Decl. ¶ 5.

85.     During the spring 2020 semester, while RIT's campus-based programs offered 79 different degree programs across Bachelor's, Master's, and Ph.D. programs. Hannigan Decl. ¶ 6.

86.     RIT Online offered 6 degree programs, only 1 of which was an undergraduate program. The RIT Online undergraduate program is an individualized studies program not offered to RIT campus-based students. Hannigan Decl. ¶ 7.

87.     RIT Online provides limited student support services as compared to the resources available to campus-based students. RIT Online students do not have access to any student activities (whether or not those activities are supported through the RIT operating budget or the Student Activity Fee, which RIT Online students do not pay); a student government organization; campus resources such as security, library and research, or study spaces; enhanced accessibility services; or access to the campus facilities. Hannigan Decl. ¶ 9.

88.     RIT Online students are not permitted to receive institutional financial aid from RIT.  RIT Online students were not qualified to receive RIT merit scholarships, RIT grants, the graduate internship tuition rate, or the course audit rate.  Hannigan Decl. ¶ 10.

89.     RIT Online students do not receive institutional aid because the discounted tuition rate for RIT Online equals approximately the same net tuition and fees RIT campus-based students pay after deducting the institutional aid they receive.  Hannigan Decl. ¶ 11.

90.     Dr. Cowan created a calculation for his theory, and applied it to Quattrociocchi only.  *See* Cowan Report at Table 1.  He did not conduct a similar calculation for Bergeron.  *See generally id.*; *see also* Cowan Dep. Tr. 40:1-24, Cowan Dep. Tr. 49:12 – 50:7.

91.     Dr. Cowan did not apply his formula to any other putative class members to test the reliability of his formula.  *See generally* Cowan Report.

92.     Dr. Cowan did not create a formula applicable to RIT graduate students, and did not consider whether his damages formula would be appropriate to putative class members who are RIT graduate students.  *See generally* Cowan Report; Cowan Dep. Tr. 56:1-15.

93.     Dr. Cowan did not opine or determine a formula to calculate the Student Activities Fee or Student Health Fee refunds Plaintiffs seek.  *See generally* Cowan Report; Cowan Dep. Tr. 51:4-24.  Dr. Cowan does not know what fees are at issue.  Cowan Dep. Tr. 58:10 – 59:9.

## BERGERON SUSTAINED NO DAMAGES

94.     For the spring 2020 semester, Bergeron was charged $22,867 in tuition and fees. Bergeron Dep. Tr. 125:8 – 127:5; Bergeron Dep. Ex. 16.

95.     For the spring 2020 semester, Bergeron received $23,242.50 in scholarships and grants.  Bergeron Dep. Tr. 127:7-10; Bergeron Dep. Ex. 16.

96.     Bergeron paid out of pocket only for housing and parking.  Bergeron Dep. Tr. 128:15-18, 107:7-25.

97.     Bergeron received a *pro rata* refund for housing and parking.  Bergeron Dep. Tr. 107:7-25.

Dated:  New York, New York
        September 20, 2022

SANTIAGO BURGER LLP

By: /s *Fernando Santiago*
Fernando Santiago
fernando@litgrp.com
2280 East Avenue, 2nd Floor
Rochester, NY 14610
Tel:  (585) 563-2400
Fax:  (585) 563-7526


HOLLAND & KNIGHT LLP

By: /s/ *Qian Shen*
Robert J. Burns
Qian (Sheila) Shen
robert.burns@hklaw.com
qian.shen@hklaw.com
31 West 52nd Street
New York, NY 10019
Tel:  (212) 513-3200
Fax:  (212) 385-9010

Paul G. Lannon (*pro hac vice* forthcoming)
paul.lannon@hklaw.com
10 St. James Avenue, 11th Floor
Boston, MA 02116
Tel:  (617) 523-2700
Fax:  (617) 523-6850