UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

NICHOLAS BERGERON and NICK
QUATTROCIOCCHI, on behalf of themselves and
on behalf of all others similarly situated,

             Plaintiffs,

    v.

ROCHESTER INSTITUTE OF TECHNOLOGY,

             Defendant.

Case No. 6:20-cv-06283

**MEMORANDUM OF LAW IN SUPPORT OF
ROCHESTER INSTITUTE OF TECHNOLOGY'S
MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................ iii

SUMMARY OF ARGUMENTS ........................................................................................... 1

RELEVANT FACTS ............................................................................................................. 2

I.      Neither Plaintiff Chose to Attend RIT Because of Purported Promises of In-Person Instruction ................................................................................. 2

II.     Plaintiffs Executed an Express Contract Governing Their Obligation to Pay Tuition and Fees .......................................................................................... 3

III.    Plaintiffs Have Not Established That They Relied on Any Specific Promise of In-Person Instruction or Services When Paying RIT's Tuition and Fees. ........................................................................................................... 4

IV.    RIT Takes Extraordinary Measures to Transition to Distance Learning. ............... 5

V.     RIT Was Not Unjustly Enriched. ............................................................................. 6

ARGUMENT ......................................................................................................................... 7

I.      Summary Judgment Standard .................................................................................. 7

II.     Plaintiffs' Breach of Contract Claims Seeking Tuition and Fee Refunds Fail as a Matter of Law and Fact. ............................................................................ 7

     A.     RIT's Student Financial Responsibility Agreement Governs and Makes, No Promise of In-Person Instruction or Services. ........................... 8

     B.     No Implied Contract Terms Supplant or Supplement the SFRA. .............. 10

     C.     Even if an Implied Contract Existed, Plaintiffs Have Not Established Any Specific Promise of In-Person Instruction. ..................... 11

     D.     Plaintiffs Have Not Identified Any Specific Promise of In-Person Services in Exchange for Payment of the Student Health Fee and Student Activity Fee. ................................................................................ 15

III.    Plaintiffs' Unjust Enrichment Claims Fail as a Matter of Law and Undisputed Fact. .................................................................................................. 16

     A.     Plaintiffs Cannot Sustain a Claim for Unjust Enrichment Where a Valid Contract Governs. ........................................................................... 17

     B.     RIT Was Not Unjustly Enriched by the Transition to Remote Learning. .................................................................................................. 17

IV.    Plaintiffs Have Failed to Establish Any Viable Damages Theory ......................... 20

     A.     Discovery Confirms That Plaintiffs Seek Damages Based on a Perceived Deterioration in the Quality of Instruction ............................... 20

     B.     Plaintiffs' Expert Opinion That RIT Online Provides an Appropriate Damages Benchmark Is Fatally Flawed. .............................. 22

C.      Under Any Theory of Liability, Bergeron Sustained No Damages Because He Paid No Tuition or Fees. ........................................................24

CONCLUSION.................................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abuelhawa v. Santa Clara Univ.*,
    529 F. Supp. 3d 1059 (N.D. Cal. 2021) ................................................................13

*Andritz Hydro Canada, Inc. v. Rochester Gas & Elec. Corp.*,
    No. 20-CV-6772-FPG, 2021 WL 3115425 (W.D.N.Y. July 22, 2021)...................17

*Barkhordar v. President & Fellows of Harvard Coll.*,
    544 F. Supp. 3d 203 (D. Mass. 2021) ...................................................................15

*Chira v. Columbia Univ. in New York City*,
    289 F. Supp. 2d 477 (S.D.N.Y. 2003)...............................................................14, 15

*Chong v. Ne. Univ.*,
    No. CV 20-10844-RGS, 2021 WL 1857341 (D. Mass. May 10, 2021) ...................9

*In re Columbia Tuition Refund Action*,
    523 F. Supp. 3d 414 (S.D.N.Y. 2021)...............................................................14, 15

*Doe v. Rensselaer Polytechnic Inst.*,
    No. 120CV01359BKSCFH, 2020 WL 6544607 (N.D.N.Y. Nov. 6, 2020) .............8

*E.J. Brooks Co. v. Cambridge Sec. Seals*,
    31 N.Y.3d 441 (2018) .......................................................................................16, 17

*Espejo v. Cornell Univ.*,
    523 F. Supp. 3d 228 (N.D.N.Y. 2021)...................................................................18

*Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*,
    375 F.3d 168 (2d Cir. 2004)....................................................................................8

*Fedele v. Marist Coll.*,
    No. 20 CV 3559 (VB), 2021 WL 3540432 (S.D.N.Y. Aug. 10, 2021) ..................14

*Gertler v. Goodgold*,
    107 A.D.2d 481 (1985), *aff'd*, 66 N.Y.2d 946 (1985) ...........................................15

*Goldberg v. Pace Univ.*,
    535 F. Supp. 3d 180 (S.D.N.Y. 2021), *appeal docketed*, No. 21-1377 (2d Cir.
    May 28, 2021)........................................................................................................18

*Green Tree Servicing, LLC v. Christodoulakis*,
    689 F. App'x 66 (2d Cir. 2017) .............................................................................17

*Hannibal-Fisher v. Grand Canyon Univ.*,
    523 F. Supp. 3d 1087 (D. Ariz. 2021) ....................................................................9

*Hassan v. Fordham Univ.*,
    515 F. Supp. 3d 77 (S.D.N.Y.)......................................................................14, 15

*Hernandez v. Illinois Inst. of Tech.*,
    No. 20-CV-3010, 2021 WL 1600171 (N.D. Ill. Apr. 23, 2021) ...........................15

*Hickey v. University of Pittsburgh*,
    No. 2:20-CV-690, 2021 WL 1630579 (W.D. Pa. Apr. 27, 2021)............................9

*Hill v. Victor*,
    No. 00CV477, 2004 WL 2202649 (W.D.N.Y. Sept. 28, 2004)..............................11

*Horrigan v. Eastern Michigan Univ.*,
    No. 20-000075-MK, 2020 WL 6733786 (Mich. Ct. Cl. Sep. 24, 2020)..................9

*IDG USA, LLC v. Schupp*,
    No. 10-CV-76S F, 2012 WL 5217223 (W.D.N.Y. Oct. 22, 2012).........................17

*Julien J. Studley, Inc. v. N. Y. News, Inc.*,
    70 N.Y.2d 628 (1987) ..........................................................................................10

*Kashmiri v. Regents of Univ. of Cal.*,
    156 Cal. App. 4th 809 (2007) ..............................................................................10

*Kaye v. Grossman*,
    202 F.3d 611 (2d Cir. 2000).................................................................................17

*Leccese v. Metro. Life Ins. Co.*,
    No. 05-CV-6345 CJS, 2007 WL 1101096 (W.D.N.Y. Apr. 12, 2007) ....................7

*Lindner v. Occidental Coll.*,
    No. CV 20-8481-JFW, 2020 WL 7350212 (C.D. Cal. Dec. 11, 2020) ............15, 21

*Morales v. New York Univ.*,
    2021 WL 1026165 (S.D.N.Y. Mar. 17, 2021) .......................................................13

*Nungesser v. Columbia Univ.*,
    169 F. Supp. 3d 353 (S.D.N.Y. 2016).................................................................8, 10

*Papaspiridakos v. Educ. Affiliates, Inc.*,
    No. 10 CV 5628 RJD JO, 2013 WL 4899136 (E.D.N.Y. Sept. 11, 2013) ..............21

*Randall v. Univ. of the Pac.*,
    No. 5:20-CV-03196-EJD, 2022 WL 1720085 (N.D. Cal. May 28, 2022)
    ..........................................................................................................9, 10, 13, 14

*Rolph v. Hobart & William Smith Colls.*,
  271 F. Supp. 3d 386 (W.D.N.Y. 2017) .................................................................8

*Ryan v. Temple Univ.*,
  535 F. Supp. 3d 356 (E.D. Pa. 2021) ...............................................................15

*Shak v. Adelphi Univ.*,
  549 F. Supp. 3d 267 (E.D.N.Y. 2021) .............................................................13

*Sharp v. Patterson*,
  No. 03 CIV. 8772 (GEL), 2004 WL 2480426, at *8 (S.D.N.Y. Nov. 3, 2004) ....................10

*Smith v. Univ. of Pennsylvania*,
  534 F. Supp. 3d 463 (E.D. Pa. 2021) ...............................................................15

*Turner v. Nazareth Coll.*,
  No. 10-CV-6357T, 2011 WL 310787 (W.D.N.Y. Jan. 28, 2011) ...........................................21

*UC Remote Cases*,
  No. JCCP5112, at 9-13 (Ruling/Order on Demurrer)
  (Super. Ct. July 29, 2021) ........................................................................22

*Watts v. Columbia Artists Mgmt. Inc.*,
  188 A.D.2d 799 (3d Dep't 1992) ........................................................................10

*Zagoria v. New York Univ.*,
  No. 20CIV3610GBDSLC, 2021 WL 1026511 (S.D.N.Y. Mar. 17, 2021) ....................14, 15

*Zwicker v. Lake Superior State University*,
  No. 20-000070-MK, 2020 WL 8572097 (Mich. Ct. Cl. Aug. 31, 2020) ..................................9

**Other Authorities**

Fed. R. Civ. P. 56(c) .................................................................................7

Defendant Rochester Institute of Technology ("RIT") submits this memorandum of law in support of its motion for summary judgment against the remaining claims in the Second Consolidated Amended Class Action Complaint of Plaintiffs Nicholas Bergeron ("Bergeron") and Nick Quattrociocchi ("Quattrociocchi") (together, "Plaintiffs") .

## SUMMARY OF ARGUMENTS

While Plaintiffs' allegations that they were promised in-person instruction and services, regardless of the circumstances, may have been sufficient to withstand the liberal pleading standards on a motion to dismiss, those bare allegations cannot withstand summary judgment. After full discovery, Plaintiffs have unearthed no evidentiary support for their claims.  Indeed, Plaintiffs' own sworn testimony and discovery responses demonstrate that their surviving claims for breach of contract and unjust enrichment fail as a matter of undisputed fact and law.

First, Plaintiffs each executed an express contract governing what they were to be provided in exchange for paying tuition and fees:  a student financial responsibility that was not considered at the motion to dismiss stage.  That express contract admittedly contains no specific promise that Plaintiffs would be provided in-person instruction and services.

Second, even absent an express contract, Plaintiffs have identified no discrete statements in *any* of RIT's publications on which they purport to rely that specifically promise in-person instruction or services without exceptions.   Instead, Plaintiffs rely on notices of classroom locations, aspirational course descriptions touting experiential marketing, and the mere fact that RIT offers a separate online academic program.  As a matter of law, none of those statements or facts are contractual promises binding RIT to provide in-person instruction or services at all times.

Third, as developed through discovery, Plaintiffs' theory of damages based on a perceived deterioration in the quality of instruction post-transition unavoidably implicates the educational

malpractice doctrine.  Both Plaintiffs testified that they felt they were damaged by a change in the quality of instruction, but neither Plaintiff could articulate how to calculate this supposed difference in value.  The threadbare expert analysis relied upon by Plaintiffs does not, and cannot, remedy this deficiency.  The inability to formulate a viable damages calculation is one of the reasons the educational malpractice doctrine bars claims alleging damages based on the quality or value of education:  they are inherently speculative and subjective.

Fourth, Plaintiffs' unjust enrichment claim fails as a matter of law and undisputed fact.  As a matter of law, Plaintiffs concede that a contract – either express or implied – governs their claims. There are no allegations that the contract is invalid.  New York law does not permit unjust enrichment claims where a contract governs.  Further, Plaintiffs received the benefit of their bargain through the pandemic:  RIT's faculty continued to teach the courses for which Plaintiffs had registered, and RIT awarded Plaintiffs the credits they earned for completing those courses, all while continuing to have access (albeit remote access in some cases) to RIT's resources, activities and services.  RIT took extraordinary measures to make this happen and as a result incurred extraordinary costs.  There was no "enrichment" at the expense of students, much less an "unjust" enrichment.

## RELEVANT FACTS

### I.  Neither Plaintiff Chose to Attend RIT Because of Purported Promises of In-Person Instruction.

Bergeron and Quattrociocchi both applied to RIT because it offered technical programs in which they were interested  Bergeron wanted to attend a technical school offering a cybersecurity

program.   SOMF 10.   Quattrociocchi applied to RIT because of its mechanical engineering program and its proximity to his home town.   SOMF 55.[1]

Bergeron reviewed no RIT publications containing a promise of in-person instruction before applying.   SOMF 10.   Prior to applying to RIT, no representative of RIT promised Bergeron that he would receive exclusively in-person instruction while attending RIT.   SOMF 11.   Likewise, Quattrociocchi did not review any RIT written materials, any portion of RIT's website, or any emails from RIT prior to applying for admission.   SOMF 19.   While he recalls reviewing some (unspecified) documents prior to applying to RIT, he cannot identify any specific statements in those documents promising in-person instruction or services.   SOMF 24-33.

Neither Plaintiff enrolled at RIT because it promised them in-person instruction or services. Bergeron chose to enroll at RIT over another university to which he was accepted because RIT had "one of the best cybersecurity programs in the country at the time" – not because of any promise of in-person instruction or services.   SOMF 49.   Likewise, Quattrociocchi enrolled at RIT because of its mechanical engineering program, not because he was promised in-person instruction.   SOMF 55-56.

## II.    Plaintiffs Executed an Express Contract Governing Their Obligation to Pay Tuition and Fees.

Both Plaintiffs executed RIT's Student Financial Responsibility Agreement ("SFRA") for the 2019-2020 academic year.   SOMF 1-2.   The SFRA governs Plaintiffs' obligation to pay tuition and fees and reads in relevant part:

> I understand and agree that **when I register for any class** at the Rochester Institute of Technology (RIT university), **or receive any service from RIT** including

---

[1] Quattrociocchi first applied for admission to RIT in 2015.   *See* Declaration of Qian (Sheila) Shen ("Shen Decl.") Ex. 13 ("Quattrociocchi Dep. Tr.") 29:21 – 30:15.   He was accepted, but not into RIT's mechanical engineering program. *Id.* at 39:10 – 40:12.   Rather than enroll in the management program that was offered, Quattrociocchi enrolled for a year St. John Fisher College, then at Monroe Community College for two years.   *See Id.* at 40:13 – 46:16, 48:20 – 49:6.   Quattrociocchi then re-applied to RIT's mechanical engineering program again in 2018.   *Id.* at 53:3-6.

> student meals plan and/or housing charges or have deferred payments due or incur any liability for damages, **I accept full responsibility to pay all tuition, fees, and other associated costs assessed at any time as a result of my registration and/or receipt of services . . . .**

(Emphasis added.)  Plaintiffs admit that they do not interpret the SFRA to contain any promise of in-person instruction or services.  SOMF 4.  The SFRA also incorporates by reference RIT's Refund/Tuition Adjustment Policies ("Refund Policy").  SOMF 5.  Plaintiffs both also admit that the Refund Policy does not provide for tuition or fees refunds if RIT changes the modality of instruction or cancels classes for a limited period of time.  SOMF 7.

## III.   Plaintiffs Have Not Established That They Relied on Any Specific Promise of In-Person Instruction or Services When Paying RIT's Tuition and Fees.

In the operative Complaint,[2] Plaintiffs assert that RIT promised in-person instruction and access to facilities in exchange for tuition; in-person programs and events in exchange for the Student Activity Fee; and in-person health services in exchange for the Student Health Fee.  *See* Dkt. No. 48 ¶¶ 27-33.  Plaintiffs cite a single excerpt from RIT's website in support of those allegations.  *See id.* at ¶ 25.

Over the course of discovery, however, Plaintiffs have admitted that they do not interpret any statements in RIT's brochures, social media posts, handbooks, correspondence, or other marketing materials as specific promises of in-person instruction or services.  SOMF 12, 25. Indeed, when pressed at their depositions, Plaintiffs clarified that the only statements which they believe constitute specific promises of in-person instruction are limited to:  (i) the designation of classroom locations on course syllabi and RIT's course registration portal, SOMF 9, 22; (ii) the absence of an express remote option for classes scheduled in a physical classroom, SOMF 9; (iii) the use of terms such as "experiment," "conduct," "test," "evaluate," "hands-on" and "determine"

---

[2] The Second Consolidated Amended Class Action Complaint.  *See* Dkt. No. 48.

in certain course descriptions found in the 2019-2020 RIT Undergraduate Bulletin ("Bulletin") and course catalog, and in program descriptions on RIT's website, SOMF 23; and (iv) the fact that RIT offers a separate, exclusively online academic program, SOMF 21.

None of these statements and facts rise to the level of a specific promise of exclusively in-person instruction or services as a matter of law.  Likewise, Plaintiffs have not identified any specific promise that they would be provided exclusively in-person services in exchange for payment of the Student Activity Fee and Student Health Fee.  SOMF 12-16, 43-44.  Plaintiffs acknowledge that neither the Bulletin nor website are contracts, consistent with the express disclaimers therein. SOMF 34-35.

## IV.    RIT Takes Extraordinary Measures to Transition to Distance Learning.

On or about March 11, 2020, RIT announced that it was extending spring break by one week,[3] through March 22, so that RIT's faculty and staff could make adjustments to the delivery of instruction and services.  SOMF 45.  On March 15, 2020, after Monroe County and surrounding counties declared local states of emergency and closed all public schools, RIT announced that classes would stay in the remote learning format for the remainder of the semester.  SOMF 47.

On March 16, 2020, the Governor of New York directed every school in the state, including RIT, to close by March 18, 2020, and Executive Order 202.28 directed all schools in the state to remain closed for the remainder of the 2019-2020 academic year.  SOMF 48.

In response to COVID-19, RIT spent nearly $450,000 in excess of its budgeted operating expenses between March 1, 2020, and June 30, 2020, to ensure that students could safely continue instruction and programming for the remainder of the Spring 2020 semester.  SOMF 71.

---

[3] RIT's spring break was originally planned from March 8, 2020 – March 15, 2020, with classes resuming March 16, 2020.  *See* Shen Decl. Ex. 6 ("Bergeron Dep. Ex. 7").

V.       **RIT Was Not Unjustly Enriched.**

Plaintiffs received the benefit of their bargain with RIT:  in exchange for paying tuition and fees, Plaintiffs were allowed to register for classes, and they in fact accepted services from RIT including, *inter alia*, instruction by RIT faculty; access to academic support services; opportunities to engage in student programs, clubs, and extracurriculars; and health and wellness services.  SOMF 50-54, 57-60.  Plaintiffs do not dispute that academic instruction and services continued after March 2020, albeit in a remote format.  Plaintiffs each received instruction for the entire Spring 2020 semester – all of Plaintiffs' lecture and lab format classes continued post-transition.  SOMF 50-51, 57-58.  They each received grades and full credits for all classes taken; indeed, both Plaintiffs received stronger grades for their Spring 2020 coursework than they had during previous RIT semesters.  *See* Bergeron Dep. Ex. 4; Quattrociocchi Dep. Ex. 7.  RIT continued to provide academic support services, student programming, club meetings and extracurrriculars, and health and wellness services in a remote format after March 2020 (although Plaintiffs chose not to participate in most of these, both before and during the Spring 2020 semester)[4].  SOMF 38, 42, 66, 68, 70.

All of these efforts came at substantial cost:  during the Spring 2020 semester, RIT spent approximately $450,000 over its operating budget in response to COVID to ensure the health and safety of its students and its continued provision of effective instruction and services.  SOMF 71.[5] And even without the additional expenses related directly to its COVID response, RIT was not enriched by its collection of tuition and fees (for services that it continued to provide for the

---

[4] Even before March 2020, neither Plaintiff participated in any extracurricular activities or made much use of the various opportunities and facilities that RIT offered.  Bergeron Dep. Tr. 43:8 – 44:20; Quattrociocchi Dep Tr. 81:13 – 83:25.
[5] Between March 2020 and June 30, 2021, RIT incurred over $7.3 million of COVID-related expenses.  Concepcion Decl. ¶ 17.

entirety of the Spring 2020 semester).  During the 2018-2019 academic year, RIT collected $325,319,000 in tuition and fees.  SOMF 61.  The cost of educating its students, however, was more than 80% greater than that revenue:  $588,597,000.  SOMF 62.

Neither Plaintiff actually paid RIT's published tuition and fees rate.  Bergeron received scholarships and grants in excess of the published tuition and fee rates he was charged; he only paid for housing out of pocket during the Spring 2020 semester, and received a full *pro rata* refund of these charges for the period during which campus housing was closed.  SOMF 74-75, 95-97. Quattrociocchi received a $2,000 scholarship for the Spring 2020 semester.

## ARGUMENT

### I.     Summary Judgment Standard

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party bears the initial burden of demonstrating that the evidence creates no genuine issue of material fact.  *Leccese v. Metro. Life Ins. Co.*, No. 05-CV-6345 CJS, 2007 WL 1101096, at *4 (W.D.N.Y. Apr. 12, 2007) (Siragusa, J.).  When the non-moving party bears the burden of proof at trial, the moving party satisfies its initial burden by showing the "evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial."  *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986)).

### II.    Plaintiffs' Breach of Contract Claims Seeking Tuition and Fee Refunds Fail as a Matter of Law and Fact.

To maintain their breach of contract claim under New York law, Plaintiffs must establish by admissible evidence "(1) the existence of an agreement, (2) adequate performance of the

contract by the plaintiff, (3) breach of the contract by the defendant, and (4) damages." *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004). In the context of student claims against universities, the students must establish "specifically designated and discrete promises" that were supposedly breached. *Nungesser v. Columbia Univ.*, 169 F. Supp. 3d 353, 370 (S.D.N.Y. 2016), *appeal withdrawn*, No. 17-900, 2017 WL 4404575 (2d Cir. July 10, 2017) (quoting *Ward v. New York Univ.*, No. 99 CIV 8733 (RCC), 2000 WL 1448641, at *4 (S.D.N.Y. Sept. 28, 2000)). "General policy statements" and "broad and unspecified procedures and guidelines" are not sufficient. *Id.*; *see also Doe v. Rensselaer Polytechnic Inst.*, No. 120CV01359BKSCFH, 2020 WL 6544607, at *6–7 (N.D.N.Y. Nov. 6, 2020); *Rolph v. Hobart & William Smith Colls.*, 271 F. Supp. 3d 386, 407 (W.D.N.Y. 2017) ("aspirational statements" in school handbook not sufficient).

Here, an express contract sets forth the services Plaintiffs were to receive in exchange for paying tuition and fees. The clear and unambiguous language of that express agreement contains no promise of *in-person* instruction or services, which Plaintiffs concede. Because an express contract governs, Plaintiffs' assertion that an (unspecified) promise of in-person instruction exists in an implied contract comprised of various (unspecified) documents fails as a matter of law. Even if there were no express contract, Plaintiffs have failed to adduce any evidence of reliance on a specific promise of in-person instruction and services in any RIT publications.

A.    **RIT's Student Financial Responsibility Agreement Governs and Makes, No Promise of In-Person Instruction or Services.**

Plaintiffs each executed an SFRA prior to enrolling at RIT for the 2019-2020 academic year, a fact the Court has not previously considered.[6] SOMF 1-2. That SFRA provides, in relevant part:

---

[6] At the motion to dismiss phase, the Court declined to consider the SFRA. *See* Dkt. No. 43 at 11-13.

> I understand and agree that *when I register for any class at the Rochester Institute of Technology (RIT; university), or receive any service from* RIT including student meals plan and/or housing charges or have deferred payments due or incur any liability for damages, *I accept full responsibility to pay all tuition, fees, and other associated costs assessed at any time as a result of my registration and/or receipt of services . . . .*

SOMF 3.

Courts analyzing substantially identical language have found uniformly that such contracts govern the students' obligation to pay tuition and fees and contain no specific promise of in-person instruction. *See, e.g., Randall v. Univ. of the Pac.*, No. 5:20-CV-03196-EJD, 2022 WL 1720085, at *5 (N.D. Cal. May 28, 2022) .[7]

In *Randall*, for example, the Northern District of California held that an express SFRA governed the students' obligations to pay tuition and fees. *Randall*, No. 5:20-CV-03196-EJD, 2022 WL 1720085, at *5. The SFRA in *Randall* read in relevant part:

> I acknowledge that when I register for any courses with the University of the Pacific or receive services or purchase goods, I am responsible for all "charges" as they are posted to my account but are not limited to tuition, fees, room and board, meal plans, Laptop Agreement, bookstore charges and library fees.

*Id.* The court held that nowhere in that express agreement was there a specific promise that the university would provide exclusively "in-person instruction or access to on-campus services." *Id.* The analysis in *Randall* applies equally here, as both California and New York law require a *specific* promise of in-person instruction by a university. *Compare  Kashmiri v. Regents of Univ.*

---

[7] *Accord Hickey v. University of Pittsburgh*, No. 2:20-CV-690, 2021 WL 1630579 (W.D. Pa. Apr. 27, 2021), *appeal docketed*, No. 21-2013 (3d Cir. May 5, 2021); *Hannibal-Fisher v. Grand Canyon Univ.*, 523 F. Supp. 3d 1087, 1094 (D. Ariz. 2021); *Chong v. Ne. Univ.*, No. CV 20-10844-RGS, 2021 WL 1857341, at *5 (D. Mass. May 10, 2021); *Zwicker v. Lake Superior State University*, No. 20-000070-MK, 2020 WL 8572097 (Mich. Ct. Cl. Aug. 31, 2020), *recons. denied*, 2020 WL 8572097 (M. Ct. Cl. Aug. 31, 2020), *aff'd*, No. 355128, 2022 WL 414183 (Mich. Ct. App. Feb. 10, 2022); *Horrigan v. Eastern Michigan Univ.*, No. 20-000075-MK, 2020 WL 6733786, at *4 (Mich. Ct. Cl. Sep. 24, 2020), *aff'd*, No. 355128, 2022 WL 414183 (Mich. Ct. App. Feb. 10, 2022).

*of Cal.*, 156 Cal. App. 4th 809, 829 (2007) *with Nungesser*, 169 F. Supp. 3d at 370.  Indeed, neither

Plaintiff interprets the SFRA to promise in-person instruction or services.  SOMF 4.

The SFRA also incorporates by reference RIT's Refund/Tuition Adjustment Policies

("Refund Policy").  *See* SOMF 5.  The Refund Policy permits refunds under certain circumstances

if a student withdraws their enrollment.  *See* Bergeron Dep. Ex. 8; Quattrociocchi Dep. Ex. 13.

Plaintiffs both agree that nothing in the Refund Policy requires RIT to issue refunds if it changes

the mode of instruction.  SOMF 7.  Consequently the express contractual terms of the SFRA govern

this dispute, and they do not promise in-person instruction or services.

### B.      No Implied Contract Terms Supplant or Supplement the SFRA.

An implied-in-fact-contract is recognized under New York law only where there is "no

express agreement dealing with the same subject matter."  *Julien J. Studley, Inc. v. N. Y. News,*

*Inc.*, 70 N.Y.2d 628, 629 (1987).  In other words, "the theories of express contract and of contract

implied in fact are mutually exclusive."  *Watts v. Columbia Artists Mgmt. Inc.*, 188 A.D.2d 799,

801 (3d Dep't 1992); *accord Sharp v. Patterson*, No. 03 CIV. 8772 (GEL), 2004 WL 2480426, at

*8 (S.D.N.Y. Nov. 3, 2004).

RIT's SFRA on its face governs the consideration Plaintiffs receive in exchange for paying

tuition and fees:  they are provided the ability to register for classes and receive services from RIT.

SOMF 3; *see also Randall*, No. 5:20-CV-03196-EJD, 2022 WL 1720085, at *5 (express agreement

was "a broad agreement that clearly states that the student is responsible for all billed charges and

that the student understands that he or she is receiving educational services *in exchange* for

payment") (emphasis added).  As such, an express agreement governs the subject matter at issue,

and Plaintiffs cannot prevail on their theory that a specific promise of in-person instruction and

services can be implied from RIT's non-binding, non-contractual publications.

### C.     Even if an Implied Contract Existed, Plaintiffs Have Not Established Any Specific Promise of In-Person Instruction.

Plaintiffs' implied contract theory still fails even if, *arguendo*, the SFRA did not govern the issues in dispute.  While the Court determined that Plaintiffs' allegations of implied contract were sufficient to survive a motion to dismiss, *see* Dkt. No. 43, at summary judgment Plaintiffs cannot simply rely on conjecture, but must identify the specific evidence supporting their claims. *Hill v. Victor*, No. 00CV477, 2004 WL 2202649, at *2 (W.D.N.Y. Sept. 28, 2004).  As developed through extensive discovery, including written interrogatories and depositions, none of the documents upon which Plaintiffs rely contain enforceable promises of in-person instruction and services.

Plaintiffs' pleadings assert that RIT promised in-person instruction and services, citing a single statement from RIT's website concerning experiential learning.  *See* Dkt. No 48 ¶ 27.  In Bergeron's interrogatory responses, he elaborated that RIT's promises of in-person instruction were found in RIT's "brochures, catalogs, websites, advertising, social media posts, syllabi, etc. as outlined in the Complaint, and by the parties' prior course of conduct."  *See* SOMF 8.[8]  When pressed at his deposition to identify what statements in these documents contained promises of in-person instruction, Bergeron conceded that he could not identify any statements in the Bulletin, or in brochures, catalogs, websites, advertising, or social media posts, that promised in-person instruction or services.  SOMF 12.  Bergeron testified only that he believed the classroom location designation in course syllabi and the absence of an explicit remote option for some of his Spring 2020 classes[9] were promises of in-person instruction.  SOMF 9.

---

[8] Quattrociocchi's interrogatory responses simply referred back to the operative Complaint.  *See* Shen Decl. Ex. 17 ("Quattrociocchi Dep. Ex. 9").

[9] One of Bergeron's Spring 2020 classes, Prostitution and Vice, was taught entirely online even prior to March 2020. *See* Bergeron Dep. Tr. 56:12-16.

Quattrociocchi, on the other hand, did not elaborate in his interrogatory responses as to what documents he asserts contain promises of in-person instruction, relying instead on the allegations in the pleadings.  *See* Quattrociocchi Dep. Ex. 9.  Like Bergeron, Quattrociocchi could not identify any specific statements in RIT's publications that promised in-person instruction or services.  He believes in-person instruction was implied from RIT's listing of degree programs, such as, mechanical engineering, which in his opinion require in-person activities.  SOMF 20.  He believes the use of terms such as "experiment," "conduct," "test," "evaluate," "hands-on," and "determine" in certain (unspecified) course descriptions are promises of in-person instruction, apparently on the mistaken presumption that such actions could not be performed remotely, which obviously they were.  SOMF 23.  He further asserts, like Bergeron, that the designation of class locations are promises of in-person instruction.  SOMF 22.  And Quattrociocchi believes the fact that RIT offers a separate academic program for wholly online students should somehow be construed as a promise that its campus-based programs would be exclusively in-person.  SOMF 21.

As such, by Plaintiffs' own admissions, the only supposed promises of in-person instruction at issue are (i) classroom location designations in course syllabi and on RIT's course registration portal; (ii) the use of terms such as "experiment," "conduct," "test," "evaluate," "hands-on" and "determine" in unspecified course descriptions; and (iii) RIT's operation of a wholly online academic program.

As a threshold matter, both the Bulletin and RIT's website (which include general descriptions of RIT's program offerings and the RIT Online program) contain explicit disclaimers that they are not contractual documents and that RIT can make course and curriculum changes.  SOMF 34.  The Bulletin provides, on the second page next to the table of contents:

> This Undergraduate Bulletin **does not constitute a contract between the university and its students on either a collective or individual basis**. It represents RIT's best academic, social, and financial planning at the time of publication. Course and curriculum changes, modifications of tuition, fees, dormitory, meal, and other charges, plus **unforeseen changes in other aspects of RIT life, sometimes occur** after the Graduate [*sic*] Bulletin has been printed but before the changes can be incorporated in a later edition of the same publication. **Because of this, Rochester Institute of Technology does not assume a contractual obligation with its students for the contents of this Undergraduate Bulletin** . . . .

SOMF 34. Both Plaintiffs confirmed that they interpret this disclaimer to mean that the Bulletin is not a document containing any binding contractual promises. SOMF 14, 34.

Moreover, classroom designations in course syllabi and registration portals are not specific promises of in-person instruction, especially when changes are permitted at any time. *Shak v. Adelphi Univ.*, 549 F. Supp. 3d 267, 272 (E.D.N.Y. 2021) (campus, building, and classroom locations listed in course catalog not specific promise of in-person instruction); *Morales v. New York Univ.*, 2021 WL 1026165, at *1 (S.D.N.Y. Mar. 17, 2021) ("While the Course Catalog references building locations, classroom numbers, and instruction modes it 'does not imply a contractual entitlement to continued instruction in the same location and manner.'") (citation omitted); *Randall*, No. 5:20-CV-03196-EJD, 2022 WL 1720085, at *6 ("Statements in the course catalog about the 'days and times' and the 'location' of courses are not express promises to provide in-person instruction."); *Abuelhawa v. Santa Clara Univ.*, 529 F. Supp. 3d 1059, 1066 (N.D. Cal. 2021) (same). Nor are course descriptions stating that a class is to be held "in-person." *Shak*, 549 F. Supp. 3d at 272 (course catalog filter allowing students to search for classes by "Mode of Instruction" not a promise of in-person instruction); *Hassan v. Fordham Univ.*, 515 F. Supp. 3d 77, 88 (S.D.N.Y.), *opinion amended and superseded in part*, 533 F. Supp. 3d 164 (S.D.N.Y. 2021); *Fedele v. Marist Coll.*, No. 20 CV 3559 (VB), 2021 WL 3540432, at *4 (S.D.N.Y. Aug. 10, 2021). Likewise, aspirational course descriptions touting direct engagement, site, visits, and other forms

of experiential learning are also not promises of in-person instruction. *Zagoria v. New York Univ.*, No. 20CIV3610GBDSLC, 2021 WL 1026511, at *4 (S.D.N.Y. Mar. 17, 2021); *Randall*, No. 5:20-CV-03196-EJD, 2022 WL 1720085, at *6 ("Although UOP's promotional materials and course catalogs certainly created an expectation that classes would be taught in-person and that students would be able to take advantage of a myriad of on-campus opportunities, these materials do not contain any specific or identifiable promise that is adequate to support a breach of contract, even one implied in fact.").

The mere fact that RIT offers a separate program for wholly online students cannot implicitly operate as a specific promise that RIT's campus-based program would be held exclusively in-person in all circumstances. *In re Columbia Tuition Refund Action*, 523 F. Supp. 3d 414, 423 (S.D.N.Y. 2021). To constitute a specific promise, the promise must be *explicit*, not implicit, and must be memorialized in a writing published by RIT. *Id.* at 421 (the student "must point to a provision that guarantees 'certain specified services,'") (citation omitted); *see also Chira v. Columbia Univ. in New York City*, 289 F. Supp. 2d 477, 485–86 (S.D.N.Y. 2003) (dismissing breach of contract claim where the plaintiff could not "point[ ] to [a] document or conversation that [gave] rise to a promise which [the institution] breached"). Moreover, RIT's campus-based students had access to online classes *before* March 2020. Indeed, Bergeron, an "in-person" student, voluntarily enrolled in a fully online class at the beginning of the Spring 2020 semester, paying the same tuition rate that he would have paid if enrolled in fully in-person classes. SOMF 18. Accordingly, the mere fact that a distinct body of RIT students were enrolled in a distinct wholly online program provides no basis for an inference that the classes in RIT's campus-based program would be conducted exclusively in-person in all circumstances. And such an inference

cannot, as a matter of law, constitute the kind of express, documented promises that New York courts will enforce as contracts.  *Chira*, 289 F. Supp. 2d at 485–86.

Nor do Plaintiffs' vague references to pre-pandemic practices regarding in-person instruction remedy their inability to point to any specific promises that RIT's instruction would remain exclusively in-person in all circumstances.  Under New York law, a "[u]niversity's academic and administrative prerogatives" may not "be impliedly limited by custom."  *Gertler v. Goodgold*, 107 A.D.2d 481 (1985), *aff'd*, 66 N.Y.2d 946 (1985).  Citing *Gertler* and applying New York law, the consensus developed by courts in this state (and other states) is that pre-pandemic practices simply do not "imply a contractual entitlement to continued instruction in the same location and manner."  *In re Columbia Tuition Refund Action*, 523 F. Supp. 3d at 423 ("Nor do the references to classroom locations and physical attendance requirements in Columbia's syllabi, departmental policies and handbooks, and course registration portal.  They merely memorialize the pre-pandemic practice; they offered no guarantee that it would continue indefinitely.")[10]  *Cf.* SOMF 12-17, 24-33.  Thus, Plaintiffs cannot rely on course of conduct during ordinary times to set the course of conduct in extraordinary times.

Having thus failed to establish any specific promise of in-person instruction without exception, Plaintiffs' breach of contract claim with respect to tuition must be dismissed.

> **D.     Plaintiffs Have Not Identified Any Specific Promise of In-Person Services in Exchange for Payment of the Student Health Fee and Student Activity Fee.**

---

[10] *See also Hassan*, 515 F. Supp. 3d at 86; *accord Lindner v. Occidental Coll.*, No. CV 20-8481-JFW (RAOX), 2020 WL 7350212, at *9 (C.D. Cal. Dec. 11, 2020), *appeal dismissed*, No. 20-56424, 2021 WL 6196969 (9th Cir. July 8, 2021); *Ryan v. Temple Univ.*, 535 F. Supp. 3d 356, 370 n.11 (E.D. Pa. 2021), *appeal docketed*, No. 21-2016 (3d Cir. May 27, 2021); *Smith v. Univ. of Pennsylvania*, 534 F. Supp. 3d 463, 471 (E.D. Pa. 2021); *Zagoria*, No. 20CIV3610GBDSLC, 2021 WL 1026511, at *5; *Barkhordar v. President & Fellows of Harvard Coll.*, 544 F. Supp. 3d 203, 214 (D. Mass. 2021); *Hernandez v. Illinois Inst. of Tech.*, No. 20-CV-3010, 2021 WL 1600171, at *5 (N.D. Ill. Apr. 23, 2021).

Neither Plaintiff has identified any specific promise of exclusively in-person services in exchange for their payment of the Student Health Fee and Student Activity Fee.[11]  The SFRA governs both tuition *and fees*.  SOMF 3 ("I accept full responsibility to pay all tuition, *fees*, and other associated costs") (emphasis added).  Because the terms of that express contract contain no promise that the services addressed by those fees would be provided exclusively in-person, Plaintiffs have no factual or legal basis to claim otherwise.  The SFRA is dispositive of the issue.

Even if the SFRA were not dispositive, Plaintiffs have not identified any specific promises by RIT that the services supported by the Student Health Fee and Student Activity Fee would be delivered in an exclusively "in-person" format.  SOMF 36-48.  Notably, RIT continued to provide health and wellness services supported by the Student Health Fee, and student programming supported by the Student Activity Fee, after the transition to distance learning.  SOMF 38, 42.  Although Plaintiffs opted not to partake of such services during the second half of the Spring 2020 semester (just as they had previously), such services – supported by these fees – remained available to them throughout.  As such, Plaintiffs' breach of contract claim for fees must be dismissed.

## III.    Plaintiffs' Unjust Enrichment Claims Fail as a Matter of Law and Undisputed Fact.

To maintain their unjust enrichment claims under New York law, Plaintiffs must establish that (1) RIT was enriched, (2) at Plaintiffs' expense, and (3) that it is against equity and good conscience to permit RIT to retain what is sought to be recovered.  *E.J. Brooks Co. v. Cambridge Sec. Seals*, 31 N.Y.3d 441, 445-46 (2018) (citations omitted).  A claim for unjust enrichment "is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the

---

[11] Despite asserting claims in the operative pleading for various unspecified fees, Plaintiffs each confirmed at their depositions that the only fees for which they seek partial refunds are the Student Activity Fee and Student Health Fee. SOMF 36.

defendant to the plaintiff." *Id.* "The mere fact that the plaintiff's activities bestowed a benefit on the defendant is insufficient to establish a cause of action for unjust enrichment." *IDG USA, LLC v. Schupp*, No. 10-CV-76S F, 2012 WL 5217223, at *11 (W.D.N.Y. Oct. 22, 2012).

### A.    Plaintiffs Cannot Sustain a Claim for Unjust Enrichment Where a Valid Contract Governs.

New York law "precludes unjust enrichment claims whenever there is a valid and enforceable contract governing a particular subject matter, whether that contract is written, oral, or implied-in-fact." *Green Tree Servicing, LLC v. Christodoulakis*, 689 F. App'x 66, 71 (2d Cir. 2017). Likewise, an implied-in-fact contract claim precludes a claim for unjust enrichment under New York law. *Andritz Hydro Canada, Inc. v. Rochester Gas & Elec. Corp.*, No. 20-CV-6772-FPG, 2021 WL 3115425, at *9 n.11 (W.D.N.Y. July 22, 2021). Here, there is no genuine dispute that student tuition and fees obligations are governed by contract: either the express terms of the SFRA govern, as shown above, or terms implied from other documents govern, as Plaintiffs assert. In either case, there is no dispute about the validity of the contract itself, only whether RIT has breached the applicable terms. In such circumstances, New York does not permit Plaintiffs to maintain their unjust enrichment claims.

### B.    RIT Was Not Unjustly Enriched by the Transition to Remote Learning.

Even if no contract governed the parties' relationship, Plaintiffs cannot establish that RIT benefitted at Plaintiffs' expense such that equity and good conscience require restitution. *See Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000). Neither Plaintiff enrolled at RIT because of a purported promise of in-person instruction – they enrolled at RIT because RIT is a respected technical institute offering programs in Plaintiffs' chosen fields of study. SOMF 49, 55-56. Plaintiffs paid tuition and fees for an education and access to services, neither of which (as Plaintiffs admit) were specifically promised to be delivered in an exclusively in-person manner.

17

SOMF 49, 56.  After the transition to distance learning, Plaintiffs continued to receive instruction and access to services, and they each received grades and full credits for their full course load. SOMF 50-54, 57-60.  In short, despite the extraordinary circumstances that arose during the Spring of 2020, RIT went to great lengths to ensure that the Plaintiffs' education remained on schedule and on track.

In light of RIT's continued provision of the bargained-for instruction and services (both Plaintiffs enrolled with tailored financial aid packages), there was nothing unjust about RIT retaining Plaintiffs' tuition and fees.  *See Goldberg v. Pace Univ.*, 535 F. Supp. 3d 180, 199 (S.D.N.Y. 2021), *appeal docketed*, No. 21-1377 (2d Cir. May 28, 2021) (university's continued provision of instruction and services during pandemic "is not close to a case in which 'equity and good conscience' require restitution"); *Espejo v. Cornell Univ.*, 523 F. Supp. 3d 228, 242 (N.D.N.Y. 2021), *on reconsideration sub nom.*, *Faber v. Cornell Univ.*, No. 3:20-CV-467 (MAD/ML), 2021 WL 4950287 (N.D.N.Y. Oct. 25, 2021) (assertion that university was in better financial position to bear burden of pandemic was insufficient to require restitution).

RIT's continued provision of instruction and services came at a tremendous cost, including continued faculty, administration, and staff salaries, wages, and benefits, all of which RIT continued to pay at pre-pandemic rates.  SOMF 61-64.  Because education was considered an essential business during the pendency of New York State's stay-at-home orders, RIT continued necessary in-person services and incurred related costs.  For example, RIT's dorms remained open for students who could not safely go home, and, thus, buildings had to be powered and heated, meals had to be provided and delivered, *etc*.  SOMF 65.  Also, RIT's fixed costs did not evaporate because there was a pandemic ongoing:  RIT continued to incur basic building maintenance and utilities costs, and continued to pay its taxes and insurance costs.  SOMF 65.  RIT also lost a

substantial portion of its auxiliary revenues from housing and meal plan fees, as it provided *pro rata* refunds of housing for those students who could safely go home for the portion of the semester transitioned online, and refunded all unused meal plan balances to students.  SOMF 72.  And RIT spent approximately $450,000 in additional funds between March 1, 2020, and June 30, 2022, for equipment, licenses, and other health and safety measures to ensure a safe and smooth transition to distance learning.  SOMF 71.[12]

RIT's efforts to minimize the disruption to its students' education included continuation of the services supported by the Student Activity Fee and Student Health Fee.  The student health center, which is supported by the Student Health Fee, continued to operate, including providing both telehealth services to all RIT students and in-person health services to students who had to remain on campus.  SOMF 68.  Student activities, supported by the Student Activity Fee, also continued to be provided, and any unspent fee proceeds remaining at the conclusion of the Spring 2020 semester were placed in reserve to provide an ongoing direct benefit to students during subsequent terms.  SOMF 41-42, 69.

In sum, RIT is a not-for-profit institute that spends substantially more to educate its students than it receives in tuition and fees revenue.  That underlying financial dynamic continued during the pandemic and was exacerbated by the additional financial challenges imposed by the pandemic's onset.  RIT readily met those challenges to ensure that its students continued to receive the benefit of their bargain by being provided a world-class education and support services to ensure their success.  As a matter of law, there was no "enrichment" here, and certainly no "unjust" enrichment.

---

[12] Notably, even if RIT had not undertaken herculean efforts to continue its students' education during the pandemic, RIT would not have been enriched by its retention of tuition and fees revenue.  RIT's cost of educating its students is nearly double what it collects in tuition and fees.  SOMF 61-64.

IV.     **Plaintiffs Have Failed to Establish Any Viable Damages Theory.**

While the Court determined at the motion to dismiss stage that Plaintiffs had sufficiently

pled market damages (*i.e.*, the difference between the contract price and market value of good at

the time of breach), *see* Dkt. No. 43, fact and expert discovery have revealed that Plaintiffs have

*no* viable theory under which a jury reasonably could award them damages.  Neither of the named

Plaintiffs is able to articulate what they believe the market value of their pandemic-induced-

remote instruction, but both believe that their damages are based on a perceived deterioration of

the quality of instruction – in direct contravention of the education malpractice doctrine.

Plaintiffs' expert, on the other hand, so wholly failed to consider the basic facts that his opinion

lacks foundation and cannot reasonably support a market theory of damages.

A.      **Discovery Confirms That Plaintiffs Seek Damages Based on a Perceived Deterioration in the Quality of Instruction.**

Plaintiffs insisted at the pleading stage that their claims do not implicate the quality of

education to trigger the educational malpractice doctrine and, on that basis, survived a motion to

dismiss.  *See* Dkt. No. 32.  But Plaintiffs' deposition testimony has confirmed that the harm they

complain about is in fact their perceived diminution of the quality of education after the transition

to distance learning.   Bergeron believes classes were "deeply devalued because of remote

instruction methods."  SOMF 76, 79.  Quattrociocchi testified about the difference in teaching

methods used pre- and post-transition and his belief that classes degraded in various degrees of

quality, and complained of the change in pedagogical methods from testing mechanical properties

to analyzing data sets, noting that the change in assignments rendered the class "very devalued

after . . . the pandemic."  Quattrociocchi Dep. Tr. 202:10-19; *see also* SOMF 78, 80.[13]  Plaintiffs

---

[13] Notably, however, Quattrociocchi voluntarily registered for classes during the Summer 2020 semester, despite knowing in advance that these classes would be conducted exclusively via remote modalities due to the ongoing pandemic.  Quattrociocchi Dep. Tr. 86:3-5.

themselves have otherwise offered no evidence of this alleged decrease in value, nor any formula to reasonably calculate damages.

Given that Plaintiffs tie their claims to changes in their perceived quality of instruction, it is not surprising that they are unable to articulate a damages theory to quantify the purported diminution in value of their education.  *See* SOMF 79-93.  Such a speculative foray is prohibited by the education malpractice doctrine. *Papaspiridakos v. Educ. Affiliates, Inc.*, No. 10 CV 5628 RJD JO, 2013 WL 4899136, at *3 (E.D.N.Y. Sept. 11, 2013), *aff'd*, 580 F. App'x 17 (2d Cir. 2014) (emphasis added); *see also Turner v. Nazareth Coll.*, No. 10-CV-6357T, 2011 WL 310787, at *4 (W.D.N.Y. Jan. 28, 2011) ("It is well settled that claims for educational malpractice are not recognized under New York law, and *claims that sound in tort* and *ask the Court to involve itself in the subjective professional judgments of trained educators will not survive a motion to dismiss merely because the plaintiff couches her claims in terms of breach of contract*.") (citation omitted; emphasis added).

Indeed, several courts considering universities' transitions to remote learning as a result of the COVID-19 pandemic have found that the educational malpractice doctrine forecloses precisely the type of claims at issue here because, despite the student-plaintiffs' protests otherwise, such claims are based on the fundamental premise that the education received was of a lesser quality than the education promised and necessarily challenge the university's determinations regarding the mode of instruction to offer under the circumstances.  *See Lindner*, No. CV 20-8481-JFW (RAOX), 2020 WL 7350212, at *7 ("the resolution of Plaintiffs' claims would require the Court to make judgments about the quality and value of the education" provided and, therefore, "are of the type of educational malpractice claims that California courts, and courts throughout the country, have rejected."); *UC Remote Cases*, No. JCCP5112, at 9-13 (Ruling/Order on Demurrer)

(Super. Ct. July 29, 2021) ("Plaintiffs' case is not about a failure to instruct.  Instead, Plaintiffs challenge how instruction was delivered – i.e., Plaintiffs challenge Defendant's determination that, in the context of a global public health crisis, online instruction was the most feasible way to provide education.")

### B.   Plaintiffs' Expert Opinion That RIT Online Provides an Appropriate Damages Benchmark Is Fatally Flawed.

Unable to articulate a viable damages theory on their own, Plaintiffs deferred to their expert, Dr. Charles Cowan, to provide a formula to calculate damages.  Dr. Cowan's formula, in essence, posits that the market value of *all* RIT students' education post-transition is equal to the published tuition rate that RIT charges for its separate online product, RIT Online.  *See* SOMF 82. Then he makes a "basic calculation" valuing the transitioned portion of the spring 2020 semester at the published RIT Online tuition rate on a pro rata basis.  *Id.*; *see also* Cowan Dep. Tr. 43:7-15.

Dr. Cowan's analysis is fatally flawed.[14]  Pertinent to this motion, Dr. Cowan ignored critical differences between the RIT Online program and RIT's transitioned courses despite using the RIT Online tuition rate as a benchmark for the transitioned classes under a theory that the "value" students received after March 2020 was equivalent to the published RIT Online rates.  A benchmark analysis requires an apples-to-apples comparison to be valid, but Dr. Cowan admitted in his deposition that he wholly failed to consider whether RIT Online and RIT's transitioned classes were in fact comparable.  SOMF 92-93.

Had Dr. Cowan conducted *any* investigation into whether his benchmark was appropriate, he would have determined it was not.  RIT Online is an entirely separate program offering a limited number of courses and degrees targeted to a different demographic of students.  While RIT's

---

[14] Including the fact that Dr. Cowan admittedly failed to consider or even request the facts and data he would need to produce a damages model on a class-wide basis because he apparently believed class discovery would come at a later phase.  *See* SOMF 90-91; Cowan Dep. Tr. 50:8 – 51:3, 54:17 – 55:16.

campus-based programs are targeted to generally full-time students pursuing their first Bachelor's degree, RIT Online is designed for and targeted to part-time and non-traditional students, many of whom are pursing graduate degrees, secondary degrees, or continuing professional education. SOMF 83.   During the Spring 2020 semester, RIT's campus-based programs offered 79 Bachelor's, Master's, and Ph.D. programs, while RIT Online offered six degree programs, only 1 of which was an undergraduate program.   SOMF 86.   Those RIT Online programs are further separately accredited by New York State.   Declaration of Therese Hannigan ¶ 8.

RIT Online also provides limited student support services as compared to the resources available to campus-based students.   SOMF 87.   RIT Online students do not have access to any student activities (whether or not those activities are supported through the RIT operating budget or the Student Activity Fee, which RIT Online students do not pay); a student government organization; campus resources such as security, library and research, or study spaces; enhanced accessibility services; or access to the campus facilities.   SOMF 87.

Critically, RIT Online students do not qualify for any institutional financial aid such as RIT merit scholarships, RIT grants, the graduate internship tuition rate, or the course audit rate.   SOMF 88.   Instead, RIT Online is offered at a discounted tuition rate which, based on extensive financial modeling, was set to equal approximately the net tuition and fees paid for by RIT campus-based students after deducting institutional aid received.   SOMF 89.   In other words, there is no actual difference in the tuition and fees that RIT campus-based students pay out of pocket and the tuition and fees paid out of pocket by RIT Online students.   Dr. Cowan did not consider any of these facts, but simply assumed that RIT Online was factually and financially equivalent to the education received by RIT's campus-based students.

Dr. Cowan's analysis was further limited to a single Plaintiff:  Quattrociocchi.  Dr. Cowan did not conduct any damages analysis for Bergeron.  SOMF 90.  Dr. Cowan did not test his formula on any other putative class member to validate the accuracy of his formula.  SOMF 91.  Dr. Cowan did not conduct any damages analysis for graduate students.  SOMF 92.  And Dr. Cowan also did not conduct any damages analysis for the Student Health Fee[15] or Student Activity Fee, nor does he have an understanding of what fees are even at issue in this action.  SOMF 93.  Accordingly, neither Plaintiffs nor their purported damages expert has presented any viable damages theory that could support an award of damages in their favor.

C.   **Under Any Theory of Liability, Bergeron Sustained No Damages Because He Paid No Tuition or Fees.**

Lastly, Bergeron's claims must be dismissed as he admittedly did not pay any tuition, the Student Activity Fee, or the Student Health fee during the spring 2020 semester and thus incurred no recoverable damages.  Bergeron's tuition and fee charges for the Spring 2020 semester totaled $22,867.  SOMF 73, 94.  Bergeron received $23,242.50 in scholarships and grants for the semester. SOMF 74, 95.  In addition to tuition and fee charges, Bergeron paid for housing and parking but has already received *pro rata* refunds for both.  SOMF 75.  Thus, Bergeron could not have suffered any monetary losses and is thereby barred from recovering any damages from RIT.

---

[15] Notably, Dr. Cowan concedes that "if RIT has on-campus healthcare and despite the school being closed down healthcare was still available to all of the students, then I wouldn't consider that to be a lost [*sic*] to the student, they had healthcare available the whole time."  Cowan Dep. Tr. 51:15-19.  Plaintiffs do not dispute that RIT did in fact provide healthcare to all students for the duration of the Spring 2020 semester. SOMF 38.

**<u>CONCLUSION</u>**

For all of the reasons discussed herein, Rochester Institute of Technology respectfully

requests that the Court grant summary judgment against the remaining claims in Plaintiffs' Second

Consolidated Amended Complaint.

Dated:  New York, New York
     September 20, 2022

          SANTIAGO BURGER LLP

          By: /s *Fernando Santiago*
          Fernando Santiago
          fernando@litgrp.com
          2280 East Avenue, 2nd Floor
          Rochester, NY 14610
          Tel:  (585) 563-2400
          Fax:  (585) 563-7526

          HOLLAND & KNIGHT LLP

          By: /s/ *Qian Shen*
          Robert J. Burns
          Qian (Sheila) Shen
          robert.burns@hklaw.com
          qian.shen@hklaw.com
          31 West 52nd Street
          New York, NY 10019
          Tel:  (212) 513-3200
          Fax:  (212) 385-9010

          Paul G. Lannon (admitted *pro hac vice*)
          paul.lannon@hklaw.com
          10 St. James Avenue, 11th Floor
          Boston, MA 02116
          Tel:  (617) 523-2700
          Fax:  (617) 523-6850