**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

NICHOLAS BERGERON and NICK
QUATTROCIOCCHI, individually and on
behalf of others similarly situated,

                Plaintiffs,

    v.

ROCHESTER INSTITUTE OF
TECHNOLOGY,

                Defendant.

Case No. 6:20-cv-06283-CJS-MJP

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION**
**FOR CLASS CERTIFICATION AND APPOINTMENT**
**OF CLASS REPRESENTATIVES AND CO-CLASS COUNSEL**

**Table of Contents**

INTRODUCTION.......................................................................................................................... 1

FACTUAL BACKGROUND......................................................................................................... 3

LEGAL STANDARD ................................................................................................................... 7

ARGUMENT................................................................................................................................. 7

   I.    **The Proposed Classes Meet the Requirements of Rule 23(a)** ...................................... 8

      A.   The Classes Satisfy the Numerosity Requirement of Rule 23(a)(1)............................. 8

      B.   Commonality Exists Given Numerous Common Questions and RIT's Standard Conduct to its Student Body ...................................................................................... 9

      C.   Plaintiffs' Claims Are Typical of Members of the Classes' Claims............................ 11

      D.   Plaintiffs Will Fairly and Adequately Represent the Proposed Classes Because They Have No Conflicts of Interest, Will Continue to Prosecute the Action, and are Represented by Experienced Counsel ................................................................................................. 12

   II.   **The Proposed Classes Satisfy Rule 23(B)(3)**.................................................................. 15

      A.   Common Issues Predominate Given RIT's Common Course of Conduct to its Student Body and Identical Legal Claims, Which Do Not Vary from Class Member to Class Member ..................................................................................................................... 16

         1.   Common Issues Predominate in this Case as a Whole ............................................ 16

         2.   Common Issues Predominate for Each Component of the Claim ........................... 17

            a.   Proving the existence of a valid contract for in-person instruction and access to campus can be proven on a class wide basis................................................................ 17

            b.   Class wide evidence is capable of proving breach................................................. 19

             c.   Classwide evidence is capable of proving damages ............................................. 20

      B.   A Class Action is Far Superior to Thousands of Individual Actions............................ 21

      C.   The Proposed Classes are Definite and Ascertainable................................................. 22

**III.  THE CLASSES ALSO SATISFY RULE 23(b)(2)** ........................................................... **23**

**CONCLUSION** ........................................................................................................................ **24**

**CERTIFICATE OF SERVICE** ............................................................................................. **28**

## TABLE OF AUTHORITIES

**Cases**

*Alexander v. Florida Int'l Univ. Bd. of Trustees*, No. 2021-009869-CA-01 (44) (Miami-Dade County 11th Jud. Cir. Ct., December 30, 2021) ................................................................... 1, 20

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ............................................................ 7, 12

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455 (2013) ........................... 7, 8, 16

*Arredondo v. Univ. of La Verne*, 341 F.R.D. 47 (C.D. Cal. Feb. 8, 2022) .................... 1, 11, 19, 23

*Brecher v. Republic of Argentina*, 806 F.3d 22 (2d Cir. 2015)....................................................... 22

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 244–45 (2d Cir. 2007)............................................................................................ 8

*Cross v. Univ. of Toledo*, No. 2020-00274JD (Ohio Ct. Cl., Apr. 26, 2021) ...................... 1, 11, 20

*Duke v. Ohio Univ.*, No. 2021-00036JD (Ohio Ct. Cl. Feb. 25, 2022)...................................... 1, 23

*Eddelmon v. Bradley University*, No. 1:20-cv-01264, Order (C.D. Ill. July 22, 2022) ......... passim

*Fero v. Excellus Health Plan, Inc.*, 502 F.Supp.3d 724 (W.D.N.Y. Nov. 23, 2020) ................... 16

*Godson v. Eltman, Eltman, & Cooper, P.C.*, 328 F.R.D. 35 (W.D.N.Y, 2018) ........................... 21

*In Re Literary Works in Electronic Databases Copyright Litig.*, 654 F.3d 242 (2nd Cir. 2011) . 12

*In Re Petrobras Sec.*, 862 F.3d 250, 264 (2d. Cir. 2017) .............................................................. 22

*Johnson v. N.Y. State Dep't of Corr. & Cmty. Supervision,* 2020 WL 2558160 (W.D.N.Y. May 19, 2020) ..................................................................................................................................... 8

*Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128 (2d Cir. 2015).................................................. 20

*Keba v. Bowling Green State Univ.*, No. 2020-00639JD (Ohio Ct. Cl. Mar. 30, 2022)........... 1, 23

*Little v. Grand Canyon Univ.*, 2022 WL 266726 (D. Az. Jan. 28, 2022).............................. passim

*McDermott v. OSU,* 2020-00286JD (Oh. Ct. Cl. Dec. 27, 2021) ................................................. 23

*Moore v. PaineWebber, Inc.*, 306 F.3d 1247 (2d Cir. 2002) ....................................................... 16

*Pa. Pub. Sch. Employees' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111 (2d Cir. 2014) ........ 8

*Robidoux v. Celani*, 987 F.2d 931 (2d Cir. 1993) .......................................................................... 11

*Robinson v. Metro-N. Commuter R.R. Co.*, 267 F.3d 147 (2d Cir. 2001) .................................... 11

*Schonfeld v. Hilliard*, 215 F.3d 164 (2nd Cir. 2000) .................................................................. 20

*Smilow v. Sw. Bell Mobile Sys., Inc.*, 323 F.3d 32 (1st Cir. 2003) .............................................. 16

*Smith v. The Ohio State University*, Case No. 2020-00321JD (Oh. Ct. Cl. Jan. 21, 2022) .......... 23

*South Road Assoc., LLC v. Int'l Business Machines Corp.*, 2 A.D.3d 829 (2d Dept. 2003)........ 19

*Tyson Foods Inc. v. Bouaphakeo*, 577 U.S. 422 (2016) ................................................................ 16

*Vollmer v. Xerox Corp.*, 2022 U.S. Dist. LEXIS 132612 (W.D.N.Y. July 26, 2022) ................ 7, 8

*Vought v. Teachers Coll., Columbia Univ.*, 127 A.D.2d 654 (N.Y. App. Div., 2d Dept. 1987) . 17, 18

*Waitt v. Kent State Univ.*, No. 2020-00392JD (Ohio Ct. Cl. Feb. 11, 2022) ...................... 1, 20, 23

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ............................................................. 9, 23

*Weiman v. Miami Univ.*, No. 2020-00614JD (Ohio Ct. Claims, December 13, 2021)....... 1, 20, 23

*Wentworth v. Metrodata Services, Inc.*, 2020 WL 13527954 (W.D.N.Y. Nov. 9, 2020)............. 13

**Rules**

Fed. R. Civ. P. 23(a) .................................................................................................................. 7, 8

Fed. R. Civ. P. 23(a)(2)................................................................................................................... 9

Fed. R. Civ. P. 23(a)(4).................................................................................................................. 12

Fed. R. Civ. P. 23(b)(2)................................................................................................... 7, 8, 23, 24

Fed. R. Civ. P. 23(b)(3)........................................................................................................... passim

Fed. R. Civ. P. 23(c)(4).................................................................................................................... 8

Fed. R. Civ. P. 23(g) ..................................................................................................................... 13

Fed. R. Civ. P. 23(a)(1).................................................................................................................... 8

Fed. R. Civ. P. 23 ................................................................................................................ 24

Fed. R. Civ. P.  23(a)(1) ........................................................................................................ 9

Fed. R. Civ. P.  23(b) ............................................................................................................ 7

Fed. R. Civ. P.  23(b)(2) ........................................................................................................ 7

Fed. R. Civ. P.  23(c)(4) ........................................................................................................ 7

Plaintiffs Nicholas Bergeron and Nick Quattrochiocchi ("Plaintiffs"), individually and on behalf of all others similarly situated (the "Tuition Class," the "Fees Class," collectively the "Classes" as defined herein), by their undersigned counsel and pursuant to Rule 23 of the Federal Rules of Civil Procedure, submit this Memorandum of Law in Support of their Motion for Class Certification and Appointment of Class Representatives and Co-Class Counsel.

## INTRODUCTION

This case revolves around one central legal and factual question: did Rochester Institute of Technology ("Defendant" or "RIT") breach its standard University-Student agreement when it retained the full amount of tuition and fees at the end of the Spring 2020 semester when the University was unable to provide the on-campus, in-person educational services? This question will be answered the same way for every student in the proposed Classes.  Every student who paid RIT tuition and fees for the Spring 2020 semester failed to receive the benefit of their bargain when RIT implemented a "no refund" at the conclusion of the Spring 2020 semester after RIT closed their campus and was unable to provide the educational services Plaintiffs contracted for. Therefore, class action treatment is the ideal way to answer questions about the alleged breach. Other courts, considering the same or similar questions in analogous cases, have certified classes in cases against colleges and universities by students seeking refunds of tuition and/or fees for the Spring 2020 Semester.[1]

---

[1] *See, e.g., Little v. Grand Canyon Univ.*, 2022 WL 266726 (D. Az. Jan. 28, 2022); *Arredondo v. Univ. of La Verne*, 341 F.R.D. 47 (C.D. Cal. Feb. 8, 2022); *Cross v. Univ. of Toledo*, No. 2020-00274JD (Ohio Ct. Cl., Apr. 26, 2021); *Alexander v. Florida Int'l Univ. Bd. of Trustees*, No. 2021-009869-CA-01 (44) (Miami-Dade County 11th Jud. Cir. Ct., December 30, 2021); *Weiman v. Miami Univ.*, No. 2020-00614JD (Ohio Ct. Claims, December 13, 2021); *Duke v. Ohio Univ.*, No. 2021-00036JD (Ohio Ct. Cl. Feb. 25, 2022); *Waitt v. Kent State Univ.*, No. 2020-00392JD (Ohio Ct. Cl. Feb. 11, 2022); *Eddelmon v. Bradley University*, No. 1:20-cv-01264, Order (C.D. Ill. July 22, 2022); *Keba v. Bowling Green State Univ.*, No. 2020-00639JD (Ohio Ct. Cl. Mar. 30, 2022).

This case is perfectly suited for class certification because each requirement pursuant to Rule 23 of the Federal Rules of Civil Procedure is satisfied. The Classes are objectively identifiable; RIT can readily produce a list of all students who were enrolled and were credited as having paid tuition and fees during the Spring 2020 semester. Plaintiffs are members of the Classes because they paid tuition and fees to attend RIT during the Spring 2020 semester. Numerosity is satisfied because thousands of students paid RIT tuition and fees to attend the Spring 2020 semester and joinder is impracticable. Commonality exists because this case turns on the same questions for all class members: RIT either breached its contract with all class members or it did not, and it is either unjust for RIT to retain tuition and fees for all class members or it is not. Plaintiffs' claims are typical of the Classes because they arise from the same conduct as the claims of all other class members and are based on the same theory. Plaintiffs are adequate class representatives who have zealously advocated for the Classes, responded to discovery, sat for a deposition, and have retained experienced counsel to further the interests of the Classes. The central question regarding whether the covenants under the standardized University-student agreement were breached when the University implemented its campus-wide "no refund" policy predominates over any individual issues that may arise. Finally, a class action is superior to thousands of individual lawsuits. As a result, the Court should certify the following proposed Classes:

**The Tuition Class:**

All students enrolled at the Institute's "main campus" in Henrietta N.Y. for the Spring 2020 semester and who paid or whom the University credited as having paid tuition during that semester.

**The Fees Class:**

All students enrolled at the Institute's "main campus" in Henrietta N.Y. for the Spring 2020 semester and who paid or whom the Institute credited as having paid fees during that semester.

Plaintiffs further request that the Court appoint Plaintiffs as Class Representatives.

## **FACTUAL BACKGROUND**

This case arises out of RIT's campus-wide policy decision to retain all tuition and fees at the conclusion of the Spring 2020 semester, despite being unable to provide students, including Plaintiffs, with the in-person and on-campus educational services they agreed to, contracted for, and paid for. *Dkt*. 48, ¶¶ 1-3. Prior to the beginning of each semester, students at RIT are required to pre-pay substantial tuition and certain mandatory fees before the University will provide any educational services, which Plaintiffs paid. *Dkt*. 48, ¶ 18, 19, 31. As alleged in the Second Consolidated Amended Class Action Complaint (the, "Complaint"), Plaintiffs made these payments in exchange for full rights and privileges of student status at RIT's "main campus in Henrietta, NY", including but not limited to, access to campus, its facilities, campus-based activities, and live, in-person instruction in a physical setting. *Dkt*. 48, ¶ 60. Plaintiffs did not enroll in the Institute's "RIT ONLINE" program, which RIT promotes as having "the same objectives, rigorous workload and expert RIT faculty as taught on campus. Yet our online courses are delivered in a flexible manner that allows you to better balance the demands of work, family and school." Ex. 1. RIT represents in documents to perspective students that RIT Online has "affordable tuition" and "reduced tuition rate[s]" when compared with RIT's main campus program and "You will take classes with the same distinguished faculty to teach on-campus classes, and receive the same esteemed degree as your on-campus peers." *Id.*

Plaintiffs were students at RIT's main campus program during the Spring 2020 semester. *Dkt*. 48, ¶ 10, 11, 17. As a precondition for enrollment, Plaintiffs were required to and did pay

3

greater tuition prices to enroll at the "main campus" for the Spring 2020 semester either out of pocket or by utilizing student loan financing, as did all members of the putative Tuition Class. *Dkt.* 48, ¶ 18. When enrolling and registering for classes at RIT's main campus, Plaintiffs did not receive the "reduced tuition rate" as promised to students of RIT Online program because Plaintiffs were enrolled in the "on-campus classes." *See* Ex. 1; Bergeron Decl. ¶ ¶ 5, 6; Quattrociocchi Decl. ¶¶ 5, 6.

Prior to enrollment, all students must complete a Student Financial Responsibility Agreement (SFRA). "The SFRA is a mandatory agreement that outlines financial obligations and responsibilities for attendance at RIT. All students must complete the SFRA via their SIS student portal on the task tile."[2] Ex. 4. Further, the SFRA must be accepted in order to continue to access university services, including class registration, as an active RIT student.[3] *Id.*

Students, including Plaintiffs, applied for, were admitted to, enrolled, and registered for classes at RIT's main campus. Bergeron Decl. ¶ ¶ 5, 6; Quattrociocchi Decl. ¶¶ 5, 6; Ex. 2. Plaintiffs did not enroll in RIT Online, which RIT touts as being more affordable than its on-campus program. *See* Ex. 1, 3 "RIT has discounted the tuition rate to new students to make an online education affordable." Rather than enroll in RIT Online, Plaintiffs specifically chose to attend in-person, on-campus classes at a higher tuition rate. Bergeron Decl. ¶ 5; Quattrociocchi Decl. ¶ 5. Therefore, when students were admitted at RIT, students reasonably expected to receive on-campus educational services.

In addition to tuition, students, including Plaintiffs, were required to pay certain mandatory fees, including but not limited to a "Student Activity Fee" and a "Student Health Services Fee."

---

[2] http://web.archive.org/web/20200130051408/https://www.rit.edu/fa/sfs/sfra
[3] *Id.*

*Dkt*. 48, ¶ 31. RIT's website states that the Student Activity Fee "supports programs, events, and services that enhance the quality of student life at RIT."[4] Ex. 5. The Student Health Services Fee provides "support for programs and services offered by the Student Health Center, Student Counseling and Psychological Services and for health promotion initiatives."[5] Ex. 5. By paying these fees, Plaintiffs and class members expected to have access to all the on-campus facilities and services for the entire semester. Bergeron Decl. ¶ 10; Quattrociocchi Decl. ¶ 10. After the campus closure, Plaintiffs and class members could not participate in student activities, labs, and events, and were not able to seek basic on-campus health and treatment services. *Dkt.* 48 ¶ 34; Ex. 6 Quattrociocchi Dep. 128:5 – 128:21 (A. "Like, it's completely infeasible to expect to be able to do anything in those classes amongst – anything in the bio section actually too – to be able to do those outside of campus.").

When Plaintiffs reviewed their options on Student Information System (SIS) registration portal for Spring 2020 semester classes, each class is listed not only by description, but also by meeting time and physical classroom location. *Dkt*. 48, ¶ 104; Bergeron Decl. ¶ 6; Quattrociocchi Decl. ¶ 6.

---

[4] http://web.archive.org/web/20200130050820/https://www.rit.edu/fa/sfs/explanation-fees
[5] *Id*.



Despite not providing Plaintiffs, and all other students, with access to the in-person education and on-campus facilities and activities that they paid for, RIT refused to reimburse students for the pro-rated amount of tuition and fees paid as a result of RIT closing its campus, its facilities, and campus-based services. Dkt. 48, ¶ 41, 43, Ex. 6 Quattrociocchi Dep. 190:10 – 190:13 (Q. "And in this paragraph, RIT is informing you and other RIT students that it would not be adjusting tuition and required fees, correct? A. Yes."). Thus, Plaintiffs and the proposed Classes did not receive the benefit of what they bargained and paid for when they paid tuition and fees to RIT. Accordingly, Plaintiffs correctly assert claims for breach of contract and unjust enrichment with respect to tuition and fee payments. This Court's decision on December 18, 2020, denying in part Defendant's motion to dismiss for failure to state a claim confirms the same. *Dkt*. 43. The question today is whether the thousands of students who bear the same loss as Plaintiffs should be

allowed to prosecute their claim in a class setting – under identical legal and factual questions and answers.

## LEGAL STANDARD

To determine whether a  proposed Class should be certified, courts will look to see whether all four requirements of Rule 23(a) have been satisfied along with one of the three categories of Rule 23(b) or Rule 23(c)(4). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997). The Court may only consider questions regarding the merits of the case "to the extent that they are relevant to determining whether the Rule 23 requirements for class certification are satisfied." *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013). Before a court may certify a case as a class action, "[u]nder Rule 23(a), the party seeking certification must demonstrate each of the following: '(1) [T]he class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.'" *See Vollmer v. Xerox Corp.*, 2022 U.S. Dist. LEXIS 132612 (W.D.N.Y. July 26, 2022).

## ARGUMENT

Plaintiffs satisfy all requirements of Fed. R. Civ. P. 23(a) and at least one prong of Rule 23(b) or Rule 23(c)(4). Rule 23(b)(2) requires that Defendant "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Rule 23(b)(3) requires common questions of law and fact to predominate over questions affecting only individual class members, and a class action is "superior to other available methods of adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Lastly, Rule 23(c)(4) provides that "[w]hen appropriate, an

action may be brought or maintained as a class action with respect to particular issues." Fed. R. Civ. P. 23(c)(4). Plaintiffs meet all prerequisites of Rule 23(a), Rule 23(b)(2), and Rule 23(b)(3). In the alternative, Plaintiffs also meet the requirements of Rule 23(c)(4).

**I.      The Proposed Classes Meet the Requirements of Rule 23(a)**

Under Rule 23(a), the party seeking certification must demonstrate each of the following: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. These prerequisites for class certification are commonly referred to as numerosity, commonality, typicality, and adequacy of representation. *Vollmer*, 2022 WL 446628, at *1 (*citing Amgen*, 568 U.S. at 460). Here, Plaintiffs' proposed Classes meet all requirements of Fed. R. Civ. P. 23(a).

**A.  The Classes Satisfy the Numerosity Requirement of Rule 23(a)(1)**

Federal Rule of Civil Procedure 23(a)(1) requires that "the class [be] so numerous that joinder of all members is impracticable." The numerosity requirement in Rule 23(a)(1) does not mandate that joinder of all parties be impossible—only that the difficulty or inconvenience of joining all members of the class make use of the class action appropriate. *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 244–45 (2d Cir. 2007). Although, there is no bright line rule setting a requisite number of class members for certification, "numerosity is presumed for classes larger than forty members." *Pa. Pub. Sch. Employees' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 120 (2d Cir. 2014); *Johnson v. N.Y. State Dep't of Corr. & Cmty. Supervision,* 2020 WL 2558160 at *4 (W.D.N.Y. May 19, 2020).

8

Rule 23(a)(1)'s numerosity standard is easily met here. RIT had more than 19,000 students enrolled "on [RIT's] main campus in Henrietta, N.Y." during the 2019-2020 academic year, all of whom were credited as having paid tuition and/or fees.[6] Ex. 7; Ex. 8 (Undergraduate Bulletin, pg. 7). Joining all 19,000 students as a party into a singular action would be extremely difficult and inefficient. Thus, Federal Rule of Civil Procedure 23(a)(1) is readily satisfied here, where the class totals approximately 19,000 students—more than sufficient to satisfy the numerosity requirement. *See Eddlemon*, 2022 WL 3227865, at *6 (certifying class in COVID fee refund case where proposed tuition class included more than 7,000 students).

### B. Commonality Exists Given Numerous Common Questions and RIT's Standard Conduct to its Student Body

Rule 23(a)(2) requires that plaintiffs seeking class certification demonstrate all members of the class share "common questions of fact or law." Fed. R. Civ. P. 23(a)(2). The commonality requirement is met if plaintiffs' grievances share a common question of law or of fact. *See In re Agent Orange Prod. Liab. Litig.,* 818 F.2d 145, 166–67 (2d Cir.1987). Thus, Fed. R. Civ. P. 23(a)(2) "requires the plaintiff to demonstrate that Class members 'have suffered the same injury'" and "[e]ven a single question of law or fact" will satisfy the commonality requirement of Rule 23(a)(2). *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Furthermore, the commonality requirement will be met where the determination of the common contention's "truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*.

Here, there is no dispute that RIT cancelled its Spring 2020 in-person classes for all Class Members and has not refunded Plaintiffs or the class members tuition or fees. "Because academic courses are available, and we are past the tuition refund policy due date, the university will not be

---

[6] http://web.archive.org/web/20200202211447/https://www.rit.edu/about-rit

9

adjusting tuition and required fees which fund instruction and support of the university's academic mission." Ex. 9. (30(b)(6) Deposition of Concepcion at 124:7-124:12 "A. it wasn't really something that was considered."). Thus, Plaintiffs' breach of contract claims will turn on whether RIT was contractually bound to provide all Class Members with in-person class and on-campus access and whether it breached such a contract when it implemented the "no refund" policy. Likewise, Plaintiffs' unjust enrichment claim will turn on whether it was unjust for RIT to retain the entirety of their tuition and fee payments, despite RIT's failure to provide access to campus and in-person classes for the entire Spring 2020 semester.

Common issues here include: (1) whether RIT and class members had a valid, binding contract, (2) whether the terms of that contract included a term obligating RIT to provide in-person instruction, (3) whether the terms of that contract included a term obligating RIT to provide access to campus facilities and in-person resources, (4) whether RIT breached the subject contract, (5) whether it would be unjust for RIT to retain all tuition and fees despite not being able to deliver in-person education and access to on-campus facilities, and (6) the fact and appropriate measure of damages derived from verifiable class-wide information maintained by RIT.

The answers to these questions will be determinative of the outcome of this litigation for all proposed members of the Classes. If RIT breached its agreement with Plaintiffs, RIT also breached its agreement with all other class members. Likewise, if it was unjust for RIT to retain all of Plaintiffs' tuition and fees, it was unjust for RIT to do so with the other class members because the circumstances are identical. Because RIT engaged in standardized conduct and the same central questions are common for the Plaintiffs and approximately 19,000 putative class members, the commonality requirement is satisfied. Indeed, numerous other courts have found commonality to be satisfied in similar cases. *See, e.g.*, *Arredondo*, 341 F.R.D. at 51 (C.D. Cal.

2022); *Little*, 2022 WL 266726, at \*5 (D. Ariz. Jan. 28, 2022); *Eddelmon*, 2022 WL 3227865, at \*4 (C.D. Ill. July 22, 2022); *Cross*, 2021 WL 1822676, at \*5 (Ohio Ct. Cl. Apr. 26, 2021).[7]

### C.  Plaintiffs' Claims Are Typical of Members of the Classes' Claims

"Typicality requires that the claims of the class representatives be typical of those of the class and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Robinson v. Metro-N. Commuter R.R. Co.*, 267 F.3d 147, 155 (2d Cir. 2001) (internal quotation marks and citation omitted). "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993).

Here, Plaintiffs claims are typical because they stem from the same events and course of conduct and are based on the same legal and remedial theories.  *See Arredondo*, 341 F.R.D. at 52 (C.D. Cal. 2022) ("the existence of standardized forms and documents supplied as part of the student-university contract, … the harm, or lack thereof, caused by restricting use of on-campus services is typical to the entire class.") Plaintiffs and all members of the Classes contracted with the Defendant and paid for in-person, on-campus instruction, educational services, and use of facilities and services in exchange for payment of tuition and fees. As it did for all members of the

---

[7] Although the clear weight of authority in similar college and university COVID refund cases supports certifying student classes, one court has denied class certification based on distinguishable circumstances.  *See Garcia De Leon v. New York Univ.*, 2022 WL 2237452 (S.D.N.Y. June 22, 2022).  There the lone plaintiff was part of a small graduate program at a branch campus (*i.e.*, not a student on NYU's main campus) seeking to represent a class of all NYU students.  *Id.* At \*11.  Here, by contrast, there are two proposed student class representatives, including two undergraduate students on main campus.  Bergeron Decl. ¶ 2; Quattrociocchi Decl. ¶ 2.

Classes, Defendant stopped providing in-person, on-campus instruction, educational services, and use of facilities and services on March 15, 2020. *Dkt*. 48, ¶ 38. Bergeron Decl. ¶ 8; Quattrociocchi Decl. ¶ 8. Therefore, Plaintiffs possess the same interest and suffered the same injury as all other members of the Classes because none received the benefit of their bargain—a semester of in-person instruction and on-campus experiences.

Thus, Plaintiffs' claims are typical of other members of the Classes. The minor differences in tuition paid by putative class members are immaterial as the claim arises from RIT's uniform decision to close all campuses and move all classes to an online and remote format. *See Little*, 2022 WL 266726, at *6 ("That Plaintiff did not pay the same fees as every member of the class is irrelevant as long as Plaintiff endured a course of conduct directed against the class. Accordingly, Plaintiff has satisfied the requirement for typicality."); *Eddelmon*, 2022 WL 3227865, at *4 ("[A]ny variations between what Plaintiff paid in tuition and what other members of the class paid is irrelevant, since Defendant directed a course of conduct against the entire class.").

### D. Plaintiffs Will Fairly and Adequately Represent the Proposed Classes Because They Have No Conflicts of Interest, Will Continue to Prosecute the Action, and are Represented by Experienced Counsel

The final requirement of Rule 23(a) requires the class representative to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem,* 521 U.S. at 625. "To satisfy Rule 23(a)(4), the named plaintiffs must 'possess the same interest [s] and suffer the same injur[ies] as the class members.'" *In Re Literary Works in Electronic Databases Copyright Litig*., 654 F.3d 242, 249 (2nd Cir. 2011) (internal citations omitted). "Not every conflict among subgroups of a class will prevent class certification—the conflict must be 'fundamental' to violate Rule 23(a)(4)." *Id*. "Adequacy is

12

twofold: the proposed class representative must have an interest in vigorously pursuing the claims of the class, and must have no interests antagonistic to the interests of other class members." *Wentworth v. Metrodata Services, Inc.*, 2020 WL 13527954, at *5 (W.D.N.Y. Nov. 9, 2020).

Plaintiffs have no conflicts of interest with absent members of the proposed Classes and have every interest and intention of prosecuting this case vigorously. *See* Bergeron Decl. ¶ 22; Quattrochiocchi Decl. ¶ 22. Plaintiffs and members of the proposed Classes have the same interest in obtaining a refund for tuition and fees monies paid. To date, Plaintiffs have actively participated in this litigation by providing counsel with documents, emailing counsel, reviewing documents filed on their behalf to remain updated on the status of the case, and searching for and collecting relevant documents to this action. *See* Bergeron Decl. ¶ 17, 19; Quattrochiocchi Decl. ¶ 17, 19. In addition, both Plaintiffs have been deposed. Ex. 10 (Bergeron Deposition Transcript) Ex. 6 (Quattrociocchi Deposition Transcript). Plaintiffs chose to serve as the named Plaintiffs and as Class Representatives to ensure that all members of the Classes receive proper relief for Defendant's wrongdoing here.

Plaintiffs are represented by highly qualified counsel with extensive experience conducting class and complex litigation, particularly in breach of contract and consumer protection cases. Counsel has committed significant resources to developing the claims in this case, are committed to continuing to prosecute this action vigorously, and should be appointed to serve as Co-Class Counsel under Rule 23(g). Fed. R. Civ. P. 23(g); *See* Ex. 11 (Poulin | Willey | Anastopoulo Firm Resume and Declaration of Roy Willey); Ex. 12. (Bursor & Fisher, P.A. Resume and Declaration of Phil Fraietta); Ex. 13. (Leeds Brown Law, P.C. Biography and Declaration of Michael Tompkins); Ex. 16. (The Sultzer Law Group, P.C. Resume and Declaration of Jason Sultzer).

Poulin | Willey | Anastopoulo Law Firm has been at the forefront of college and university COVID-19 litigation, currently litigating over 40 college COVID-19 tuition and fee refund cases across the country. *See* Willey Decl., ¶ 6. In recognition of its qualifications, Poulin | Willey | Anastopoulo Law Firm has been appointed interim lead counsel in analogous cases seeking pro-rated refunds based on Universities' decision to cancel in-person classes and close campus. *See* Willey Decl., ¶ 5. Furthermore, proposed co-Class Counsel received the first appellate decision in the country for an analogous college refund case in *Qureshi v. American University* in which the D.C. Circuit partially reversed the District Court's dismissal. *See* Willey Decl., ¶ 7.

Moreover, co-Class Counsel Bursor & Fisher, P.A. has extensive experience in college and university COVID-19 litigation and has been appointed class counsel in numerous such matters, including in this case.  *See* 12/18/20 Order Appointing Lead Counsel (ECF No. 44); *see also e.g.*, *D'Amario v. The University of Tampa*, Case No. 20-cv-03744-CS (ECF No. 65) (S.D.N.Y. June 3, 2022); *Wright v. Southern New Hampshire University*, Case No. 20-cv-00609-LM (ECF No. 31) (D.N.H. Apr. 26, 2021); *In re: University of Miami COVID-19 Tuition and Fee Refund Litig.*, Case No. 20-cv-60851-AHS (ECF No. 48) (S.D. Fla. Aug. 19, 2020).  In addition, Bursor & Fisher has an extensive and successful history throughout the country, including certification of contested nationwide classes in cases such as *Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561 (S.D.N.Y. 2014) and *Hart v. BHH, LLC*, 2017 WL 2912519 (S.D.N.Y. July 7, 2017), and New York and California classes in *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397 (S.D.N.Y. Jan. 26, 2015). As Judge S. Rakoff of the Southern District of New York recognized in appointing Bursor & Fisher class counsel in *Ebin*, "Bursor & Fisher, P.A., are class action lawyers who have experience litigating consumer claims. . . . The firm has been appointed class counsel in

14

dozens of cases in both federal and state courts, and has won multi-million dollar verdicts or recoveries in five class action jury trials since 2008." *Ebin*, 297 F.R.D. at 566.

Furthermore, co-Class Counsel Leeds Brown Law, P.C. has been certified as class counsel in another tuition and fee refund case in *Arredondo v. Univ. of La Verne* – and has been certified as class counsel in numerous class action cases in New York state and federal courts. *See* Tompkins Decl.

Finally, co-Class Counsel The Sultzer Law Group, P.C. has been certified as class counsel in another tuition and fee refund case in *Arredondo v. Univ. of La Verne* and has been preliminarily approved as class counsel in *Porter v. Emerson College. See* Sultzer Decl. ¶ ¶ 6-7.  Additionally, The Sultzer Law Group, P.C. has been certified as class counsel in numerous class actions throughout the country.  *See* Sultzer Decl.

Plaintiffs' counsel has been and remains committed to litigating this matter to its fullest. Thus, the adequacy of both Plaintiffs' counsel and Plaintiffs have been established to satisfy Rule 23(a)(4).

## II.      The Proposed Classes Satisfy Rule 23(B)(3)

Under Rule 23(b)(3) a class may be certified if "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In reviewing this issue, courts consider (a) the class members' interests in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already begun by or against class members; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (d) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3).

**A. Common Issues Predominate Given RIT's Common Course of Conduct to its Student Body and Identical Legal Claims, Which Do Not Vary from Class Member to Class Member**

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002) (internal citation omitted). "When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some defenses peculiar to some individual class members." *Tyson Foods Inc. v. Bouaphakeo*, 577 U.S. 422, 453 (2016). "Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Fero v. Excellus Health Plan, Inc.*, 502 F.Supp.3d 724, 733 (W.D.N.Y. Nov. 23, 2020) (quoting *Moore*).

### 1. <u>Common Issues Predominate in this Case as a Whole</u>

Here, the common issues—including whether Defendant breached its contracts with Plaintiffs and the members of the Classes by failing to provide them with in-person, on-campus instruction, and use of facilities for the entirety of the Spring 2020 semester—clearly predominate over any individual issues that may exist. The contractual arrangements between all RIT students and RIT—receiving in-person, on-campus instruction, educational services, and use of facilities when they paid tuition and fees—are identical under the standardized terms of the student-University agreement made available to all students by RIT. *See Vought v. Teachers Coll., Columbia Univ.*, 127 A.D.2d 654 (N.Y. App. Div., 2d Dept. 1987)("The rights and obligations of the parties contained in the university's bulletins, circulars and regulations made available to the

16

student become a part of the contract.")  In fact, all Class Members expressly enrolled, registered, and paid for RIT's "main campus," not RIT's cheaper RIT Online program. Ex. 1, 3. RIT, however, failed to refund Plaintiffs' and Class Members' tuition and mandatory fees when RIT unilaterally converted all Members of the Classes to an online only format and prohibited access to campus. Dkt. No 48 ¶ 1.  Thus, Defendant's breach is the same for each member of the Classes, regardless of the specific school or program they enrolled in—Defendant failed to provide in-person, on-campus instruction, educational services, or use of campus facilities AND Defendant elected to retain the entire amount of tuition and fees paid by members of the Classes by implementing the "no refund" policy as to all students.

### 2.   Common Issues Predominate for Each Component of the Claim

Additionally, Plaintiffs establish predominance on each element of their claims by showing that they will prove each (1) the existence of a valid contract; (2) Defendant's breach; and (3) damages.

### a.  Proving the existence of a valid contract for in-person instruction and access to campus can be proven on a class wide basis

A key issue in this case is whether Class members each had a valid contract with RIT for (1) in-person instruction and (2) access to campus facilities and resources for the full duration of the Spring 2020 semester.  Accordingly, RIT's manifestations surrounding the Spring 2020 semester, as well as RIT's admissions about the meaning that RIT expected students to give those manifestations, are the most critical evidence to establish the alleged contract.  The evidence for each Class member's claim can be found in standardized documents published by RIT, *e.g.*:

- RIT's 2019-2020 Undergraduate and Graduate Bulletins 2019-20, which is communicated to all students and contains over 140 references to "campus", Ex. 8; Ex. 15.

- RIT's standardized tuition and fees pricing applied to all students at RIT's main campus, Ex. 16

- RIT's online registration portal, Student Information System (SIS), through which, for the Spring 2020 semester, RIT listed for all students each class by description, meeting time, and physical classroom location, Bergeron Decl. ¶ 6; Quattrociocchi Decl. ¶ 6; (Quattrociocchi Dep.) at 101:6 – 101:12 (Q. "Okay. How, meaning how specifically did you register for classes for the spring 2020 term? A. Through RIT's SIS."); Ex. 10 (Bergeron Dep.) at 55:12 – 55:17 (A. I believe when you're selecting courses there's a description that's generally pretty accurate on what the course will be, so I typically just consulted that. Q. This is on SIS? A. Yes.")"

- All students were subject to the campus-wide "No Refund" policy. Ex. 19.

- All Class Members enrolled at RIT's main campus, not "RIT Online".

- All Class Members did not receive the "reduced tuition rate" offered to RIT Online enrollees because Class Members were enrolled in "on-campus classes". Ex. 1, 3.

- All Class Members failed to receive a refund when RIT unilaterally converted all programs and instruction to online only instruction in or around March 15, 2020. Ex. 9 (Concepcion Dep.) at 124:7-124:12.

- RIT's states "[a]t RIT, experiential learning enables students to apply what they've learned through lectures, labs, assignments, and projects to a variety of rich experiences outside of the classroom."[8] Ex. 18.

- RIT's "Student Life" webpage has links to "Campus Events and Traditions", "Athletics and Recreation", "Dining and Retail", and "Living on Campus." Ex. 19, 20, 21, 22, and 23.

Therefore, because all proposed Class members were subject to RIT's standardized documents and decisions throughout the enrollment, registration, and payment processes, all members of the classes would use common evidence to demonstrate that each was subject to the same standardized contractual arrangement: *See Vought v. Teachers Coll., Columbia Univ.*, 127 A.D.2d 654 (N.Y. App. Div., 2d Dept. 1987)("The rights and obligations of the parties contained in the university's bulletins, circulars and regulations made available to the student become a part of the contract.") In exchange for their payment of tuition and mandatory fees, all students would

---

[8] http://web.archive.org/web/20200229183851/https://www.rit.edu/experiential-learning

18

receive access to RIT's "main campus", including in-person, on-campus instruction and access to campus facilities and services.  *See South Road Assoc., LLC v. Int'l Business Machines Corp.*, 2 A.D.3d 829, 833 (2d Dept. 2003), aff'd by 4 N.Y.3d 272 (2005) ("The language of a contract must be interpreted to reach a practical interpretation of the expressions of the parties so that their reasonable expectations will be realized.")(cites omitted).Therefore, common questions as to both the existence and terms of the alleged contract predominate over any individualized inquiries.  *See Arredondo*, 341 F.R.D. at 53 ("A simple comparison of this value and the market value of online classes will yield the measure of damages for each student. Even though this is an individualized question, the ultimate calculation is capable of resolution easily and without considering an overwhelming number of individualized questions.").

### b. Class wide evidence is capable of proving breach

Plaintiffs can prove the second key component of their claims—RIT's breach—with common evidence. The contract claims here center on RIT's single course of conduct in refusing to issue partial refunds of tuition and fees after closing its "main campus," suspending in-person instruction, and eliminating access to campus, its facilities, its technologies, and other campus-based services. This conduct is determinative of RIT's liability and is common to all Class Members.  And it is susceptible to common proof, including the undisputed facts that:

- Starting on approximately March 15, 2020, RIT ceased providing in-person instruction and campus access. Bergeron Decl. ¶ 8; Quattrociocchi Decl. ¶ 8

- Despite failing to provide the contracted for in-person instruction and campus instruction, RIT has not issued partial refunds for students' tuition and fees.  Ex. 9. (Concepcion Dep.) at 124:7-124:12.

- After RIT transitioned all classes to an online format, RIT did not provide members of the classes with refunds even though even though students that enrolled in the online-only program received a lesser tuition rate. Ex. 1, 3.

Because the nature of RIT's alleged breach is the same for each member of the Class,

predominance is satisfied.[9] The Second Circuit has held that "common issues—such as liability—may be certified, consistent with Rule 23, even where other issues—such as damages—do not lend themselves to classwide proof." *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 138 (2d Cir. 2015)(internal citations omitted).

### c. Classwide evidence is capable of proving damages

Predominance is satisfied because Plaintiffs seek a prorated refund of tuition and fees paid by all members of the Classes for the duration of the semester where RIT transitioned all courses to an online only format and closed campus, adjusted for the limited services Plaintiffs and students like Plaintiffs received. *See Schonfeld v. Hilliard*, 215 F.3d 164, 175 (2nd Cir. 2000) ("General damages are sometimes called market damages because, when the promised performance is the delivery of goods, such damages are measured by the difference between the contract price and the market value of the goods at the time of the breach."). This Court has previously found that Plaintiffs' damages formulation is "sufficiently specific" based on the allegations of the operative complaint. ECF No. 43 at 16-17.

---

[9] *See, e.g., Little*, 2022 WL 266726, at *7 ("GCU took actions which uniformly affected students and potentially resulted in a breach of contract. Accordingly, Plaintiff has met the predominance requirement…."); *Eddlemon*, 2022 WL 3227865, at *6 (finding that common questions, including "as to whether Defendant breached its contract with its students," predominate over individual ones); *Alexander* at 12: "The Court finds that common issues predominate over individual issues in this case because Plaintiffs' claims are based on FIU's failure to provide students with services they paid for with their fees . . . The case poses the same basic legal question for all class members: whether (a) FIU breached its express contracts with students by failing to provide them with the services itemized in their Statement of Charges, and (b) FIU was unjustly enriched by retaining the amounts for the fees that, in all fairness, should have been returned to students." *See also Cross*, at 8 ("[w]hether Cross, as well as those similarly situated, are entitled to remediation for tuition, room and board costs, and fees are questions of law or fact common to Cross and those similarly situated" and those questions "predominate over" any individual questions); *Weiman* at 9; *Waitt* at 9; *Little*, 2022 WL at a*7 ("[the campus] closures, and the failure to refund any money for the fees students paid, affected all students").

Further, Plaintiffs can calculate damages using a class wide methodology as determined by Plaintiffs' expert. Plaintiffs' expert, Dr. Cowan, has set out the method he will use to measure damages classwide. In his report, Dr. Cowan details the methodology used to calculate damages: "RIT offers on-line courses at a lower rate, so I apply this rate to course hours to compute what RIT should charge in tuition for on-line offerings. I use these two numbers to compute damages." Ex. 24 (Dr. Cowan Report) at ¶ 6. Although Dr. Cowan does not presently have all the information necessary to calculate damages specific to each class members, his methodology can easily be repeated for every member of the putative class, even if there may be some differences in the in-person tuition prices arising from differences in the classification of students. Ex. 24 (Dr. Cowan Report) at ¶ 10. Therefore, predominance is satisfied because the critical facts and legal issues to this case are virtually identical for every Class member.

## B. A Class Action is Far Superior to Thousands of Individual Actions.

"[C]lass actions are found to be the superior method of litigation when the main objectives of Rule 23 are served, including the efficient resolution of the claims or liabilities of many individuals in a single action, as well as the elimination of repetitious litigation and possibly inconsistent adjudications." *Godson v. Eltman, Eltman, & Cooper, P.C.*, 328 F.R.D. 35, 50 (W.D.N.Y, 2018). Of the four factors listed in Rule 23(b)(3), the "most critical [factor] in determining whether a class action is a superior means of adjudication is manageability." *Adkins v. Morgan Stanely*, 307 F.R.D. 119, 147 (S.D.N.Y 2015) (internal citations omitted). However, the Second Circuit has "cautioned that 'failure to certify an action under Rule 23(b)(3) on the sole ground that it would be unmanageable is disfavored and should be the exception rather than the rule.'" *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d. 430, 463 (S.D.N.Y. 2018).

21

In this case, there is no better method available for the adjudication of the claims which might be brought by each individual class member. Plaintiffs and the members of the proposed Classes experienced identical circumstances as a result of Defendant's standardized misconduct. There are over 19,000 students enrolled at RIT. Ex. 7. It is clear that litigating this action as a class action is more practical and efficient than to litigate more than 19,000 individual cases for amounts that would simply not justify lengthy and complex prosecutions.

At its core, this is a case of common factual questions, the answers to which will be driven by discovery. Relitigating these issues repeatedly contravenes the purposes of the Federal Rules. Further, a class action will not "sacrifice[e] procedural fairness or bring[] about other undesirable results." *Amchem*, 521 U.S. at 615. Accordingly, a class action is the superior procedure for managing this case, satisfying Rule 23(b)(3)'s superiority requirement.

## C.  The Proposed Classes are Definite and Ascertainable

The Second Circuit has "recognized an 'implied requirement of ascertainability' in Rule 23 of the Federal Rules of Civil Procedure." *Brecher v. Republic of Argentina*, 806 F.3d 22, 24 (2d Cir. 2015). The ascertainability doctrine "requires only that a class be defined using objective criteria that establish a membership with definite boundaries." *In Re Petrobras Sec*., 862 F.3d 250, 264 (2d. Cir. 2017). The analysis is therefore "limited to [the] narrow[] question of whether those determinations are objectively possible." *Id*., at 269 (emphasis in original). So, while members of the Class must be identifiable, "ascertainability does not require a complete list of class members at the certification stage." *Id*. at 266 n.16 (internal quotations marks omitted). Thus, ascertainability is a "modest threshold requirement" that "will only preclude certification if a proposed class definition is indeterminate in some fundamental way. *Id*. at 269.

22

Here, the proposed Classes are easily ascertainable: all students enrolled in an in-person/on-campus based program at RIT for the Spring 2020 semester who paid tuition and/or fees to RIT. The proposed Classes are definitive because they only include RIT students enrolled for the Spring 2020 semester.[10] Class membership can easily be determined by RIT's records, which track the students enrolled at the university for the Spring 2020 semester, the programs in which they enrolled and their payment records. Ex. 9. (Concepcion Dep.) at 18:3 - 18:6 ("Q. Sure. If a student pays tuition and/or fees to RIT, does that money then go through your office? A. Our student financial services team collects on all student accounts, yes."). The objectively defined Classes are easily and readily ascertainable from RIT's financial and student records. Therefore, Plaintiffs' proposed Classes satisfy the ascertainability threshold of Rule 23.

## III.    THE CLASSES ALSO SATISFY RULE 23(b)(2)

A class action can be certified, under Rule 23(b)(2), where "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. 23(b)(2); see also *Dukes*, 564 U.S. 338, at 360 (certification under Rule 23(b)(2) is appropriate "when a single injunction or declaratory judgement would provide relief to each member of the class"). As the Supreme Court has explained, "[t]he key to the (b)(2) class is the 'indivisible nature of the injunctive or declaratory remedy warranted – the notion that the conduct

---

[10] *See, e.g*., Ex. 25 *Weiman v. Miami University*; Case No. 2020-00614JD (Oh. Ct. Cl. Dec. 13, 2021); Ex. 26 *Smith v. The Ohio State University*, Case No. 2020-00321JD (Oh. Ct. Cl. Jan. 21, 2022); Ex. 27 *Waitt v. Kent State University*, Case No. 2020-00392JD (Oh. Ct. Cl. Feb. 11, 2022); Ex. 28 *Duke v. Ohio University*, Case No. 2021- 00036JD (Oh. Ct. Cl. Feb. 25, 2022); Ex. 29 *Keba v. Bowling Green State Univ.,* No. 2020-00639JD (Oh. Ct. Cl. Mar. 30, 2022); Ex. 30 *McDermott v. OSU,* 2020-00286JD (Oh. Ct. Cl. Dec. 27, 2021); Ex. 31 *Little v. Grand Canyon Univ.*, 2022 WL 266726 (D. Az. Jan. 28, 2022); Ex. 32 *Arredondo v. Univ. of LaVerne*, No. 2:20-cv-07665-MCS-RAO (C.D. Cal. Feb. 8, 2022).

is such that it can be enjoined or declared unlawful only as to all the class members or as to none of them.'" *Dukes*, at 360 (internal citations omitted).

Unlike Rule 23(b)(3), when seeking certification under Rule 23(b)(2) "there is no reason to undertake a case-specific inquiry into whether class issues predominate or whether class action is a superior method of adjudicating the dispute. Predominance and superiority are self-evident." *Dukes*, at 362–363. Rather, class certification under Rule 23(b)(2) is sufficient if class members complain of a pattern or practice that is applicable to the class as a whole. See 2 Newberg on Class Actions § 4:26 (5th ed. 2020) ("Rule 23(b)(2) authorizes certification in situations affecting the class as a whole, when 23(b)(2) circumstances are present, unitary adjudication is not only preferable, but it is also essential.").

In the present case, Plaintiffs and all members of the proposed Classes suffered the same harm arising from the University's uniform conduct and policies. RIT's refusal to issue prorated refunds for tuition and fees monies collected for in-person, on-campus instruction, educational services, facilities, and activities for the Spring 2020 Semester is the uniform misconduct that is applicable to all proposed class members. To rectify this harm suffered by all proposed class members, Plaintiffs, individually and on behalf of all others class members, seek declaratory and injunctive relief, declaring that Defendant has wrongfully retained the monies that Plaintiffs and the other Class members paid in the form of tuition and fees, and enjoining Defendant from retaining the prorated, unused portion of those tuition and fees. This is the type of "indivisible injunction [that] benefit[s] all its members at once", which satisfies Rule 23(b)(2). Therefore, Plaintiffs have also satisfied the class certification requirement under Rule 23(b)(2).

## CONCLUSION

24

This case is well suited for class litigation. The proposed Classes meet all the requirements of Rule 23 to be certified as a class. The Classes meet the tests for numerosity, commonality, and typicality. Common questions of law and fact predominate over all individual questions. Furthermore, litigation as a class action is the superior method to filing over 19,000 individual actions seeking the identical relief resulting from the same actions taken by RIT. Additionally, the Class Representatives are adequate and have retained attorneys who have significant experience and will vigorously litigate this action on behalf of all Class members. Thus, Plaintiffs' proposed Classes must be certified. For all reasons stated above, Plaintiffs respectfully request the Court to certify the above-described Classes.

Dated: September 20, 2022

Respectfully Submitted,

**POULIN | WILLEY | ANASTOPOULO, LLC**

BY: */s/Blake G. Abbott*
Roy T. Willey IV*
Eric M. Poulin*
Blake G. Abbott*
Paul J. Doolittle*
32 Ann Street
Charleston, SC 29403
Telephone: (843) 614-8888
Email: eric@akimlawfirm.com
roy@akimlawfirm.com
blake@akimlawfirm.com
pauld@akimlawfirm.com

-and-

**BURSOR & FISHER, P.A.**
Philip L. Fraietta
888 Seventh Avenue
New York, NY 10019

25

Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: pfraietta@bursor.com

**LEEDS BROWN LAW, P.C.**

Michael A. Tompkins, Esq.
Anthony M. Alesandro
One Old Country Road, Suite 347
Carle Place, NY 11514
(516) 873-9550
aalesandro@leedsbrownlaw.com
mtompkins@leedsbrownlaw.com

**CO-LEAD INTERIM COUNSEL FOR
THE PUTATIVE CLASS**

-and-

**FERR & MULLIN, P.C.**
Robert L. Mullin
7635 Main Street Fishers
P.O. Box 440
Fishers, NY 14453
Telephone: (585) 869-0210
Facsimile: 95850 869-0211
Email: rlmullin@ferrmullinlaw.com

-and-

**MOREA SCHWARTZ BRADHAM
FRIEDMAN & BROWN LLP**

John M. Bradham*
444 Madison Avenue, 4th Floor
New York, NY 10022
Telephone: (212) 695-8050
Email: jbradham@msbllp.com

-and-

**TOPTANI LAW PLLC**

Edward Toptani*
375 Pearl Street, Suite 1410

26

New York, NY 10038
Telephone: (212) 699-8930
Email: edward@toptanilaw.com

-and-

**THE SULTZER LAW GROUP, P.C.**

Jason P. Sultzer, Esq.
Joseph Lipari, Esq.
Mindy Dolgoff, Esq.
85 Civic Center Plaza, Suite 200
Poughkeepsie, New York 12601
Tel: (845) 483-7100
Fax: (888) 749-7747
sultzerj@thesultzerlawgroup.com
liparij@thesultzerlawgroup.com
dolgoffm@thesultzerlawgroup.com

-and-


**\*Admitted via *Pro Hac Vice***

27

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on September 20, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.


Date: September 20, 2022                    */s/ Blake G. Abbott*