UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| NICHOLAS BERGERON and NICK QUATTROCIOCCHI, on behalf of themselves and on behalf of all others similarly situated,<br><br>            Plaintiffs,<br><br>      v.<br><br>ROCHESTER INSTITUTE OF TECHNOLOGY,<br><br>            Defendant. | Case No. 6:20-cv-06283 |

**MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF
CLASS REPRESENTATIVE AND CO-LEAD CLASS COUNSEL**

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ..................................................................................................................1

ARGUMENT ......................................................................................................................2

I.    PLAINTIFFS' PROPOSED TUITION AND FEES CLASSES AS TO THEIR
      FIRST AND THIRD CAUSES OF ACTION FOR BREACH OF CONTRACT
      CANNOT BE CERTIFIED. ....................................................................................2

      A.    Plaintiffs Cannot Establish Commonality or Typicality of Their Claims...............2

      B.    Plaintiffs and Their Counsel Are Not Adequate Representatives..........................7

      C.    The Proposed Tuition and Fees Classes Are Not Ascertainable..........................11

      D.    Plaintiffs Lack Standing to Seek Certification of a Rule 23(b)(2) Class for
            Injunctive Relief, Which Is Not Warranted. .........................................................14

      E.    Common Issues Do Not Predominate, and a Class Action Is Not Superior
            to Other Available Methods for Fairly and Efficiently Adjudicating This
            Action as Required to Certify a Rule 23(b)(3) Class. ............................................16

      1.    A Uniform Contract Promising In-Person Instruction and Access to
            Campus Cannot Be Proven on a Class-Wide Basis. .............................................17

      2.    Individualized Evidence Is Required to Prove Breach. .........................................18

      3.    Plaintiffs Fail to Put Forward a Class-Wide Damages Model. .............................19

II.   PLAINTIFFS APPARENTLY DO NOT SEEK CERTIFICATION OF THEIR
      UNJUST ENRICHMENT CLAIMS, WHICH FAIL AS A MATTER OF LAW
      IN ANY EVENT...................................................................................................22

CONCLUSION....................................................................................................................23

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Allergan PLC Sec. Litig.*,
   No. 18CIV12089CMGWG, 2020 WL 5796763 (S.D.N.Y. Sept. 29, 2020) ............................8

*Arredondo v. Univ. of La Verne*,
   341 F.R.D. 47 (C.D. Cal. 2022) ...........................................................................................11

*Arredondo v. Univ. of La Verne*,
   No. 220CV07665MCSRAO, 2022 WL 3222376 (C.D. Cal. Aug. 2, 2022) ..........................11

*Berni v. Barilla S.p.A.*,
   964 F.3d 141 (2d Cir. 2020)..................................................................................................15

*Garcia De León v. New York Univ.*,
   No. 21 CIV 05005 (CM), 2022 WL 179812 (S.D.N.Y. Jan. 20, 2022)...................................15

*Garcia de León v. New York Univ.*,
   No. 21 CIV 05005 (CM), 2022 WL 2237452 (S.D.N.Y. June 22, 2022)...........................3, 10

*Denney v. Deutsche Bank AG*,
   443 F.3d 253 (2d Cir. 2006)..................................................................................................12

*Eddlemon v. Bradley Univ.*,
   No. 1:20-CV_01264, 2022 WL 3227865 (C.D. Ill. July 22, 2022)........................................17

*Evans v. Brigham Young Univ.*,
   2022 WL 596862 (D. Utah Feb. 28, 2022) ...........................................................................11

*Felix v. Northstar Location Servs., LLC*,
   290 F.R.D. 397 (W.D.N.Y. 2013)..........................................................................................14

*Godson v. Eltman, Eltman, & Cooper, P.C.*,
   328 F.R.D. 35 (W.D.N.Y. 2018).............................................................................................11

*Hardgers-Powell v. Angels in Your Home LLC*,
   330 F.R.D. 89 (W.D.N.Y. 2019)............................................................................................11

*Hughes v. Ester C. Co.*,
   320 F.R.D. 337 (E.D.N.Y. 2017)...........................................................................................19

*Jackson v. Bank of Am., N.A.*,
   No. 16-CV-787, 2019 WL 7288508 (W.D.N.Y. Dec. 30, 2019)..................................2, 3, 4, 7

*Johnson v. Nextel Commc'ns Inc.*,
    780 F.3d 128,138 (2d Cir. 2015) ...........................................................16

*McCracken v. Best Buy Stores, L.P.*,
    248 F.R.D. 162 (S.D.N.Y. 2008) ..........................................................17

*Myers v. Hertz Corp.*,
    624 F.3d 537 (2d Cir. 2010) .................................................................16

*In re Petrobras Sec.*,
    862 F.3d 250 (2d Cir. 2017) .................................................................11

*Schlesinger v. Reservists Comm. to Stop the War*,
    418 U.S. 208 (1974) ...............................................................................8

*Vaccariello v. XM Satellite Radio, Inc.*,
    295 F.R.D. 62 (S.D.N.Y. 2013) .........................................................8, 21

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ..................................................................2, 3, 4, 14

*Warth v. Seldin*,
    422 U.S. 490 (1975) ...............................................................................8

## Other Authorities

Memo Endorsement Den. Mot. for Recons., Dkt. No. 109,
    *Garcia de León v. New York Univ.*, No. 21 CIV 05005 (CM)...................................7

Fed. R. Civ. P. 23 ...................................................................................... *passim*

Defendant Rochester Institute of Technology ("RIT") submits this memorandum of law in opposition to Plaintiffs Nicholas Bergeron ("Bergeron") and Nick Quattrociocchi's ("Quattrociocchi") Motion for Class Certification and Appointment of Class Representative and Co-Lead Class Counsel.

## **INTRODUCTION**

Relying on a boilerplate motion offering virtually no analysis of the facts germane to this action, Plaintiffs fail to carry their burden of establishing that class certification is appropriate as to any of their tuition and fees claims. As shown below, Plaintiffs have not established that their proposed tuition and fee classes are amenable to certification.

First, Plaintiffs breach of contract claim seeking tuition refunds cannot be certified because the commonality and typicality requirements under Rule 23(b)(a) are not satisfied; Plaintiffs and their proposed class counsel are not adequate representatives; Plaintiffs' proposed tuition class definition is not ascertainable, and common questions of law and fact do not predominate.

Second, Plaintiffs' breach of contract claim seeking fees refunds fails for the same reasons, and also because – despite full discovery – Plaintiffs still have not and cannot identify what fees they seek refunds of on behalf of the putative class.

Third, Plaintiffs' unjust enrichment claims on behalf of both the proposed tuition and fees classes fail to satisfy the requirements for class certification as a matter of law.

Plaintiffs' motion for class certification should be denied.

## ARGUMENT[1]

I.    **Plaintiffs' Proposed Tuition and Fees Classes as to Their First and Third Causes of Action for Breach of Contract Cannot Be Certified.**

    A.    **Plaintiffs Cannot Establish Commonality or Typicality of Their Claims.**

"The commonality and typicality requirements of Rule 23(a) tend to merge.  Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 n.5 (2011) (citation omitted).

To establish commonalty, the party seeking class certification must "demonstrate that the class members have suffered the same injury" and that their claims "depend on a common contention." *Id.* at 350 (citation omitted).  "That common contention, moreover, must be of such a nature that it is capable of class-wide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*  The key to commonality is whether a class-wide proceeding will "generate common *answers* apt to drive the resolution of the litigation." *Id.* (citation omitted) (emphasis in original). "Typicality under Rule 23(a) requires that the claims of the class representatives be typical of those of the class, and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Jackson v. Bank of Am., N.A.*, No. 16-CV-787, 2019 WL 7288508, at *6 (W.D.N.Y. Dec. 30, 2019) (citation omitted).  "While it is settled that the mere existence of individualized factual questions with respect to the class representative's claim will not bar class certification, class certification is

---

[1] The Court is familiar with the standards for certification under Rule 23, and RIT thus omits a recitation of the standard of review.

inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." *Id.* (citation omitted).

The court's analysis in *Garcia de León v. New York Univ.*, No. 21 CIV 05005 (CM), 2022 WL 2237452, at \*12 (S.D.N.Y. June 22, 2022) ("*NYU II*") is instructive here as to why the commonality and typicality requirements are *not* met.  In *NYU II* – as here – plaintiff asserted that the commonality and typicality requirements were satisfied because NYU purportedly breached its contracts with all putative class members without reference to the tuition amounts and fees paid by each member.  *Id.* at \*12.  Following *Dukes*, the *NYU II* court rejected that argument because Rule 23(a) requires more than uniform conduct by the university; commonality and typicality also require consistency among the students' programs, services, tuition and fees.  *Id.* at 13.  Where there is no such consistency, there is no basis for a class, as the *NYU II* court explained:

> But that broad level of "commonality" is no different than was the situation of every managerial-level female employee of *Wal-Mart* [*v. Dukes*, 564 U.S. 338, 349-50 (2011)].  Defendant NYU charged more than 60 different course-based fees, all for different purposes. (Docket No. 79, ¶ 4).  Some students paid fees that others did not.  (Docket No. 76, ¶ 7).  For example, Plaintiff paid the "Social Work R&S Fee" and "Art Supplies Fee," while other students – including those Plaintiff includes in the proposed class – did not.  (Garcia Tr., 222:3-24; Ex. 6).
>
> That means that many, if not most, of the proposed class members paid different fees in exchange for different programs and services.

*Id.* at 12.  The analysis in *NYU II* applies equally here:  Plaintiffs cannot establish sufficient commonality or typicality because their putative class members were charged different tuition and fees in exchange for different programs and services.

There are just as many variations in academic experience as there are putative class members.  During the spring 2020 semester RIT enrolled almost 12,000 undergraduate and 2,800 graduate students at its Henrietta, New York campus.  *See* Declaration of Milagros Concepcion in Opposition to Motion for Class Certification ("Concepcion Decl.") ¶ 9.  Separately, approximately

1,045 undergraduate students and 84 graduate students enrolled at RIT's National Technical Institute for the Deaf ("NTID").  *Id.* at ¶ 10.  RIT offered students 79 Bachelor's degree programs, 69 Master's degree programs, 13 Ph.D. programs, and 63 accelerated dual-degree programs across eleven different schools and colleges.  *See* Concepcion Decl. ¶ 4 & Ex. 1.  Some students were enrolled in specialty Associate's or certificate programs.  Approximately 7% of students were enrolled on a part-time basis, taking no more than 11 credit hours.  *Id*. at ¶ 9.  The other 93% of students took at least 12 credit hours.  *Id*.  The putative class, therefore, includes students who differ widely among schools and colleges, undergraduate or graduate programs, degree and non-degree programs, courses, credit loads, and full-time or part-time status.

Putative class members also lack commonality and typicality as to the amount each paid for their distinct collegiate path.  During the 2019-2020 academic year, 99% of RIT's full-time, first-time degree/certificate-seeking undergraduate students received financial aid.  98% received some form of grants or scholarships, with 95% receiving institutional aid.  *Id.* at ¶ 16.  RIT customized *every* student's financial aid packages based on college or school, program, credit load, domestic or international status and other factors, with students receiving myriad variations in scholarships, grants, loans, personal payments, and other sources of funding.  *Id.* at ¶ 18.  The cost of attending RIT, consequently, differs markedly from one student to the next, with some paying full tuition and fees, and others – including Bergeron – paying *no* tuition or fees out of pocket as a result of their financial aid awards.  *See* Concepcion Decl. ¶¶ 12-19; *see also* Dkt. No. 71-1 ("Bergeron Dep. Tr.") at 125:8 – 127:10, 128:15-18; Dkt. No. 71-12 ("Bergeron Dep. Ex. 16"). This tremendous diversity of pricing and academic experience refutes any claim of commonality or typicality under *Dukes*.

Commonality and typicality are further undermined by the differing terms on which the students must rely for their contract claims. Approximately 80% of RIT students enrolled during the Spring 2020 semester executed an express Student Financial Responsibility Agreement ("SFRA"), while the remainder did not.  Concepcion Decl. ¶ 11.  There is no commonality or typicality of claims between these two groups:  the former have claims sounding in express contract, while the latter have only implied contract claims.  Their claims rest on substantially different legal grounds.

For students who did not execute the SFRA – and according to Plaintiffs' own testimony – there is individualized variation among the contract claims based on which documents and on what language each student is relying.  For example, Quattrociocchi testified that the use of words such as "hands-on," "experiment," "conduct," "test," "evaluate," and "determine" in different course descriptions were promises of in-person instruction.  *See* Dkt. No. 71-13 ("Quattrociocchi Dep. Tr.") at 133:20 – 134:21, 143:15 – 146:21, 155:3 – 163:24.  Following that logic, whether a putative class member was promised in-person instruction or services requires an individualized inquiry into which courses each putative class member took and the specific wording of each course description.

Whether and how putative class members were damaged by the transition to distance learning is likewise neither common nor typical.  Damages differ depending on whether students were full-time taking 18 or less credits, full-time taking more than 18 credits, part-time, Co-op or in RIT's program for the deaf.  For full-time students charged a flat tuition rate, the price per credit decreased the more credits taken up to 18, but prices increased significantly for credits over 18. *See* Concepcion Decl. Exs. 2-3.  Part-time students, by contrast, were charged a set fee per credit which did not change depending on the number of credits taken.  *Id.*  Students who participated in

5

a Co-op only during the spring 2020 semester[2] did not pay tuition at all, but received credits. *Id.* at ¶ 12. Students enrolled in RIT's National Technical Institute for the Deaf ("NTID") were charged different rates depending on their degree program, credit load, and program type. *Id.* at ¶ 15.

Damages also differ across the putative fees class.[3] The Student Activity and Student Health Fees rates differed depending on credit load. *See id.* at Exs. 2-3. Undergraduate freshman and transfer students were charged orientation fees. *Id.* Although limited, RIT charged some course-specific fees for different purposes. *Id.* at ¶ 13; *see also* Bergeron Dep. Ex. 16. For example, Bergeron paid a $195 Wellness Education Fee for the bowling class he was enrolled in during Spring 2020 semester. Bergeron Dep. Ex. 16. RIT also provides a credit to all undergraduate students to be used toward any Wellness Education Fees they may accrue. Concepcion Decl. ¶ 14.

Similarly, the claims of putative class members for refunds of Student Activity and Health Fees depend on whether each student used the services funded by those fees. For example, neither Plaintiff was damaged by RIT's transition to remote student programing and telehealth because neither participated in any extracurriculars, sports, clubs, attended any RIT functions regularly, or used RIT health services. Bergeron Dep. Tr. 43:15 – 47:8; Quattrociocchi Dep. Tr. 81:13 – 83:25. Having never taken advantage of any of these programs or services – which continued in a remote format after March 2020 – Plaintiffs both got the benefit of their bargain in exchange for the payment of these fees. For that reason, their claims are atypical of the putative class, whose members presumably engaged in one or more programs or services funded by these fees. *See*

---

[2] The RIT Co-op is a full-time paid work experience. Students receive credits toward graduation during a Co-op, but do not pay tuition. *See* Concepcion Decl. ¶ 12.
[3] Which Plaintiffs have not adequately identified, as discussed further below.

Memo Endorsement Den. Mot. for Recons., Dkt. No. 109, *NYU II* ("Plaintiff's lack of prior interest in utilizing NYU's NYC facilities obviously goes to her injury/damages, and render her atypical.").

Plaintiffs' own expert concedes that whether a putative class member is entitled to recover a portion of any particular fee requires an individualized analysis. According to Dr. Cowan, to determine whether each fee is subject to refund, he would need to (and did not in his expert opinion) assess whether an individual student had access to a particular activity. Declaration of Qian Shen in Opposition to Plaintiffs' Motion for Class Certification and in Support of Rochester Institute of Technology's Motion to Preclude the Expert Opinion Of Dr. Charles Cowan, Ph.D ("Shen Decl.") Ex. 1 ("Cowan Dep. Tr.") 51:4-24. If the activity or service remained available to students, then the student got the benefit of the bargain. *Id.*[4]

In sum, given the wide and substantial variations in academic experiences, programs and services used, contract terms governing their claims, tuition rates applied, fees paid and refunded, and financial aid awarded, Plaintiffs' proposed class fails to satisfy the commonality and typicality requirements of Rule 23.

### B.   Plaintiffs and Their Counsel Are Not Adequate Representatives.

"Under Rule 23(a)(4), adequacy of representation is measured by two standards. First, class counsel must be 'qualified, experienced and generally able' to conduct the litigation. Second, the class members must not have interests that are 'antagonistic' to one another." *Jackson*, 2019 WL 7288508, at *6 (citation omitted). "[C]ourts consider whether (1) plaintiff's interests are antagonistic to those of the class, and (2) plaintiff's attorneys are qualified, experienced, and able to conduct the litigation." *In re Allergan PLC Sec. Litig.*, No. 18CIV12089CMGWG, 2020 WL

---

[4] Indeed, that is precisely what occurred. Despite RIT's campus being shut down, RIT continued to provide health and wellness services to its students – through telehealth for students who left campus, and in-person for students who had to remain on campus. Dkt. No. 69 ¶ 9. Likewise, RIT continued to provide student program and access to extra-curricular activities. *Id.* at ¶¶ 11-12; Bergeron Dep. Tr. 133:5-11.

5796763, at *5 (S.D.N.Y. Sept. 29, 2020). "Class certification may be denied . . . where the proposed class representative is 'unwilling or unable to protect the interests of the class against the possibly competing interests of the attorneys.'" *Id.* at *6. (quoting *Baffa v. Donaldson, Luftkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000)).

Plaintiff Bergeron is not an adequate class representative because he lacks Article III standing. "To have standing to sue as a class representative it is essential that a plaintiff must be a part of that class, that is, he must possess the same interest and suffer the same injury shared by all members of the class he represents." *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 216 (1974). The named plaintiff must "allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Warth v. Seldin*, 422 U.S. 490, 502 (1975); *see also Vaccariello v. XM Satellite Radio, Inc.*, 295 F.R.D. 62, 68 (S.D.N.Y. 2013).

Bergeron personally was not injured. He was assessed $22,867 in tuition and fees for the Spring 2020 semester but received $23,242.50 in scholarships and grants. *See* Bergeron 125:8 – 127:10; Bergeron Dep. Ex. 16. The only charges during the Spring 2020 semester for which he paid were housing and meals, and he concedes receiving sufficient *pro rata* refunds for both. Bergeron Dep. Tr. 128:15-18, 107:7-25. Having suffered no financial injury, Bergeron lacks Article III standing. *See Warth*, 422 U.S. at 502.

Collectively, Plaintiffs have demonstrated that they are not capable of representing the putative class. Neither could identify the contract terms on which they base their claims. In his interrogatory responses, Bergeron asserted in rote fashion that RIT's "brochures, catalogues, websites, advertising, social media posts, syllabi, etc. as outlined in the Complaint." Dkt. No. 71-4 ("Bergeron Dep. Ex. 6") at Response to Interrogatory No. 4. Quattrociocchi's interrogatory

responses similarly referred back to the Complaint. Dkt. No. 71-17 ("Quattrociocchi Dep. Ex. 9"). Neither Plaintiffs disclosed or acknowledged that they had executed an SFRA until confronted with them during depositions. *See* Bergeron Dep. Ex. 6 at Response to Interrogatory No. 4; Quattrociocchi Dep. Ex. 9 at Response to Interrogatory No. 4. During those depositions, Plaintiffs acknowledged the SFRA governs their obligations to pay tuition, and that the SFRA contained no promise of in-person instruction. Bergeron Dep. Tr. 49:19 – 50:14; Quattrociocchi Dep. Tr. 96:15 – 97:11.

Nor could Plaintiffs identify for which fees the putative class members are seeking reimbursement. *See* Dkt. No. 75 at 3. Plaintiffs, individually, are seeking refunds only of the Student Health and Activity Fees. Bergeron Dep. Tr. 130:16 – 131:1; Quattrociocchi Dep. Tr. 205:9 – 206:10.

Even more problematic, neither Plaintiff has articulated a viable class-wide damages model. Their general assertion that they are entitled to the difference in the value of remote versus in-person instruction contradicts their expert's proposed model which attempts to exclude any value component. *Compare* Bergeron Dep. Tr. 117:19 – 119:23 *and* Quattrociocchi Dep. Tr. 200:11 – 204:22 *with* Cowan Dep. Tr. at 43:7-15.

Plaintiffs' proposed class counsel is likewise inadequate. First, Plaintiffs seek to have *four* law firms appointed co-class counsel, which is wholly unnecessary in what they assert is a straightforward breach of contract action. Second, despite having *seven* law firms appearing, Plaintiffs' counsel failed provide their engaged expert – Dr. Charles Cowan – data and information necessary to support a viable damages theory on a class-wide basis. Plaintiffs did not give Dr. Cowan:

- Tuition data for the putative class – or even for Bergeron, *see* Cowan Dep. Tr. 40:1-10;

- Any data concerning the fees at issue – or even identification of what fees are at issue, *see id.* at Cowan Dep. Tr. 50:8 – 52:25;

- Any information about what services Plaintiffs assert they were entitled to receive in exchange for paying fees, *see id.*; *see also id.* at 51:4-24.

- The putative class definition, *see id.* at 56:1 – 56:2; 130:4-24;

Third, the record does not establish that the proposed class counsel have sufficient experience with class actions, much less with higher education.[5] To illustrate, there is nothing in Mr. Willey's submission that speaks to *his* prior experience representing class actions. *See* Dkt. Nos. 75-3, 75-15. The *NYU II* court recently disqualified proposed counsel because of the same glaring omission. *See NYU II*, 2022 WL 2237452, at *16. Moreover, Mr. Willey has taken *no substantive role* in this action – he has not taken or defended any depositions, *see* Shen Decl. ¶ 5, did not argue RIT's motion to dismiss, *see* Dkt. No. 45; and did not participate in any formal discovery, *see* Shen Decl. ¶ 5. The same is true of attorneys Fraietta, Tompkins, and Sultzer, none of whom have had a substantive role in this action to date,[6] and all of whom rely on the general credentials of their firms rather their personal experience as class counsel. *See generally*, Dkt. Nos. 75-4, 75-5, 75-6, 75-16, 75-17, 75-18. Thus, Plaintiffs have failed to demonstrate that proposed class counsel would adequately protect the interests of the putative class.

---

[5] Plaintiffs' filing of their Motion for Class Certification itself contains multiple errors. Exhibits are not correctly referenced in affidavits, for example. *See, e.g,* Dkt. No. 75-3 (citing firm resume at Ex. A when there is no attached Ex. A).
[6] Mr. Fraietta did lead the Plaintiffs in an unsuccessful mediation effort. *See* Shen Decl. ¶ 6.

C.      **The Proposed Tuition and Fees Classes Are Not Ascertainable.**

Plaintiffs' proposed class definitions are fatally vague and render the proposed class unascertainable.  Although not an express requirement of Rule 23, courts in this District recognize that the proposed class must be ascertainable.  *Godson v. Eltman, Eltman, & Cooper, P.C.*, 328 F.R.D. 35, 47 (W.D.N.Y. 2018) (citing cases).  To be ascertainable, the class description must be "sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member."[7]  *Hardgers-Powell v. Angels in Your Home LLC*, 330 F.R.D. 89, 101 (W.D.N.Y. 2019) (quoting *Brecher v. Republic of Argentina*, 806 F.3d 22, 24 (2d Cir. 2015)).  A class is only administratively feasible where "class members can be identified without extensive and individualized fact-finding or mini-trials."  *Evans v. Brigham Young Univ.*, 2022 WL 596862, at *3 (D. Utah Feb. 28, 2022); *see also Godson v. Eltman, Eltman, & Cooper, P.C.*, 328 F.R.D. 35, 47 (W.D.N.Y. 2018) (the court must be able to identify class members "without having to answer numerous fact-intensive questions).

Plaintiffs' proposed definitions for the Tuition and Fees Classes suffer from multiple defects that render the putative classes unascertainable.  First, it is not ascertainable what Plaintiffs mean in defining either putative class as students "enrolled at the Institute's 'main campus' in Henrietta N.Y."  Dkt. No. 75 at 2.  The "Institute" is not defined.  Does it include students enrolled at NTID?[8]  Does it include graduate students?[9]  Does it include students who participated in study

---

[7] In this Circuit, the administrative feasibility element is sometimes analyzed under the predominance and superiority elements.  *See In re Petrobras Sec.*, 862 F.3d 250, 269 (2d Cir. 2017).  Regardless of which element it falls under, the administrative *infeasibility* of Plaintiffs' proposed classes weighs against certification.

[8] Plaintiffs have sought *no* discovery concerning NTID, and Dr. Cowan unilaterally decided NTID students should not be included in the putative class.  *See* Dkt. No. 75-28 ("Cowan Report") ¶ 6; *see also* Cowan Dep. Tr. 56:1 – 56:2; 130:4-24.

[9] In another COVID tuition refund case brought by Plaintiffs' counsel, the Court held that the class definition could only include undergraduate students because Plaintiffs only provided evidence of certifiability with respect to undergraduates.  *See Arredondo v. Univ. of La Verne*, 341 F.R.D. 47, 50–51 (C.D. Cal. 2022).  Following that ruling, on the university's motion to decertify the class, the court further restricted the class definition.  *See  Arredondo v.*

abroad programs during the Spring 2020 semester?  Does it include students who participated in

Co-ops during the Spring 2020 semester?

Second, Plaintiffs use inconsistent terms, defining the putative Tuition Class as those "who

paid or whom the *University* credited as having paid tuition during that semester" but the putative

Fees Class as those "who paid or whom the *Institute* credited as having paid fees during the

semester." *Id.* at 2-3 (emphasis added).  "University" is undefined – does it refer to something

different than "Institute"?  Why is the Tuition Class defined by "University" whereas the Fees

Class is defined by "Institute"?

Third, Plaintiffs' reference to students who "paid or were credited as having paid" tuition

or fees is fatally imprecise.  What do Plaintiffs mean by the phrase "credited as having paid"?

RIT's student ledgers list the tuition and fees charged; the scholarships, grants, and loans received;

and the "payments" received.  *See, e.g.,* Bergeron Dep. Ex. 16.  Based on the plain language of

these ledgers, scholarships, grants, and loans are not "payments" credited to student accounts.

Even if Plaintiffs intended by these definitions to include students who received

scholarships, grants, and other non-recourse financial aid, Plaintiffs' proposed classes are not

certifiable because there are numerous members of the proposed classes without Article III

standing.  "The class must [ ] be defined in such a way that anyone within it would have standing."

*Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006).  Although it is unnecessary that

each member of the putative class submit evidence of personal standing, "no class may be certified

that contains members lacking Article III standing."  *Id.* at 263-64.  Bergeron is not unique – the

proposed class definition on its face includes other members who lack Article III standing because

_____

*Univ. of La Verne*, No. 220CV07665MCSRAO, 2022 WL 3222376, at *7 (C.D. Cal. Aug. 2, 2022).  Here, Plaintiffs have not even provided evidence concerning all undergraduates – they have only provided evidence concerning the one of the two named Plaintiffs, Quattrociocchi.

their tuition and/or fees were entirely covered through scholarships, grants, and other financial aid, resulting in no monetary loss.[10]

Fourth, determining which students "paid" or had tuition or fees "credited as having [been] paid" requires an individualized analysis that renders both putative classes administratively infeasible.  Because of the way student ledgers are organized, an individual examination of each account is required to determine which students "paid" or were "credited as having paid."  For example, Bergeron's Outside Scholarship and RIT Grant were intended to cover his tuition and fees, and Bergeron understood that he paid for only housing and meals.  Bergeron Dep. Tr. 125:8-127:10, 128:15-18; Bergeron Dep. Ex. 16.  Other students may have been awarded scholarships that were required to be applied toward tuition, or they may have been awarded scholarships that were required to be applied toward housing only.  Concepcion Decl. ¶ 18.  As such, any determination of which students actually paid or were "credited as having paid" tuition or fees would require an individualized review of each student ledger as well as an individual review of the restrictions placed on that student's financial aid.  Plaintiffs' proposed classes are not ascertainable.

Fifth, even after discovery, Plaintiffs cannot ascertain what fees are at issue.  While the majority of students pay Student Health Fees and Student Activity Fees (part-time graduate students do not pay either fee, *see id.* at Ex. 3), the other fees are not uniform across the putative class, and therefore do not satisfy the commonality, typicality or ascertainability requirements.  Plaintiffs' own expert concedes (even though he did not conduct *any* analysis of fees) that each fee must be individually analyzed to determine whether the putative class members received the services or activities corresponding to each fee paid.  Cowan Dep. Tr. 51:4-24.

---

[10] During the 2019-2020 academic year, 99% of RIT students (excluding NTID students) received financial aid. Concepcion Decl. ¶ 18.

For all the these reasons, the Court should find that the putative classes are not ascertainable.

### D.    Plaintiffs Lack Standing to Seek Certification of a Rule 23(b)(2) Class for Injunctive Relief, Which Is Not Warranted.

Even if Plaintiffs had satisfied all of the requirements of Rule 23(a) – which they have not – their Motion for Class Certification must still be denied because they cannot satisfy the requirements of Rule 23(b)(2).  "The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted – the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them."  *Dukes*, 564 U.S. at 360.  "In other words, Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class.  It does not authorize class certification when each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant."  *Id.* (first emphasis added); *accord Felix v. Northstar Location Servs., LLC*, 290 F.R.D. 397, 405 (W.D.N.Y. 2013).  Rule 23(b)(2) certification "is *not* appropriate if the damage claims 'predominate' the '… request for injunctive relief."  *Id.* at 405.

A declaration that all members of the proposed classes "suffered the same harm arising from the University's uniform conduct and policies," as Plaintiffs propose, would be inaccurate and improper.  *See* Dkt. No. 75 at 23-24.  The claims of the named Plaintiffs prove that assertion false.  Plaintiffs concede that the SFRA they executed made no promise of in-person instruction or services.  Bergeron Dep. Tr. 49:19 – 50:14; Quattrociocchi Dep. Tr. 96:15 – 97:11.  Thus neither Plaintiff suffered harm, which may or may not be true of students who did not execute an SFRA. Even if RIT had made a promise of in-person instruction or services, Bergeron indisputably suffered *no harm* as a result of RIT's decision to retain tuition and fees because he paid no tuition or fees in the first place.  Bergeron Dep. Tr. 125:8-127:10, 128:15-18.  Thus, a declaration that

14

RIT wrongfully retained Bergeron's tuition and fees affords no relief to him and all other putative class members whose tuition and fees were entirely covered by financial aid.

Injunctive relief under Rule 23(b)(2) is also improper. Class-wide injunctive relief requires Plaintiffs establish a threat of future injury that is "actual and imminent, not conjectural or hypothetical." *Berni v. Barilla S.p.A.*, 964 F.3d 141, 147 (2d Cir. 2020). "Only if the injunctive relief is proper on such an individualized basis is the group as a whole then eligible for class certification under Rule 23(b)(2)." *Id.* at 146 In *Berni*, the Second Circuit reversed the District Court's grant of class certification under Rule 23(b)(2) on the grounds that past purchasers of Barilla pasta were not likely to encounter future harm. *Id.* at 147.

As in *Berni*, here, there is no threat of future injury because Plaintiffs' claims are related solely to the Spring 2020 semester. Plaintiffs assert only a past injury. They do not claim that RIT should be enjoined from charging its full tuition or fees rates in the future. *Accord Garcia De León v. New York Univ.*, No. 21 CIV 05005 (CM), 2022 WL 179812, at *6 (S.D.N.Y. Jan. 20, 2022) ("*NYU I*") (dismissing putative class claims for injunctive relief at motion to dismiss phase where there was no future threat of harm). For this same reason, as followed in *NYU I*, Plaintiffs lack standing to seek injunctive relief because neither Plaintiff has established that he "continues to suffer as a result of [RIT's] conduct in the spring of 2020, or that [he] is likely to suffer in the future if that conduct were to be repeated." *Id.* at *6.

The motion to certify classes pursuant to Rule 23(b)(2) suffers from another fatal defect: Plaintiffs seek to enjoin RIT "from retaining the prorated, *unused* portion of those tuition and fees." *See* Dkt. No. 75 at 24. What is meant by the "unused" portion of tuition and fees is unclear and unexplained, a problem that goes to the heart of their claims, given that RIT "used" the entirety of

the tuition and fees revenue it received, and that tuition and fees revenue accounts for only approximately 55% of operations expenses to provide students an education.  *See* Dkt. No. 69-1.

E.    **Common Issues Do Not Predominate, and a Class Action Is Not Superior to Other Available Methods for Fairly and Efficiently Adjudicating This Action as Required to Certify a Rule 23(b)(3) Class.**

"The 'predominance' requirement of Rule 23(b) 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'"  *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)).  The requirement is designed to ensure "that the class will be certified only when it would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results."  *Id.* (quoting *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 104 (2d Cir. 2007)) (alteration omitted).  "Like the commonality inquiry, a court examining predominance must assess (1) the 'elements of the claims and defenses to be litigated'; and (2) 'whether generalized evidence could be offered to prove those elements on a class-wide basis or whether individualized proof will be needed to establish each class member's entitlement to relief."  *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128,138 (2d Cir. 2015) (citation omitted).  Predominance, however,  is "more demanding than Rule 23(a)," requiring a further inquiry "into whether the common issues can profitably be tried on a class-wide basis, or whether they will be overwhelmed by individual issues."  *Id.* "Therefore the requirement is satisfied 'if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof.'"  *Myers*, 624 F.3d at 547 (2d Cir. 2010) (quoting *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002)).

  1.  **A Uniform Contract Promising In-Person Instruction and Access to Campus Cannot Be Proven on a Class-Wide Basis.**

"[I]ndividual issues tend to predominate where liability depends on the specific representations made to each plaintiff." *McCracken v. Best Buy Stores, L.P.*, 248 F.R.D. 162, 168 (S.D.N.Y. 2008) (citing cases). In contract cases Plaintiffs bear the burden of showing that contract documents were materially uniform. *See id.* Plaintiffs fail to carry that burden because they cannot establish materially uniform contract terms applicable to all putative class members as to tuition, fees and in-person instruction.

Plaintiffs cite five documents to support their argument that there is a *single* contract promising in-person instruction and access to services applicable to all putative class members: the RIT Bulletins; RIT's tuition and fees schedules; the Student Information System; and two webpages. *See* Dkt. No. 75 at 17-18. As a matter of fact and law, those diverse documents, expressing varying terms, cannot establish that a uniform contract applies to all putative class members.

RIT's tuition and fees schedules as described in these documents are not "standardized." *See* Dkt. No. 75 at 18. Tuition varied depending on degree pursued, institute of enrollment, credit load, and date of first enrollment. *See* Concepcion Decl. ¶¶ 12-15 & Exs. 2-3. The same holds true for fees: Plaintiffs fail to establish that RIT made materially uniform promises of in-person services or campus access in exchange for various (unidentified) fees. To the contrary, RIT charged, for example, different class-specific fees for different purposes to limited segments of students, requiring an individualized inquiry as to whether in-person instruction or services were promised in exchange for those fees. *See id.* at ¶ 13; *see also Eddlemon v. Bradley Univ.*, No. 1:20-CV_01264, 2022 WL 3227865, at *10 (C.D. Ill. July 22, 2022) (fees that "varied depending

on specific class enrollment" which "paid for different supplies depending on course enrollment" did not satisfy predominance, commonality, or typicality requirements).

Nor are class locations and descriptions "standardized."  The alleged contractual "promise" of a certain location for a specific class naturally requires an individualized assessment for each student because not all classes are taught in the same location and not all students take the same courses.  Moreover, the Student Information System (SIS) does not display a "*physical* classroom location" for every class*,* given that some classes, including one for which Bergeron registered, were held exclusively online prior to RIT's transition to distance learning.  *See* Bergeron Dep. Tr. 56:12-16.  *Cf.* Dkt. No. 75-2 ("Bergeron Decl.") ¶ 6; Dkt. No. 75-1 ("Quattrociocchi Decl.") ¶ 6. Similarly, Plaintiffs offer no evidence of what brochures, advertising, or social media posts purportedly promise in-person instruction or services on a class-wide basis.  *See generally* Dkt. No. 75.  Whether syllabi provided to each student included a promise of in-person instruction necessarily requires an individualized review.  The five documents identified by Plaintiffs would not govern approximately 80% of RIT students who executed an SFRA for the Spring 2020 semester.  *See* Concepcion Decl. ¶ 11.  The express terms of the SFRA – as conceded by both named Plaintiffs – govern tuition and fee obligations and do not promise in-person instruction or services.  *See* Bergeron Dep. Tr. 49:19 – 50:14; Quattrociocchi Dep. Tr. 96:15 – 97:11.

As shown, Plaintiffs have failed to carry their burden of establishing that there is a "materially uniform" contract for tuition, fees and in-person instruction applicable to all putative class members.

### 2.    Individualized Evidence Is Required to Prove Breach.

While there is no dispute that RIT transitioned all classes typically held at its campus in Henrietta, New York to distance learning in response to COVID and government shut down orders and retained tuition and fees because RIT continued to provide instruction and services for which

tuition and fees were charged, those facts alone are not sufficient to establish class-wide evidence of a breach.  The decisions by courts in other districts cited at footnote 9 of Plaintiffs' moving brief are inapposite because none of those cases – so far as RIT can tell – dealt with a student population where "in-person" students had the option to take online classes prior to March 2020 and a substantial number of students took advantage of that option.

Whether RIT "failed to provide the contracted for in-person instruction and campus [access]" is an individualized inquiry here.  Not all putative class members enrolled in "in-person" classes were solely enrolled in those classes.  Bergeron is a prime example – he enrolled in an online class prior to March 2020.  *See* Bergeron Dep. Tr. 56:12-16.  Approximately 21.5% of undergraduate students graduate students enrolled in at least one class that was held exclusively online prior to March 2020.  Concepcion Decl. ¶ 8.  As to those students, it is an individualized inquiry whether RIT breached a promise to provide exclusively in-person instruction.

### 3.      Plaintiffs Fail to Put Forward a Class-Wide Damages Model.

Plaintiffs give short shrift to their argument that damages are provable on a class-wide basis in tacit recognition of their and their expert's failure of to offer a viable damages theory for the putative classes.[11]  That failure requires denial of certification.  *Hughes v. Ester C. Co.*, 320 F.R.D. 337, 342 (E.D.N.Y. 2017) ("Plaintiffs have failed to establish the predominance element in any event, since they have not established a damages methodology that would reliably measure damages on a class-wide basis in a manner consistent with Plaintiffs' theory of liability.").

Plaintiffs and their own expert are at odds as to how to measure damages.  In their pleadings and throughout discovery, Plaintiffs have asserted that they are entitled to recover damages based

---

[11] Dr. Cowan's methodology is so flawed that it fails to satisfy the requirements for expert opinions set forth in *Daubert v. _____*.  For that reason, RIT is concurrently filing a motion to strike Dr. Cowan's report.  Without Dr. Cowan's report, Plaintiffs proposed classes are certainly not amenable to certification as Plaintiffs have not otherwise put forth any damages methodology.  [CITE]

on a perceived decrease in the value and quality of instruction and services as a result of RIT's transition to distance learning.  *See* Bergeron Dep. Tr. 117:19 – 118:2, 118:9 – 120:24, 116:13 – 117:2; Quattrociocchi Dep. Tr. 198:24 – 204:22.  For example, Quattrociocchi believes that the measurement of that purported decrease in value requires an individualized analysis of the distinct experiences of each putative class member before and after the transition to distance learning and a subjective assessment of how each putative class member quantifies the value of those different experiences.  *See* Quattrociocchi Dep. Tr. 198:24 – 204:22 (explaining his belief that his Strength of Materials lab sustained a greater loss in value post-transition than his seminar courses).

Their own testimony makes clear that Plaintiffs' theory of liability requires an individualized damages assessment across putative class members.  A first year political science major may experience no diminution in the value of instruction they received after March 2020 because their classes were lectures that continued with no substantive changes to the curriculum. That student's valuation of damages would differ from Quattrociocchi's.  And as exemplified by Quattrociocchi, each particular student is likely to measure the perceived difference in value of each class differently.

Plaintiffs' testimony comports with the opinion of RIT's expert Dr. Benjamin Wilner.  As explained by Dr. Wilner, transitioned classes were taught using different instructional methods, student learning styles are individualized, student involvement and interaction is unique, and some students valued online instruction at least on par with in-person instruction even before the pandemic (as evidenced by the fact that Bergeron enrolled in a fully online class, charged at the "in-person" tuition rate before March 2020).  *See* Shen Decl. Ex. 3 ("Wilner Report") at 26-27. These student-by-student differences mandate an individualized damages assessment:

- A number of RIT's course offerings were expressly intended as online-only classes even prior to the pandemic, including one of Bergeron's Spring 2020 classes. *See* Bergeron Dep. Tr. 56:12-16.   Students enrolled in such courses suffered no conceivable harm during the second half of Spring 2020 as nothing changed.

- Even within the Spring 2020 course load of an individual RIT student, there was considerable variation in the claimed instructional impact of the transition. Indeed, Quattrociocchi testified that the perceived value of some of his Spring 2020 classes diminished materially during the second half, while the value of others did not. Quattrociocchi Dep. Tr. 198:24 – 204:22.

- Only a few students, like Bergeron, voiced complaints or concerns about an alleged diminution in value of RIT's instruction after March 2020.  Most others did not. A number of students, like Quattrociocchi, voluntarily registered for classes they knew at the outset would be online-only during the Summer and Fall 2020 Semesters. Indeed, 86% of non-graduating students who were freshmen during the Spring 2020 Semester re-enrolled for the Fall 2020 Semester without demanding any COVID-related discount and with full knowledge that the Fall 2020 Semester would be conducted remotely.  *See* Wilner Report at 17.

These factors as well as others discussed at length in Dr. Wilner's report lead to the inevitable conclusion that any damages assessment must be conducted on an individualized basis, and consequently, that common issues do not predominate.  *See Vaccariello*, 295 F.R.D. at 68 (common issues do not predominate if "damage calculations require individual considerations").

**II.    Plaintiffs Apparently Do Not Seek Certification of Their Unjust Enrichment Claims, Which Fail as a Matter of Law In Any Event.**

Plaintiffs do not appear to seek certification of classes with respect to their Second and Fourth Causes of action for unjust enrichment, which are mentioned only in passing at page 10 of Plaintiffs' moving brief without analysis of how they satisfy Rule 23.  *See generally* Dkt. No. 75. Even if Plaintiffs had sought to certify classes for their unjust enrichment claims, certification should be denied as a matter of law because "the elements of the cause of action are not susceptible to class wide proof."  *Vaccariello*, 295 F.R.D. at 75.  "Specifically plaintiff cannot prove through common evidence that equity and good conscience require restitution.  An 'indispensable ingredient' of the equity and good conscience requirement is the existence of 'an injustice as between the two parties involved.'"  *Id.* (citation omitted).  The *Vaccariello* court refused to certify an unjust enrichment class because whether defendant XM Satellite Radio unjustly continued collecting subscription fees from putative class members required an individualized analysis of whether customers wanted to participate in an automatic renewal or continued to use defendant's services triggering renewal fees.  *Id.* at 75-76.

The analysis in *Vaccariello* applies with equal force here.  Whether it was unjust for RIT to retain tuition and fees requires an individualized analysis of whether there was an "injustice" between RIT and each student of the putative classes.  Given that unjust enrichment claims are restitution claims, they implicate all of the individualized inquiries into the supposedly diminished value of instruction and services, as well as questions of how to value restitution in light of the copious amounts of financial aid putative class members receive.  *See, e.g., Little v. Grand Canyon Univ.*, No. CV-20-00795-PHX-SMB, 2022 WL 266726, at *7 (D. Ariz. Jan. 28, 2022) ("Because of the necessity of examining the circumstances of a particular case before a court can grant relief on such an equitable claim, courts have found unjust enrichment claims inappropriate for class

treatment."); accord *In re: Suffolk Univ. COVID Refund Litig.*, No. CV 20-10985,WGY, 2022 WL 6819485 (D. Mass. Oct. 11, 2022) (denying class certification where unjust enrichment claims require individual adjudication).

As such, even if Plaintiffs had conducted a substantive analysis as to why their unjust enrichment claims are suitable for class treatment – which they have not – those claims are not certifiable as a matter of law.

## **<u>CONCLUSION</u>**

For all of the reasons discussed herein, Rochester Institute of Technology respectfully requests that the Court deny Plaintiffs' motion for class certification.

Dated: New York, New York
      October 28, 2022

                    SANTIAGO BURGER LLP

                    By: */s Fernando Santiago*
                    Fernando Santiago
                    fernando@litgrp.com
                    2280 East Avenue, 2nd Floor
                    Rochester, NY 14610
                    Tel:  (585) 563-2400
                    Fax:  (585) 563-7526

                    HOLLAND & KNIGHT LLP

                    By: */s/ Qian Shen*
                    Robert J. Burns
                    Qian (Sheila) Shen
                    robert.burns@hklaw.com
                    qian.shen@hklaw.com
                    31 West 52nd Street
                    New York, NY 10019
                    Tel:  (212) 513-3200
                    Fax:  (212) 385-9010

                    Paul G. Lannon (admitted *pro hac vice*)
                    paul.lannon@hklaw.com
                    10 St. James Avenue, 11th Floor

23

Boston, MA 02116
Tel:  (617) 523-2700
Fax:  (617) 523-6850