UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| NICHOLAS BERGERON and NICK QUATTROCIOCCHI, on behalf of themselves and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ROCHESTER INSTITUTE OF TECHNOLOGY,<br><br>Defendant. | Case No. 6:20-cv-06283 |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
MOTION TO PRECLUDE TESTIMONY FROM AND THE EXPERT OPINION OF
DR. CHARLES COWAN, Ph.D.**

**TABLE OF CONTENTS**

|  | | Page |
|---|---|---|
| SUMMARY OF ARGUMENTS | | 1 |
| ARGUMENT | | 1 |
| I. | The Standard of Review Under Federal Rules of Evidence 702 and 403. | 1 |
| II. | Dr. Cowan's Opinion is Not based on Sufficient Facts or Data. | 3~~3~~ |
| III. | Dr. Cowan's Analysis is Unreliable Because he Failed to Apply a Reliable Benchmark to His Analysis. | 5~~5~~ |
| IV. | Dr. Cowan Relies on Erroneous Assumptions Regarding Financial Aid and Pricing. | 8~~8~~ |
| V. | Dr. Cowan Fails to Apply Accepted Economic Modeling Principles that Have a Material Effect on his Model. | 9~~9~~ |
| VI. | Real-Life Data Contradicts Dr. Cowan's Theory that Remote Instruction at RIT is Less Valuable than In-Person. | 10~~10~~ |
| VII. | Dr. Cowan Failed to Analyze the Diverse Circumstances of Students in the Putative Class. | 11~~11~~ |
| VIII. | Dr. Cowan Wholly Failed to Analyze Plaintiffs' Fee Claims. | 12~~12~~ |
| CONCLUSION | | 12~~12~~ |

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
   303 F.3d 256 (2d Cir. 2002)...........................................................................................2

*Celebrity Cruises Inc. v. Essef Corp.*,
   434 F. Supp. 2d 169 (S.D.N.Y. 2006)............................................................................3

*Daubert v. Merrell Dow Pharms, Inc.*,
   509 U.S. 579 (1993).................................................................................................2, 3, 6

*In re Elec. Books Antitrust Litig.*,
   No. 11 md 2293 (DLC), 2014 WL 1282298 (S.D.N.Y. Mar. 28, 2014) ......................6

*Faulkner v. Arista Recs. LLC*,
   46 F. Supp. 3d 365 (S.D.N.Y. 2014)..............................................................................3

*Fed. Hous. Fin. Agency v. Nomura Holding Am., Inc.*,
   No. 11CV6201 DLC, 2015 WL 539489 (S.D.N.Y. Feb. 10, 2015) ............................6

*Gen. Elec. Co. v. Joiner*,
   522 U.S. 136 (1997)........................................................................................................2

*Nimely v. City of New York*,
   414 F.3d 381 (2d Cir. 2005)...........................................................................................2

*Secured Sys. Tech., Inc. v. Frank Lill & Son, Inc.*,
   No. 08-CV-6256, 2012 WL 6628878 (W.D.N.Y. Dec. 19, 2012) (Siragusa, J.).........2

*United States v. Williams*,
   506 F.3d 151 (2d Cir. 2007)...........................................................................................2

*Wills v. Amerada Hess Corp.*,
   379 F.3d 32 (2d Cir. 2004).............................................................................................6

*In re Wireless Tel. Servs. Antitrust Litig.*,
   385 F. Supp. 2d 403 (S.D.N.Y. 2005)............................................................................6

**Other Authorities**

Fed. R. Evid. 702 ................................................................................................... *passim*

Fed. R. Evid. 403 ..............................................................................................1, 2, 3

Richard A. Pollack, et al. CALCULATING LOST PROFITS – PRACTICE AID 06-4 15-
   16 (American Institute of Certified Public Accountants Business Valuation
   and Forensic Litigation Services Section, 2013) ........................................................................3

Rochester Institute of Technology Tuition, Billing, and Financial Aid FAQS,
   https://onlinemasters.rit.edu/admissions/tuition-and-financial-aid/faqs/ (last
   visited Oct. 26, 2022)..................................................................................................................8

Defendant Rochester Institute of Technology ("RIT") submits this memorandum of law in support of its motion to preclude the testimony and report of Plaintiffs' economics expert, Dr. Charles Cowan, Ph.D.

## SUMMARY OF ARGUMENTS

In support of class certification, Plaintiffs offer the damages model developed by Dr. Charles Cowan who opines that the value of the education the putative class members received after RIT's transition to distance learning in response to COVID is equivalent to the published tuition rates for RIT Online, a separate and distinct online-only program that RIT markets to a student population different than the putative class. Dr. Cowan's damages model suffers from several fatal defects which render it inadmissible under Federal Rules of Evidence 702 and 403. First and foremost, his model lacks foundation for class-wide application because it is limited to data from only one student's experience. Second, his model lacks reliability as to methodology and analysis because (i) he failed to apply a reliable benchmark; (ii) he relies on erroneous assumptions about financial aid and tuition pricing; (iii) real-life data contradicts his theory that remote instruction at RIT is less valuable than in-person instruction; and (iv) he failed to address the many different educational, financial and legal circumstances of putative class members as well as their claims for fees.

## ARGUMENT

**I.    The Standard of Review under Federal Rules of Evidence 702 and 403.**

The admissibility of expert testimony in federal courts is governed by Fed. R. Evid. 702 which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based

>on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Plaintiffs bear the burden of establishing that Rule 702 is satisfied. *United States v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007).

The District Court still must ensure that "any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharms, Inc.*, 509 U.S. 579, 589 (1993). The District Court serves as a gatekeeper to "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Secured Sys. Tech., Inc. v. Frank Lill & Son, Inc.*, No. 08-CV-6256, 2012 WL 6628878, at *3 (W.D.N.Y. Dec. 19, 2012) (Siragusa, J.) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)).

Rule 702 requires a "sufficiently rigorous analytical connection between the methodology and the expert's conclusions." *Id.* "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 144 (1997) (citations omitted). "Thus, when an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, *Daubert* and Rule 702 mandate the exclusion of that unreliable opinion testimony." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 266 (2d Cir. 2002).

Expert testimony is also subject to the balancing test of Federal Rule of Evidence 403 and "may be precluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." *Nimely v. City of New York*, 414 F.3d

381, 397 (2d Cir. 2005) (quoting Fed. R. Evid. 403).  Expert testimony must be scrutinized under Rule 403 more carefully than other forms of testimony because of the unique weight it can have on the factfinder.  *Daubert*, 509 U.S. at 595.

In the field of economic damages, practitioners are required to also obtain a reasonable degree of economic certainty in their damages calculations, which generally means it is anchored in facts, makes use of sound methodologies and yields reasonable results (i.e., not speculative, overly optimistic or unrealistic).  *See* Richard A. Pollack, *et al.* CALCULATING LOST PROFITS – PRACTICE AID 06-4 15-16 (American Institute of Certified Public Accountants Business Valuation and Forensic Litigation Services Section, 2013).

Dr. Cowan's opinion should be excluded because his proffered testimony fails to satisfy either Rule 702 or 403.  His opinion fails to satisfy Rule 702 because it is not based on sufficient facts or data and is not the product of reliable principles, methods, or application to the facts of the case.  Lacking foundation and reliability, his opinion also fails to satisfy Rule 403 because it is more likely to confuse and mislead a jury than assist in reaching a just verdict.

**II.     Dr. Cowan's Opinion Is Not Based on Sufficient Facts or Data.**

Courts in the Second Circuit hold that an expert's opinion is not reliable if the expert fails to review data that was available – even if he believed it to be unavailable.  *See, e.g., Faulkner v. Arista Recs. LLC*, 46 F. Supp. 3d 365, 380-81  (S.D.N.Y. 2014) (excluding expert report where expert failed to review data that was produced and available); *see also Celebrity Cruises Inc. v. Essef Corp.*, 434 F. Supp. 2d 169, 182-83 (S.D.N.Y. 2006) (excluding damages expert who was not aware of the availability of "actual performance data" and "declined to incorporate their actual growth rates into her methodology" once she became aware of data).  Dr. Cowan admits that his entire damages methodology is built on tuition and fees information from only one student, co-

3

Plaintiff Quattrociocchi. Qian Shen in Opposition to Plaintiffs' Motion for Class Certification and in Support of Rochester Institute of Technology's Motion to Preclude the Expert Opinion of Dr. Charles Cowan, Ph.D ("Shen Decl.") Ex. 1 ("Cowan Dep. Tr.") 40:1-5, 49:17-50:7; Dkt. No. 75-28 ("Cowan Report") ¶ 4. Dr. Cowan apparently requested information for Bergeron; Plaintiffs' counsel represented (incorrectly) that they did not have the information, and Dr. Cowan chose not to follow up. Cowan Dep. Tr. 40:1-24. Dr. Cowan did not ask to review the Plaintiffs' deposition transcripts or exhibits (which would have included Mr. Bergeron's tuition and fees information).[1] Cowan Dep. Tr. 49:1-11. Dr. Cowan did not question Plaintiffs' (incorrect) representation that class discovery had been bifurcated and had not yet occurred, even though Plaintiffs instructed him to create a damages model specifically for the classes Plaintiffs seek to certify. *See id.* at 50:8 – 51:3, 42:18 – 43:15 (confirming that the scope of his engagement was to provide an analysis for the purpose of class certification). Nor did Dr. Cowan make any effort to review publicly available information about RIT aside from RIT's IPEDS[2] report. *Id.* at 41:9-16.

Likewise, Dr. Cowan was aware that (unidentified) fees are at issue, and yet he reviewed no data or information about fees and provided no opinion as to how fees damages should be calculated. Cowan Report ¶ 4; Cowan Dep. Tr. 50:8 – 52:25. Dr. Cowan conceded that it was speculative whether putative class members sustained fees-related damages at all and that such an inquiry would necessarily be *individualized* because whether a putative class member was entitled to any refund of any particular fee required a detailed analysis of what services or activities the fee supported and whether those services or activities continued to be provided after March 2020. Cowan Dep. Tr. 51:4-24.

---

[1] Despite admitting that he did not review Plaintiffs' deposition transcripts and exhibits, Dr. Cowan included those transcripts and exhibits on his list of materials relied on. *See* Shen Decl. Ex. 3 (Cowan Report Ex. 3).
[2] IPEDS reports are Integrated Postsecondary Education Data System reports published by the Department of Education's National Center for Education Statistics. *See* Cowan Dep. Tr. 120:19-22.

4

Even more troubling, Dr. Cowan did not request *any* information about the characteristics of RIT Online and chose not to conduct any independent investigation into whether RIT Online is an appropriate benchmark for his analysis. Dr. Cowan simply assumed that the *only* difference between RIT Online and RIT's campus-based programs was the fact that the former was operated in a fully online format while the latter was held in-person before March 2020. That grossly simplistic assumption is refuted by even a cursory review of RIT's website, yet Dr. Cowan chose not to do any comparison between RIT Online and RIT's campus-based programs.

As in *Arista Records*, Dr. Cowan's total failure to pursue *any* facts or data beyond Quattrociocchi's personal experience leads to only one conclusion: Dr. Cowan formed his opinions before he reviewed or analyzed any information about RIT's unique circumstance. *See Arista Records*, 46 F. Supp. 3d at 381. As such, his expert report and proffered testimony lack sufficient foundation to be helpful to the trier of fact and admissible under Rule 702 or 403.

## III. Dr. Cowan's Analysis Is Unreliable Because He Failed to Apply a Reliable Benchmark to His Analysis.

Dr. Cowan's tuition refund analysis relies entirely on a benchmark comparison. The benchmark he uses for remote instruction tuition rates is RIT Online, a separate academic program that RIT offers entirely online. Dr. Cowan theorizes that the value of RIT's tuition for putative class members after the transition to distance learning is equal to the published tuition rate for RIT Online. To determine refunds, he simply calculates the difference between the RIT Online rate and RIT's published tuition rate for Quattrociocchi, and then multiplies by an estimated percentage of the Spring 2020 Semester conducted remotely.

While a benchmark comparison is a common valuation method, Dr. Cowan's methodology as applied to RIT is fatally flawed because he failed to satisfy the basic requirement for a benchmark analysis: confirming that RIT Online is a proper benchmark. *See* Cowan Dep. Tr.

5

95:17-21.  A proper benchmark analysis requires "designing an experiment to test whether an observed result was caused by a given variable." *Fed. Hous. Fin. Agency v. Nomura Holding Am., Inc.*, No. 11CV6201 DLC, 2015 WL 539489, at *5 (S.D.N.Y. Feb. 10, 2015).  The benchmark group (or control group) must lack that variable.  *Id.*  The entire point of having a benchmark is to ensure that the *only* cause of a changed result is change in a single variable.  *See* Shen Decl. Ex. 4 ("Wilner Report") at 20 (citing Pollack, *Calculating Lost Profits*, 68 – 69).  Indeed, expert opinions are regularly precluded when a benchmark analysis fails to account for significant variables.  *See, e.g., Wills v. Amerada Hess Corp.*, 379 F.3d 32, 50 (2d Cir. 2004) ("failure to account for [major variables] strongly indicated that [expert]'s conclusions were not grounded in reliable scientific methods, as required by *Daubert*"); *In re Elec. Books Antitrust Litig.*, No. 11 md 2293 (DLC), 2014 WL 1282298, at *10 (S.D.N.Y. Mar. 28, 2014) ("[Expert]'s ... analysis fails to support his opinions because it fails to control for systematic factors . . . ."); *In re Wireless Tel. Servs. Antitrust Litig.*, 385 F. Supp. 2d 403, 427 (S.D.N.Y. 2005) ("Where an expert conducts a regression analysis and fails to incorporate major independent variables, such analysis may be excluded as irrelevant.").

Dr. Cowan admittedly failed to consider whether there are other variables that affect the difference in tuition pricing between RIT's campus-based programs and RIT Online.  Cowan Dep. Tr. 93:9 – 95:16 ("The whole case was about the fact that there's a difference between in-person education versus online.  *I don't know what the differences are.  I just know that there are differences because there are different prices paid.*") (emphasis added). Instead, he assumed (erroneously) that the *entire* difference in tuition rates between the programs is a result of the virtual modality of RIT Online.  *See* Cowan Dep. Tr. 95:17 – 97:7 (asserting that RIT Online was a proper benchmark because RIT markets the quality of RIT Online as comparable to its in-person

6

programs). He made that assumption based solely on a marketing statement that the quality of RIT Online programs are comparable to their campus-based programs. *See id*.

Setting a benchmark based on a single marketing statement falls far short of the rigorous principles underlying a benchmark analysis. To be clear, the problem with Dr. Cowan's choice of benchmark is that he failed to take even the basic steps to consider what, if any, other variables may be a cause of the pricing difference between RIT Online and RIT's campus-based programs. He simply chose not to do that analysis. *See id.*

Had Dr. Cowan done any analysis, it would have become readily apparent that there are many material factors that affect the price difference between RIT's campus-based programs and RIT Online. As explained in further detail in the rebuttal report of Dr. Wilner, just some of these factors include:

- RIT Online is targeted to different students, primarily part-time and non-traditional students such as working professionals, whereas RIT's campus-based programs enroll approximately 90% full-time undergraduate students pursuing their first degree. Wilner Report at 20; Cowan Dep. Tr. 98:22 – 99:11.

- RIT Online focuses on graduate studies, offering six degree programs, only one of which is an undergraduate degree program, whereas RIT's campus-based programs offer 78 different undergraduate degree programs alone. Wilner Report at 21; Cowan Dep. Tr. 97:16 – 22. Consequently, almost none of the classes taken by putative class members during the Spring 2020 semester would have been available through RIT Online. Wilner Report at 21; *see also* Cowan Dep. Tr. 97:8-15.

- RIT Online students have limited access to student support services, extracurricular programs, and health and wellness services, to which putative class members

continued to have access after the transition to distance learning. *See* Wilner Report at 21; *see also* Cowan Dep. Tr. 11-16.

Dr. Cowan also did not consider:

- Whether classes conducted remotely in response to COVID followed comparable syllabi or teaching methods as RIT Online classes. Cowan Dep. 97:23 – 98:6, 98:16-21.

- Whether the student-teacher ratio in RIT Online classes were similar to RIT campus-based programs. *Id.* at 98:7-10.

All of these variables may (and, in fact, did) have an impact on the pricing of tuition at RIT Online. Dr. Cowan's failure to address them renders his damages model unreliable.

**IV.     Dr. Cowan Relies on Erroneous Assumptions Regarding Financial Aid and Pricing.**

Dr. Cowan's model relies on several inputs: RIT's published tuition rate for undergraduate full-time and some part-time students[3]; RIT Online's published tuition rate per credit; the amount of time putative class members' classes were held in-person versus remotely; and certain types of financial aid. Dr. Cowan made a number of unfounded assumptions concerning these inputs which fail to comport with accepted economic principles, run contrary to record facts, and render his analysis unreliable under Rule 702.

Dr. Cowan's fundamental error was assuming that putative class members would receive the same amount of financial aid if they paid the RIT Online tuition rates. He ignored publicly available information[4] that proves his assumption is erroneous: *students who pay the RIT Online*

---

[3] As discussed further below, Dr. Cowan limited his hypothetical class-wide analysis to full-time undergraduate students and certain part-time undergraduates.

[4] *See, e.g.,* Rochester Institute of Technology Tuition, Billing, and Financial Aid FAQS, https://onlinemasters.rit.edu/admissions/tuition-and-financial-aid/faqs/ (last visited Oct. 26, 2022) ("Students assessed the RIT Online tuition rate are not eligible to receive: RIT merit scholarships, RIT grants" certain discounted rates, the Rochester Regional Health employee tuition benefit, NTID tuition rates, Professional Re-Employment Education Program rates, or the RIT employee tuition waiver).

*tuition rate do not qualify or receive institutional aid*. *See* Wilner Report; *see also* n.4, *supra*. Dr. Cowan did not consider this crucial distinction at all. *See* Cowan Dep. Tr. 94:19 – 95:16.

This error is particularly problematic because one of the primary reasons why RIT Online's tuition rates are discounted is to offset the lack of institutional aid to RIT Online students. Thus, under Dr. Cowan's model, putative class members would double-dip: they would receive a discounted tuition rate plus additional discounts as a result of institutional aid.

Compounding this fundamental error, Dr. Cowan prepared his class-wide damages model based only on a single student, Quattrociocchi; he did not consider how each putative class member's individual financial aid awards would impact his model. Dr. Cowan admitted he did not collect information about, and did not consider how his model would be impacted by financial aid awards that had restrictions on how the aid could be used. Cowan Dep. Tr. 81:25 – 84:7. For example, Dr. Cowan assumed incorrectly that Pell Grants are not eligible to offset tuition and improperly excluded Pell Grants from his consideration of financial aid. Cowan Dep. Tr. 125:3-23 & Shen Decl. Ex. 2 (Cowan Dep. Ex. 11). Likewise, Dr. Cowan failed to consider how COVID-related relief distributed to members of the putative class might affect his damages model. Cowan Dep. Tr. 110:7 – 111:21.

**V.    Dr. Cowan Fails to Apply Accepted Economic Modeling Principles That Have a Material Effect on His Model.**

Dr. Cowan used assumptions that do not follow basic, well-accepted pricing principles. As one example, Dr. Cowan applied a straight *pro rata* discount based on the number of days in the semester (which he did not actually calculate[5]). As explained by Dr. Wilner, that *pro rata* division

---

[5] Dr. Cowan assumed that exactly 50% of the Spring 2020 Semester was conducted remotely. *See* Cowan Report at Table 1. At most, 43% of the semester was taught remotely in response to COVID-19. *See* Wilner Report at 30.

9

of academic calendar days ignores basic bundling principles that must be considered, particularly the marginal utility of each day in the semester. *See* Wilner Report at 27 – 30.

Lastly, Dr. Cowan failed to reconcile the fact that full-time undergraduates are charged a flat tuition rate for up to 18 credits and then an increased rate for credits over 18, whereas RIT Online students are charged a set amount for all credits. The effect of his failure to account for different pricing models is that the *less* credit hours a putative class member took during the spring 2020 semester, the *higher* their proportional damages, resulting in a gross inequity. *See* Wilner Report at 18.

## VI. Real-Life Data Contradicts Dr. Cowan's Theory that Remote Instruction at RIT Is Less Valuable than In-Person.

The central thesis of Dr. Cowan's damages model is that RIT Online provided wholly online students with an education comparable in *value* to the education received by putative class members following RIT's transition to distance learning in response to COVID. That theory is contradicted by the real-life behavior of putative class members which indicates that they actually valued their post-transition education as equivalent to their in-person academic experience.

As further explained by Dr. Wilner, two sources of actual data establish that putative class members valued remote learning as much as they valued in-person learning. First, even before March 2020, putative class members had the option to – and many did, including Bergeron – take classes fully online while enrolled as a campus-based student. *See* Wilner Report at 13. Putative class members who took online classes before March 2020 *were charged the same tuition rates as putative class members who did not take any online classes* prior to March 2020. *Id.* As such, the possibility of a remote modality was already built into RIT's pricing for campus-based students, and at least those putative class members who voluntarily enrolled in online courses before March

10

2020 viewed those online courses as just as valuable as in-person classes because they paid the same price in tuition for each.

Second, RIT had to increase its published tuition rates for the Fall 2020 Semester. Students knew, prior to enrolling, that there was at least a risk that Fall 2020 Semester would be conducted partly or entirely remote. Yet 86% of students who were freshmen during the Spring 2020 Semester re-enrolled during the Fall 2020 Semester. Quattrociocchi likewise enrolled in the Fall 2020 Semester *and* enrolled in remote classes during the Summer 2020 Semester at the full tuition rate even though he was not required to do so to obtain his degree on time. *See* Dkt. No. 71-15 (Quattrociocchi Dep. Ex. 7).

## VII. Dr. Cowan Failed to Analyze The Diverse Circumstances of Students in the Putative Class.

Dr. Cowan asserts that his model is applicable to the entire putative class, although he admittedly does not have an understanding of whom the putative class even includes, and his analysis is based on the data for only one undergraduate in one academic program. Dr. Cowan did not analyze any graduate students, part-time students, study abroad students, Co-op students, and made a unilateral decision to exclude NTID students even though NTID students are included in Plaintiffs' proposed class definition. In fact, Dr. Wilner demonstrated that Bergeron suffered no damages utilizing Dr. Cowan's own flawed model due to these diverse circumstances amongst the putative class. *See* Wilner Report 40, Figure 9.

Nor did Dr. Cowan address the differences in legal claims: those putative class members with express contracts for tuition and fees, and those with implied contract claims relying on the varying terms in different RIT documents. As such, his proposed damages model fails to incorporate material portions of the putative class and their respective situations. *See generally*,

11

Cowan Report; *see also* Cowan Dep. Tr. 56:1 – 56:2; 130:4-24.  Nor does Dr. Cowan's proposed damages theory demonstrate that RIT was unjustly enriched.  *See* Wilner Report at 42.

**VIII.   Dr. Cowan Wholly Failed to Analyze Plaintiffs' Fee Claims.**

Finally, Dr. Cowan did not provide *any* methodology for or analysis of Plaintiffs' claims for fee refunds.  *See generally* Cowan Report; Cowan Dep. Tr. 49:17 – 52:8.  Consequently, on that issue specifically, Dr. Cowan's expert report and testimony must be excluded under Rules 403 and 702 for failure to provide any foundation, methodology or analysis.

## CONCLUSION

For all of the reasons discussed herein, Rochester Institute of Technology respectfully requests that the Court grant this motion and exclude the expert report and testimony of Plaintiffs' expert, Dr. Charles Cowan, Ph.D.

Dated: New York, New York
October 28, 2022

SANTIAGO BURGER LLP

By: /s *Fernando Santiago*
Fernando Santiago
fernando@litgrp.com
2280 East Avenue, 2nd Floor
Rochester, NY 14610
Tel:  (585) 563-2400
Fax:  (585) 563-7526

HOLLAND & KNIGHT LLP

By: /s *Qian Shen*
Robert J. Burns
Qian (Sheila) Shen
robert.burns@hklaw.com
qian.shen@hklaw.com
31 West 52nd Street
New York, NY 10019
Tel:  (212) 513-3200
Fax:  (212) 385-9010

                Paul G. Lannon (admitted *pro hac vice*)
                paul.lannon@hklaw.com
                10 St. James Avenue, 11th Floor
                Boston, MA 02116
                Tel:  (617) 523-2700
                Fax:  (617) 523-6850