**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NICHOLAS BERGERON and NICK QUATTROCIOCCHI, individually and on behalf of others similarly situated,<br><br>     Plaintiffs,<br><br> v.<br><br>ROCHESTER INSTITUTE OF TECHNOLOGY,<br><br>     Defendant. | Case No. 6:20-cv-06283-CJS-MJP |

<u>**PLAINTIFFS NICHOLAS BERGERON AND NICK QUATTROCIOCCHI'S OPPOSING STATEMENT TO ROCHESTER INSTITUTE OF TECHNOLOGY'S STATEMENT OF UNDISPUTED FACTS**</u>

1. On or about November 7, 2019, Bergeron executed a Student Financial Responsibility Agreement ("SFRA") governing the 2019-2020 academic year. See Declaration of Qian (Sheila) Shen ("Shen Decl.") Ex. 1 ("Bergeron Dep. Tr.") 48:22 – 49:8; Shen Decl. Ex. 4 ("Bergeron Dep. Ex. 5").

   **Plaintiffs' Response:** Disputed. Plaintiffs do not dispute that as a precondition for registration, students, including Plaintiff Bergeron, were required to sign a Student Financial Responsibility Agreement ("SFRA") for the 2019-2020 academic school year. However, Plaintiffs dispute that the SFRA is the "governing" document for the 2019-2020 school year.

2. On or about October 29, 2019, Quattrociocchi executed an SFRA governing the 2019-2020 academic year. Shen Decl. Ex. 13 ("Quattrociocchi Dep. Tr.") 59:25 – 61:4, 5:7 – 14; Shen Decl. Ex. 16 ("Quattrociocchi Dep. Ex. 8").

   **Plaintiffs' Response:** Disputed. Plaintiffs do not dispute that as a precondition for registration, students, including Plaintiff Bergeron, were required to sign a Student Financial Responsibility Agreement ("SFRA") for the 2019-2020 academic school year. However, Plaintiffs dispute that the SFRA is the "governing" document for the 2019-2020 school year.

3. The SFRA that both Plaintiffs executed provides: I understand and agree that *when I register for any class at the Rochester Institute of Technology (RIT; university), or receive any service from* RIT including student meals plan and/or housing charges or have deferred payments due or incur any liability for damages, *I accept full responsibility to pay all tuition, fees, and other associated costs assessed at any time as a result of my registration*

*and/or receipt of services….* Bergeron Dep. Ex. 5; Quattrociocchi Dep. Ex. 8 (emphasis added)

**Plaintiffs' Response:** Undisputed.

4. Plaintiffs do not interpret the SFRA to contain any promise of in-person instruction or services. Bergeron Dep. Tr. 49:19 – 50:14; Quattrociocchi Dep. Tr. 96:15 – 97:11.

**Plaintiffs' Response:** Undisputed, but irrelevant.

5. The SFRA incorporates by reference RIT's Refund/Tuition Adjustment Policies ("Refund Policy"). Bergeron Dep. Tr. 50:19 – 51:3; Bergeron Dep. Ex. 5; Shen Decl. Ex. 7 ("Bergeron Dep. Ex. 8"); Quattrociocchi Dep. Tr. 168:8 – 169:2; Quattrociocchi Dep. Ex. 8; Shen Decl. Ex. 19 ("Quattrociocchi Dep. Ex. 13").

**Plaintiffs' Response:** Undisputed.

6. RIT's Refund Policy does not provide that students are entitled to a refund if RIT cancels classes for a limited time. Bergeron Dep. Tr. 89:11-14; Quattrociocchi Dep. Tr. 169:20 – 170:2.

**Plaintiffs' Response:** Disputed and irrelevant. The University Refund Policy only concerns refunds where the student withdraws from the University and does not state that there are "no refunds" generally or cover circumstances in which the University opts to close or cease providing services.

7. RIT's Refund Policy does not provide that students are entitled to a refund if RIT changes the modality of instruction. Bergeron Dep. Tr. 89:11-14; Quattrociocchi Dep. Tr. 169:20 – 170:2.

**Plaintiffs' Response:** Disputed and irrelevant. The University Refund Policy only concerns refunds where the student withdraws from the University and does not state that

there are "no refunds" generally or cover circumstances in which the University opts to close or cease providing services.

## PLAINTIFFS HAVE NOT ESTABLISHED ANY SPECIFIC PROMISE OF IN-PERSON INSTRUCTION

8. Bergeron claims that RIT's "brochures, catalogs, websites, advertising, social media posts, syllabi, etc. as outlined in the Complaint" contain promises of in-person instruction. See Shen Decl. Ex. 5 ("Bergeron Dep. Ex. 6") at Response to Interrogatory No. 4.1

   **Plaintiffs' Response:** Undisputed.

9. Bergeron asserts that the class locations and the absence of an express remote option in his class syllabi are promises of in-person instruction. Bergeron Dep. Tr. 80:9 – 81:23.

   **Plaintiffs' Response:** Disputed. Plaintiff Bergeron does not contend that class locations and the absence of an express remote option are not the only promises of in-person instruction.

10. Before applying to RIT, Bergeron likely only reviewed the pages of RIT's website concerning its cyber-security program and tuition schedule and RIT's course bulletin. Those documents did not contain any promise of in-person instruction. Bergeron Dep. Tr. 29:22 – 33:14, 35:9-14. Those documents did not contain any promise of in-person instruction. Bergeron Dep. Tr. 29:22 – 33:14, 75:22 – 77:5.

    **Plaintiffs' Response:** Disputed. Bergeron does not contend that he only reviewed those two sources only prior to enrollments. Bergeron also disputes that these documents do not contain any promise of in-person instruction.

11. Prior to applying to RIT, no representative of RIT promised Bergeron that he would receive exclusively in-person instruction while attending RIT. Bergeron Dep. Tr. 33:11-14, 35:18-23.

**Plaintiffs' Response:** Undisputed, but irrelevant.  Plaintiff Bergeron does not contend that he was promised "exclusively in-person instruction."  *See* ECF No. 43 at 15-16; Plaintiffs' Second Amended Complaint ¶ 129.

12. Bergeron cannot identify any brochures from RIT containing a promise of in-person instruction or services. Ex. 23 Bergeron Dep. Tr. 64:16 – 66:10.

**Plaintiffs' Response:** Disputed.  Plaintiff Bergeron testified that he could not list all of the brochures that RIT has presented because there's dozens throughout the years, and further, he did not have any with him at the deposition to reference. Bergeron Dep. Tr. 65:8-66:10.

13. Bergeron cannot identify any specific promise of in-person instruction in his spring 2020 course descriptions as stated in the course catalog. See Bergeron Dep. Tr. 66:11 – 71:24, Shen Decl. Ex. 8 ("Bergeron Dep. Ex. 9").

**Plaintiffs' Response:** Disputed.  Plaintiff Bergeron testified that he was required to take ISTE501 in-person and there were no options to take this course remotely. Bergeron Dep. Tr. 68:18-69:1. Bergeron does not contend that his spring 2020 course descriptions are not the only promises of in-person instruction.

14. Bergeron cannot identify any specific promise of in-person instruction or services in the RIT Undergraduate Bulletin for the 2019-2020 academic year contains ("Bulletin"). Bergeron Dep. Tr. 83:24 – 86:8; Shen Decl. Ex. 6 ("Bergeron Dep. Ex. 7").

**Plaintiffs' Response:** Disputed.  Bergeron does not contend that his spring 2020 course descriptions are not the only promises of in-person instruction.

15. Bergeron cannot identify any specific promise of in-person instruction or services on RIT's website. Bergeron Dep. Tr. 71:24 – 74:4.

**Plaintiffs' Response:** Disputed. Plaintiff Bergeron testified that there "is certainly a lot of advertising about how all the things on campus that you get when you go to school at RIT … I mean, there's hundreds of things to do on campus, so I couldn't name them all, but there's plenty of clubs, activities, there's labs, there's the library, there's the gym, there's the cafeterias, there's student health center, there's events, sports, there's pizza parties, there's tons of stuff." Bergeron Dep. Tr. 72:14-73:14. Bergeron does not contend that the RIT's website is the not the only promises of in-person instruction.

16. Bergeron cannot identify any specific promise of in-person instruction or services in RIT's social media posts. Bergeron Dep. Tr. 77:6 – 78:22.

**Plaintiffs' Response:** Disputed. Bergeron does not contend that RIT's social media posts are the only promises of in-person instruction.

17. Bergeron claims he was promised in-person instruction during the Spring 2020 semester because during his prior years at RIT – when there was no pandemic – his classes were held in-person. Bergeron Dep. Tr. 93:13- 94:13.

**Plaintiffs' Response**: Disputed. Bergeron does not contend that his prior years at RIT were the only promises of in-person instruction.

18. Bergeron, however, enrolled in a fully online class for the spring 2020 semester. Bergeron Dep. Tr. 56:12-16.

**Plaintiffs' Response:** Undisputed, but irrelevant. The course that Bergeron enrolled in was charged at the same rate as RIT's on-campus program.

19. Before applying to RIT, Quattrociocchi did not review any RIT written materials, any portion of RIT's website, or any emails from RIT. Quattrociocchi Dep. Tr. 33:6-17.

**Plaintiffs' Response:** Disputed. Plaintiff Quattrociocchi testified that he could not recall. Quattrociocchi Dep. Tr. 33:9-17.

20. Quattrociocchi asserts that RIT promised in-person instruction by offering a mechanical engineering program which he believes must be completed in-person. Quattrociocchi Dep. Tr. 124:13 - 126:23, 141:4-25.

     **Plaintiffs' Response:** Undisputed.

21. Quattrociocchi asserts that RIT promised in-person instruction by virtue of the fact that RIT provides a separate online program. Quattrociocchi Dep. Tr. 126:24 – 127:9.

     **Plaintiffs' Response:** Undisputed.

22. Quattrociocchi asserts that the class locations and designation of a class as in-person on RIT's course registration portal are promises of in-person instruction. Quattrociocchi Dep. Tr. 138:10 – 141:3.

     **Plaintiffs' Response:** Undisputed.

23. Quattrociocchi asserts that RIT promised in-person instruction by using words such as "experiment," "conduct," "test," "evaluate," "hands-on," and "determine" in certain course descriptions. Quattrociocchi Dep. Tr. 133:20 – 134:21, 143:15 – 146:21, 155:3 – 163:24.

     **Plaintiffs' Response:** Undisputed.

24. Quattrociocchi cannot identify any specific statements concerning in-person instruction in the documents he received from RIT over the course of applying for admission. Id. at 33:18 – 36:7, 50:15 – 51:18, 52:9 – 53:2, 56:17 – 59:10, 65:17-23.

     **Plaintiffs' Response:** Disputed. Plaintiff Quattrociocchi testified on multiple occasions that he did not recall. Ex. 26 Quattrociocchi Dep. Tr. 34:6-12; 35:4-24.

25. Quattrociocchi cannot identify any specific statements concerning in-person instruction in marketing letters and brochures he received from RIT prior to applying. Quattrociocchi Dep. Tr. at 33:18 – 36:7.

   **Plaintiffs' Response:** Disputed. Plaintiff Quattrociocchi testified on multiple occasions that he did not recall. Quattrociocchi Dep. Tr. 34:6-12; 35:4-24.

26. Quattrociocchi cannot identify the contract he contends obligated RIT to provide him in-person instruction. Quattrociocchi Dep. Tr. 116:12 – 118:6.

   **Plaintiffs' Response:** Disputed. Plaintiff Quattrociocchi testified: "I do know the contracts. I don't know the specific one which we were referring to. Are there not several contracts I have had to electronically sign in order to attend and specify that the courses I would be taking were supposed to be in-person? … So I'm very confused … So I do know which part of the contracts have been violated …" Quattrociocchi Dep. Tr. 118:4-119-5.

27. Quattrociocchi cannot identify any specific promise of in-person instruction in his letter of admission to RIT. Quattrociocchi Dep. Tr. 61:11 – 63:7; Shen Decl. Ex. 14 ("Quattrociocchi Dep. Ex. 4").

   **Plaintiffs' Response:** Undisputed.

28. Quattrociocchi cannot identify any specific promise of in-person instruction or services on RIT's website. Quattrociocchi Dep. Tr. 124:13 – 129:12, 141:4-25.

   **Plaintiffs' Response:** Disputed. "Q. So what part or parts of the RIT website do you claim contain promises of in-person education by RIT? A. ...I know from the mechanical engineering website, there's several classes that require in-person activities … So for some of the classes, they have to be conducted in-person. There is no way to not have it conducted in person … so I would say even from the mechanical engineering department,

the whole degree is based off of how things mechanically exist. Like, you have to be in person for several of those courses. I would vote that because those courses exist and the contract that need to get covered by those courses, in-person classes have to be required." Quattrociocchi Dep. Tr. 125:13-126:12.

29. Quattrociocchi cannot identify any specific promise of in-person instruction or services in the course descriptions for his lecture classes from spring 2020. Quattrociocchi Dep. Tr. 136:22 – 138:9.

**Plaintiffs' Response:** Disputed. Plaintiff Quattrociocchi testified that off the top of his head, he could not recall. Quattrociocchi Dep. Tr. 138:7-9.

30. Quattrociocchi cannot identify any specific promise of in-person instruction or services in RIT's handbooks. Quattrociocchi Dep. Tr. 148:17 – 149:6.

**Plaintiffs' Response:** Disputed. Plaintiff Quattrociocchi testified that he could not recall specifics. Quattrociocchi Dep. Tr. 149:2-3.

31. Quattrociocchi cannot identify any specific promise of in-person instruction or services in correspondence from RIT. Quattrociocchi Dep. Tr. 149:7 – 150:10.

**Plaintiffs' Response:** Disputed. Plaintiff Quattrociocchi testified that he could not recall specifics. Quattrociocchi Dep. Tr. 149:12.

32. Quattrociocchi cannot identify any specific promise of in-person instruction or services in RIT's marketing materials. Quattrociocchi Dep. Tr. 150:11 – 154:22.

**Plaintiffs' Response:** Disputed. Plaintiff Quattrociocchi highlighted in his deposition testimony that RIT provided a 3d printing demonstration and because of this demonstration, Plaintiff believed there would be some form of in-person education on how to use them. Quattrociocchi Dep. Tr. 151:2-153:4.

33. Quattrociocchi cannot identify any specific promise of in-person instruction or services in RIT's publications. Quattrociocchi Dep. Tr. 175:4 – 176:17.

**Plaintiffs' Response:** Disputed. Plaintiff Quattrociocchi testified that he could not recall specific examples. Quattrociocchi Dep. Tr. 175:7-8.

34. The Bulletin, on its first page, states it is not a contract. It specifically disclaims any contractual promises:

> This Undergraduate Bulletin does not constitute a contract between the university and its students on either a collective or individual basis. It represents RIT's best academic, social, and financial planning at the time of publication. Course and curriculum changes, modifications of tuition, fees, dormitory, meal, and other charges, plus unforeseen changes in other aspects of RIT life, sometimes occur after the Graduate [sic] Bulletin has been printed but before the changes can be incorporated in a later edition of the same publication. Because of this, Rochester Institute of Technology does not assume a contractual obligation with its students for the contents of this Undergraduate Bulletin . . . .

Bergeron Dep. Tr. 86:8 – 88:1; Bergeron Dep. Ex. 7; Quattrociocchi Dep. Tr. 163:25 – 167:5; Shen Decl. Ex. 18 ("Quattrociocchi Dep. Ex. 12").

**Plaintiffs' Response:** Undisputed, but irrelevant.

35. RIT's website is not a contract. Bergeron Dep. Tr. 74:5 – 75:21; Shen Decl. Ex. 9 ("Bergeron Dep. Ex. 10").

**Plaintiffs' Response:** Disputed.  RIT's website, and the manifestations within it, along with other materials create the contract that it has its students for on-campus education. ECF. 43 at 15-16.

### PLAINTIFFS HAVE NOT ESTABLISHED ANY SPECIFIC PROMISE OF IN-PERSON SERVICES

36. The only fees for which Plaintiffs seek a partial refund are the Student Health Fee and Student Activity Fee. Bergeron Dep. Tr. 130:16 – 131:1; Quattrociocchi Dep. Tr. 205:9 – 206:10.

**Plaintiffs' Response:** Undisputed.

37. The Student Health Fee supports the salaries for costs associated with RIT's student health center, including staff wages and materials. Bergeron Dep. Tr. 131:2-13; Quattrociocchi Dep. Tr. 206:16 – 207:11; see also Dkt. No. 48 n. 9; Shen Decl. Ex. 23 ("Concepcion Dep. Ex. 4"); Concepcion Decl. ¶ 8.

    **Plaintiffs' Response:** Undisputed.

38. The student health center continued to operate after RIT's transition to distance learning in March 2020. Bergeron Dep. Tr. 132:1-21; Concepcion Dep. Ex. 4.

    **Plaintiffs' Response:** Disputed. The student health center is a physical building where in-person services are provided. To the extent these facilities remained open, both Plaintiffs were not included in the nominal students who remained on campus and were instead instructed to vacate campus and thus denied access to any and all in-person services and facilities. The health center provided tele-health services only for Plaintiffs. Ex. 33 Concepcion Decl. ¶ 9.

39. The Student Activity Fee revenues are managed by RIT's student government. Concepcion Decl. ¶ 11.

    **Plaintiffs' Response:** Disputed. The above fact should include "With administrative oversight from Student Affairs Office staff." Concepcion Decl. ¶ 11.

40. The Student Activity Fee supports various student activities including student government activities, funding for student groups, student events, fraternities and sororities administration, etc. *See* Concepcion Decl. ¶ 10; *see also* Dkt. No. 48 n. 34.

**Plaintiffs Response:** Disputed. The Student Activity Fee goes towards additional in-person activities like "concerts,…Senior Night, the spring festival, RIT sports" which are not included above. Concepcion Decl. ¶ 10.

41. Unspent revenues from the Student Activity Fees collected are held in reserve for the continued benefit of RIT students. Concepcion Decl. ¶ 11

**Plaintiffs Response:** Undisputed.

42. Student activities and programs continued to be held after RIT's transition to distance learning in March 2020. Bergeron Dep. Tr. 133:5-11. Concepcion Decl. ¶ 12

**Plaintiffs Response:** Disputed. A portion of these fees went towards "non-refundable expenses related to events that had to be cancelled as a result of the New York State stay-at-home orders." Ex. 33 Concepcion Decl. ¶ 12.

43. Quattrociocchi cannot identify any documents or statements promising on-campus amenities. Quattrociocchi Dep. Tr. 120:10 – 121:21.

**Plaintiffs Response:** Disputed. RIT markets their campus facilities, campus-based services, and lab and equipment technologies on campus. Lincoln Depo. 27:3-27:17. Further, these marketing materials are intended to "help students choose RIT or to *entice them* to chose RIT as their university." Concepcion Depo. 55:9-55:10 (emphasis added).

44. Quattrociocchi assumes that he was entitled to in-person activities because he paid a Student Activity Fee. Quattrociocchi Dep. Tr. 120:10 – 121:7.

**Plaintiffs Response:** Undisputed.

**RIT TRANSITIONS TO DISTANCE LEARNING IN RESPONSE TO COVID-19 & RELATED GOVERNMENT ORDERS AT SUBSTANTIAL EXPENSE**

45. On or about March 11, 2020, RIT announced that it was extending spring break by one week, through March 22, so that RIT's faculty and staff could make adjustments to the

11

delivery of instruction and services. Shen Decl. Ex. 2 ("Bergeron Dep. Ex. 2"); Shen Decl. Ex. 20 ("Quattrociocchi Dep. Ex. 14").

**Plaintiffs Response:** Undisputed.

46. On March 14, 2020, Monroe County and surrounding counties declared local states of emergency and Monroe County shut down all public schools. Shen Decl. Ex. 26.

**Plaintiffs Response:** Undisputed.

47. On or about March 15, 2020 RIT announced that classes and services would be provided in a remote modality through the remainder of the semester. Shen Decl. Ex. 10 ("Bergeron Dep. Ex. 11"); Shen Decl. Ex. 21 ("Quattrociocchi Dep. Ex. 15").

**Plaintiffs Response:** Undisputed.

48. On March 16, 2020, the Governor of New York directed every school in the state, including RIT, to close by March 18, 2020, and Executive Order 202.28 directed all schools in the state to remain closed for the remainder of the 2019-2020 academic year. See Governor Cuomo Signs Executive Order Closing Schools Statewide for Two Weeks, New York State, https://www.governor.ny.gov/news/governor-cuomo-signs-executive-order-closing-schools-statewide-two-weeks (last accessed Sept. 16, 2022); Executive Order No. 202.28 of the Governor of the State of New York, available at https://www.nyla.org/userfiles/Advocacy/EO202.28.pdf (last accessed Sept. 16, 2022).

**Plaintiffs Response:** Undisputed.

### RIT WAS NOT UNJUSTLY ENRICHED BY RETAINING TUITION AND FEES

49. Bergeron was accepted by RIT and another university, but chose to enroll at RIT solely because RIT had "one of the best cyber security programs in the country at the time." Bergeron Dep. Tr. at 24:16-25, 34:16 – 35:8.

**Plaintiffs Response:** Disputed. He received a brochure from RIT, reviewed other materials and reviewed the undergraduate bulletin before applying to RIT which also factored into the conclusion asserted. Bergeron Dep. Tr. at 29:22-30:6; 30:19-25, 31:8-10.

50. Bergeron received instruction in all classes, even after the transition to remote learning in the spring 2020 semester. Bergeron Dep. Tr. 109:5-15.

**Plaintiffs Response:** Undisputed.

51. Bergeron's professors continued to teach and make themselves available to students. Bergeron Dep. Tr. 109:16-24.

**Plaintiffs Response:** Disputed. Bergeron's professors began semester teaching in-person and then, after the March 15th unilateral modification, his professors began teaching online. Bergeron Decl. ¶ 10.

52. Bergeron received grades in each class he took during the spring 2020 semester. Bergeron Dep. Tr. 48:1-21; Shen Decl. Ex. 3 ("Bergeron Dep. Ex. 4").

**Plaintiffs Response:** Disputed. Three of Bergeron's class grades were in pass/fail format and he therefore did not receive a letter grade. RIT0001157 at page 3.

53. Bergeron received credits for all classes he took during the spring 2020 semester. Bergeron Dep. Tr. 48:1-12; Bergeron Dep. Ex. 4.

**Plaintiffs' Response:** Undisputed.

54. The spring 2020 semester was Bergeron's most successful year, academically. Bergeron Dep. Tr. 47:16-25; Bergeron Dep. Ex. 4.

**Plaintiffs' Response:** Undisputed.

55. Quattrociocchi applied to RIT because of its mechanical engineering program and its proximity to his hometown. Quattrociocchi Dep. Tr. 26:7 – 27:9, 32:15 – 33:5.

**Plaintiffs' Response:** Undisputed.

56. Quattrociocchi enrolled at RIT because of its mechanical engineering program, not because he was promised in-person instruction. See Quattrociocchi Dep. Tr. at 46:13-23.

    **Plaintiffs' Response:** Disputed. Plaintiff Quattrociocchi believed the mechanical engineering curriculum to be more prestigious locally (relative to Quattrociocchi's home) in that they taught a more practical curriculum. Quattrociocchi Dep. Tr. 47:3-48:13.

57. Quattrociocchi's professors continued to teach post-transition. Quattrociocchi Dep. Tr. 193:4-8.

    **Plaintiffs' Response:** Disputed. Quattrociocchi's professors began semester teaching in-person and then, after the March 15th unilateral modification, his professors began teaching online. Quattrociocchi Decl. ¶ 18.

58. Quattrociocchi's labs continued post transition. Quattrociocchi Dep. Tr. 193:14-25.

    **Plaintiffs' Response:** Disputed. Quattrociocchi's labs were modified. "The labs were a little sad because they just handed us data to go crunch. And it just felt very disconnected from the problem." Quattrociocchi Dep. Tr. 193:22-25. Plaintiff further detailed that one of his courses was a prerequisite for a class in the fall and the lack of hands-on experience he was supposed to gain in the Spring 2020 semester affected the Fall 2020 class. "Because the labs didn't occur, I was not able to transfer that information well to the next proceeding course." Quattrociocchi Dep. Tr. 199:21-200:10.

59. Quattrociocchi received grades in each class he took during the spring 2020 semester. Quattrociocchi Dep. Tr. 84:6 – 85:5; Shen Decl. Ex. 15 ("Quattrociocchi Dep. Ex. 7").

    **Plaintiffs' Response:** Disputed. Quattrociocchi received three pass/fail grades instead of the letter grades he would have received during a traditional semester. Ex. 7 RIT0001270.

60. Quattrociocchi received credits for all classes he took during the spring 2020 semester. Quattrociocchi Dep. Tr. 84:6-16; Quattrociocchi Dep. Ex. 7.

    **Plaintiffs Response:** Undisputed.

61. During the 2019-2020 academic year, RIT received $325,319,000 in tuition and fees. Concepcion Decl. Ex. 1 at 3.

    **Plaintiffs Response:** Undisputed.

62. During the 2019-2020 academic year, RIT's operating expenses totaled $588,597,000. Decl. Concepcion Ex. 1 at 3.

    **Plaintiffs Response:** Undisputed.

63. $407,943,000 of RIT's operating expenses for the 2019-2020 academic year were spent on salaries, wages, and benefits. Concepcion Decl. Ex. 1 at 3.

    **Plaintiffs Response:** Undisputed.

64. The revenues RIT received through the Student Health Fee for the 2019-2020 academic year totaled $4,663,041. Concepcion Dep. Ex. 4.

    **Plaintiffs Response:** Undisputed.

65. After the transition to distance learning, RIT's dorms remained open for students that could not safely go home, and thus buildings had to be powered and heated, meals had to be provided and delivered, etc. See Concepcion Decl. ¶ 15. RIT continued to incur basic building maintenance and utilities costs, and continued to pay its taxes and insurance costs. Id.

    **Plaintiffs' Response:** Undisputed, but irrelevant. The students who remained on campus are not party to this action.

66. The Student Health Fee revenues are used to support RIT's Student Health Center, counseling, Disability Services Office, student wellness, and Center for Recreational Sports. Concepcion Dep. Ex. 4.

    **Plaintiffs' Response:** Disputed. Nowhere in Concepcion's deposition does Defendant witness detail what the Student Health Fee specifically covers. "The student health fee covers the expenses to offer student health services to students, but those costs are in excess of what we receive in student health fees." Concepcion Dep. 110:1-110:4. Additionally, "the totality of the student health fee does not cover all the costs of the student health center, to run the student health center, to pay the doctors and the nurses and *to run that building*." Ex. 29 (a) and (b) Concepcion Dep. 112:1-112:4 (emphasis added).

67. The expenses to operate RIT's Student Health Center, counseling, Disability Services Office, student wellness, and Center for Recreational Sports during the 2019-2020 academic year totaled $5,606,604. Shen Decl. Ex. 22 ("Concepcion Dep. Tr.") 109:22 – 110:5; Concepcion Dep. Ex. 4.

    **Plaintiffs Response:** Disputed. As stated above, Concepcion's deposition does not detail specifically what the student health fee covers. Ex. 29 (a) and (b) Concepcion Dep. 112:1-112:4.

68. After the transition to distance learning, RIT continued to provide in-person health services to students who had to remain on campus, and expanded its telehealth services to all students for the duration of the spring 2020 semester. Concepcion Decl. ¶ 9.

    **Plaintiffs Response:** Disputed. Online students do not have access to the health center because "[t]hey do not utilize the health center. They are not residentially there." Concepcion Depo. 102:5-102:6.

69. The Student Activity Fee revenues are managed by RIT's student government. Concepcion Decl. ¶ 11. Unspent revenues from the Student Activity Fees collected roll over each year for the continued benefit of RIT students. Id. at ¶¶ 11, 12.

**Plaintiffs Response:** Disputed. There is "administrative oversight from Student Affairs Office staff." Ex. 39 Concepcion Decl. ¶ 11.

70. After the transition to distance learning, RIT continued to provide students with remote student programs and activities. Concepcion Decl. ¶ 12.

**Plaintiffs Response:** Disputed. Defendant *began* to provide students with remote programs and activities after modifying the semester by cancelling or suspending all in-person activities. "All in-person, RIT sponsored or hosted events…must be postponed, canceled *or offered virtually*" Ex. 5 RIT0001414 (emphasis added). Further, major events were outright cancelled. Imagine RIT was cancelled along with the Spring commencement. RIT0001414 and Ex. 6 RIT0001548. The virtual commencement was "not intended to replace a traditional commencement." Ex. 6 RIT0001548.

71. RIT spend an additional nearly $450,000 in response to COVID-19 between March 1, 2020 and June 30, 2020 to ensure that all students safely and effectively transitioned to remote learning. Concepcion Decl. ¶ 16.

**Plaintiffs Response:** Disputed. Plaintiff challenges "effectively" because core to this issue is RIT's delivery method of teaching and services being virtual rather than in-person.

72. Additionally, RIT lost a substantial portion of its auxiliary revenues from housing and meal plan fees, as it provided pro rata refunds of housing for the portion of the semester transitioned online, and refunded all unused meal plan balances to students. Concepcion Decl. ¶ 17.

**Plaintiffs Response:** Undisputed, but irrelevant. Housing and meal plan fee recovery is not being sought in this action.

73. Bergeron was charged a total of $22,867 in tuition and fees for the spring 2020 semester. Bergeron Dep. Tr. 125:8 – 127:5; Shen Decl. Ex. 12 ("Bergeron Dep. Ex. 16").

    **Plaintiffs Response:** Disputed. Bergeron was charged $22,867 for tuition, activity fee, and the health fee only. Ex. 34 RIT0001096.

74. Bergeron received $23,242.50 in scholarships during the spring 2020 semester. Bergeron Dep. Tr. 127:7-10; Bergeron Dep. Ex. 16.

    **Plaintiffs Response:** Undisputed.

75. In addition to the tuition and fee charges, Bergeron paid for housing and a parking permit for the spring 2020 semester, both of which he received a pro rata refund. Bergeron Dep. Tr. 128:15-18, 107:7-25.

    **Plaintiffs Response:** Undisputed.

**PLAINTIFFS SEEK DAMAGES BASED ON A PERCEIVED DETERIORATION IN THE QUALITY OF INSTRUCTION**

76. Bergeron believed that all of his classes had been "deeply devalued because of remote instruction methods." Bergeron Dep. Tr. 117:19 – 118:2; Shen Decl. Ex. 11 ("Bergeron Dep. Ex. 14"). He believes this is so because of the pedagogical methods employed after the transition to distance learning and the quality of instruction. Bergeron Dep. Tr. 118:9 – 120:24. For example, Bergeron believes that that his physics class was worse after the transition because he was not able to see concepts in action in a lab. Bergeron Dep. Tr. 116:13 – 117:2.

    **Plaintiffs Response:** Disputed as to "pedagogical methods" as Plaintiff Bergeron did not testify such. Bergeron Dep. Tr. 118:9 – 120:24.

18

77. Bergeron cannot articulate how to quantify an education, or the purported diminution in value of his education post-transition. Bergeron Dep. Tr. 120:14 – 121:4.

   **Plaintiffs Response:** Undisputed.

78. Quattrociocchi believes his classes were devalued based on changes in pedagogical methods after the transition. Quattrociocchi Dep. Tr. 198:24 – 204:22. Quattrociocchi asserts that his Contemporary Issues class degraded in quality a bit, and that the rest of his spring 2020 courses degraded substantially in quality but to varying degrees. *Id.*

   **Plaintiffs Response:** Disputed.  The cited to testimony does not support the proposition asserted in SUF 80. Fed. R. Civ. P. 56(c).

   **PLAINTIFFS HAVE NOT ARTICULATED A VIABLE DAMAGES THEORY**

79. Bergeron believes he is entitled to a tuition and fees refund because classes were "deeply devalued because of remote instruction methods. Bergeron Dep. Tr. 117:19 – 119:23; Bergeron Dep. Ex. 14.

   **Plaintiffs Response:** Undisputed.

80. Likewise, Quattrociocchi believes his classes deteriorated in quality and seeks damages because his professors employed different pedagogical methods to teach remotely after March 2020. Quattrociocchi Dep. Tr. 200:11 – 204:22.

   **Plaintiffs Response:** Disputed.  The cited to testimony does not support the proposition asserted in SUF 80. Fed. R. Civ. P. 56(c).

81. Plaintiffs rely on the opinion of Dr. Charles Cowan, Ph.D. to calculate the damages they seek. See Shen Decl. Ex. 25 ("Cowan Report").

   **Plaintiffs Response:** Undisputed.

82. Dr. Cowan opines that the value of instruction RIT provided after March 22, 2020 is equivalent to the published tuition rate for RIT Online, RIT's separate online only program. Cowan Report ¶ 17; see also Shen Decl. Ex. 24 ("Cowan Dep. Tr.") 67:20 – 69:10. Dr. Cowan opines that Plaintiffs are entitled to a refund of the difference between what they paid to RIT for spring 2020 tuition and the RIT Online published tuition rate, pro rata for the portion of the semester conducted remotely in response to COVID-19 and related government orders. Id.

   **Plaintiffs Response:** Undisputed.

83. RIT Online is an entirely separate program offering a limited number of courses and degrees targeted to a different demographic of students. While RIT's campus-based programs are targeted to generally full-time students pursuing their first Bachelor's degree, RIT Online is designed for and targeted to part-time and non-traditional students, many of whom are pursing graduate degrees, secondary degrees, or continuing professional education. Declaration of Therese Hannigan ("Hannigan Decl.") ¶ 4.

   **Plaintiffs Response:** Undisputed, but irrelevant.

84. The RIT Online curricula are developed by faculty who also teach campus-based courses, but the RIT Online courses are specifically designed for an online audience and tailored to students who are typically working professionals. Hannigan Decl. ¶ 5.

   **Plaintiffs Response:** Undisputed, but irrelevant.

85. During the spring 2020 semester, while RIT's campus-based programs offered 79 different degree programs across Bachelor's, Master's, and Ph.D. programs. Hannigan Decl. ¶ 6.

   **Plaintiffs Response:** Undisputed.

86. RIT Online offered 6 degree programs, only 1 of which was an undergraduate program. The RIT Online undergraduate program is an individualized studies program not offered to RIT campus-based students. Hannigan Decl. ¶ 7.

**Plaintiffs Response:** Undisputed.

87. RIT Online provides limited student support services as compared to the resources available to campus-based students. RIT Online students do not have access to any student activities (whether or not those activities are supported through the RIT operating budget or the Student Activity Fee, which RIT Online students do not pay); a student government organization; campus resources such as security, library and research, or study spaces; enhanced accessibility services; or access to the campus facilities. Hannigan Decl. ¶ 9.

**Plaintiffs Response:** Undisputed.

88. RIT Online students are not permitted to receive institutional financial aid from RIT. RIT Online students were not qualified to receive RIT merit scholarships, RIT grants, the graduate internship tuition rate, or the course audit rate. Hannigan Decl. ¶ 10.

**Plaintiffs Response:** Undisputed, but irrelevant.

89. RIT Online students do not receive institutional aid because the discounted tuition rate for RIT Online equals approximately the same net tuition and fees RIT campus-based students pay after deducting the institutional aid they receive. Hannigan Decl. ¶ 11.

**Plaintiffs Response:** Undisputed, but irrelevant.

Dr. Cowan created a calculation for his theory, and applied it to Quattrociocchi only. See Cowan Report at Table 1. He did not conduct a similar calculation for Bergeron. See generally id.; see also Cowan Dep. Tr. 40:1-24, Cowan Dep. Tr. 49:12 – 50:7.

**Plaintiffs Response**: Undisputed.

90. Dr. Cowan did not apply his formula to any other putative class members to test the reliability of his formula. See generally Cowan Report.

**Plaintiffs Response:** Undisputed, but irrelevant.

91. Dr. Cowan did not create a formula applicable to RIT graduate students, and did not consider whether his damages formula would be appropriate to putative class members who are RIT graduate students. *See generally* Cowan Report; Cowan Dep. Tr. 56:1-15.

**Plaintiffs Response:** Undisputed, but irrelevant.

92. Dr. Cowan did not opine or determine a formula to calculate the Student Activities Fee or Student Health Fee refunds Plaintiffs seek. See generally Cowan Report; Cowan Dep. Tr. 51:4-24. Dr. Cowan does not know what fees are at issue. Cowan Dep. Tr. 58:10 – 59:9.

**Plaintiffs Response:** Undisputed, but irrelevant.

### BERGERON SUSTAINED NO DAMAGES

93.  For the spring 2020 semester, Bergeron was charged $22,867 in tuition and fees. Bergeron Dep. Tr. 125:8 – 127:5; Bergeron Dep. Ex. 16.

**Plaintiffs Response:** Disputed. See SUF 73.

94. For the spring 2020 semester, Bergeron received $23,242.50 in scholarships and grants. Bergeron Dep. Tr. 127:7-10; Bergeron Dep. Ex. 16.

**Plaintiffs Response**: Undisputed.

95. Bergeron paid out of pocket only for housing and parking. Bergeron Dep. Tr. 128:15-18, 107:7-25.

**Plaintiffs' Response**: Disputed. Defendant has not provided Plaintiffs with evidence that scholarships/grants are first applied to tuition and fees with any remainder being applied to housing and parking. Plaintiff Bergeron was personally responsible for paying costs out of

pocket through student loans associated with his attendance at RIT for the Spring 2020 semester. ECF. 32 at 4-5.

96. Bergeron received a pro rata refund for housing and parking. Bergeron Dep. Tr. 107:7-25.

   **Plaintiffs' Response:** Undisputed.


## PLAINTIFFS NICHOLAS BERGERON AND NICK QUATTROCIOCCHI'S STATEMENT OF UNDISPUTED FACTS

Pursuant to Rule 56 of the Federal Rules of Civil, Plaintiffs Nicholas Bergeron ("Bergeron") and Nick Quattrociocchi ("Quattrociocchi," and with Bergeron, "Plaintiffs") hereby submit this statement of undisputed facts in support of its opposition to Defendant Rochester Institute of Technology's ("Defendant" or "RIT") Motion for Summary Judgment.

1. Under the heading "PAYMENT OF TUITION, FEES AND COSTS/PROMISE TO PAY", RIT's Refund/Tuition Adjustment Policies states "If I drop or withdraw from some or all of the classes for which I register, I will be responsible for paying all or a portion of tuition and fees in accordance with the published tuition refund schedule that I have read at our Refund Policy webpage, the terms of which are incorporated herein by reference." Ex. 35.

2. Student Information System ("SIS") was the registration portal used for Spring 2020 semester classes and each class is listed not only by description, but also by meeting time and physical classroom location, and makes students choose between "In Person" and "Online" under "Mode of Instruction". ECF No. 75 at 6; Bergeron Decl. ¶ 15; Quattrociocchi Decl. ¶ 16.

3.  Plaintiffs did not enroll in the Institute's "RIT ONLINE" program, which RIT promotes as having "the same objectives, rigorous workload and expert RIT faculty as taught on campus." Bergeron Decl. ¶ 6; Quattrociocchi Decl. ¶ 6; Ex. 9.

4.  RIT Online 2019-2020 states the rate for Graduate RIT Online as $1,129 per credit hour. The rate for Undergraduate RIT Online is $1,034 per credit hour. RIT0001868; Ex. 12.

5.  RIT represents in documents to perspective students that RIT Online has "affordable tuition" and "reduced tuition rate[s]" when compared with RIT's main campus program and "You will take classes with the same distinguished faculty to teach on-campus classes, and receive the same esteemed degree as your on-campus peers." Ex. 11

6.  When enrolling and registering for classes at RIT's main campus, Plaintiffs did not receive the "reduced tuition rate" as promised to students of RIT Online program because Plaintiffs were enrolled in the "on-campus classes." Quattrociocchi Decl. ¶ 21; Bergeron Decl. ¶ 20.

7.  RIT states that the Student Activities Fees "supports programs, events, and services that enhance the quality of student life at RIT. The amounts received for the Student Activities Fee are allocated to RIT's student government, which is responsible for using the Student Activities Fee to support student organizations and activities, under the oversight of RIT's Office of Student Affairs. RIT further states that the Student Activities Fee is meant to provide long-term support to student programs, such amounts collected but unspent each year roll into the following academic term for the ongoing benefit of the RIT student body." D. Rogs. Response No. 9.

8. RIT states that the Student Health Services Fee "is allocated to provide support for programs and services offered by the Student Health Center, Student Counseling and Psychological Services and for health promotion initiatives. Information about the services provided by the Student Health Center is publicly available at https://www.rit.edu/studenthealth/. Information about the services provided by Student Counseling and Psychological Services is publicly available at https://www.rit.edu/studenthealth/psychiatric-services." *Id.* at Response No. 9.

9. RIT states that "it has not issued any refunds of tuition, the Student Activities Fee or Student Health Services Fee for the spring 2020 semester, except as permitted by its published refund policy for student withdrawals by specified dates." D. Rogs. Response No. 11.

10. RIT's Undergraduate Bulletin states: "RIT's program offers state-of-the-art equipment and sophisticated laboratories that allow for plenty of hands-on experience. You'll have access to laboratories and equipment for soil mechanics, construction materials…You'll also have access to our Design and Drafting Laboratory." Ex. 30.

11. RIT's Undergraduate Bulletin references "Hands-on" 42 times, "Experiential" 51 times, and "Facilities" 65 times. Ex. 30 (a), (b) and (c).

12. RIT's Undergraduate Bulletin states that the College of Computing and Information Sciences "features more than 2,000 workstations and more than 50 classrooms, labs…offering access to the study of every major computing platform.  Labs are available to students for 16 to 18 hours a day." Ex. 30(a) at 30.

13. RIT's Undergraduate Bulletin states that "RIT offers academic programs that combine outstanding teaching, a strong foundation in the liberal arts and sciences, modern classroom facilities, and work experience." Ex. 30(a) at 2.

14. Plaintiff Bergeron reviewed the pages of RIT's website concerning its cyber-security program and tuition schedule and RIT's course bulletin. (Bergeron Dep. Tr. 29:22 – 33:14, 35:9 – 14)

15. Plaintiff Bergeron testified that there "is certainly a lot of advertising about how all the things on campus that you get when you go to school at RIT…I mean, there's hundreds of things to do on campus, so I couldn't name them all, but there's plenty of clubs, activities, there's labs, there's the library, there's the gym, there's the cafeterias, there's student health center, there's events, sports, there's pizza parties, there's tons of stuff." Bergeron Dep. Tr. 72:14-73:14.

16. Plaintiff Quattrociocchi "I know from the mechanical engineering website, there's several classes that require in-person activities…So for some of the classes, they have to be conducted in-person. There is no way to not have it conducted in person…so I would say even from the mechanical engineering department, the whole degree is based off of how things mechanically exist. Like, you have to be in person for several of those courses." Q Dep. Tr. 125:13-126:12

17. Plaintiff Quattrociocchi testified "So that's a state-of-the-art machine. So there's -- there -- I know there are 3D printing courses that you can take at RIT, and I know that there are some that involves use of some of those upper-level -- well, those kind of state-of-the-art machines, state-of-the-art 3D printing machines. **So the existence of those and marketing towards them would lead me to believe that there has to be some form**

**of in-person education on how to use those.** They made it in-house, and it does some crazy stuff that no one else has done or something nearing that extent, and that has to be an in-person thing because you have to interact with the machine." (emphasis added) Quattrociocchi Dep. Tran. 152:4-21.

18. When Plaintiff Bergeron applied for school in or around Spring of 2015, he applied to RIT's campus-based program and expected to receive access to RIT's main campus.

19. When Plaintiff Quattrociocchi applied for school in or around November of 2014 and July of 2018, he applied to RIT's campus-based program and expected to receive access to RIT's main campus.

20. Neither Plaintiff Bergeron or Quattrociocchi applied to RIT's Online program.

21. When Plaintiff Bergeron and Plaintiff Quattrociocchi applied at RIT, RIT intended to and expected to provide Plaintiff Bergeron and Plaintiff Quattrociocchi with access to its main campus.

22. When Plaintiff Bergeron accepted admission to RIT's campus-based program, he accepted admission to RIT's campus-based program and expected to receive access to RIT's main campus.

23. When Plaintiff Quattrociocchi accepted admission to RIT's campus-based program, he accepted admission to RIT's campus-based program and expected to receive access to RIT's main campus.

24. Neither Plaintiff Bergeron or Plaintiff Quattrociocchi accepted admission to RIT's Online program.

25. When Plaintiff Bergeron and Plaintiff Quattrociocchi accepted admission to RIT, RIT intended to and expected to provide Plaintiffs with access to its main campus.

26. When Plaintiff Bergeron enrolled at RIT, he enrolled in RIT's campus-based program and expected to receive access to RIT's main campus.

27. When Plaintiff Quattrociocchi enrolled at RIT, he enrolled in RIT's campus-based program and expected to receive access to RIT's main campus.

28. Neither Plaintiff Bergeron or Plaintiff Quattrociocchi enrolled in RIT's Online program.

29. When Plaintiff Bergeron and Plaintiff Quattrociocchi enrolled at RIT, RIT intended to and expected to provide Plaintiffs with access to its main campus.

30. When Plaintiff Bergeron registered for classes for Spring 2020 at RIT, he registered for classes on RIT's campus-based program and expected to receive access to RIT's main campus.

31. When Plaintiff Quattrociocchi registered for classes for Spring 2020 at RIT, he registered for classes on RIT's campus-based program and expected to receive access to RIT's main campus.

32. Neither Plaintiff Bergeron or Plaintiff Quattrociocchi registered for classes for Spring 2020 in RIT's Online program.

33. When Plaintiff Bergeron and Plaintiff Quattrociocchi registered for classes for Spring 2020 at RIT, RIT intended to and expected to provide Plaintiffs with access to its main campus.

34. When Plaintiff Bergeron made payments for Spring 2020 at RIT, he registered for classes on RIT's campus-based program and expected to receive access to RIT's main campus.

35. When Plaintiff Quattrociocchi made payments for Spring 2020 at RIT, he registered for classes on RIT's campus-based program and expected to receive access to RIT's main campus.

36. Neither Plaintiff Bergeron or Plaintiff Quattrociocchi made payments for Spring 2020 in RIT's Online program.

37. When Plaintiff Bergeron and Plaintiff Quattrociocchi made payments for Spring 2020 at RIT, RIT intended to and expected to provide Plaintiffs with access to its main campus.

Dated: October 28, 2022

Respectfully Submitted,

**POULIN | WILLEY | ANASTOPOULO, LLC**

BY: */s/Blake G. Abbott*
Roy T. Willey IV*
Eric M. Poulin*
Blake G. Abbott*
Paul J. Doolittle*
32 Ann Street
Charleston, SC 29403
Telephone: (843) 614-8888
Email: eric@akimlawfirm.com
roy@akimlawfirm.com
blake@akimlawfirm.com
pauld@akimlawfirm.com

-and-

**BURSOR & FISHER, P.A.**
Philip L. Fraietta
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150

29

Facsimile: (212) 989-9163
Email: pfraietta@bursor.com

**LEEDS BROWN LAW, P.C.**

Michael A. Tompkins, Esq.
Anthony M. Alesandro
One Old Country Road, Suite 347
Carle Place, NY 11514
(516) 873-9550
aalesandro@leedsbrownlaw.com
mtompkins@leedsbrownlaw.com

**CO-LEAD INTERIM COUNSEL FOR
THE PUTATIVE CLASS**

-and-

**FERR & MULLIN, P.C.**
Robert L. Mullin
7635 Main Street Fishers
P.O. Box 440
Fishers, NY 14453
Telephone: (585) 869-0210
Facsimile: 95850 869-0211
Email: rlmullin@ferrmullinlaw.com

-and-

**MOREA SCHWARTZ BRADHAM
FRIEDMAN & BROWN LLP**

John M. Bradham*
444 Madison Avenue, 4th Floor
New York, NY 10022
Telephone: (212) 695-8050
Email: jbradham@msbllp.com

-and-

**TOPTANI LAW PLLC**

Edward Toptani*
375 Pearl Street, Suite 1410
New York, NY 10038

Telephone: (212) 699-8930
Email: edward@toptanilaw.com

-and-

**THE SULTZER LAW GROUP, P.C.**

Jason P. Sultzer, Esq.
Joseph Lipari, Esq.
Mindy Dolgoff, Esq.
85 Civic Center Plaza, Suite 200
Poughkeepsie, New York 12601
Tel: (845) 483-7100
Fax: (888) 749-7747
sultzerj@thesultzerlawgroup.com
liparij@thesultzerlawgroup.com
dolgoffm@thesultzerlawgroup.com

-and-

**\*Admitted via *Pro Hac Vice***

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on October 28, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.


Date: October 28, 2022                    */s/ Blake G. Abbott*