UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| NICHOLAS BERGERON and NICK QUATTROCIOCCHI, on behalf of themselves and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>ROCHESTER INSTITUTE OF TECHNOLOGY,<br><br>        Defendant. | Case No. 6:20-cv-06283 |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
ROCHESTER INSTITUTE OF TECHNOLOGY'S
MOTION FOR SUMMARY JUDGMENT**

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ..........................................................................................1

ARGUMENT .......................................................................................................................1

I.     The SFRA Is Dispositive of Plaintiffs' Claims...................................................1

II.    Plaintiffs Fail in Their Belated Efforts to Identify Specific Promises of Exclusively In-Person Instruction....................................................................4

     a.    The Existence of RIT Online Does Not Equate to a Promise of In-Person Instruction. ...................................................................7

III.   Plaintiffs' Unjust Enrichment Claim Fails Because a Contract Governs, and Plaintiffs Fail to Raise Any Genuine Disputes of Material Fact.........................8

IV.   Plaintiffs' Damages Theory Is Inadmissible Because It Is Unreliable and Counterfactual....................................................................................................9

CONCLUSION...................................................................................................................10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Andritz Hydro Canada, Inc. v. Rochester Gas & Elec. Corp.*,
No. 20-CV-6772-FPG, 2021 WL 3115425 (W.D.N.Y. July 22, 2021)....................................8

*In re Bos. Univ. COVID-19 Refund Litig.*,
511 F. Supp. 3d 20 (D. Mass. 2021) ....................................................................................6, 7

*Breed v. Ins. Co. of N. Am.*,
46 N.Y.2d 351 (1978) ..............................................................................................................2

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)..................................................................................................................4

*Chiampou Travis Besaw & Kershner, LLP v. Pullano*,
194 A.D.3d 1480 (4th Dep't 2021) ..........................................................................................2

*Chong v. Ne. Univ.*,
2021 WL 1857341 (D. Mass. May 10, 2021) ...........................................................................2

*Espejo v. Cornell Univ.*,
523 F. Supp. 3d 228 (N.D.N.Y. 2021)......................................................................................9

*Figueroa v. Point Park University*,
553 F. Supp.3d 259 (W.D. Pa. August 11, 2021) ....................................................................3

*Fiore v. Univ. of Tampa*,
568 F. Supp. 3d 350 (S.D.N.Y. Oct. 20, 2021)........................................................................3

*Flomenbaum v. New York Univ.*,
71 A.D.3d 80 (1st Dep't 2009) ................................................................................................5

*Goldberg v. Pace Univ.*,
535 F. Supp. 3d 180 (S.D.N.Y. 2021).......................................................................................9

*Hannibal-Fisher v. Grand Canyon Univ.*,
523 F. Supp. 3d 1087 (D. Ariz. 2021) .....................................................................................2

*Hickey v. Univ. of Pittsburgh*,
2021 WL 1630579 (W.D. Pa. Apr. 27, 2021)...........................................................................2

*Horrigan v. Eastern Michigan Univ.*,
No. 20-000075-MK, 2020 WL 6733786 (Mich. Ct. Cl. Sep. 24, 2020)..................................2

*Jones v. Administrators of the Tulane University Educ. Fund*,
    51 F.4th 101 (5th Cir. 2022) ...................................................................................3

*Keefe v. New York Law School*,
    71 A.D.3d 569 (1st Dep't 2010) .............................................................................5

*Nungesser v. Columbia Univ.*,
    169 F. Supp. 3d 353 (S.D.N.Y. 2016).....................................................................5

*Randall v. Univ. of the Pac.*,
    2022 WL 1720085 (N.D. Cal. May 28, 2022) ....................................................2, 4

*Smith v. Ohio State Univ.*,
    2022-Ohio-4101 (Ohio Ct. App. Nov. 17, 2022).............................................5, 10

*Staubus v. Regents of the Univ. of Minnesota*,
    No. 27-CV-20-8546 (Minn. Dist. Ct. Nov. 9, 2022) ..............................................5

*In re Univ. of Miami COVID-19 Tuition & Fee Refund Litig.*,
    524 F. Supp. 3d 1346 (S. D. Fla. 2021) .................................................................3

*Zwicker v. Lake Superior State Univ.*,
    2020 WL 8572097 (Mich. Ct. Cl. Aug. 31, 2020)..................................................2

## PRELIMINARY STATEMENT[1]

Central to Plaintiffs' opposition to summary judgment is an attempt to turn on its head New York law governing the contractual relationship between a university and its students. Plaintiffs try to escape the dispositive effect of an express contract, the Student Financial Responsibility Agreement ("SFRA"), by offering wholly inapposite cases decided under distinct legal regimes of other states. Plaintiffs then implore the Court to find that implied contractual terms govern this dispute while simultaneously ignoring New York law requiring Plaintiffs to identify a specific promise of in-person instruction *and* instead resting their arguments on generic, unenforceable marketing aspirations. Plaintiffs similarly ignore binding precedent requiring the dismissal of their unjust enrichment claim where, as here, the parties agree that an enforceable contract, whether express or implied, governs the claims. Indeed, all of Plaintiffs' claims rest on sand: an untenable damages theory offered by an expert who conducted absolutely *no* analysis to determine if his benchmark theory applied a principled apples-to-apples comparison of RIT's COVID-transitioned courses to RIT's pre-existing wholly online program. Thus lacking legal and factual foundations, Plaintiffs' claims cannot withstand Defendant's motion for summary judgment.

## ARGUMENT

### I.     The SFRA Is Dispositive of Plaintiffs' Claims.

Plaintiffs concede that they each executed an SFRA as a precondition to enrolling for the Spring 2020 semester. *See* Dkt. No. 87 ("Plaintiffs' Counterstatement") at 1-2. Plaintiffs also concede the plain and unambiguous language of the SFRA contains no promise of in-person instruction or services, much less a promise to continue in-person activities during a pandemic or without exception. *Id.* at 3-4. These concessions are fatal to Plaintiffs' claims.

---

[1] Capitalized terms not otherwise defined herein have the same meaning as in RIT's moving Memorandum of Law. *See* Dkt. No. 68.

The terms of the SFRA are clear: Plaintiffs became responsible to pay tuition, fees, and other associated costs when they respectively registered for *any* class or received *any* service. SOMF 3.[2]  Under well-established New York law on contract interpretation, the term "any" is broad and all-encompassing, and the omission of the terms "in-person" in describing the modality of instruction or services mandates the conclusion that Plaintiffs were not promised in-person instruction or services.  *See Chiampou Travis Besaw & Kershner, LLP v. Pullano*, 194 A.D.3d 1480, 1483 (4th Dep't 2021) ("The word 'any' means 'all' or 'every' and imports no limitation.") (citing *Zion v. Kurtz*, 50 N.Y.2d 92, 104 (1980)); *see also Breed v. Ins. Co. of N. Am.*, 46 N.Y.2d 351, 354 (1978).

This inescapable conclusion was joined nationally by *every* court analyzing similar express contractual language and applying similar law concerning the contractual relationship between students and universities.  *See, e.g., Randall v. Univ. of the Pac.*, 2022 WL 1720085, at *5 (N.D. Cal. May 28, 2022) ("There is no language that requires those educational services to be in-person").  *Accord Hickey v. Univ. of Pittsburgh*, 2021 WL 1630579 (W.D. Pa. Apr. 27, 2021), *appeal docketed*, No. 21-2013 (3d Cir. May 5, 2021); *Hannibal-Fisher v. Grand Canyon Univ.*, 523 F. Supp. 3d 1087, 1094 (D. Ariz. 2021); *Chong v. Ne. Univ.*, 2021 WL 1857341, at *5 (D. Mass. May 10, 2021); *Zwicker v. Lake Superior State Univ.*, 2020 WL 8572097 (Mich. Ct. Cl. Aug. 31, 2020), *recons. denied*, 2020 WL 8572097 (M. Ct. Cl. Aug. 31, 2020), *aff'd*, No. 355128, 2022 WL 414183 (Mich. Ct. App. Feb. 10, 2022); *Horrigan v. Eastern Michigan Univ.*, No. 20-

---

[2] The SFRA contains a sole refund provision qualifying students' otherwise unqualified obligation to pay tuition and fees upon registration for any class and/or receipt of any service; the parties agree that the SFRA's refund provision is inapplicable here.  SOMF 5.

000075-MK, 2020 WL 6733786, at *4 (Mich. Ct. Cl. Sep. 24, 2020), *aff'd*, No. 355128, 2022 WL 414183 (Mich. Ct. App. Feb. 10, 2022).[3]

Plaintiffs, having executed the SFRA, are bound by its express terms.  They were not promised exclusively in-person instruction or services, and were bound to pay tuition and fees upon registering for any class and/or receiving any service.  Those express contractual terms foreclose Plaintiffs' tuition and fee refund claims here.

Plaintiffs attempt to distract the Court from this conclusion by arguing – without citation to any authority – that the Court should read into the contract implied terms from outside the four corners of the SFRA.  *See* Opp. Br. at 11.  Plaintiffs' argument on this point attacks a straw-man.  It is, of course, correct that the SFRA does not contain each and every term of the entire contractual relationship between RIT and its students – no reasonable person would expect it to.  But the SFRA does contain all material contractual terms governing precisely what this case is about: the obligations of RIT students to pay tuition and fees in exchange for provision of courses and other services.  On those terms the SFRA is explicit, and contrary to the Plaintiffs wishful thinking, "a

---

[3]  The cases cited by Plaintiffs are readily distinguishable.  Plaintiffs strategically omit disclosing to the Court the actual terms of the Financial Registration Terms and Conditions ("FRTC") considered in *Figueroa v. Point Park University*, 553 F. Supp.3d 259 (W.D. Pa. August 11, 2021).  The FRTC did not "contain any express provision obligating [the university] to provide instruction of *any kind* (in-person or other) or even to process the student's registration."  *Id.* at 263 (emphasis in original).  Nowhere in that decision – which, in any event was on motion to dismiss – is there any citation to or reliance on language similar to RIT's SFRA.  *See generally id.*; *see also id.* at 263 n.3.

Plaintiffs similarly misrepresent the facts and legal analysis in *Jones v. Administrators of the Tulane University Educ. Fund*, 51 F.4th 101 (5th Cir. 2022).  *Tulane* dealt with an Agreement and Disclosure Statement ("A&DS") which the court held was a creature of an "open account" and which, under the particularities of Louisiana law, is "significantly different" from an express contract.  *Id.* at 112.  Because the A&DS "only purports to create the 'open-end account,'" and was found specifically not to create an express contract, the Tulane decision is inapplicable here.  *Id.*

*In re Univ. of Miami COVID-19 Tuition & Fee Refund Litig.*, 524 F. Supp. 3d 1346, 1354 (S. D. Fla. 2021), a decision issued on a motion to dismiss, is irrelevant here as the Court did not explain or cite the language of the SFRA considered.  And while the language of the SFRA in *Fiore v. Univ. of Tampa*, 568 F. Supp. 3d 350 (S.D.N.Y. Oct. 20, 2021) is similar to the language RIT uses, the legal analysis under Florida law is distinct.  Florida law holds that an express contract supplants implied promises only if it contains all material terms.  *See id.* at 370-71.  The Court went on to explicitly distinguish that aspect of Florida law from the law of other states where courts have held that express contracts preclude student tuition refund claims.

contract cannot be implied in fact where there is an express contract covering the subject matter involved," as they must concede.  Opp. Br. at 8 (citing *Ward v. Nat'l Geographic Soc*., 208 F. Supp. 2d 429, 438 (S.D.N.Y. 2002)); *see also Randall*, 2022 WL 1720085, at *5.

## II.   Plaintiffs Fail in Their Belated Efforts to Identify Specific Promises of Exclusively In-Person Instruction.

As a threshold matter, Plaintiffs improperly recast RIT's burden of persuasion on this summary judgment as a burden of proof.  Where the moving party does not bear the ultimate burden of proof at trial, the summary judgment burden is satisfied by pointing out the absence of evidence to support the non-moving party's claims.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  The burden of persuasion then shifts to the non-moving party to show that the record contains sufficient admissible evidence to establish each element of its case.  *Id.* at 322.[4]  Here, RIT satisfied its burden of persuasion because none of the statements Plaintiffs identified during the course of discovery rise to the level of a specific promise of only in-person instruction as required under New York law.

Given that Plaintiffs did, in fact, receive in-person instruction during the first half of the spring 2020 semester, their entire case rests on the assertion that RIT was contractually obligated to provide them with *only* in-person instruction for the entire semester irrespective of the circumstances.  Accordingly, to prove their case, Plaintiffs need to establish that RIT specifically promised the Plaintiffs that they would receive *only* in-person instruction during the Spring 2020 semester.  Plaintiffs have not and cannot identify any such promise.

Indeed, Plaintiffs do not and cannot dispute the applicability of the cases recently decided by courts in *this Circuit* universally holding as a matter of law that classroom locations,

---

[4] As explained in *Celotex*, RIT's burden is not to establish that "there is no evidence" under the sun supporting Plaintiffs' claims.  RIT's only burden is to establish that the evidentiary record post-discovery does not support Plaintiffs' claims.  *Celotex*, 477 U.S. at 322-23.

designations of mode of instruction, and course descriptions touting experiential or hands-on learning do *not* amount to specific promises of in-person instruction and services in all circumstances. *Compare* Moving Br. at 13-15 (citation to Second Circuit and nationwide cases) *with* Opp. Br. at 11-14 (citation to *no* legal authority except two out-of-circuit motion to dismiss decisions not binding on this Court). Glaringly absent from Plaintiffs' Opposition is *any* citation to Second Circuit authority supporting their argument that marketing statements, and administrative designations of class locations and modality amount to specific promises of only in-person instruction.[5]

Plaintiffs' lengthy recitation of New York law on implied contracts, *see* Opp. Br. at 6, is inapposite as none of those cases dealt with promises supposedly made by a university to its students.[6] Plaintiffs ultimately concede (as they must) that in pursuing claims of students against universities, *they* bear the burden of establishing a *specific promise* set forth in the university's publications. *See* Opp. Br. at 5-6 (acknowledging standard for universities as set forth in *Keefe v. New York Law School*, 71 A.D.3d 569 (1st Dep't 2010)); *see also Nungesser v. Columbia Univ.*, 169 F. Supp. 3d 353, 370 (S.D.N.Y. 2016) ("[T]o state a claim for breach of such a contract, a

---

[5] Plaintiffs continue to rely on out-of-circuit cases even in their submission of supplemental authority. *See* Dkt. No. 89-1. Although a class certification decision, *Staubus v. Regents of the Univ. of Minnesota*, No. 27-CV-20-8546 (Minn. Dist. Ct. Nov. 9, 2022) is notable here for two reasons. First, that court dismissed Plaintiffs' breach of contract claims as to tuition on summary judgment. *See id.* at 5. Second, the court emphasized that its analysis of class certification is governed by Minnesota law, which is at odds with the law of other jurisdictions, including New York. *See id.* at 13-14.

[6] *Flomenbaum v. New York Univ.*, 71 A.D.3d 80 (1st Dep't 2009), cited in Plaintiff's Opposition at page 6, dealt with a contract between a university and a faculty member. *See id.* at 82. Nonetheless, the decision supports a finding of no specific promise of in-person instruction here. In *Flomenbaum*, the plaintiff-faculty member argued that NYU breached an agreement with him to provide tuition remission when it admitted his child to a two-year program instead of a four-year program. Looking closely at the language of the parties' agreement, the First Department found that NYU had not breached its agreement because there was no express obligation to admit the child into a four-year program. *See generally id.* Likewise, here, the Court is bound to look first to the language of RIT's publications to determine if there was any specific promise of in-person instruction and to find no breach if there was no such promise. *Accord* Opp. Br. at 5 (citing *Keefe v. New York Law School*, 71 A.D.3d 569 (1st Dep't 2010)).

student must identify specifically designated and discrete promises.") (internal quotations and citations omitted).

Confronted with their own inability to identify any specific promise of in-person instruction, Plaintiffs make a belated attempt to supplement the factual record with vague assertions that RIT made specific promises of in-person instruction and services, assertions unaccompanied by any citation to admissible evidence.  As analyzed in detail in RIT's reply to Plaintiffs' counterstatement of material facts and statement of additional material facts, Plaintiffs' last-ditch attempt to create a factual dispute where none actually exists is wholly insufficient to carry Plaintiffs' burden of raising genuine disputes of fact based on admissible evidence.  Plaintiffs, incredibly, even go so far as to assert that they were not provided *any* in-person instruction or service during the entirety of the Spring 2020 semester – an overreach, and a flat-out falsehood, that reveals the desperation of their efforts to avoid summary judgment against their claims.  *See* Opp. Br. at 2 (arguing that Plaintiffs did not contract for "entirely online instruction").

The "further evidence" that Plaintiffs belatedly identify in their Opposition memorandum (which, tellingly, is absent from Plaintiffs' counterstatement of material facts) do not rise to the level of specific promises of in-person instruction as a matter of law.  The statements Plaintiffs cite at pages 13-15 of their Opposition are the same types of generic marketing aspirations and administrative designations that do not qualify as such specific promises as a matter of law.  *See* Moving Br. at 13-15.

Similarly unavailing is Plaintiffs' assertion that the descriptions of the Student Activity Fee and Student Health Fee[7] promise in-person services.  *See* Opp. Br. at 16-17.  The holding in *In re Bos. Univ. COVID-19 Refund Litig.*, 511 F. Supp. 3d 20 (D. Mass. 2021), relied on by Plaintiffs,

---

[7] Despite RIT's various efforts to get Plaintiffs to confirm what fees are actually at issue in this action, Plaintiffs finally concede that the only fees at issue are the Student Activity Fee and Student Health Fee.  SOMF 36.

actually supports a finding here that RIT's fee descriptions *do not* make a specific promise of in-person instruction.

The *Boston University* court explained that "general terms of 'supporting programs or offsetting costs'" are "broad language [which] would ordinarily weigh *against* a finding of a contractual right to access to any particular on-campus facilities or resources." *Id.* at 24 (modifications omitted) (emphasis added). The distinction in that case was that the descriptions went on to specify that the Sports Pass fee was paid "in exchange for 'admission to all home events for ice hockey, basketball, lacrosse and soccer'" and other fees specified that they were paid for services at specific student union locations, residence halls, fitness centers, and the physical address for the student health clinic. *See id.*

By contrast, RIT's fee descriptions contain no such references to specific in-person sporting events or facilities. *See* Opp. Br. at 16. And Plaintiffs do not dispute that, after the transition to distance learning, RIT continued to provide (in a remote format) access to programs, events, services, the Student Health Center, Student Counseling Psychological Services, and health promotion initiatives. *See* SOMF 38, 42.

### a. The Existence of RIT Online Does Not Equate to a Promise of In-Person Instruction.

Plaintiffs argue that by merely offering a separate, wholly-online program at a different tuition rate (RIT Online) RIT has somehow promised to RIT's campus-based students that they would be provided exclusively in-person instruction. This non-sequitur cannot rescue their case.

Their argument appears to hinge on a straw-man premise that RIT unilaterally transferred them to RIT Online classes in March 2020. *See* Opp. Br. at 15-16. That is not true. Neither Plaintiff was transferred to RIT Online, and, in fact, neither had programs of study that were available through RIT Online. *See* Dkt. No. 84-5 at 2, 21. In March 2020, when RIT's campus

was shut down by government order, RIT undertook painstakingly expensive measures to make sure Plaintiffs could continue their same course of study with the same professors, student cohorts, and curricula (to the extent feasible) through remote means; Plaintiffs' programs of study remained wholly separate from RIT Online, in which they never enrolled. *See, e.g.,* SOMF 51, 57.

Plaintiff Bergeron's course choices for the Spring 2020 semester further expose the fallacy at the heart of Plaintiffs' position. Bergeron voluntarily enrolled in an online course before the March 2020 campus closure and agreed to be charged the full "in-person" rate of tuition to attend that online class. SOMF 18. In other words, he paid "in-person" tuition and fees in exchange for at least one class taught online. Bergeron was not promised exclusively in-person instruction, nor did he expect as much given his choice to take online classes prior to March 2020. The existence of RIT Online was and is irrelevant to Plaintiffs' situation because they were enrolled in a separate program with different pricing, courses and instructors.

III.   **Plaintiffs' Unjust Enrichment Claim Fails Because a Contract Governs, and Plaintiffs Fail to Raise Any Genuine Disputes of Material Fact.**

Plaintiffs opposition to summary judgment on their unjust enrichment claim is premised on incorrect statements of fact and applications of law.

First, while unjust enrichment claims may be permissible where there is a "dispute over the existence, scope or enforceability of the putative contract," they are not permissible where there is simply a dispute over liability under the contract. *Compare* Opp. Br. at 18 *with Andritz Hydro Canada, Inc. v. Rochester Gas & Elec. Corp.*, No. 20-CV-6772-FPG, 2021 WL 3115425, at *9 n.11 (W.D.N.Y. July 22, 2021) (unjust enrichment claim unavailable where plaintiff also brought an implied contract claim). The parties, here, do not dispute the existence of a valid, enforceable contract that governs what Plaintiffs are entitled to receive in exchange for their payment of tuition and fees. The only question is of liability.

Second, Plaintiffs raise another straw-man argument by asserting that they are entitled to restitution because RIT's performance was rendered impossible.  *See* Opp. Br. at 18.  RIT *did* complete its performance – it provided Plaintiffs instruction, services, and credits for the entire Spring 2020 semester, as promised.  Accordingly, RIT has *not* raised an impossibility defense.

Third, Plaintiffs do not explain why or how RIT was *unjustly* enriched by retaining tuition and fees when it completed the promised instruction and services, and delivered the paid-for academic credits, during the darkest days of a global pandemic.  Plaintiffs simply assert they did not get the full benefit of their bargain.  *See* Opp. Br. at 20.  That bare assertion falls far short of their burden to present evidence that RIT exploited the situation to its advantage such that equity and good conscience demand restitution.  *See Goldberg v. Pace Univ.*, 535 F. Supp. 3d 180, 199 (S.D.N.Y. 2021), *appeal docketed*, No. 21-1377 (2d Cir. May 28, 2021) (university's continued provision of instruction and services during pandemic "is not close to a case in which 'equity and good conscience' require restitution"); *Espejo v. Cornell Univ.*, 523 F. Supp. 3d 228, 242 (N.D.N.Y. 2021), *on reconsideration sub nom.*, *Faber v. Cornell Univ.*, No. 3:20-CV-467 (MAD/ML), 2021 WL 4950287 (N.D.N.Y. Oct. 25, 2021) (assertion that university was in better financial position to bear burden of pandemic was insufficient to require restitution).

## IV.    Plaintiffs' Damages Theory Is Inadmissible Because It Is Unreliable and Counterfactual.

Plaintiffs' complaint fails because they have no viable or admissible theory of damages. Central to each claim is their theory that RIT's remote instruction implemented in response to COVID was identical to the instruction and programming offered through RIT Online; using RIT Online as a proxy for the instruction Plaintiffs received during the second half of the Spring 2020 semester, Plaintiffs claim that they should be refunded the difference between published tuition and fees rates for campus-based students and published tuition rates for RIT Online students.

As described more fully in the expert report of Dr. Benjamin Wilner, in RIT's opposition to Plaintiffs' motion for class certification, *see* Dkt. No. 83, and in RIT's *Daubert* motion, *see* Dkt. No. 84, this facile damages model is fundamentally broken and cannot support Plaintiffs' claims as a matter of law.  There are material differences between RIT's COVID-transitioned courses and RIT Online, which make one a wholly invalid comparator for the other.  To name just a few, neither Plaintiffs' programs or classes are available through RIT Online; RIT Online is not targeted for first time undergraduate students like Plaintiffs; and critically, the RIT Online tuition rate reflects the fact that RIT Online students are ineligible for institutional financial aid and is thus discounted *so that it is equivalent* to what campus-based students pay after the application of institutional aid.  *See* Concepcion Dep. Tr. 81:12-82:7; Dkt No. 84-5 at 19, 22-23.  Dr. Cowan, Plaintiffs' expert failed to consider any of these critical factors in his damages model.  *See* Dkt. No. 84.[8]  Lacking a reliable factual or methodological basis, Plaintiffs' damages theory is inadmissible, and that failure to adduce any viable damages theory warrants summary judgment in RIT's favor.[9]

## **CONCLUSION**

For all of the reasons discussed herein, Defendant Rochester Institute of Technology respectfully requests that the Court grant summary judgment against the remaining claims in Plaintiffs' Second Consolidated Amended Complaint.

---

[8] Separately, Plaintiffs cannot backtrack Bergeron's admission under oath that he understood his tuition and fees to have been fully covered by his scholarships and grants.  *Compare* Opp. Br. *with* SOMF 74.

[9] Indeed, the Ohio Court of Appeals recently reversed the grant of class certification in *Smith v. Ohio State Univ.*, 2022-Ohio-4010 citing, *inter alia*, the plaintiff's failure to offer a damages model that could establish an economic injury on a class-wide basis.  Past the pleadings stage, it is insufficient for the plaintiff to assert merely that they lost a "benefit" without evidence of economic injury.  *Id.* Here, Plaintiffs have not shown and cannot show an economic injury both when considering their individual claims and on a class-wide basis.  It is undisputed that Bergeron suffered no economic injury because he (i) paid the same for in-person and online learning prior to March 2020; and (ii) paid no tuition or fees out of pocket.  *See* SOMF 96.  It is also undisputed that Plaintiffs' expert, Dr. Cowan, tested his damages model only on Quattrociocchi and did not consider the myriad facts distinguishing putative class members and whether they sustained an economic injury.  *See generally* Dkt. Nos. 83, 84.

Dated:  New York, New York
        November 18, 2022

SANTIAGO BURGER LLP

By: /s *Fernando Santiago*
Fernando Santiago
fernando@litgrp.com
2280 East Avenue, 2nd Floor
Rochester, NY 14610
Tel:  (585) 563-2400
Fax:  (585) 563-7526

HOLLAND & KNIGHT LLP

By: /s/ *Qian Shen*
Robert J. Burns
Qian (Sheila) Shen
robert.burns@hklaw.com
qian.shen@hklaw.com
31 West 52nd Street
New York, NY 10019
Tel:  (212) 513-3200
Fax:  (212) 385-9010

Paul G. Lannon (admitted *pro hac vice*)
paul.lannon@hklaw.com
10 St. James Avenue, 11th Floor
Boston, MA 02116
Tel:  (617) 523-2700
Fax:  (617) 523-6850