UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

NICHOLAS BERGERON and NICK
QUATTROCIOCCHI, on behalf of themselves and
on behalf of all others similarly situated,

                Plaintiffs,

      v.

ROCHESTER INSTITUTE OF TECHNOLOGY,

                Defendant.

Case No. 6:20-cv-06283

**ROCHESTER INSTITUTE OF TECHNOLOGY'S REPLY TO
PLAINTIFFS NICHOLAS BERGERON AND NICK QUATTROCIOCCHI'S
OPPOSITION TO STATEMENT OF UNDISPUTED FACTS**

Defendant Rochester Institute of Technology ("RIT") submits the following reply to Plaintiff's Responses ("Plaintiff's Counterstatement") to RIT's statement of undisputed material facts pursuant to Local Rule 56 ("SOMF"), and responses to Plaintiff's statement of additional material facts ("Additional Statement").

### PLAINTIFFS EACH EXECUTED AN EXPRESS CONTRACT WHICH CONTAINS NO PROMISE OF IN-PERSON INSTRUCTION

1.      On or about November 7, 2019, Bergeron executed a Student Financial Responsibility Agreement ("SFRA") governing the 2019-2020 academic year. *See* Declaration of Qian (Sheila) Shen ("Shen Decl.") Ex. 1 ("Bergeron Dep. Tr.") 48:22 – 49:8; Shen Decl. Ex. 4 ("Bergeron Dep. Ex. 5").

**Plaintiffs' Response**: Disputed. Plaintiffs do not dispute that as a precondition for registration, students, including Plaintiff Bergeron, were required to sign a Student Financial Responsibility Agreement ("SFRA") for the 2019-2020 academic school year. However, Plaintiffs dispute that the SFRA is the "governing" document for the 2019-2020 school year.

**RIT's Reply:** This fact remains undisputed. Plaintiffs bear the burden of citing admissible evidence to establish the fact is genuinely disputed or must demonstrate that the cited materials fail to establish the absence of a genuine dispute of fact. Fed. R. Civ. P. 56(c). Here, Plaintiffs do not cite any evidence to establish a genuinely disputed fact and do not demonstrate that the cited materials fail to establish the absence of a genuine disputed fact. Plaintiffs, instead, raise a question of law only.

Moreover, Plaintiffs' dispute is contrary to the evidence. There is no dispute that Bergeron executed an SFRA for the 2019-2020 year. Bergeron further admitted that he brought this lawsuit because he believes RIT breached the SFRA and that he does not base his claims on any other contracts. *See* Bergeron Dep. Tr. 61:12 – 62:16.

2.      On or about October 29, 2019, Quattrociocchi executed an SFRA governing the 2019-2020 academic year.  Shen Decl. Ex. 13 ("Quattrociocchi Dep. Tr.") 59:25 – 61:4, 5:7 – 14; Shen Decl. Ex. 16 ("Quattrociocchi Dep. Ex. 8").

**Plaintiffs' Response**: Disputed. Plaintiffs do not dispute that as a precondition for registration, students, including Plaintiff Bergeron, were required to sign a Student Financial Responsibility Agreement ("SFRA") for the 2019-2020 academic school year. However, Plaintiffs dispute that the SFRA is the "governing" document for the 2019-2020 school year.

**RIT's Reply:** This fact remains undisputed.  First, counsel identifies the wrong Plaintiff. Further, Plaintiffs bear the burden of citing admissible evidence to establish the fact is genuinely disputed or must demonstrate that the cited materials fail to establish the absence of a genuine dispute of fact.  Fed. R. Civ. P. 56(c).  Here, Plaintiffs do not cite any evidence to establish a genuinely disputed fact and do not demonstrate that the cited materials fail to establish the absence of a genuine disputed fact.  Plaintiffs instead raise only a question of law.

3.      The SFRA that both Plaintiffs executed provides:

> I understand and agree that *when I register for any class at the Rochester Institute of Technology (RIT; university), or receive any service from* RIT including student meals plan and/or housing charges or have deferred payments due or incur any liability for damages, *I accept full responsibility to pay all tuition, fees, and other associated costs assessed at any time as a result of my registration and/or receipt of services* . . . .

Bergeron Dep. Ex. 5; Quattrociocchi Dep. Ex. 8 (emphasis added).

**Plaintiffs' Response**: Undisputed.

4.      Plaintiffs do not interpret the SFRA to contain any promise of in-person instruction or services.  Bergeron Dep. Tr. 49:19 – 50:14; Quattrociocchi Dep. Tr. 96:15 – 97:11.

**Plaintiffs' Response**: Undisputed, but irrelevant.

2

**RIT's Reply:** This fact remains undisputed, and is relevant to establish that Plaintiffs did not have a reasonable expectation that classes would be held exclusively in-person in all circumstances.

5.     The SFRA incorporates by reference RIT's Refund/Tuition Adjustment Policies ("Refund Policy").  Bergeron Dep. Tr. 50:19 – 51:3; Bergeron Dep. Ex. 5; Shen Decl. Ex. 7 ("Bergeron Dep. Ex. 8"); Quattrociocchi Dep. Tr. 168:8 – 169:2; Quattrociocchi Dep. Ex. 8; Shen Decl. Ex. 19 ("Quattrociocchi Dep. Ex. 13").

**Plaintiffs' Response**: Undisputed.

6.     RIT's Refund Policy does not provide that students are entitled to a refund if RIT cancels classes for a limited time.  Bergeron Dep. Tr. 89:11-14; Quattrociocchi Dep. Tr. 169:20 – 170:2.

**Plaintiffs' Response**: Disputed and irrelevant. The University Refund Policy only concerns refunds where the student withdraws from the University and does not state that there are "no refunds" generally or cover circumstances in which the University opts to close or cease providing services.

**RIT's Reply:** The fact remains undisputed.  Plaintiffs bear the burden of citing admissible evidence to establish the fact is genuinely disputed or must demonstrate that the cited materials fail to establish the absence of a genuine dispute of fact.  Fed. R. Civ. P. 56(c).  Here, Plaintiffs do not cite any evidence to establish a genuinely disputed fact and do not demonstrate that the cited materials fail to establish the absence of a genuine disputed fact.  Plaintiffs instead raise only a question of law.

Plaintiffs' argument moreover implicitly concedes that RIT's Refund Policy does not entitle students to a refund if RIT cancels class for a limited time.  Bergeron Dep. Tr. 89:7-10; Quattrociocchi Dep. Tr. 169:20-170:2.

7.  RIT's Refund Policy does not provide that students are entitled to a refund if RIT changes the modality of instruction.  Bergeron Dep. Tr. 89:11-14; Quattrociocchi Dep. Tr. 169:20 – 170:2.

**Plaintiffs' Response**: Disputed and irrelevant. The University Refund Policy only concerns refunds where the student withdraws from the University and does not state that there are "no refunds" generally or cover circumstances in which the University opts to close or cease providing services.

**RIT's Reply:** The fact remains undisputed.  Plaintiffs bear the burden of citing admissible evidence to establish the fact is genuinely disputed or must demonstrate that the cited materials fail to establish the absence of a genuine dispute of fact.  Fed. R. Civ. P. 56(c).  Here, Plaintiffs do not cite any evidence to establish a genuinely disputed fact and do not demonstrate that the cited materials fail to establish the absence of a genuine disputed fact.  Plaintiffs instead raise only a question of law.

Plaintiffs' argument, moreover, implicitly concedes that RIT's Refund Policy does not entitle students to a refund if RIT changes course modality.  Bergeron Dep. Tr. 89:7-10; Quattrociocchi Dep. Tr. 169:20-170:2.

4

## PLAINTIFFS HAVE NOT ESTABLISHED ANY SPECIFIC PROMISE OF IN-PERSON INSTRUCTION

8.     Bergeron claims that RIT's "brochures, catalogs, websites, advertising, social media posts, syllabi, etc. as outlined in the Complaint" contain promises of in-person instruction. *See* Shen Decl. Ex. 5 ("Bergeron Dep. Ex. 6") at Response to Interrogatory No. 4.[1]

**Plaintiffs' Response**: Undisputed.

9.     Bergeron asserts that the class locations and the absence of an express remote option in his class syllabi are promises of in-person instruction. Bergeron Dep. Tr. 80:9 – 81:23.

**Plaintiffs' Response**: Disputed. Plaintiff Bergeron does not contend that class locations and the absence of an express remote option are not the only promises of in-person instruction.

**RIT's Reply:**  This fact remains undisputed.  As written, this response is unintelligible. Plaintiffs bear the burden of citing admissible evidence to establish the fact is genuinely disputed or must demonstrate that the cited materials fail to establish the absence of a genuine dispute of fact.  Fed. R. Civ. P. 56(c).  Here, Plaintiffs do not cite any evidence to establish a genuinely disputed fact and do not demonstrate that the cited materials fail to establish the absence of a genuine disputed fact.

10.     Before applying to RIT, Bergeron likely only reviewed the pages of RIT's website concerning its cyber-security program and tuition schedule and RIT's course bulletin.  Bergeron Dep. Tr. 29:22 – 33:14, 35:9-14.  Those documents did not contain any promise of in-person instruction.  Bergeron Dep. Tr. 29:22 – 33:14, 75:22 – 77:5.

---

[1] Bergeron's interrogatory responses were complete.  Bergeron Dep. Tr. 58:23 – 59:4.

5

**Plaintiffs' Response**: Disputed. Bergeron does not contend that he only reviewed those two sources only prior to enrollments. Bergeron also disputes that these documents do not contain any promise of in-person instruction.

**RIT's Reply:** This fact remains undisputed.  Plaintiffs bear the burden of citing admissible evidence to establish the fact is genuinely disputed or must demonstrate that the cited materials fail to establish the absence of a genuine dispute of fact.  Fed. R. Civ. P. 56(c).  Here, Plaintiffs do not cite any evidence to establish a genuinely disputed fact and do not demonstrate that the cited materials fail to establish the absence of a genuinely disputed fact.  Instead, Plaintiffs simply assert there is a dispute of fact without citing to any record evidence and raising a question of law.

11.    Prior to applying to RIT, no representative of RIT promised Bergeron that he would receive exclusively in-person instruction while attending RIT.  Bergeron Dep. Tr. 33:11-14, 35:18-23.

**Plaintiffs' Response**: Undisputed, but irrelevant. Plaintiff Bergeron does not contend that he was promised "exclusively in-person instruction." See ECF No. 43 at 15-16; Plaintiffs' Second Amended Complaint ¶ 129.

**RIT's Reply:** The fact remains undisputed.  Plaintiffs bear the burden of citing admissible evidence to establish the fact is genuinely disputed or must demonstrate that the cited materials fail to establish the absence of a genuine dispute of fact.  Fed. R. Civ. P. 56(c).  Here, Plaintiffs rely exclusively on a prior order and pleadings, neither of which are admissible evidence.  *See Amusement Indus., Inc. v. Stern*, No. 07CIV11586LAKGWG, 2016 WL 4249965, at *14 (S.D.N.Y. Aug. 11, 2016), *report and recommendation adopted*, No. 07-CV-11586 (LAK), 2016 WL 6820744 (S.D.N.Y. Nov. 10, 2016), aff'd, 721 F. App'x 9 (2d Cir. 2018).  Plaintiffs also raise a question of law.

12.    Bergeron cannot identify any brochures from RIT containing a promise of in-person instruction or services.  Bergeron Dep. Tr. 64:16 – 66:10.

**Plaintiffs' Response**: Disputed. Plaintiff Bergeron testified that he could not list all of the brochures that RIT has presented because there's dozens throughout the years, and further, he did not have any with him at the deposition to reference. Bergeron Dep. Tr. 65:8-66:10.

**RIT's Reply:**  The fact remains undisputed.  Plaintiffs bear the burden of citing admissible evidence to establish the fact is genuinely disputed or must demonstrate that the cited materials fail to establish the absence of a genuine dispute of fact.  Fed. R. Civ. P. 56(c).

Plaintiffs' cited evidence is taken out of context.  Bergeron stated that he could not list all RIT's brochures and that he could not recall a specific brochure that contained a promise of in-person education.  Bergeron Dep. Tr. 66:3-10.  Plaintiffs' fail to effectively dispute this fact because they do not offer any evidence that Bergeron can identify a brochure from RIT that contains a promise of in-person instruction.

13.    Bergeron cannot identify any specific promise of in-person instruction in his spring 2020 course descriptions as stated in the course catalog.  *See* Bergeron Dep. Tr. 66:11 – 71:24, Shen Decl. Ex. 8 ("Bergeron Dep. Ex. 9").

**Plaintiffs' Response**: Disputed. Plaintiff Bergeron testified that he was required to take ISTE501 in-person and there were no options to take this course remotely. Bergeron Dep. Tr. 68:18-69:1. Bergeron does not contend that his spring 2020 course descriptions are not the only promises of in-person instruction.

**RIT's Reply:**  The fact remains undisputed.  Plaintiffs bear the burden of citing admissible evidence to establish the fact is genuinely disputed or must demonstrate that the cited materials fail to establish the absence of a genuine dispute of fact.  Fed. R. Civ. P. 56(c).

7

Plaintiffs attempt to mislead the Court by mischaracterizing Bergeron's testimony on this matter while also presenting it out of context. When asked if there was language in the course description that Bergeron claimed promised the class would be exclusively in person, he stated, "No, but it was required to take in person." Bergeron Dep. Tr. 68:7-19. He then explained that the reason he believed the course had to be taken in person was because he "took the first part and it was all in person, there were not options to take it remotely." Bergeron Dep. Tr. 68:20-69:1. Bergeron's personal interpretation and his prior experience with the course do not constitute a specific promise for exclusively in-person instruction by RIT.

Plaintiffs' statement regarding the spring 2020 course descriptions is unintelligible. Moreover, Plaintiffs do not cite any evidence establishing that Bergeron contends there are other promises of in-person instruction.

14.    Bergeron cannot identify any specific promise of in-person instruction or services in the RIT Undergraduate Bulletin for the 2019-2020 academic year contains ("Bulletin"). Bergeron Dep. Tr. 83:24 – 86:8; Shen Decl. Ex. 6 ("Bergeron Dep. Ex. 7").

**Plaintiffs' Response**: Disputed. Bergeron does not contend that his spring 2020 course descriptions are not the only promises of in-person instruction.

**RIT's Reply:** This fact remains undisputed. Plaintiffs bear the burden of citing admissible evidence to establish the fact is genuinely disputed or must demonstrate that the cited materials fail to establish the absence of a genuine dispute of fact. Fed. R. Civ. P. 56(c).

As written, this response is unintelligible. Plaintiffs fail to offer any evidence of additional purported promises of in-person instruction. Plaintiffs fail to cite any evidence that Bergeron can identify a specific promise of in-person instruction or services in the RIT Undergraduate Bulletin.

8

15.     Bergeron cannot identify any specific promise of in-person instruction or services on RIT's website.  Bergeron Dep. Tr. 71:24-74:4.

**Plaintiffs' Response**: Disputed. Plaintiff Bergeron testified that there "is certainly a lot of advertising about how all the things on campus that you get when you go to school at RIT … I mean, there's hundreds of things to do on campus, so I couldn't name them all, but there's plenty of clubs, activities, there's labs, there's the library, there's the gym, there's the cafeterias, there's student health center, there's events, sports, there's pizza parties, there's tons of stuff." Bergeron Dep. Tr. 72:14-73:14. Bergeron does not contend that the RIT's website is the not the only promises of in-person instruction.

**RIT's Reply:**  The fact remains undisputed.  Plaintiffs bear the burden of citing admissible evidence to establish the fact is genuinely disputed or must demonstrate that the cited materials fail to establish the absence of a genuine dispute of fact.  Fed. R. Civ. P. 56(c).  Here, Plaintiffs cite no evidence of any specific promise of in-person instruction or services, which, as a matter of law, requires evidence of a specific *statement* in RIT's materials.  *Nungesser v. Columbia Univ.*, 169 F. Supp. 3d 353, 370 (S.D.N.Y. 2016); *Keefe v. New York Law School*, 71 A.D.3d 569 (1st Dep't 2010).

Plaintiffs characterization of the information on the website as implying a promise of in-person instruction fails under the case law that has developed to date across the country that advertising of campus life does not rise to the level of a specific promise.  *See UC Remote Cases*, Case No. JCCP5112, Ruling/Order on Demurrer (Super. Ct. July 29, 2021); *Lindner v. Occidental College*, No. CV 20-8481-JFW(RAOx), 2020 WL 7350212, at *8 (C.D. Cal. Dec. 11, 2020) ("Plaintiffs have failed to identify any specific language in the 2019-2020 Catalog or any other publication from Occidental that promises in-person instruction."); *Abuelhawa v. Santa Clara*

9

*Univ.*, 529 F. Supp. 3d 1059, 1072 (N.D. Cal. 2021) (dismissing claims against Santa Clara University); *Randall v. Univ. of the Pac.,* No. 5:20-CV-03196-EJD, 2022 WL 1720085, at \*2 (N.D. Cal. May 28, 2022) (Summary Judgment granted, finding class locations, residency requirement, promotion of "experiential learning" and a "personalized learning environment" are not specific promises of in-person instruction); *Berlanga et al. v. Univ. of San Francisco*, Summary Adjudication Order at 12, (Cal. Super., Case No. CGC-20-584829 ("The weight of authority for this proposition is unsurprising given the most basic principles of contract formation, including that an offer must be sufficiently definite and certain to constitute an offer capable of acceptance in the first instance." The remainder of Plaintiffs' response is unintelligible.

16.     Bergeron cannot identify any specific promise of in-person instruction or services in RIT's social media posts. Bergeron Dep. Tr. 77:6 – 78:22.

**Plaintiffs' Response**: Disputed. Bergeron does not contend that RIT's social media posts are the only promises of in-person instruction.

**RIT's Reply:** This fact remains undisputed. Plaintiffs bear the burden of citing admissible evidence to establish the fact is genuinely disputed or must demonstrate that the cited materials fail to establish the absence of a genuine dispute of fact. Fed. R. Civ. P. 56(c). Here, Plaintiffs cite no evidence of any specific promise of in-person instruction or services, which, as a matter of law, requires evidence of a specific *statement* in RIT's materials. *Nungesser v. Columbia Univ.*, 169 F. Supp. 3d 353, 370 (S.D.N.Y. 2016); *Keefe v. New York Law School*, 71 A.D.3d 569 (1st Dep't 2010).

17.     Bergeron claims he was promised in-person instruction during the spring 2020 semester because during his prior years at RIT – when there was no pandemic – his classes were held in-person. Bergeron Dep. Tr. 93:13- 94:13.

**Plaintiffs' Response**: Disputed. Bergeron does not contend that his prior years at RIT were the only promises of in-person instruction

**RIT's Reply:** This fact remains undisputed. Plaintiffs bear the burden of citing admissible evidence to establish the fact is genuinely disputed or must demonstrate that the cited materials fail to establish the absence of a genuine dispute of fact. Fed. R. Civ. P. 56(c). Here, Plaintiffs cite no evidence of any specific promise of in-person instruction or services, which, as a matter of law, requires evidence of a specific *statement* in RIT's materials. *Nungesser v. Columbia Univ.*, 169 F. Supp. 3d 353, 370 (S.D.N.Y. 2016); *Keefe v. New York Law School*, 71 A.D.3d 569 (1st Dep't 2010).

18.     Bergeron, however, enrolled in a fully online class for the spring 2020 semester. Bergeron Dep. Tr. 56:12-16.

**Plaintiffs' Response**: Undisputed, but irrelevant. The course that Bergeron enrolled in was charged at the same rate as RIT's on-campus program.

**RIT's Reply:** This fact is relevant as it goes to Bergeron's reasonable expectations that all of his spring 2020 classes would be held exclusively in-person in all circumstances. It further negates Plaintiffs' damages theory that RIT's remote classes implemented in response to COVID and government shut-down orders were less valuable than in-person instruction. Bergeron admittedly agreed to pay the same tuition and fees rate to enroll in an online course as he did for a fully remote course, indicating he valued both modalities equally.

19.     Before applying to RIT, Quattrociocchi did not review any RIT written materials, any portion of RIT's website, or any emails from RIT. Quattrociocchi Dep. Tr. 33:6-17.

**Plaintiffs' Response**: Disputed. Plaintiff Quattrociocchi testified that he could not recall. Quattrociocchi Dep. Tr. 33:9-17.

**RIT's Reply:** This fact remains undisputed. Plaintiffs bear the burden of citing admissible evidence to establish the fact is genuinely disputed or must demonstrate that the cited materials fail to establish the absence of a genuine dispute of fact. Fed. R. Civ. P. 56(c). Here, Plaintiffs have not offered any evidence that Quattrociocchi *did* review any RIT written materials, any portion of RIT's website, or any emails from RIT before applying to RIT. Nor do Plaintiffs offer any evidence of materials he may have reviewed.

20. Quattrociocchi asserts that RIT promised in-person instruction by offering a mechanical engineering program which he believes must be completed in-person. Quattrociocchi Dep. Tr. 124:13 - 126:23, 141:4-25.

**Plaintiffs' Response**: Undisputed.

21. Quattrociocchi asserts that RIT promised in-person instruction by virtue of the fact that RIT provides a separate online program. Quattrociocchi Dep. Tr. 126:24 – 127:9.

**Plaintiffs' Response**: Undisputed.

22. Quattrociocchi asserts that the class locations and designation of a class as in-person on RIT's course registration portal are promises of in-person instruction. Quattrociocchi Dep. Tr. 138:10 – 141:3.

**Plaintiffs' Response**: Undisputed.

23. Quattrociocchi asserts that RIT promised in-person instruction by using words such as "experiment," "conduct," "test," "evaluate," "hands-on," and "determine" in certain course descriptions. Quattrociocchi Dep. Tr. 133:20 – 134:21, 143:15 – 146:21, 155:3 – 163:24.

**Plaintiffs' Response**: Undisputed.

24.     Quattrociocchi cannot identify any specific statements concerning in-person instruction in the documents he received from RIT over the course of applying for admission. *Id.* at 33:18 – 36:7, 50:15 – 51:18, 52:9 – 53:2, 56:17 – 59:10, 65:17-23.

**Plaintiffs' Response**: Disputed. Plaintiff Quattrociocchi testified on multiple occasions that he did not recall. Ex. 26 Quattrociocchi Dep. Tr. 34:6-12; 35:4-24.

**RIT's Reply:** This fact remains undisputed.  Plaintiffs bear the burden of citing admissible evidence to establish the fact is genuinely disputed or must demonstrate that the cited materials fail to establish the absence of a genuine dispute of fact.  Fed. R. Civ. P. 56(c).  Here, Plaintiffs have not offered any evidence of specific statements concerning in-person instruction in documents Quattrociocchi may have received from RIT while applying for admission.

25.     Quattrociocchi cannot identify any specific statements concerning in-person instruction in marketing letters and brochures he received from RIT prior to applying. Quattrociocchi Dep. Tr. at 33:18 – 36:7.

**Plaintiffs' Response**: Disputed. Plaintiff Quattrociocchi testified on multiple occasions that he did not recall. Quattrociocchi Dep. Tr. 34:6-12; 35:4-24.

**RIT's Reply:** This fact remains undisputed.  Plaintiffs bear the burden of citing admissible evidence to establish the fact is genuinely disputed or must demonstrate that the cited materials fail to establish the absence of a genuine dispute of fact.  Fed. R. Civ. P. 56(c).  Here, Plaintiffs have not offered any evidence of specific statements concerning in-person instruction in documents Quattrociocchi may have received from RIT while applying for admission.

26.     Quattrociocchi cannot identify the contract he contends obligated RIT to provide him in-person instruction.  Quattrociocchi Dep. Tr. 116:12 – 118:6.

13

**Plaintiffs' Response**: Disputed. Plaintiff Quattrociocchi testified: "I do know the contracts. I don't know the specific one which we were referring to. Are there not several contracts I have had to electronically sign in order to attend and specify that the courses I would be taking were supposed to be in-person? … So I'm very confused … So I do know which part of the contracts have been violated …" Quattrociocchi Dep. Tr. 118:4-119-5.

**RIT's Reply:** This fact remains undisputed.  Plaintiffs bear the burden of citing admissible evidence to establish the fact is genuinely disputed or must demonstrate that the cited materials fail to establish the absence of a genuine dispute of fact.  Fed. R. Civ. P. 56(c).  Here, Plaintiffs have not offered any evidence of specific statements concerning in-person instruction in documents Quattrociocchi may have received from RIT while applying for admission.

Here, Plaintiffs' citation is incomplete and ends in the middle of an answer.  Regardless, Quattrociocchi's testimony confirms that he cannot identify any of the contracts he asserts promised in-person instruction.

27.     Quattrociocchi cannot identify any specific promise of in-person instruction  in his letter of admission to RIT.   Quattrociocchi Dep. Tr. 61:11 – 63:7; Shen Decl. Ex. 14 ("Quattrociocchi Dep. Ex. 4").

**Plaintiffs' Response**: Undisputed.

28.     Quattrociocchi cannot identify any specific promise of in-person instruction or services on RIT's website.  Quattrociocchi Dep. Tr. 124:13 – 129:12, 141:4-25.

**Plaintiffs' Response**: Disputed. "Q. So what part or parts of the RIT website do you claim contain promises of in-person education by RIT? A. ...I know from the mechanical engineering website, there's several classes that require in-person activities … So for some of the classes, they have to be conducted in-person. There is no way to not have it conducted in person … so I would

14

say even from the mechanical engineering department, the whole degree is based off of how things mechanically exist. Like, you have to be in person for several of those courses. I would vote that because those courses exist and the contract that need to get covered by those courses, in-person classes have to be required." Quattrociocchi Dep. Tr. 125:13-126:12.

**RIT's Reply:** This fact remains undisputed. Plaintiffs bear the burden of citing admissible evidence to establish the fact is genuinely disputed or must demonstrate that the cited materials fail to establish the absence of a genuine dispute of fact. Fed. R. Civ. P. 56(c). Here, Plaintiffs have not offered any evidence of specific statements concerning in-person instruction as required under New York law. *Nungesser v. Columbia Univ.*, 169 F. Supp. 3d 353, 370 (S.D.N.Y. 2016); *Keefe v. New York Law School*, 71 A.D.3d 569 (1st Dep't 2010). Quattrociocchi's "vote" that the existence of a mechanical engineering program necessitates in-person instruction is not a *specific promise* of in-person instruction.

29.     Quattrociocchi cannot identify any specific promise of in-person instruction or services in the course descriptions for his lecture classes from spring 2020. Quattrociocchi Dep. Tr. 136:22 – 138:9.

**Plaintiffs' Response**: Disputed. Plaintiff Quattrociocchi testified that off the top of his head, he could not recall. Quattrociocchi Dep. Tr. 138:7-9.

**RIT's Reply:** This fact remains undisputed. Plaintiffs bear the burden of citing admissible evidence to establish the fact is genuinely disputed or must demonstrate that the cited materials fail to establish the absence of a genuine dispute of fact. Fed. R. Civ. P. 56(c). Here, Plaintiffs have not offered any evidence of specific statements concerning in-person instruction in course descriptions.

Moreover, Plaintiffs' citation is taken out of context. Quattrociocchi testified that "there were several instances where we had to go into a lecture hall and get a large lecture. But aside from that, I – if there was anything in the course description that covered that, that's the only thing I could immediately think about." Quattrociocchi Dep. Tr. 136:22-137:24.

30.     Quattrociocchi cannot identify any specific promise of in-person instruction or services in RIT's handbooks. Quattrociocchi Dep. Tr. 148:17 – 149:6.

**Plaintiffs' Response**: Disputed. Plaintiff Quattrociocchi testified that he could not recall specifics. Quattrociocchi Dep. Tr. 149:2-3.

**RIT's Reply:** This fact remains undisputed. Plaintiffs bear the burden of citing admissible evidence to establish the fact is genuinely disputed or must demonstrate that the cited materials fail to establish the absence of a genuine dispute of fact. Fed. R. Civ. P. 56(c). Here, Plaintiffs have not offered any evidence of specific statements concerning in-person instruction or services in RIT's handbooks.

31.     Quattrociocchi cannot identify any specific promise of in-person instruction or services in correspondence from RIT. Quattrociocchi Dep. Tr. 149:7 – 150:10.

**Plaintiffs' Response**: Disputed. Plaintiff Quattrociocchi testified that he could not recall specifics. Quattrociocchi Dep. Tr. 149:12.

**RIT's Reply:** This fact remains undisputed. Plaintiffs bear the burden of citing admissible evidence to establish the fact is genuinely disputed or must demonstrate that the cited materials fail to establish the absence of a genuine dispute of fact. Fed. R. Civ. P. 56(c). Here, Plaintiffs have not offered any evidence of specific statements concerning in-person instruction in correspondence from RIT.

16

Moreover, Plaintiffs' mischaracterize the testimony and take it out of context. Although Quattrociocchi testified that he could not recall specifically or generally what correspondence he received from RIT that contained a promise of in-person instruction or services, when asked if he could point to any correspondence he thought contained a promise of in-person education, he stated, "[i]mmediately off the top of my head, anything that explicitly states in-person classes, off the top of my head, I cannot think of anything yeah." Quattrociocchi Dep. Tr. 150:2-10. Quattrociocchi's speculation that there may be statements explicitly promising in-person classes is not competent evidence.

32.     Quattrociocchi cannot identify any specific promise of in-person instruction or services in RIT's marketing materials. Quattrociocchi Dep. Tr. 150:11 – 154:22.

**Plaintiffs' Response**: Disputed. Plaintiff Quattrociocchi highlighted in his deposition testimony that RIT provided a 3d printing demonstration and because of this demonstration, Plaintiff believed there would be some form of in-person education on how to use them. Quattrociocchi Dep. Tr. 151:2-153:4.

**RIT's Reply:** This fact remains undisputed. Plaintiffs bear the burden of citing admissible evidence to establish the fact is genuinely disputed or must demonstrate that the cited materials fail to establish the absence of a genuine dispute of fact. Fed. R. Civ. P. 56(c). Here, Plaintiffs have not offered any evidence of specific *statements* concerning in-person instruction, as required under New York law. *Nungesser v. Columbia Univ.*, 169 F. Supp. 3d 353, 370 (S.D.N.Y. 2016); *Keefe v. New York Law School*, 71 A.D.3d 569 (1st Dep't 2010).

A demonstration of a 3-D printing machine does not constitute a promise of in-person instruction. *See id.* Moreover, Quattrociocchi's personal belief that, based on the "existence of [classes using the 3d printing machine] and marketing towards" he "believe[d] that there has to be

some form of in-person education on how to use those" is insufficient evidence to establish a genuine issue of material fact. Quattrociocchi Dep. Tr. 151:25-152:21.

33.    Quattrociocchi cannot identify any specific promise of in-person instruction or services in RIT's publications. Quattrociocchi Dep. Tr. 175:4 – 176:17.

**Plaintiffs' Response**: Disputed. Plaintiff Quattrociocchi testified that he could not recall specific examples. Quattrociocchi Dep. Tr. 175:7-8.

**RIT's Reply:** This fact remains undisputed. Plaintiffs bear the burden of citing admissible evidence to establish the fact is genuinely disputed or must demonstrate that the cited materials fail to establish the absence of a genuine dispute of fact. Fed. R. Civ. P. 56(c). Here, Plaintiffs have not offered any evidence of specific statements concerning in-person instruction in RIT's publications.

34.    The Bulletin, on its first page, states it is not a contract. It specifically disclaims any contractual promises:

> This Undergraduate Bulletin **does not constitute a contract between the university and its students on either a collective or individual basis**. It represents RIT's best academic, social, and financial planning at the time of publication. Course and curriculum changes, modifications of tuition, fees, dormitory, meal, and other charges, plus **unforeseen changes in other aspects of RIT life, sometimes occur** after the Graduate [*sic*] Bulletin has been printed but before the changes can be incorporated in a later edition of the same publication. **Because of this, Rochester Institute of Technology does not assume a contractual obligation with its students for the contents of this Undergraduate Bulletin** . . . .

Bergeron Dep. Tr. 86:8 – 88:1; Bergeron Dep. Ex. 7; Quattrociocchi Dep. Tr. 163:25 – 167:5; Shen Decl. Ex. 18 ("Quattrociocchi Dep. Ex. 12").

**Plaintiffs' Response**: Undisputed, but irrelevant.

18

**RIT's Reply:**  This fact is relevant.  Given that there is no dispute Plaintiffs executed an express contract governing their obligation to pay tuition, the disclaimer in the RIT Bulletin reinforces that the SFRA is the exclusive agreement binding on Plaintiffs.

35.    RIT's website is not a contract.  Bergeron Dep. Tr. 74:5 – 75:21; Shen Decl. Ex. 9 ("Bergeron Dep. Ex. 10").

**Plaintiffs' Response**: Disputed. RIT's website, and the manifestations within it, along with other materials create the contract that it has its students for on-campus education. ECF. 43 at 15-16.

**RIT's Reply:** This fact remains undisputed.  Plaintiffs bear the burden of citing admissible evidence to establish the fact is genuinely disputed or must demonstrate that the cited materials fail to establish the absence of a genuine dispute of fact.  Fed. R. Civ. P. 56(c).  Here, Plaintiffs fail to satisfy that burden, as the Court's order on RIT's Motion to Dismiss is not admissible evidence.  *Amusement Indus., Inc. v. Stern*, No. 07CIV11586LAKGWG, 2016 WL 4249965, at *14 (S.D.N.Y. Aug. 11, 2016), *report and recommendation adopted*, No. 07-CV-11586 (LAK), 2016 WL 6820744 (S.D.N.Y. Nov. 10, 2016), aff'd, 721 F. App'x 9 (2d Cir. 2018) (prior court decision not admissible evidence on a summary judgment motion).

<u>**PLAINTIFFS HAVE NOT ESTABLISHED ANY SPECIFIC PROMISE OF**</u>
<u>**IN-PERSON SERVICES**</u>

36.    The only fees for which Plaintiffs seek a partial refund are the Student Health Fee and Student Activity Fee.  Bergeron Dep. Tr. 130:16 – 131:1; Quattrociocchi Dep. Tr. 205:9 – 206:10.

**Plaintiffs' Response**: Undisputed.

37.    The Student Health Fee supports the salaries for costs associated with RIT's student health center, including staff wages and materials.  Bergeron Dep. Tr. 131:2-13; Quattrociocchi

Dep. Tr. 206:16 – 207:11; *see also* Dkt. No. 48 n.9; Shen Decl. Ex. 23 ("Concepcion Dep. Ex. 4");

Concepcion Decl. ¶ 8.

**Plaintiffs' Response**: Undisputed.

38.    The student health center continued to operate after RIT's transition to distance learning in March 2020.  Bergeron Dep. Tr. 132:1-21; Concepcion Dep. Ex. 4.

**Plaintiffs' Response**: Disputed. The student health center is a physical building where in-person services are provided. To the extent these facilities remained open, both Plaintiffs were not included in the nominal students who remained on campus and were instead instructed to vacate campus and thus denied access to any and all in-person services and facilities. The health center provided tele-health services only for Plaintiffs. Ex. 33 Concepcion Decl. ¶ 9.

**RIT's Reply:** This fact remains undisputed.  Plaintiffs bear the burden of citing admissible evidence to establish the fact is genuinely disputed or must demonstrate that the cited materials fail to establish the absence of a genuine dispute of fact.  Fed. R. Civ. P. 56(c).

Here, Plaintiffs cite no evidence for their assertion that the Student Health Center and its services are limited to a physical facility where only in-person services are provided.  Plaintiffs admit that they continued to receive telehealth services from the health center after RIT's transition to distance learning in March 2020.

39.    The Student Activity Fee revenues are managed by RIT's student government. Concepcion Decl. ¶ 11.

**Plaintiffs' Response**: Disputed. The above fact should include "With administrative oversight from Student Affairs Office staff." Concepcion Decl. ¶ 11.

**RIT's Reply:**  This fact remains undisputed.  While "administrative oversight from the Student Affairs Office staff" is provided, "the student government determines the budget for

student activities each year and how to spend the Student Activity Fee revenues." Concepcion Decl. ¶ 11.

40.    The Student Activity Fee supports various student activities including student government activities, funding for student groups, student events, fraternities and sororities administration, etc. *See* Concepcion Decl. ¶ 10; *see also* Dkt. No. 48 n. 34.

**Plaintiffs' Response**: Disputed. The Student Activity Fee goes towards additional in-person activities like "concerts,…Senior Night, the spring festival, RIT sports" which are not included above. Concepcion Decl. ¶ 10.

**RIT's Reply:** The fact remains undisputed. RIT did not suggest the Student Activity Fee did not also fund activities typically held on-campus. *See* Dkt. No. 48 n. 34.

41.    Unspent revenues from the Student Activity Fees collected are held in reserve for the continued benefit of RIT students. Concepcion Decl. ¶ 11

**Plaintiffs' Response**: Undisputed.

42.    Student activities and programs continued to be held after RIT's transition to distance learning in March 2020. Bergeron Dep. Tr. 133:5-11. Concepcion Decl. ¶ 12

**Plaintiffs' Response**: Disputed. A portion of these fees went towards "non-refundable expenses related to events that had to be cancelled as a result of the New York State stay-at-home orders." Ex. 33 Concepcion Decl. ¶ 12.

**RIT's Reply:** The fact remains undisputed. Plaintiffs' offered evidence is taken out of context, quoting only a limited portion related to cancelled events. *See* Concepcion Decl. ¶ 12. Furthermore, this evidence does not dispute the fact that student activities and programs continued to be held after RIT's transition to distance learning in March 2020. Bergeron Dep. Tr. 133:5-11. Concepcion Decl. ¶ 12.

21

43.    Quattrociocchi cannot identify any documents or statements promising on-campus amenities.  Quattrociocchi Dep. Tr. 120:10 – 121:21.

**Plaintiffs' Response**: Disputed. RIT markets their campus facilities, campus-based services, and lab and equipment technologies on campus. Lincoln Depo. 27:3-27:17. Further, these marketing materials are intended to "help students choose RIT or to *entice them* to chose [sic] RIT as their university." Concepcion Depo. 55:9-55:10 (emphasis added).

**RIT's Reply:** This fact remains undisputed.  Plaintiffs bear the burden of citing admissible evidence to establish the fact is genuinely disputed or must demonstrate that the cited materials fail to establish the absence of a genuine dispute of fact.  Fed. R. Civ. P. 56(c).  Here, Plaintiffs cite to no testimony from Quattrociocchi in which he identifies any documents or statements promising on-campus amenities.

Plaintiffs' characterization of Mr. Lincoln's and Ms. Concepcion's testimony as implying a promise of in-person instruction fails to cite any specific promise as required under New York law, and fails under the case law that has developed to date across the country that advertising of campus life does not rise to the level of a specific promise.  *See UC Remote Cases*, Case No. JCCP5112, Ruling/Order on Demurrer (Super. Ct. July 29, 2021); *Lindner v. Occidental College*, No. CV 20-8481-JFW(RAOx), 2020 WL 7350212, at \*8 (C.D. Cal. Dec. 11, 2020) ("Plaintiffs have failed to identify any specific language in the 2019-2020 Catalog or any other publication from Occidental that promises in-person instruction."); *Abuelhawa v. Santa Clara Univ.*, 529 F. Supp. 3d 1059, 1072 (N.D. Cal. 2021) (dismissing claims against Santa Clara University); *Randall v. Univ. of the Pac.,* No. 5:20-CV-03196-EJD, 2022 WL 1720085, at \*2 (N.D. Cal. May 28, 2022) (Summary Judgment granted, finding class locations, residency requirement, promotion of "experiential learning" and a "personalized learning environment" are not specific promises of in-

person instruction); *Berlanga et al. v. Univ. of San Francisco*, Summary Adjudication Order at 12, (Cal. Super., Case No. CGC-20-584829, Summary Adjudication Order at 12, (Cal. Super., Case No. CGC-20-584829 ("The weight of authority for this proposition is unsurprising given the most basic principles of contract formation, including that an offer must be sufficiently definite and certain to constitute an offer capable of acceptance in the first instance."

44.    Quattrociocchi assumes that he was entitled to in-person activities because he paid a Student Activity Fee.  Quattrociocchi Dep. Tr. 120:10 – 121:7.

**Plaintiffs' Response**: Undisputed.

## RIT TRANSITIONS TO DISTANCE LEARNING IN RESPONSE TO COVID-19 & RELATED GOVERNMENT ORDERS AT SUBSTANTIAL EXPENSE

45.    On or about March 11, 2020, RIT announced that it was extending spring break by one week , through March 22, so that RIT's faculty and staff could make adjustments to the delivery of instruction and services.  Shen Decl. Ex. 2 ("Bergeron Dep. Ex. 2"); Shen Decl. Ex. 20 ("Quattrociocchi Dep. Ex. 14").

**Plaintiffs' Response**: Undisputed.

46.    On March 14, 2020, Monroe County and surrounding counties declared local states of emergency and Monroe County shut down all public schools.  Shen Decl. Ex. 26.

**Plaintiffs' Response**: Undisputed.

47.    On or about March 15, 2020 RIT announced that classes and services would be provided in a remote modality through the remainder of the semester.  Shen Decl. Ex. 10 ("Bergeron Dep. Ex. 11"); Shen Decl. Ex. 21 ("Quattrociocchi Dep. Ex. 15").

**Plaintiffs' Response**: Undisputed.

48.    On March 16, 2020, the Governor of New York directed every school in the state, including RIT, to close by March 18, 2020, and Executive Order 202.28 directed all schools in the

state to remain closed for the remainder of the 2019-2020 academic year. *See See Governor Cuomo Signs Executive Order Closing Schools Statewide for Two Weeks*, New York State, https://www.governor.ny.gov/news/governor-cuomo-signs-executive-order-closing-schools-statewide-two-weeks (last accessed Sept. 16, 2022); Executive Order No. 202.28 of the Governor of the State of New York, available at https://www.nyla.org/userfiles/Advocacy/EO202.28.pdf (last accessed Sept. 16, 2022).

**Plaintiffs' Response**: Undisputed.

## RIT WAS NOT UNJUSTLY ENRICHED BY RETAINING TUITION AND FEES

49.    Bergeron was accepted by RIT and another university, but chose to enroll at RIT solely because RIT had "one of the best cyber security programs in the country at the time." Bergeron Dep. Tr. at 24:16-25, 34:16 – 35:8.

**Plaintiffs' Response**: Disputed. He received a brochure from RIT, reviewed other materials and reviewed the undergraduate bulletin before applying to RIT which also factored into the conclusion asserted. Bergeron Dep. Tr. at 29:22-30:6; 30:19-25, 31:8-10.

**RIT's Reply:** This fact remains undisputed. Plaintiffs bear the burden of citing admissible evidence to establish the fact is genuinely disputed or must demonstrate that the cited materials fail to establish the absence of a genuine dispute of fact. Fed. R. Civ. P. 56(c).

Here, Plaintiffs mischaracterize Bergeron's testimony, which only concerned what materials Bergeron *may* have reviewed prior to *applying* to RIT. Bergeron, moreover, did not testify that any of those materials (if he reviewed them) weighed on his decision to enroll. Bergeron's testimony as to the reason he ultimately decided to enroll at RIT remains undisputed.

50.    Bergeron received instruction in all classes, even after the transition to remote learning in the spring 2020 semester. Bergeron Dep. Tr. 109:5-15.

24

**Plaintiffs' Response**: Undisputed.

51.    Bergeron's professors continued to teach and make themselves available to students.  Bergeron Dep. Tr. 109:16-24.

**Plaintiffs' Response**: Disputed. Bergeron's professors began semester teaching in-person and then, after the March 15th unilateral modification, his professors began teaching online. Bergeron Decl. ¶ 10.

**RIT's Reply:** This fact remains undisputed.  Plaintiffs bear the burden of citing admissible evidence to establish the fact is genuinely disputed or must demonstrate that the cited materials fail to establish the absence of a genuine dispute of fact.  Fed. R. Civ. P. 56(c).

Here, Plaintiffs mischaracterize Bergeron's declaration, which states only that, after March 15, 2020, he no longer had access to "RIT's campuses, facilities and services."  Bergeron Decl. ¶ 10.  Bergeron makes no statement that disputes the fact that his professors continued to teach and make themselves available to him after the transition to distance learning.

52.    Bergeron received grades in each class he took during the spring 2020 semester. Bergeron Dep. Tr. 48:1-21; Shen Decl. Ex. 3 ("Bergeron Dep. Ex. 4").

**Plaintiffs' Response**: Disputed. Three of Bergeron's class grades were in pass/fail format and he therefore did not receive a letter grade. RIT0001157 at page 3.

**RIT's Reply:**  This fact remains undisputed.  Plaintiffs bear the burden of citing admissible evidence to establish the fact is genuinely disputed or must demonstrate that the cited materials fail to establish the absence of a genuine dispute of fact.  Fed. R. Civ. P. 56(c).

Bergeron's choice to move over to a pass/fail grading system for some of his classes does not negate the fact that he received a grade or a pass/fail equivalent in all of his classes.  Bergeron Dep. Tr. 48:13-21.

53.     Bergeron received credits for all classes he took during the spring 2020 semester. Bergeron Dep. Tr. 48:1-12; Bergeron Dep. Ex. 4.

**Plaintiffs' Response**: Undisputed.

54.     The spring 2020 semester was Bergeron's most successful year, academically. Bergeron Dep. Tr. 47:16-25; Bergeron Dep. Ex. 4.

**Plaintiffs' Response**: Undisputed.

55.     Quattrociocchi applied to RIT because of its mechanical engineering program and its proximity to his home town.  Quattrociocchi Dep. Tr. 26:7 – 27:9, 32:15 – 33:5.

**Plaintiffs' Response**: Undisputed.

56.     Quattrociocchi enrolled at RIT because of its mechanical engineering program, not because he was promised in-person instruction.  *See* Quattrociocchi Dep. Tr. at 46:13-23.

**Plaintiffs' Response**: Disputed. Plaintiff Quattrociocchi believed the mechanical engineering curriculum to be more prestigious locally (relative to Quattrociocchi's home) in that they taught a more practical curriculum. Quattrociocchi Dep. Tr. 47:3-48:13.

**RIT's Reply:** This fact remains undisputed.  Plaintiffs bear the burden of citing admissible evidence to establish the fact is genuinely disputed or must demonstrate that the cited materials fail to establish the absence of a genuine dispute of fact.  Fed. R. Civ. P. 56(c).  Plaintiffs do not assert and cite no evidence that Quattrociocchi enrolled at RIT because of a purported promise of in-person instruction.

57.     Quattrociocchi's professors continued to teach post-transition.  Quattrociocchi Dep. Tr. 193:4-8.

**Plaintiffs' Response**: Disputed. Quattrociocchi's professors began semester teaching in-person and then, after the March 15th unilateral modification, his professors began teaching online. Quattrociocchi Decl. ¶ 18.

**RIT's Reply:** This fact remains undisputed. Plaintiffs bear the burden of citing admissible evidence to establish the fact is genuinely disputed or must demonstrate that the cited materials fail to establish the absence of a genuine dispute of fact. Fed. R. Civ. P. 56(c).

Quattrociocchi makes no statement that disputes the fact that his professors continued to teach and make themselves available to him after the transition to distance learning.

58.   Quattrociocchi's labs continued post transition. Quattrociocchi Dep. Tr. 193:14-25.

**Plaintiffs' Response**: Disputed. Quattrociocchi's labs were modified. "The labs were a little sad because they just handed us data to go crunch. And it just felt very disconnected from the problem." Quattrociocchi Dep. Tr. 193:22-25. Plaintiff further detailed that one of his courses was a prerequisite for a class in the fall and the lack of hands-on experience he was supposed to gain in the Spring 2020 semester affected the Fall 2020 class. "Because the labs didn't occur, I was not able to transfer that information well to the next proceeding course." Quattrociocchi Dep. Tr. 199:21-200:10.

**RIT's Reply:** This fact remains undisputed. Plaintiffs bear the burden of citing admissible evidence to establish the fact is genuinely disputed or must demonstrate that the cited materials fail to establish the absence of a genuine dispute of fact. Fed. R. Civ. P. 56(c).

Quattrociocchi admits his labs continued post transition. Furthermore, Plaintiffs' cited testimony speaks to Quattrociocchi's perceived quality of his education. *See* Quattrociocchi Dep.

Tr. 199:21-24 ("I know – I guess I don't know the extent in which it was devalued, but I know that it definitely impacted the following spring semester").

Plaintiffs' offered evidence here makes clear that they premise their claims on the perceived difference in quality of instruction.  Those claims are barred by the education malpractice doctrine, as discussed more thoroughly in RIT's moving memorandum of law in support of summary judgment.  Dkt. No. 68.

59.     Quattrociocchi received grades in each class he took during the spring 2020 semester. Quattrociocchi Dep. Tr. 84:6 – 85:5; Shen Decl. Ex. 15 ("Quattrociocchi Dep. Ex. 7").

**Plaintiffs' Response**: Disputed. Quattrociocchi received three pass/fail grades instead of the letter grades he would have received during a traditional semester. Ex. 7 RIT0001270.

**RIT's Reply:**  This fact remains undisputed.  Plaintiffs bear the burden of citing admissible evidence to establish the fact is genuinely disputed or must demonstrate that the cited materials fail to establish the absence of a genuine dispute of fact.  Fed. R. Civ. P. 56(c).

Quattrociocchi's choice to move over to a pass/fail grading system for some of his classes does not negate the fact that he received a grade or a pass/fail equivalent in all of his classes. Quattrociocchi Dep. Tr. 84:14-85:2.

60.     Quattrociocchi received credits for all classes he took during the spring 2020 semester. Quattrociocchi Dep. Tr. 84:6-16; Quattrociocchi Dep. Ex. 7.

**Plaintiffs' Response**: Undisputed.

61.     During the 2019-2020 academic year, RIT received $325,319,000 in tuition and fees. Concepcion Decl. Ex. 1 at 3.

**Plaintiffs' Response**: Undisputed.

28

62.     During the 2019-2020 academic year, RIT's operating expenses totaled $588,597,000.  Decl. Concepcion Ex. 1 at 3.

**Plaintiffs' Response**: Undisputed.

63.     $407,943,000 of RIT's operating expenses for the 2019-2020 academic year were spent on salaries, wages, and benefits.  Concepcion Decl. Ex. 1 at 3.

**Plaintiffs' Response**: Undisputed.

64.     The revenues RIT received through the Student Health Fee for the 2019-2020 academic year totaled $4,663,041.  Concepcion Dep. Ex. 4.

**Plaintiffs' Response**: Undisputed.

65.     After the transition to distance learning, RIT's dorms remained open for students that could not safely go home, and thus buildings had to be powered and heated, meals had to be provided and delivered, etc.  *See* Concepcion Decl. ¶ 15.  RIT continued to incur basic building maintenance and utilities costs, and continued to pay its taxes and insurance costs.  *Id.*

**Plaintiffs' Response**: Undisputed, but irrelevant. The students who remained on campus are not party to this action.

**RIT's Reply:**  Plaintiffs' assertion that students who remained on-campus are excluded from the putative class runs contrary to their proposed class definitions, and further undermines Plaintiffs' arguments that their claims are typical of the putative class, that common questions of law and fact predominate, and that the putative class is ascertainable.  Plaintiffs put forth no explanation as to why students who stayed on-campus are excluded from the putative class, as those students also participated in remote instruction.  Indeed, this belated assertion that such students are "not a party to this action" is a transparent attempt to address yet another fatal flaw in Plaintiffs' effort to certify a class.  Whether a student remained on campus was unrelated to the

29

modality of instruction but instead based on if a student had an alternative safe place to be. Concepcion Dep. Tr. 131:17-132:23.

66.    The Student Health Fee revenues are used to support RIT's Student Health Center, counseling, Disability Services Office, student wellness, and Center for Recreational Sports. Concepcion Dep. Ex. 4.

**Plaintiffs' Response**: Disputed. Nowhere in Concepcion's deposition does Defendant witness detail what the Student Health Fee specifically covers. "The student health fee covers the expenses to offer student health services to students, but those costs are in excess of what we receive in student health fees." Concepcion Dep. 110:1-110:4. Additionally, "the totality of the student health fee does not cover all the costs of the student health center, to run the student health center, to pay the doctors and the nurses and *to run that building*." Ex. 29 (a) and (b) Concepcion Dep. 112:1-112:4 (emphasis added).

**RIT's Reply:** This fact remains undisputed.  Plaintiffs bear the burden of citing admissible evidence to establish the fact is genuinely disputed or must demonstrate that the cited materials fail to establish the absence of a genuine dispute of fact.  Fed. R. Civ. P. 56(c).

The witness authenticated Exhibit 4 during her deposition and stated that this was a document prepared by the RIT budget office.  Exhibit 4 to Concepcion's Declaration includes a description at the top that reads, "Includes: Student Health Center, Counseling, Disability Services Office, Student Wellness & Center for Recreational Sports."  Moreover, Ms. Concepcion's deposition testimony does not contradict Exhibit 4.

67.    The expenses to operate RIT's Student Health Center, counseling, Disability Services Office, student wellness, and Center for Recreational Sports during the 2019-2020

30

academic year totaled $5,606,604.  Shen Decl. Ex. 22 ("Concepcion Dep. Tr.") 109:22 – 110:5; Concepcion Dep. Ex. 4.

**Plaintiffs' Response**: Disputed. As stated above, Concepcion's deposition does not detail specifically what the student health fee covers. Ex. 29 (a) and (b) Concepcion Dep. 112:1-112:4.

**RIT's Reply:** This fact remains undisputed.  Plaintiffs bear the burden of citing admissible evidence to establish the fact is genuinely disputed or must demonstrate that the cited materials fail to establish the absence of a genuine dispute of fact.  Fed. R. Civ. P. 56(c).

Plaintiffs' assertion that Ms. Concepcion's deposition testimony "does not detail specifically what the student health fee covers" is accurate, but irrelevant with respect to this statement of fact, which speaks to the overall cost of operations for RIT's  Student Health Center, counseling, Disability Services Office, student wellness, and Center for Recreational Sports during the 2019-2020 academic year.

Moreover, Ms. Concepcion authenticated Exhibit 4 during her deposition and stated that this was a document prepared by the RIT budget office.  Exhibit 4 to Concepcion's Declaration includes a description at the top that reads, "Includes: Student Health Center, Counseling, Disability Services Office, Student Wellness & Center for Recreational Sports."

68.    After the transition to distance learning, RIT continued to provide in-person health services to students who had to remain on campus, and expanded its telehealth services to all students for the duration of the spring 2020 semester.  Concepcion Decl. ¶ 9.

**Plaintiffs' Response**: Disputed. Online students do not have access to the health center because "[t]hey do not utilize the health center. They are not residentially there." Concepcion Depo. 102:5-102:6.

31

**RIT's Reply:** This fact remains undisputed. Plaintiffs bear the burden of citing admissible evidence to establish the fact is genuinely disputed or must demonstrate that the cited materials fail to establish the absence of a genuine dispute of fact. Fed. R. Civ. P. 56(c).

First, Plaintiffs' evidence is taken out of context and does not raise a genuine dispute of fact. The testimony cited by Plaintiffs was given in response to a line of questioning about the differences between fees charged to "traditional students" and "online students" as the programs existed *prior* to the pandemic. *See* Concepcion Dep. Tr. 101:7-102:9. Second, Plaintiff Bergeron admits that throughout the second half of the spring 2020 semester he was aware that telehealth services were available to him but chose not to use them. Bergeron Dep. Tr. 132:1-3; 18-25.

69.     The Student Activity Fee revenues are managed by RIT's student government. Concepcion Decl. ¶ 11. Unspent revenues from the Student Activity Fees collected roll over each year for the continued benefit of RIT students. *Id.* at ¶¶ 11, 12.

**Plaintiffs' Response**: Disputed. There is "administrative oversight from Student Affairs Office staff." Ex. 39 Concepcion Decl. ¶ 11.

**RIT's Reply:** This fact remains undisputed. Plaintiffs bear the burden of citing admissible evidence to establish the fact is genuinely disputed or must demonstrate that the cited materials fail to establish the absence of a genuine dispute of fact. Fed. R. Civ. P. 56(c).

While "administrative oversight from the Student Affairs Office staff" is provided, "the student government determines the budget for student activities each year and how to spend the Student Activity Fee revenues." Concepcion Decl. ¶ 11. Plaintiffs do not dispute the accuracy of these statements.

70.     After the transition to distance learning, RIT continued to provide students with remote student programs and activities. Concepcion Decl. ¶ 12.

32

**Plaintiffs' Response**: Disputed. Defendant began to provide students with remote programs and activities after modifying the semester by cancelling or suspending all in-person activities. "All in-person, RIT sponsored or hosted events…must be postponed, canceled or offered virtually" Ex. 5 RIT0001414 (emphasis added). Further, major events were outright cancelled. Imagine RIT was cancelled along with the Spring commencement. RIT0001414 and Ex. 6 RIT0001548. The virtual commencement was "not intended to replace a traditional commencement." Ex. 6 RIT0001548.

**RIT's Reply:** This fact remains undisputed.  Plaintiffs bear the burden of citing admissible evidence to establish the fact is genuinely disputed or must demonstrate that the cited materials fail to establish the absence of a genuine dispute of fact.  Fed. R. Civ. P. 56(c).

First, Plaintiffs admit that RIT continued to provide students with remote programs and activities.  Second, RIT does not dispute that it was forced to cancel previously scheduled in-person events.  However, the cancellation of these events does not negate the fact that RIT continued to provide students with remote student programs and activities after the transition to distance learning.

71.    RIT spent an additional nearly $450,000 in response to COVID-19 between March 1, 2020 and June 30, 2020 to ensure that all students safely and effectively transitioned to remote learning.  Concepcion Decl. ¶ 16.

**Plaintiffs' Response**: Disputed. Plaintiff challenges "effectively" because core to this issue is RIT's delivery method of teaching and services being virtual rather than in-person.

**RIT's Reply:** This fact remains undisputed.  Plaintiffs bear the burden of citing admissible evidence to establish the fact is genuinely disputed or must demonstrate that the cited materials

fail to establish the absence of a genuine dispute of fact.  Fed. R. Civ. P. 56(c).  Here, Plaintiffs lodge only argument but do not dispute the facts and offer no evidence to dispute the facts.

In challenging the use of "effectively," Plaintiffs blatantly admit that they are challenging the quality of instruction delivered.  As further analyzed in RIT's moving memorandum of law, challenging the quality of instruction delivered directly implicates the education malpractice doctrine, which bars all of Plaintiffs' claims.  *See* Dkt. No. 68.

72.     Additionally, RIT lost a substantial portion of its auxiliary revenues from housing and meal plan fees, as it provided *pro rata* refunds of housing for the portion of the semester transitioned online, and refunded all unused meal plan balances to students.  Concepcion Decl. ¶ 17.

**Plaintiffs' Response**: Undisputed, but irrelevant. Housing and meal plan fee recovery is not being sought in this action.

**RIT's Reply:**  This fact is relevant, as it goes to whether RIT was unjustly enriched.

73.     Bergeron was charged a total of $22,867 in tuition and fees for the spring 2020 semester.  Bergeron Dep. Tr. 125:8 – 127:5; Shen Decl. Ex. 12 ("Bergeron Dep. Ex. 16").

**Plaintiffs' Response**: Disputed. Bergeron was charged $22,867 for tuition, activity fee, and the health fee only. Ex. 34 RIT0001096.

**RIT's Reply:** This fact remains undisputed.  Plaintiffs bear the burden of citing admissible evidence to establish the fact is genuinely disputed or must demonstrate that the cited materials fail to establish the absence of a genuine dispute of fact.  Fed. R. Civ. P. 56(c).

There is no dispute here that, in addition to tuition, the Student Activity Fee, and the Student Health Fee, Bergeron was charged a $195 Wellness Education Fee, for which $105 of that fee was credited back to him.  Shen Decl. Ex. 12 ("Bergeron Dep. Ex. 16"); *see also* Bergeron

Dep. Tr. 126:9-16 ("Q: And you paid or you owed $195 for alumnus education fee, correct? A: Yes.  Q: And did I hear you correctly to say that that was for your bowling class? A: Yes, but I think the wellness education is covered by RIT, so there's a credit on there.").

74.    Bergeron received $23,242.50 in scholarships during the spring 2020 semester. Bergeron Dep. Tr. 127:7-10; Bergeron Dep. Ex. 16.

**Plaintiffs' Response**: Undisputed.

75.    In addition to the tuition and fee charges, Bergeron paid for housing and a parking permit for the spring 2020 semester, both of which he received a *pro rata* refund.  Bergeron Dep. Tr. 128:15-18, 107:7-25.

**Plaintiffs' Response**: Undisputed.

### PLAINTIFFS SEEK DAMAGES BASED ON A PERCEIVED DETERIORATION IN THE QUALITY OF INSTRUCTION

76.    Bergeron believed that all of his classes had been "deeply devalued because of remote instruction methods."  Bergeron Dep. Tr. 117:19 – 118:2; Shen Decl. Ex. 11 ("Bergeron Dep. Ex. 14").  He believes this is so because of the pedagogical methods employed after the transition to distance learning and the quality of instruction.  Bergeron Dep. Tr. 118:9 – 120:24. For example, Bergeron believes that that his physics class was worse after the transition because he was not able to see concepts in action in a lab.  Bergeron Dep. Tr. 116:13 – 117:2.

**Plaintiffs' Response**: Disputed as to "pedagogical methods" as Plaintiff Bergeron did not testify such. Bergeron Dep. Tr. 118:9 – 120:24.

**RIT's Reply:** This fact remains undisputed.  Plaintiffs bear the burden of citing admissible evidence to establish the fact is genuinely disputed or must demonstrate that the cited materials fail to establish the absence of a genuine dispute of fact.  Fed. R. Civ. P. 56(c).

Although Bergeron did not specifically use the phrase "pedagogical methods," his testimony described different teaching methods used or not used during his spring semester. Bergeron Dep. Tr. 118:9-25 ("it's hard to facilitate like the before and after class like discussions with my group … it wasn't like a social interaction with the professor as much as it was, you know, I'm going to record a lecture and something and throw it up."); Shen Decl. Ex. 11 ("Bergeron Dep. Ex. 14") ("I have classes that have been deeply devalued because of remote instruction methods."); *see also* Bergeron Dep. Tr. 116:13-117:2; 120:6-13.

77.   Bergeron cannot articulate how to quantify an education, or the purported diminution in value of his education post-transition.  Bergeron Dep. Tr. 120:14 – 121:4.

**Plaintiffs' Response**: Undisputed.

78.   Quattrociocchi believes his classes were devalued based on changes in pedagogical methods after the transition.  Quattrociocchi Dep. Tr. 198:24 – 204:22.  Quattrociocchi asserts that his Contemporary Issues class degraded in quality a bit, and that the rest of his spring 2020 courses degraded substantially in quality but to varying degrees.  *Id.*

**Plaintiffs' Response**: Disputed. The cited to testimony does not support the proposition asserted in SUF 80. Fed. R. Civ. P. 56(c).

**RIT's Reply:** This fact remains undisputed.  Plaintiffs bear the burden of citing admissible evidence to establish the fact is genuinely disputed or must demonstrate that the cited materials fail to establish the absence of a genuine dispute of fact.  Fed. R. Civ. P. 56(c).

Plaintiffs' response references the wrong statement of fact, and is therefore unintelligible. The cited testimony supports the proposed fact asserted in SOMF 78.

### PLAINTIFFS HAVE NOT ARTICULATED A VIABLE DAMAGES THEORY

36

79.     Bergeron believes he is entitled to a tuition and fees refund because classes were "deeply devalued because of remote instruction methods.  Bergeron Dep. Tr. 117:19 – 119:23; Bergeron Dep. Ex. 14.

**Plaintiffs' Response**: Undisputed.

80.     Likewise, Quattrociocchi believes his classes deteriorated in quality and seeks damages because his professors employed different pedagogical methods to teach remotely after March 2020.  Quattrociocchi Dep. Tr. 200:11 – 204:22.

**Plaintiffs' Response**: Disputed. The cited to testimony does not support the proposition asserted in SUF 80. Fed. R. Civ. P. 56(c).

**RIT's Reply:** This fact remains undisputed.  Plaintiffs bear the burden of citing admissible evidence to establish the fact is genuinely disputed or must demonstrate that the cited materials fail to establish the absence of a genuine dispute of fact.  Fed. R. Civ. P. 56(c).

The cited testimony is Quattrociocchi's description of how the mode of instruction changed in his Strength of Materials Lab following the transition to distance learning and how the instruction and assessment methods in his other courses also changed.  Quattrociocchi Dep. Tr. 202:6-19 ("The whole point was to be a lab, and you would go in, and you would test mechanical properties of materials.  And after the pandemic hit, I think we were just handed some data sets, and somebody was, like, go make a report."); 203:20-204:22 (explaining that Probability in Statistics "was just way, way harder to learn and understand the material, you know, once it became online" and that a project in his Intro to Optimal Design course was dropped from the syllabus.)  Quattrociocchi's descriptions of teaching style, including method of instruction and assessment, are all the pedagogical methods employed by his professors.

81.     Plaintiffs rely on the opinion of Dr. Charles Cowan, Ph.D. to calculate the damages they seek.  *See* Shen Decl. Ex. 25 ("Cowan Report").

**Plaintiffs' Response**: Undisputed.

82.     Dr. Cowan opines that the value of instruction RIT provided after March 22, 2020 is equivalent to the published tuition rate for RIT Online, RIT's separate online only program. Cowan Report ¶ 17; *see also* Shen Decl. Ex. 24 ("Cowan Dep. Tr.") 67:20 – 69:10.  Dr. Cowan opines that Plaintiffs are entitled to a refund of the difference between what they paid to RIT for spring 2020 tuition and the RIT Online published tuition rate, *pro rata* for the portion of the semester conducted remotely in response to COVID-19 and related government orders.  *Id*.

**Plaintiffs' Response**: Undisputed.

83.     RIT Online is an entirely separate program offering a limited number of courses and degrees targeted to a different demographic of students.  While RIT's campus-based programs are targeted to generally full-time students pursuing their first Bachelor's degree, RIT Online is designed for and targeted to part-time and non-traditional students, many of whom are pursing graduate degrees, secondary degrees, or continuing professional education.  Declaration of Therese Hannigan ("Hannigan Decl.") ¶ 4.

**Plaintiffs' Response**: Undisputed, but irrelevant.

**RIT's Reply:**  This fact is relevant, as *Plaintiffs* have hinged their damages theory on a benchmark comparison between RIT's traditional campus-based programs and RIT Online, a wholly separate and distinct program.

84.     The RIT Online curricula are developed by faculty who also teach campus-based courses, but the RIT Online courses are specifically designed for an online audience and tailored to students who are typically working professionals.  Hannigan Decl. ¶ 5.

**Plaintiffs' Response**: Undisputed, but irrelevant.

**RIT's Reply:**  This fact is relevant, as *Plaintiffs* have hinged their damages theory on a benchmark comparison between RIT's traditional campus-based programs and RIT Online, a wholly separate and distinct program.

85.    During the spring 2020 semester, while RIT's campus-based programs offered 79 different degree programs across Bachelor's, Master's, and Ph.D. programs.  Hannigan Decl. ¶ 6.

**Plaintiffs' Response**: Undisputed.

86.    RIT Online offered 6 degree programs, only 1 of which was an undergraduate program.  The RIT Online undergraduate program is an individualized studies program not offered to RIT campus-based students.  Hannigan Decl. ¶ 7.

**Plaintiffs' Response**: Undisputed.

87.    RIT Online provides limited student support services as compared to the resources available to campus-based students.  RIT Online students do not have access to any student activities (whether or not those activities are supported through the RIT operating budget or the Student Activity Fee, which RIT Online students do not pay); a student government organization; campus resources such as security, library and research, or study spaces; enhanced accessibility services; or access to the campus facilities.  Hannigan Decl. ¶ 9.

**Plaintiffs' Response**: Undisputed.

88.    RIT Online students are not permitted to receive institutional financial aid from RIT.  RIT Online students were not qualified to receive RIT merit scholarships, RIT grants, the graduate internship tuition rate, or the course audit rate.  Hannigan Decl. ¶ 10.

**Plaintiffs' Response**: Undisputed, but irrelevant.

**RIT's Reply:**  This fact is relevant, as *Plaintiffs* have hinged their damages theory on a benchmark comparison between RIT's traditional campus-based programs and RIT Online, a wholly separate and distinct program.

89.    RIT Online students do not receive institutional aid because the discounted tuition rate for RIT Online equals approximately the same net tuition and fees RIT campus-based students pay after deducting the institutional aid they receive.  Hannigan Decl. ¶ 11.

**Plaintiffs' Response**: Undisputed, but irrelevant.

90.    Dr. Cowan created a calculation for his theory, and applied it to Quattrociocchi only.  *See* Cowan Report at Table 1.  He did not conduct a similar calculation for Bergeron.  *See generally id.*; *see also* Cowan Dep. Tr. 40:1-24, Cowan Dep. Tr. 49:12 – 50:7.[2]

**Plaintiffs' Response**: Undisputed, but irrelevant.

**RIT's Reply:**  This fact is relevant, as *Plaintiffs* have hinged their damages theory on incomplete data and an untested methodology.  As further discussed in RIT's *Daubert* motion, Dr. Cowan's methodology is unreliable and should be stricken.  *See* Dkt. No. 84.  Without Dr. Cowan's damages theory, Plaintiffs admittedly have no damages theory at all.

91.    Dr. Cowan did not apply his formula to any other putative class members to test the reliability of his formula.  *See generally* Cowan Report.

**Plaintiffs' Response**: Undisputed, but irrelevant.

**RIT's Reply:**  This fact is relevant, as *Plaintiffs* have hinged their damages theory on incomplete data and an untested methodology.  As further discussed in RIT's *Daubert* motion, Dr.

---

[2] Plaintiffs' Counterstatement omits a paragraph number at their response to SOMF 90, and as such, the numbering in Plaintiffs' Counterstatement from SOMF 90-97 is inaccurate.  The numbering used in this reply follows the numbering in RIT's original SOMF.

Cowan's methodology is unreliable and should be stricken. *See* Dkt. No. 84. Without Dr. Cowan's damages theory, Plaintiffs have admittedly no damages theory at all.

92.     Dr. Cowan did not create a formula applicable to RIT graduate students, and did not consider whether his damages formula would be appropriate to putative class members who are RIT graduate students. *See generally* Cowan Report; Cowan Dep. Tr. 56:1-15.

**Plaintiffs' Response**: Undisputed, but irrelevant.

**RIT's Reply:** This fact is relevant, as *Plaintiffs* have hinged their damages theory on incomplete data and an untested methodology. As further discussed in RIT's *Daubert* motion, Dr. Cowan's methodology is unreliable and should be stricken. *See* Dkt. No. 84. Without Dr. Cowan's damages theory, Plaintiffs have admittedly no damages theory at all.

93.     Dr. Cowan did not opine or determine a formula to calculate the Student Activities Fee or Student Health Fee refunds Plaintiffs seek. *See generally* Cowan Report; Cowan Dep. Tr. 51:4-24. Dr. Cowan does not know what fees are at issue. Cowan Dep. Tr. 58:10 – 59:9.

**Plaintiffs' Response**: Undisputed, but irrelevant.

**RIT's Reply:** This fact is relevant, as *Plaintiffs* have hinged their damages theory on incomplete data and an untested methodology. As further discussed in RIT's *Daubert* motion, Dr. Cowan's methodology is unreliable and should be stricken. *See* Dkt. No. 84. Without Dr. Cowan's damages theory, Plaintiffs have admittedly no damages theory at all.

## BERGERON SUSTAINED NO DAMAGES

94.     For the spring 2020 semester, Bergeron was charged $22,867 in tuition and fees. Bergeron Dep. Tr. 125:8 – 127:5; Bergeron Dep. Ex. 16.

**Plaintiffs' Response**: Disputed. See SUF 73.

**RIT's Reply:** This fact remains undisputed.  Plaintiffs bear the burden of citing admissible evidence to establish the fact is genuinely disputed or must demonstrate that the cited materials fail to establish the absence of a genuine dispute of fact.  Fed. R. Civ. P. 56(c).

There is no dispute here that, in addition to tuition, the Student Activity Fee, and the Student Health Fee, Bergeron was charged a $195 Wellness Education Fee, for which $105 of that fee was credited back to him.  Shen Decl. Ex. 12 ("Bergeron Dep. Ex. 16"); *see also* Bergeron Dep. Tr. 126:9-16 ("Q: And you paid or you owed $195 for alumnus education fee, correct? A: Yes.  Q: And did I hear you correctly to say that that was for your bowling class? A: Yes, but I think the wellness education is covered by RIT, so there's a credit on there.").

95.    For the spring 2020 semester, Bergeron received $23,242.50 in scholarships and grants.  Bergeron Dep. Tr. 127:7-10; Bergeron Dep. Ex. 16.

**Plaintiffs' Response**: Undisputed.

96.    Bergeron paid out of pocket only for housing and parking.  Bergeron Dep. Tr. 128:15-18, 107:7-25.

**Plaintiffs' Response**: Disputed. Defendant has not provided Plaintiffs with evidence that scholarships/grants are first applied to tuition and fees with any remainder being applied to housing and parking. Plaintiff Bergeron was personally responsible for paying costs out of pocket through student loans associated with his attendance at RIT for the Spring 2020 semester. ECF. 32 at 4-5.

**RIT's Reply:** This fact remains undisputed.  Plaintiffs bear the burden of citing admissible evidence to establish the fact is genuinely disputed or must demonstrate that the cited materials fail to establish the absence of a genuine dispute of fact.  Fed. R. Civ. P. 56(c).

Plaintiffs' only evidence offered to dispute this fact is their opposition to RIT's Motion to Dismiss.  Opposition papers filed previously in the case are *not* evidence on which the court may

rely when determining a genuine issue of material fact. *Amusement Indus., Inc. v. Stern*, No. 07CIV11586LAKGWG, 2016 WL 4249965, at *14 (S.D.N.Y. Aug. 11, 2016), *report and recommendation adopted*, No. 07-CV-11586 (LAK), 2016 WL 6820744 (S.D.N.Y. Nov. 10, 2016), aff'd, 721 F. App'x 9 (2d Cir. 2018) (prior court decision not admissible evidence on a summary judgment motion).

Moreover, Bergeron admitted during his deposition that he understood his tuition and fees were fully covered by scholarships and grants, and that he was only paying for housing and meals out of pocket. Bergeron Dep. Tr. 128:15-18, 107:7-25.

97.    Bergeron received a *pro rata* refund for housing and parking. Bergeron Dep. Tr. 107:7-25.

**Plaintiffs' Response**: Undisputed.

### PLAINTIFFS NICHOLAS BERGERON AND NICK QUATTROCIOCCHI'S STATEMENT OF UNDISPUTED FACTS

1.    Under the heading "PAYMENT OF TUITION, FEES AND COSTS/PROMISE TO PAY", RIT's Refund/Tuition Adjustment Policies states "If I drop or withdraw from some or all of the classes for which I register, I will be responsible for paying all or a portion of tuition and fees in accordance with the published tuition refund schedule that I have read at our Refund Policy webpage, the terms of which are incorporated herein by reference." Ex. 35.

**RIT's Response**: Disputed but immaterial. Plaintiffs inaccurately quote the heading and text of the document. The heading reads, "PAYMENT OF FEES/PROMISE TO PAY" while the text reads,

> I understand and agree that if I drop or withdraw from some or all of the classes for which I register, I will be responsible for paying all or a portion of tuition and fees in accordance with RIT's Tuition Refund Policies located here: http://www.rit.edu/fa/sfs/refund. I have read the terms and conditions of the published Tuition Refund Policies in the Tuition and Fees section of the Student Financial Services web page and I further understand that my

43

> failure to attend class or receive a bill does not absolve me of my financial responsibility as described above.

Bergeron Dep. Tr. 48:22 – 49:8; Quattrociocchi Dep. Ex. 8.

2. Student Information System ("SIS") was the registration portal used for Spring 2020 semester classes and each class is listed not only by description, but also by meeting time and physical classroom location, and makes students choose between "In Person" and "Online" under "Mode of Instruction." ECF No. 75 at 6; Bergeron Decl. ¶ 15; Quattrociocchi Decl. ¶ 16.

**RIT's Response**: Disputed but immaterial. Plaintiffs' only evidence is their Memorandum of Law in Support of Plaintiffs' Motion for Class Certification and Appointment of Class Representatives and Co-Class Counsel. Briefs previously filed in this case, and arguments made therein, are not evidence on which the court may rely when determining a genuine issue of material fact. *Xue Ming Wang v. Abumi Sushi Inc.*, 262 F. Supp. 3d 81, 92-93 (S.D.N.Y. 2017) ("Moreover, arguments in a brief are not evidence, and it is evidence rather than allegations that is required at the summary-judgment stage.")

Neither Bergeron's Declaration nor Quattrociocchi's Declaration supports the proposed claim that the SIS registration portal, "makes students choose between 'In Person' and 'Online' under 'Mode of Instruction.'" Plaintiffs offer no other evidence to support these claims.

Even if, however, this fact is presumed true, a designation of modality has been held to not be a specific promise of in-person instruction as a matter of law. *See Fedele v. Marist Coll.*, No. 20 CV 3559 (VB), 2021 WL 3540432, at *4 (S.D.N.Y. Aug. 10, 2021) (holding that allowing students to search for classes based on "'Schedule Type,' which includes options for 'Lecture' as opposed to 'On Line Class'" did not establish a contract for continued instruction in the same manner).

3.      Plaintiffs did not enroll in the Institute's "RIT ONLINE" program, which RIT promotes as having "the same objectives, rigorous workload and expert RIT faculty as taught on campus." Bergeron Decl. ¶ 6; Quattrociocchi Decl. ¶ 6; Ex. 9.

**RIT's Response**: Undisputed that Plaintiffs did not enroll in the RIT Online, but immaterial. Disputed as to how RIT promotes its online program. Plaintiffs have taken the sentence out of context. The following sentence states, "Yet our online courses are delivered in a flexible manner that allows you to better balance the demands of work, family, and school." Opp. Br. Ex. 9.

Moreover, the *fact* that RIT offers a separate and distinct online only program is not a specific promise of in-person instruction, as discussed further in RIT's moving and concurrently filed reply memoranda of law.

4.      RIT Online 2019-2020 states the rate for Graduate RIT Online as $1,129 per credit hour. The rate for Undergraduate RIT Online is $1,034 per credit hour. RIT0001868; Ex. 12.

**RIT's Response**: Undisputed, but immaterial.

5.      RIT represents in documents to perspective students that RIT Online has "affordable tuition" and "reduced tuition rate[s]" when compared with RIT's main campus program and "You will take classes with the same distinguished faculty to teach on-campus classes, and receive the same esteemed degree as your on-campus peers." Ex. 11

**RIT's Response**: Disputed as to the representations made regarding reduced tuition rates. Plaintiffs have taken the header "Reduced Tuition Rate" out of context and misapplied it. The advertisement makes no mention of a "main campus program," and the "reduced tuition rate" is not applied universally to all online programs. *See* Opp. Br. Ex. 11.

In any event, this fact is immaterial. The *fact* that RIT offers a separate and distinct online only program is not a specific promise of in-person instruction, as discussed further in RIT's moving and concurrently filed reply memoranda of law.

6.      When enrolling and registering for classes at RIT's main campus, Plaintiffs did not receive the "reduced tuition rate" as promised to students of RIT Online program because Plaintiffs were enrolled in the "on-campus classes." Quattrociocchi Decl. ¶ 21; Bergeron Decl. ¶ 20.

**RIT's Response**: Disputed. Plaintiffs' declarations do not support the proposed fact. Plaintiffs' declarations state that they "did not receive a reduced tuition rate after RIT transitioned to online classes," and do not purport that they were entitled to a reduced tuition rate at the time of enrolling and registering for classes.

In any event, this fact is immaterial. The *fact* that RIT offers a separate and distinct online only program is not a specific promise of in-person instruction, as discussed further in RIT's moving and concurrently filed reply memoranda of law.

7.      RIT states that the Student Activities Fees "supports programs, events, and services that enhance the quality of student life at RIT. The amounts received for the Student Activities Fee are allocated to RIT's student government, which is responsible for using the Student Activities Fee to support student organizations and activities, under the oversight of RIT's Office of Student Affairs. RIT further states that the Student Activities Fee is meant to provide long-term support to student programs, such amounts collected but unspent each year roll into the following academic term for the ongoing benefit of the RIT student body." D. Rogs. Response No. 9.

**RIT's Response**: Undisputed.

8.      RIT states that the Student Health Services Fee "is allocated to provide support for programs and services offered by the Student Health Center, Student Counseling and

46

Psychological Services and for health promotion initiatives. Information about the services provided by the Student Health Center is publicly available at https://www.rit.edu/studenthealth/. Information about the services provided by Student Counseling and Psychological Services is publicly available at https://www.rit.edu/studenthealth/psychiatric-services." *Id.* at Response No. 9.

**RIT's Response**: Undisputed.

9.      RIT states that "it has not issued any refunds of tuition, the Student Activities Fee or Student Health Services Fee for the spring 2020 semester, except as permitted by its published refund policy for student withdrawals by specified dates." D. Rogs. Response No. 11.

**RIT's Response**: Undisputed.

10.      RIT's Undergraduate Bulletin states: "RIT's program offers state-of-the-art equipment and sophisticated laboratories that allow for plenty of hands-on experience. You'll have access to laboratories and equipment for soil mechanics, construction materials…You'll also have access to our Design and Drafting Laboratory." Ex. 30.

**RIT's Response**: Disputed.  Plaintiffs' cited evidence does not support the proposed fact. Fed. R. Civ. P. 56(c).  Plaintiffs' SUF 10 alleges that the quoted statement is from RIT's Undergraduate Bulletin, which is Plaintiffs' Exhibit 30 to their Opposition to the Memorandum of Law.  However, Plaintiffs' Exhibit 30 is *not* RIT's Undergraduate Bulletin, it is actually RIT's Undergraduate Course Descriptions.  As such, the quoted material cannot be located in Plaintiffs' Exhibit 30(a), Exhibit 30(b), or Exhibit 30(c).

In any event, the statement Plaintiffs offer does not rise to the level of a specific promise of in-person instruction as a matter of law, as further analyzed in RIT's moving and reply memoranda of law.

47

11.      RIT's Undergraduate Bulletin references "Hands-on" 42 times, "Experiential" 51 times, and "Facilities" 65 times. Ex. 30 (a), (b) and (c).

**RIT's Response**: Undisputed, but immaterial.  As discussed further in RIT's moving and concurrently filed reply memoranda of law, such words used in course descriptions are not promises of in-person instruction as a matter of law.

In any event, the statement Plaintiffs offer does not rise to the level of a specific promise of in-person instruction as a matter of law, as further analyzed in RIT's moving and reply memoranda of law.

12.      RIT's Undergraduate Bulletin states that the College of Computing and Information Sciences "features more than 2,000 workstations and more than 50 classrooms, labs…offering access to the study of every major computing platform.  Labs are available to students for 16 to 18 hours a day." Ex. 30(a) at 30.

**RIT's Response**:  Disputed.  Plaintiffs' cited evidence does not support the proposed fact. Fed. R. Civ. P. 56(c).  Plaintiffs' Ex. 30(a) at 30 does not relate to the College of Computing and Information Sciences, but is actually course descriptions for the School of Photographic Arts and Sciences.  The quoted material is also not found at this pincite.

In any event, the statement Plaintiffs offer does not rise to the level of a specific promise of in-person instruction as a matter of law, as further analyzed in RIT's moving and reply memoranda of law.

13.      RIT's Undergraduate Bulletin states that "RIT offers academic programs that combine outstanding teaching, a strong foundation in the liberal arts and sciences, modern classroom facilities, and work experience." Ex. 30(a) at 2.

48

**RIT's Response**: Disputed.  Plaintiffs' cited evidence does not support the proposed fact. Fed. R. Civ. P. 56(c).  Plaintiffs' SUF 13 alleges that the quoted statement is from RIT's Undergraduate Bulletin, which is Plaintiffs' Exhibit 30.  However, Plaintiffs' Exhibit 30 is not RIT's Undergraduate Bulletin, it is actually RIT's Undergraduate Course Descriptions.  As such, the quoted material cannot be located in Plaintiffs' Exhibit 30(a), Exhibit 30(b), or Exhibit 30(c). The quoted material is not found at the pincite provided.  Plaintiffs' Exhibit 30(a) at 2 is course descriptions for the Interdisciplinary Art and Design program.

In any event, the statement Plaintiffs offer does not rise to the level of a specific promise of in-person instruction as a matter of law, as further analyzed in RIT's moving and reply memoranda of law.

14.     Plaintiff Bergeron reviewed the pages of RIT's website concerning its cyber-security program and tuition schedule and RIT's course bulletin. (Bergeron Dep. Tr. 29:22 – 33:14, 35:9 – 14)

**RIT's Response**: Undisputed.

15.     Plaintiff Bergeron testified that there "is certainly a lot of advertising about how all the things on campus that you get when you go to school at RIT…I mean, there's hundreds of things to do on campus, so I couldn't name them all, but there's plenty of clubs, activities, there's labs, there's the library, there's the gym, there's the cafeterias, there's student health center, there's events, sports, there's pizza parties, there's tons of stuff." Bergeron Dep. Tr. 72:14-73:14.

**RIT's Response**: Disputed.   Plaintiffs take Bergeron's testimony out of context. Immediately following the cited testimony, Bergeron stated that the portions of the website he described do not contain a specific promise of in-person instruction at RIT.  Bergeron Dep. Tr. 73:24-75:3.

49

In any event, this fact is immaterial. As discussed further in RIT's moving and concurrently filed reply memoranda of law, Bergeron's speculation about activities and services may have been offered on campus are not promises of in-person instruction as a matter of law.

16.  Plaintiff Quattrociocchi "I know from the mechanical engineering website, there's several classes that require in-person activities…So for some of the classes, they have to be conducted in-person. There is no way to not have it conducted in person…so I would say even from the mechanical engineering department, the whole degree is based off of how things mechanically exist. Like, you have to be in person for several of those courses." Q Dep. Tr. 125:13-126:12

**RIT's Response**: Undisputed, but immaterial. Plaintiffs bear the burden of citing admissible evidence to establish the fact is genuinely disputed or must demonstrate that the cited materials fail to establish the absence of a genuine dispute of fact. Fed. R. Civ. P. 56(c). Here, Plaintiffs have not offered any evidence of specific statements concerning in-person instruction as required under New York law. *Nungesser v. Columbia Univ.*, 169 F. Supp. 3d 353, 370 (S.D.N.Y. 2016); *Keefe v. New York Law School*, 71 A.D.3d 569 (1st Dep't 2010). Quattrociocchi's "vote" that the existence of a mechanical engineering program necessitates in-person instruction is not a specific promise of in-person instruction.

17.  Plaintiff Quattrociocchi testified "So that's a state-of-the-art machine. So there's – there -- I know there are 3D printing courses that you can take at RIT, and I know that there are some that involves use of some of those upper-level -- well, those kind of state-of- the-art machines, state-of-the-art 3D printing machines. **So the existence of those and marketing towards them would lead me to believe that there has to be some form of in-person education on how to use those.** They made it in-house, and it does some crazy stuff that no one else has done

or something nearing that extent, and that has to be an in-person thing because you have to interact with the machine." (emphasis added) Quattrociocchi Dep. Tran. 152:4-21.

**RIT's Response**: Undisputed but immaterial.  Plaintiffs bear the burden of citing admissible evidence to establish the fact is genuinely disputed or must demonstrate that the cited materials fail to establish the absence of a genuine dispute of fact.  Fed. R. Civ. P. 56(c).  Here, Plaintiffs have not offered any evidence of specific *statements* concerning in-person instruction, as required under New York law.  *Nungesser v. Columbia Univ.*, 169 F. Supp. 3d 353, 370 (S.D.N.Y. 2016); *Keefe v. New York Law School*, 71 A.D.3d 569 (1st Dep't 2010).

A demonstration of a 3-D printing machine does not constitute a promise of in-person instruction.  *See id.*  Moreover, Quattrociocchi's personal belief that, based on the "existence of [classes using the 3d printing machine] and marketing towards" he "believe[d] that there has to be some form of in-person education on how to use those" is insufficient evidence to establish a genuine issue of material fact.  Quattrociocchi Dep. Tr. 151:25-152:21; *see also Henek v. CSC Holdings, LLC*, 449 F. Supp. 3d 35, 43 (E.D.N.Y. 2020) ("However, beliefs and opinions do not cut it.  Federal Rule of Civil Procedure 56(e) requires that the opposing party marshal admissible evidence to rebut that of its opponent; inadmissible hearsay or conclusory assertions are insufficient.").

18.    When Plaintiff Bergeron applied for school in or around Spring of 2015, he applied to RIT's campus-based program and expected to receive access to RIT's main campus.

**RIT's Response**: Disputed.  Plaintiffs fail to cite any supporting evidence.  Fed. R. Civ. P. 56(c).

Moreover, this unsupported assertion is contradicted by Bergeron's deposition testimony.  *See* Bergeron Dep. Tr. 27:18-29:14.  Plaintiffs cannot establish a genuine dispute of fact through

51

self-serving sham statements made retrospectively as to liability. *Hanwha Corp. v. Cedar Petrochemicals, Inc.*, 760 F. Supp. 2d 426 (S.D.N.Y. 2011) (finding the parties' declarations "self-serving" and not a basis for granting or denying either party's motion).

19.     When Plaintiff Quattrociocchi applied for school in or around November of 2014 and July of 2018, he applied to RIT's campus-based program and expected to receive access to RIT's main campus.

**RIT's Response**: Disputed.  Plaintiffs fail to cite any supporting evidence.  Fed. R. Civ. P. 56(c).

Moreover, this unsupported assertion is not in line with Quattrociocchi's deposition testimony.  *See* Quattrociocchi Dep. Tr. 55:14-56:5; 56:17-59:10.  Plaintiffs cannot establish a genuine dispute of fact through self-serving sham statements made retrospectively as to liability. *Hanwha Corp. v. Cedar Petrochemicals, Inc.*, 760 F. Supp. 2d 426 (S.D.N.Y. 2011) (finding the parties' declarations "self-serving" and not a basis for granting or denying either party's motion).

20.     Neither Plaintiff Bergeron or Quattrociocchi applied to RIT's Online program.

**RIT's Response**: Plaintiffs fail to cite any supporting evidence.  Fed. R. Civ. P. 56(c). However, this fact is not disputed and it is immaterial.

21.     When Plaintiff Bergeron and Plaintiff Quattrociocchi applied at RIT, RIT intended to and expected to provide Plaintiff Bergeron and Plaintiff Quattrociocchi with access to its main campus.

**RIT's Response**: Disputed.  Plaintiffs fail to cite any supporting evidence.  Fed. R. Civ. P. 56(c).  RIT does not expect to provide exclusively in-person instruction to all prospective students or in all circumstances.  *See, e.g.,* Lincoln Dep. Tr. 29:2-4; Concepcion Dep. Tr. 79:19-80:20.

22.     When Plaintiff Bergeron accepted admission to RIT's campus-based program, he accepted admission to RIT's campus-based program and expected to receive access to RIT's main campus.

**RIT's Response**: Disputed.  Plaintiffs fail to cite any supporting evidence.  Fed. R. Civ. P. 56(c).

Bergeron repeatedly admitted in his deposition that he could not identify any statements in RIT's materials specifically promising that he would receive in-person instruction or services. Bergeron Dep. Tr. 66:7-10; 68:15-19; 69:2-7; 69:16-18; 70:3-10; 71:18-20; 71:1-4; 71:11-14; 73:24-75:4; 76:23-77:2; 78:18-22; 82:17-23; 86:4-8; 88:17-20.

23.     When Plaintiff Quattrociocchi accepted admission to RIT's campus-based program, he accepted admission to RIT's campus-based program and expected to receive access to RIT's main campus.

**RIT's Response**: Disputed.  Plaintiffs fail to cite any supporting evidence.  Fed. R. Civ. P. 56(c).

Quattrociocchi repeatedly admitted in his deposition that he could not identify any statements in RIT's materials specifically promising that he would receive in-person instruction or services.  Quattrociocchi Dep. Tr. 57:5-59:10; 62:19-63:7; 65:17-23.

24.     Neither Plaintiff Bergeron or Plaintiff Quattrociocchi accepted admission to RIT's Online program.

**RIT's Response**: Plaintiffs fail to cite any supporting evidence.  Fed. R. Civ. P. 56(c). However, this fact is not disputed and it is immaterial.

25.     When Plaintiff Bergeron and Plaintiff Quattrociocchi accepted admission to RIT, RIT intended to and expected to provide Plaintiffs with access to its main campus.

53

**RIT's Response**: Disputed.  Plaintiffs fail to cite any supporting evidence.  Fed. R. Civ. P. 56(c).  RIT does not expect to provide exclusively in-person instruction to all prospective students or in all circumstances.  *See, e.g.*, Lincoln Dep. Tr. 29:2-4; Concepcion Dep. Tr. 79:19-80:20.

26.    When Plaintiff Bergeron enrolled at RIT, he enrolled in RIT's campus-based program and expected to receive access to RIT's main campus.

**RIT's Response**: Disputed.  Plaintiffs fail to cite any supporting evidence.  Fed. R. Civ. P. 56(c).

Bergeron repeatedly admitted in his deposition that he could not identify any statements in RIT's materials specifically promising that he would receive in-person instruction or services.  Bergeron Dep. Tr. 66:7-10; 68:15-19; 69:2-7; 69:16-18; 70:3-10; 71:18-20; 71:1-4; 71:11-14; 73:24-75:4; 76:23-77:2; 78:18-22; 82:17-23; 86:4-8; 88:17-20.

27.    When Plaintiff Quattrociocchi enrolled at RIT, he enrolled in RIT's campus-based program and expected to receive access to RIT's main campus.

**RIT's Response**: Disputed.  Plaintiffs fail to cite any supporting evidence.  Fed. R. Civ. P. 56(c).

Quattrociocchi repeatedly admitted in his deposition that he could not identify any statements in RIT's materials specifically promising that he would receive in-person instruction or services.  Quattrociocchi Dep. Tr. 57:5-59:10; 62:19-63:7; 65:17-23.

28.    Neither Plaintiff Bergeron or Plaintiff Quattrociocchi enrolled in RIT's Online program.

**RIT's Response**: Plaintiffs fail to cite any supporting evidence.  Fed. R. Civ. P. 56(c).  However, this fact is not disputed and it is immaterial.

29.    When Plaintiff Bergeron and Plaintiff Quattrociocchi enrolled at RIT, RIT intended to and expected to provide Plaintiffs with access to its main campus.

**RIT's Response**: Disputed.  Plaintiffs fail to cite any supporting evidence.  Fed. R. Civ. P. 56(c).  RIT does not expect to provide exclusively in-person instruction to all prospective students or in all circumstances.  *See, e.g.*, Lincoln Dep. Tr. 29:2-4; Concepcion Dep. Tr. 79:19-80:20.

30.    When Plaintiff Bergeron registered for classes for Spring 2020 at RIT, he registered for classes on RIT's campus-based program and expected to receive access to RIT's main campus.

**RIT's Response**: Disputed.  Plaintiffs fail to cite any supporting evidence.  Fed. R. Civ. P. 56(c).

Notably, Bergeron registered for a fully online class at the beginning of Spring 2020 semester.  Bergeron Dep. Tr. 56:12-24.

31.    When Plaintiff Quattrociocchi registered for classes for Spring 2020 at RIT, he registered for classes on RIT's campus-based program and expected to receive access to RIT's main campus.

**RIT's Response**: Disputed but immaterial.  Plaintiffs fail to cite any supporting evidence. Fed. R. Civ. P. 56(c).

Moreover, Quattrociocchi's subjective, self-serving expectation is not evidence of a specific promise concerning in-person instruction, as required under New York law. *Nungesser v. Columbia Univ.*, 169 F. Supp. 3d 353, 370 (S.D.N.Y. 2016); *Keefe v. New York Law School*, 71 A.D.3d 569 (1st Dep't 2010).

32.    Neither Plaintiff Bergeron or Plaintiff Quattrociocchi registered for classes for Spring 2020 in RIT's Online program.

**RIT's Response**: Plaintiffs fail to cite any supporting evidence. Fed. R. Civ. P. 56(c). However, this fact is not disputed and it is immaterial.

33.   When Plaintiff Bergeron and Plaintiff Quattrociocchi registered for classes for Spring 2020 at RIT, RIT intended to and expected to provide Plaintiffs with access to its main campus.

**RIT's Response**: Disputed. Plaintiffs fail to cite any supporting evidence. Fed. R. Civ. P. 56(c). RIT did not expect to provide exclusively in-person instruction to all students in all circumstances. *See, e.g.*, Lincoln Dep. Tr. 29:2-4; Concepcion Dep. Tr. 79:19-80:20.

34.   When Plaintiff Bergeron made payments for Spring 2020 at RIT, he registered for classes on RIT's campus-based program and expected to receive access to RIT's main campus.

**RIT's Response**: Disputed. Plaintiffs fail to cite any supporting evidence. Fed. R. Civ. P. 56(c).

Moreover, Bergeron registered for a fully online class at the beginning of the spring 2020 semester. Bergeron Dep. Tr. 56:12-24.

35.   When Plaintiff Quattrociocchi made payments for Spring 2020 at RIT, he registered for classes on RIT's campus-based program and expected to receive access to RIT's main campus.

**RIT's Response**: Disputed but immaterial. Plaintiffs fail to cite any supporting evidence. Fed. R. Civ. P. 56(c).

Moreover, Quattrociocchi's subjective, self-serving expectation is not evidence of a specific promise concerning in-person instruction, as required under New York law. *Nungesser v. Columbia Univ.*, 169 F. Supp. 3d 353, 370 (S.D.N.Y. 2016); *Keefe v. New York Law School*, 71 A.D.3d 569 (1st Dep't 2010).

56

36.     Neither Plaintiff Bergeron or Plaintiff Quattrociocchi made payments for Spring 2020 in RIT's Online program.

**RIT's Response**: Plaintiffs fail to cite any supporting evidence.  Fed. R. Civ. P. 56(c). However, this fact is not disputed and it is immaterial.

37.     When Plaintiff Bergeron and Plaintiff Quattrociocchi made payments for Spring 2020 at RIT, RIT intended to and expected to provide Plaintiffs with access to its main campus.

**RIT's Response**: Disputed.  Plaintiffs fail to cite any supporting evidence.  Fed. R. Civ. P. 56(c).  RIT did not expect to provide exclusively in-person instruction to all students in all circumstances.  *See, e.g.*, Lincoln Dep. Tr. 29:2-4; Concepcion Dep. Tr. 79:19-80:20.

Dated: New York, New York
        November 18, 2022

SANTIAGO BURGER LLP

By: /s *Fernando Santiago*
Fernando Santiago
fernando@litgrp.com
2280 East Avenue, 2nd Floor
Rochester, NY 14610
Tel:  (585) 563-2400
Fax:  (585) 563-7526


HOLLAND & KNIGHT LLP

By: /s/ *Qian Shen*
Robert J. Burns
Qian (Sheila) Shen
robert.burns@hklaw.com
qian.shen@hklaw.com
31 West 52nd Street
New York, NY 10019
Tel:  (212) 513-3200
Fax:  (212) 385-9010

Paul G. Lannon (admitted *pro hac vice*)
paul.lannon@hklaw.com
10 St. James Avenue, 11th Floor
Boston, MA 02116
Tel:  (617) 523-2700
Fax:  (617) 523-6850