## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| NICHOLAS BERGERON and NICK QUATTROCIOCCHI, individually and on behalf of others similarly situated,<br><br>       Plaintiffs,<br><br>v.<br><br>ROCHESTER INSTITUTE OF TECHNOLOGY,<br><br>       Defendant. | Case No. 6:20-cv-06283-CJS-MJP |

### PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS REPRESENTATIVES AND COUNSEL

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii
INTRODUCTION ................................................................................................................... 1
ARGUMENT .......................................................................................................................... 1
    I.    Plaintiffs' Proposed Tuition and Fees Classes as to the First and Third Causes of Action for Breach of Contract Should Be Certified. .................................................................. 1
        A.    Plaintiffs Have Established Both Commonality and Typicality. ................................. 1
        B.    Plaintiffs and Counsel are adequate representatives. ..................................................... 4
        C.    The Proposed Tuition and Fees Classes Are Ascertainable ....................................... 7
        D.    Plaintiffs Have Satisfied Rule 23(b)(2) ....................................................................... 8
        E.    Plaintiffs Have Satisfied Rule 23(b)(3) ....................................................................... 8
        i.    A Uniform Contract Promising In-Person Instruction and Access to Campus Has Been Proven on a Class-Wide Basis ............................................................................... 8
    II.    Plaintiffs Unjust Enrichment Claim Can be Certified .................................................... 10
CONCLUSION ..................................................................................................................... 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alexander v. Florida Int'l Univ. Bd. of Trustees*,
  No. 2021- 009869-CA-01 (Miami-Dade County 11th Jud. Cir. Ct., December 30, 2021) ...... 10

*Arredondo v. Univ. of La Verne*,
  341 F.R.D. 47 (C.D. Cal. Feb. 8, 2022) ................................................................................. 7

*Baffa v. Donaldson, Lufkin, & Jenrette Securities Corp.,* 222 F.3d. 52, 61 (2d. Cir. 2000) .......... 4

*Bolin v. Sears, Roebuck & Co.*,
  231 F. 3d 970 (5th Cir. 2000) .............................................................................................. 10

*Croft v. SpinX Games Ltd.*,
  Case No. 20-cv-01310-RSM (W.D. Wash. Mar. 31, 2022) .................................................. 6

*Cross v. Univ. of Toledo*, No. 2020-00274JD (Ohio Ct. Cl., Apr. 26, 2021) ................................ 3

*D'Amario v. The University of Tampa*, Case No. 20-cv-03744-CS (S.D.N.Y. June 3, 2022) ....... 6

*Ebin v. Kangadis Food Inc.*,
  297 F.R.D. 561, 566 (S.D.N.Y. 2014) .................................................................................. 6

*Eddlemon v. Bradley University*, Case No. 1:20-CV-01264 (July 22, 2022) ............................... 2

*Fischer v. Instant Checkmate LLC*,
  2022 WL 971479 (N.D. Ill. Mar. 31, 2022) .......................................................................... 6

*Garcia De León v. New York University,* 2022 WL 2237452 (S.D.N.Y. June 22, 2022) .............. 2

*In re Frontier Ins. Group, Inc. Sec. Litig.*,
  172 F.R.D. 31, 47 (E.D.N.Y. 1997) ...................................................................................... 4

*In re Namenda Indirect Purchaser Antitrust Litig.,*
  338 F.R.D. 527 (S.D.N.Y. 2021) .......................................................................................... 9

*IN RE: January 2021 Short Squeeze Trading Litigation,* MDL No. 2989 ..................................... 5

*In Re: Zantac (Ranitidine) Products Liability Litig.*,
  9:20-md-02924-RLR, Dkt. No. 685 ...................................................................................... 5

*Keba v. Bowling Green State Univ.*, No. 2020-00639JD (Ohio Ct. Cl. Mar. 30, 2022) ................ 3

*Little v. Grand Canyon Univ.*, 2022 WL 266726 (D. Az. Jan. 28, 2022) ........................................ 3

*Loftus v. Outside Integrated Media, LLC*,
   Case No. 21-cv-11809-MAG-DRG (E.D. Mich. May 5, 2022) (same) ..................................... 6

*Porter v. Emerson College*,
   1:20-CV-11897(RWZ) (D. Mass.) ................................................................................ 7

*Prusack v. State*,
   498 N.Y.S.2d 455, 456 (2d Dep't 1986) ...................................................................... 3

*Stevens v. Harper,*
   213 F.R.D. 358 (E.D. Cal. 2002) ............................................................................ 10

*Vought v. Teachers Coll., Columbia Univ.,* 511 N.Y.S.2d 880, 881 (2d Dep't 1987) ................... 3

*Wal-Mart Stores, Inc. v. Dukes,*
   564 U.S. 338 (2011) ............................................................................................. 2

Plaintiffs Nicholas Bergeron and Nick Quattrociocchi ("Plaintiffs") submit this memorandum of law in reply to Defendant Rochester Institute of Technology's ("RIT" or "Defendant") Memorandum of Law in Opposition to Class Certification and Appointment of Class Representative and Co-Lead Class Counsel.

## INTRODUCTION

RIT's memo in opposition to class certification consists of conclusory statements and selective case law taken entirely out of context. As shown below, Plaintiffs will provide context to RIT's case law to demonstrate that the proposed tuition and fee classes are the superior means of adjudicating these proceedings as provided under Federal Rule of Civil Procedure ("FRCP") Rule 23.

First, Plaintiffs will show that the requirements for commonality and typicality are satisfied; Plaintiffs and their proposed class counsel are adequate representatives; Plaintiffs' proposed tuition and fees class definition are ascertainable, and common questions of law and fact predominate. Second, contrary to RIT's assertion, Plaintiffs' breach of contract claim seeking fees refunds does not fail. RIT has selectively incorporated parts of Plaintiffs' memo hoping this Court will not apply established 2nd Circuit case law and instead apply RIT's narrow and erroneous version of it. Third, Plaintiffs' unjust enrichment claims on behalf of both the proposed tuition and fees classes do not fail to satisfy the class certification requirements. As such, Plaintiffs' motion for class certification should be granted.

## ARGUMENT

I. **Plaintiffs' Proposed Tuition and Fees Classes as to the First and Third Causes of Action for Breach of Contract Should Be Certified.**

   A. **Plaintiffs Have Established Both Commonality and Typicality.**

In its opening salvo, RIT relies heavily on cases where, although the citation appears to be fitting, a look at the facts illuminates the true reasoning behind the Court's decisions. RIT cites to *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338 (2011) as support to their opposition. ECF No. 83 at 2.

RIT's citations omit exactly what happened in *Dukes*. *Dukes* was a proposed class-action brought by female employees against Wal-Mart, alleging sex discrimination. *Id.* at 341. The class comprised roughly one and a half million plaintiffs who "allege[d] that the discretion exercised by their *local* supervisors over pay and promotion matters violate[d] Title VII." *Id.* at 342 (emphasis added). "Pay and promotion decisions at Wal-Mart are generally committed to local managers' broad discretion, which is exercised in a largely subjective manner." *Id.* at 343 (internal citations omitted). Wal-Mart stores are comprised into 7 nationwide divisions, which in turn consist of 41 regions of 80 to 85 stores. *Id.* at 342. In other words, a store manager from one location likely had promotion criteria wholly different than a store manager from another location. Multiply these differences across multiple divisions and it is plain to see why the *Dukes* citations above focuses on common answers to common contentions. The Supreme Court explained that *Dukes* plaintiffs could not meet the commonality standard because "[plaintiffs] wish to sue about literally millions of employment decisions at once. Without some glue holding the alleged reasons for all those decisions together, it will be impossible to say that examination of all the class members' claims for relief will produce a common answer to the crucial question *why was I disfavored*." *Id.* at 352.

Further, RIT relies on a minority view reflected in *Garcia De León v. New York University,* 2022 WL 2237452 (S.D.N.Y. June 22, 2022) as compared to the numerous decisions throughout the country granting certification in similar actions. *See e.g.*, *Eddlemon v. Bradley University*, Case No. 1:20-CV-01264 (July 22, 2022); *Little v. Grand Canyon Univ.*, 2022 WL 266726 (D. Az. Jan.

2

28, 2022); *Cross v. Univ. of Toledo*, No. 2020-00274JD (Ohio Ct. Cl., Apr. 26, 2021); *Keba v. Bowling Green State Univ.*, No. 2020-00639JD (Ohio Ct. Cl. Mar. 30, 2022). This case, unlike *Dukes*, revolves around one party's uniform action which aggrieved another party. There are no individualized issues as to whether Plaintiffs and other potential class members suffered the same harm as other students because RIT's decision to shut down the school affected every student enrolled in-person classes.

RIT conflates the issue by citing the amount of aggrieved students enrolled at RIT, the amount of programs RIT offers, and other irrelevant data. However, at the crux of these numbers is one simple fact RIT cannot bury; this case will be resolved by answering whether RIT breached their agreements with Plaintiffs and proposed class members when it failed to provide in-person instruction and services for a portion of the Spring 2020 semester and, if so, whether Plaintiffs and proposed class members suffered damages as a result of the breach.

In direct contradiction to established New York case law, RIT continues to assert the Student Financial Responsibility Agreement ("SFRA") is the ultimate express contract. It simply is not, no matter how many times RIT claims it is. "Under New York law, it is well established that the relationship between an institution of higher education and its students is contractual in nature." *Prusack v. State,* 498 N.Y.S.2d 455, 456 (2d Dep't 1986). "The rights and obligations of the parties as contained in the university's bulletins, circulars and regulations made available to the student become a part of this contract." *Vought v. Teachers Coll., Columbia Univ.,* 511 N.Y.S.2d 880, 881 (2d Dep't 1987). Here, the degree to which the SFRA controls is still undecided. Whether it trumps the other specific promises RIT made in their bulletins, catalogs, and advertisements has not yet been addressed by this Court and RIT's continued assertion that it does not make it so.

RIT's argument as it relates to fees is similarly fatally flawed. RIT argues that students paid different rates depending on credit load. However, Plaintiffs and the proposed class are not seeking a refund for a set dollar amount, but are seeking a seeking a partial refund of the total paid in the form of a percentage. Accordingly, the total dollar amount each student paid, even if it varies, is immaterial.

### B. Plaintiffs and Counsel are adequate representatives.

The Plaintiffs have spent significant time on this litigation and are more than willing to represent the class to their fullest abilities. RIT claims Bergeron does not have standing and also cites to the perceived failure of Plaintiffs to recite what contracts specifically constitute their legal relationship to RIT as reasons why Plaintiffs are inadequate counsel.

Plaintiff Bergeron does not lack Article III standing. Plaintiff addressed this argument in their Opposition to Defendant's Motion to Dismiss and refers to it here. ECF. No. 85 at 25.

Next, RIT states Plaintiffs are inadequate class representatives because they could not identify the contract terms on which they base their claims. First, "[t]he Supreme Court in *Surowitz v. Hilton Hotels Corp.,* expressly disapproved of attacks on the adequacy of a class representative based on the representative's ignorance." *Baffa v. Donaldson, Lufkin, & Jenrette Securities Corp.,* 222 F.3d. 52, 61 (2d. Cir. 2000). "Courts that have denied class certification based on the inadequate qualifications of plaintiffs have done so only in flagrant cases, where the putative class representatives…are so lacking in credibility that they are likely to harm their case." *In re Frontier Ins. Group, Inc. Sec. Litig.*, 172 F.R.D. 31, 47 (E.D.N.Y. 1997). Here, RIT's attack on Plaintiffs' adequacy directly contradicts 2nd Circuit case law. RIT's sole attack on Plaintiffs' adequacy is that Plaintiffs were unable to recite the contractual terms between them and RIT. Plaintiffs are not trained attorneys nor must they be in order to be adequate. Student-university contract law is not

common knowledge and, as evidenced by RIT Counsel's repeated mistaken assertion that the SFRA is the only governing contract, it is difficult for even experienced, highly-qualified attorneys to understand as well. Furthermore, even if the Plaintiffs' failure to identify contractual terms signifies inadequacy, Plaintiffs have retained counsel who do understand the contractual terms. Therefore, this perceived inadequacy on Plaintiffs part will not harm the case.

Plaintiffs' Counsel is more than adequate under the Rule 23(g) factors. Even though proposed lead counsel, Roy T. Willey, IV, is a young attorney, he should not be precluded from representing the proposed class. As recognized by Southern District of Florida Judge Robin Rosenberg when appointing plaintiff's leadership in the Zantac MDL: "[t]he Court also sought to appoint a diverse leadership team that is representative of the inevitable diversity of the Plaintiffs in this case, and a team that affords younger and slightly less experienced attorneys an opportunity to participate in a leadership role in an MDL." *In Re: Zantac (Ranitidine) Products Liability Litig.*, 9:20-md-02924-RLR, Dkt. No. 685.

Despite being just 35 years of age, Mr. Willey has been appointed Chair of the Plaintiff's Steering Committee in a prominent MDL, MDL No. 2989 *IN RE: January 2021 Short Squeeze Trading Litigation*. Mr. Willey has also been appointed as interim lead or co-lead counsel in several other cases.[1] Although Mr. Willey's direct participation at this point is also irrelevant and immaterial. He is supervising his team in this matter and it is unclear exactly what RIT would like to see here.

RIT's attacks on Mr. Fraietta are equally unavailing. Mr. Fraietta is a Partner at one of the

---

[1] *See Ford v. Rensselaer Polytechnic Institute*, 1:20-cv-00470-DNH-CFH, Dkt. No. 51, at 3; *See also In Re: University of Miami COVID-19 Tuition and Fee Refund Litig.* 0:20-cv-60851-AHS, Dkt. No. 48, at 3; *See also In Re: January 2021 Short Squeeze Trading Litig.* 1:21-md-02989-CMA, Dkt. No. 310, at 3; *See also Espejo et al. v. Cornell Univ.*, 3:20-cv-00467-MAD-ML, Dkt. No. 32, at 8; *See also Qureshi v. American Univ.*, 1:20-cv-01141-CRC, Dkt. No. 25, at 2; *See also Montesano v. The Catholic University of America*, 1:20-cv01496-DLF, Dkt. No. 15, at 2

most well-known class action firms in New York. *See, e.g.*, *Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 566 (S.D.N.Y. 2014) ("Bursor & Fisher, P.A., are class action lawyers who have experience litigating consumer claims. … The firm has been appointed class counsel in dozens of federal and state courts, and has won multi-million dollar verdicts or recoveries in five class action jury trials since 2008."). Mr. Fraietta has personally been appointed class counsel in numerous matters. *See, e.g.*, *Fischer v. Instant Checkmate LLC*, 2022 WL 971479, at *15 (N.D. Ill. Mar. 31, 2022) (Feinerman, J.) (appointing Mr. Fraietta as Class Counsel); *Croft v. SpinX Games Ltd.*, Case No. 20-cv-01310-RSM, ECF No. 62 at ¶ 4 (W.D. Wash. Mar. 31, 2022) (same); *Loftus v. Outside Integrated Media, LLC*, Case No. 21-cv-11809-MAG-DRG, ECF No. 27 at ¶ 8 (E.D. Mich. May 5, 2022) (same). And Mr. Fraietta has personally been appointed class counsel in numerous matters similar to this case, including most recently by Judge Cathy Seibel of the Southern District of New York. *See D'Amario v. The University of Tampa*, Case No. 20-cv-03744-CS, ECF No. 65 at ¶ 8 (S.D.N.Y. June 3, 2022) (appointing Mr. Fraietta as Class Counsel).[2]

Similarly, RIT baselessly attacks Michael Tompkins, Esq. of Leeds Brown Law, P.C. and Jason Sultzer, Esq. of The Sultzer Law Group, P.C. by falsely asserting that they have taken "[no] substantive role in this action to date." First, RIT falsely professes to knowing the work performed by Mr. Tompkins or Mr. Sultzer in connection with this action. In fact, both have been actively involved in this case – and have coordinated efficiently amongst co-counsel (internally within their firm and externally amongst the firms) to avoid duplication of work. *See* Exhibit 1 ("Tompkins Reply Dec.") ¶¶ 4-10; Exhibit 2 ("Sultzer Reply Dec.") ¶¶ 4-10. That Defendant does not reference or recall direct interaction with Mr. Sultzer or Mr. Tompkins does not indicate they have done no

---

[2] *See also Wright v. Southern New Hampshire Univ.*, 565 F. Supp. 3d 193, 206 (D.N.H. Apr. 26, 2021) (appointing Mr. Fraietta as Class Counsel); *Desai v. Carnegie Mellon Univ.*, Case No. 20-cv-00844-CB, ECF No. 12 at 2 (W.D. Pa. Aug. 26, 2020) (same);

6

substantive work, but serves as proof that they have been successful in streamlining and coordinating efforts to efficiently represent the putative class and demonstrates why have four firms as class counsel is not unproductive. Second, Defendants ignore the significant role Mr. Sultzer and Mr. Tompkins have played in similar tuition refunds cases, including representing the settlement class in *Porter v. Emerson College*, 1:20-CV-11897(RWZ) (D. Mass.) in which Emerson College was represented by same defense counsel here and recently resolved for $2,060,000. Mr. Sultzer and Mr. Tompkins have also been appointed Class Counsel in *Arredondo v. Univ. of La Verne*, 341 F.R.D. 47, 54 (C.D. Cal. Feb. 8, 2022) (noting the "significant work" and "wealth of experience handling class actions." of Mr. Tompkins and Mr. Sultzer). Mr. Tompkins' and Mr. Sultzer's personal credentials and achievements are well documented. Tompkins Reply Dec. ¶¶ 13-17; Sultzer Reply Dec. ¶¶ 13-15. Such experience contributes to the efficient prosecution of this action as many issues overlap including expert discovery, class certification issues, overall litigation strategy.

RIT argues that the specific materials Plaintiffs' expert, Dr. Cowan, received prior to his deposition is probative of the adequacy of counsel. First, RIT is using their assertion that Plaintiffs and other proposed class members do not meet the criteria for commonality and typicality to then attack Dr. Cowan's report on that basis. An individualized report of each named Plaintiff is not required because the damages model fits for *all* students. Further, Dr. Cowan's damage model is not affected by the lack of Plaintiff Bergeron's damages because the documentation for Plaintiffs was required only to get a damage calculation specific to them. (Ex. 3, Cowan Depo. 39:1-3).

### C. The Proposed Tuition and Fees Classes Are Ascertainable

The proposed class definitions are not vague, much less fatally vague. RIT is challenging that, to be ascertainable, the class description must be "sufficiently definite so that it is

administratively feasible for the court to determine whether a particular individual is a member." ECF No. 83 at 11. Here, the proposed class definition was straightforward and RIT is clearly playing coy. It is obvious that the classes include all Rochester Institute of Technology students, (graduate students included).

Second, it is irrelevant how or by whom students' tuition and fee payments were funded. Every RIT student is provided with an SFRA assuming responsibility for payment of tuition and fees, assuming liability for failure to pay such amounts when due, and other boilerplate language.[3] Thus, it is the student who is obligated to pay tuition and fees, the student who is held responsible for not paying and who suffers the consequences of any default, and it is the students who ultimately pays the amount.

### D.   Plaintiffs Have Satisfied Rule 23(b)(2)

Defendant wrongly argues that the Motion for Class Certification must be denied if the requirements of Rule 23(b)(2) are not met. ECF No. 83 at 14. Rule 23 holds that, after meeting the requirements of 23(a), one of 23(b)'s criteria must be met. Therefore, even if this Court finds Rule 23(b)(2) is not satisfied, the Court would still have 23(b)(3) to evaluate. Here, Plaintiffs and proposed class members all suffered the same harm in that RIT wrongly kept tuition and fees it should have been refunded and Plaintiffs are requesting this Court to declare such action unlawful.

RIT continues to argue, incorrectly, that the existence of a signed SFRA somehow splits Plaintiffs from other prospective class members which simply is not the case. Plaintiffs have addressed RIT's erroneous argument at length above and that analysis holds here as well.

### E.   Plaintiffs Have Satisfied Rule 23(b)(3)

####    i. A Uniform Contract Promising In-Person Instruction and Access to Campus Has Been Proven on a Class-Wide Basis

---

[3] However, this document clearly cannot be the sole governing document as it only details part of the student's responsibilities and none of RIT's

The contractual relationship between student and university has been addressed previously and that discussion applies here. As such, Plaintiffs and proposed class members were provided, and had access to, the same RIT-produced bulletins, regulations, policies, and advertisements. Therefore, Plaintiffs' contractual relationship is identical to that of other putative class members.

### ii. Individualized Evidence is Not Required to Prove Breach

RIT relies on purported individual issues, which are irrelevant, to argue that Plaintiffs cannot establish materially uniform contract terms applicable to all putative class members. ECF No. 83 at 17-19. "District courts in this and other Circuits have held that a class may be certified so long as a '*de minimis*' number of class members were uninjured or, conversely, 'virtually all' class members were injured." *In re Namenda Indirect Purchaser Antitrust Litig.,* 338 F.R.D. 527, 563 (S.D.N.Y. 2021).

The fact that a small percentage of RIT students took one online course before the Spring 2020 semester is immaterial and does not indicate lack of injury for those students. A pre-planned online course that a student *chose* to enroll in is a significantly different product than the emergency transition to remote courses that were given to Class members in Spring 2020.

### iii. Plaintiffs Have Put Forward a Class-Wide Damages Model

Plaintiffs and their expert propose to measure damages based on the difference in value between what the Class members paid for (in-person education and other services measured by the tuition and fees they paid) and the remote instruction provided by RIT, and that this difference in value would be prorated for the portion of the Spring 2020 semester during which remote-only instruction was provided. For a second time, Defendant makes the argument that based on Plaintiffs' own personal opinions on remote instruction combine with its Expert Report, an individualize damages assessment is required. ECF No. 83 at 19-21. What this argument ignores

is that what Plaintiffs and Class members paid for and were promised included classroom instruction, but it was broader than that. It also included access to an array of educational and related services at RIT, all of which were centered around RIT's campus. The campus, campus amenities, facilities, services, and access to experiential learning were all part of the package offered and sold to every Class member. During the Spring 2020 semester, such experience and services were removed and replaced by remote learning and campus closures.

## II.     Plaintiffs Unjust Enrichment Claim Can be Certified

Plaintiffs have clearly not waived certification of classes with respect to their Second and Fourth Cases of action for unjust enrichment. Neither *Bolin v. Sears, Roebuck & Co.*, 231 F. 3d 970 (5th Cir. 2000), nor *Stevens v. Harper,* 213 F.R.D. 358 (E.D. Cal. 2002), support such a result. Plaintiffs, in their opening memorandum, moved to certify two classes and it relates to all claims. ECF No. 75 at 2-3. For example, Plaintiffs argued that Commonality exists because this case turns on the same question for all class members … "it is either unjust for RIT to retain tuition and fees for all class members or it is not." *Id*. In support of their predominance argument, Plaintiffs cite to *Alexander*, in which the court held that common issue predominate over individual issues because FIU was unjustly enriched by retaining fees that should have been returned to students. *Alexander v. Florida Int'l Univ. Bd. of Trustees*, No. 2021- 009869-CA-01 (44) (Miami-Dade County 11th Jud. Cir. Ct., December 30, 2021).

## **CONCLUSION**

As demonstrated above, this case is well suited for class litigation. Therefore, for all the reasons stated above, Plaintiffs respectfully request the Court to certify the Class.

Dated: November 18, 2022

                                            Respectfully Submitted,

**POULIN | WILLEY | ANASTOPOULO, LLC**

BY: */s/Blake G. Abbott*
Blake G. Abbott*
Paul J. Doolittle*
Roy T. Willey*
32 Ann Street
Charleston, SC 29403
Telephone: (843) 614-8888
Email: roy@akimlawfirm.com

-and-

**BURSOR & FISHER, P.A.**
Philip L. Fraietta
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: pfraietta@bursor.com

**LEEDS BROWN LAW, P.C.**

Michael A. Tompkins, Esq.
Anthony M. Alesandro
One Old Country Road, Suite 347
Carle Place, NY 11514
(516) 873-9550
aalesandro@leedsbrownlaw.com
mtompkins@leedsbrownlaw.com

**CO-LEAD INTERIM COUNSEL FOR THE PUTATIVE CLASS**

-and-

**FERR & MULLIN, P.C.**
Robert L. Mullin
7635 Main Street Fishers
P.O. Box 440

Fishers, NY 14453
Telephone: (585) 869-0210
Facsimile: 95850 869-0211
Email: rlmullin@ferrmullinlaw.com

-and-

**MOREA SCHWARTZ BRADHAM FRIEDMAN & BROWN LLP**

John M. Bradham*
444 Madison Avenue, 4th Floor
New York, NY 10022
Telephone: (212) 695-8050
Email: jbradham@msbllp.com

-and-

**TOPTANI LAW PLLC**

Edward Toptani*
375 Pearl Street, Suite 1410
New York, NY 10038
Telephone: (212) 699-8930
Email: edward@toptanilaw.com

-and-

**THE SULTZER LAW GROUP, P.C.**

Jason P. Sultzer, Esq.
Joseph Lipari, Esq.
Mindy Dolgoff, Esq.
85 Civic Center Plaza, Suite 200
Poughkeepsie, New York 12601
Tel: (845) 483-7100
Fax: (888) 749-7747
sultzerj@thesultzerlawgroup.com
liparij@thesultzerlawgroup.com
dolgoffm@thesultzerlawgroup.com

**\*Admitted via *Pro Hac Vice***

12

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on November 18, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.


Date: November 18, 2022            */s/ Blake G. Abbott*