UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| NICHOLAS BERGERON and NICK QUATTROCIOCCHI, on behalf of themselves and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ROCHESTER INSTITUTE OF TECHNOLOGY,<br><br>Defendant. | Case No. 6:20-cv-06283 |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT'S MOTION TO PRECLUDE TESTIMONY FROM AND THE EXPERT OPINION OF DR. CHARLES COWAN, Ph.D.**

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................................ ii

INTRODUCTION ............................................................................................................................... 1

ARGUMENT ....................................................................................................................................... 2

    I.    Dr. Cowan Failed to Account for Significant Variables, Rendering His Benchmark Analysis Unreliable. ........................................................................... 2

    II.    Dr. Cowan Failed to Consider Sufficient Facts and Data to Support His Analysis ............................................................................................................... 5

    III.    Dr. Cowan Arbitrarily Failed to Analyze the Fees at Issue and Excluded Putative Class Members ...................................................................................... 7

CONCLUSION .................................................................................................................................... 9

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Capri Sun GmbH v. Am. Beverage Corp.*,
    595 F. Supp. 3d 83 (S.D.N.Y. 2022) ................................................................................... 4

*Celebrity Cruises Inc. v. Essef Corp.*,
    434 F. Supp. 2d 169 (S.D.N.Y. 2006) .................................................................................. 6

*Daubert v. Merrell Dow Pharms, Inc.*,
    509 U.S. 579 (1993) .................................................................................................... 1, 3, 4

*In re Elec. Books Antitrust Litig.*,
    No. 11 MD 2293 DLC, 2014 WL 1282298 (S.D.N.Y. Mar. 28, 2014) .................................. 3

*Faulkner v. Arista Recs. LLC*,
    46 F. Supp. 3d 365 (S.D.N.Y. 2014) .................................................................................... 5

*Fed. Hous. Fin. Agency v. Nomura Holding Am., Inc.*,
    No. 11CV6201 DLC, 2015 WL 539489 (S.D.N.Y. Feb. 10, 2015) ....................................... 3

*Wills v. Amerada Hess Corp.*,
    379 F.3d 32 (2d Cir. 2004) ................................................................................................ 2, 6

*In re Wireless Tel. Servs. Antitrust Litig.*,
    385 F. Supp. 2d 403 (S.D.N.Y. 2005) .................................................................................. 3

**Other Authorities**

Richard A. Pollack, *et al.* CALCULATING LOST PROFITS - PRACTICE AID 06-4 15-16
    (American Institute of Certified Public Accountants Business Valuation and
    Forensic Litigation Services Section, 2013) ........................................................................ 2

Defendant Rochester Institute of Technology ("RIT") submits this reply memorandum of law in further support of its motion to preclude the testimony and report of Plaintiffs' expert, Dr. Charles Cowan, Ph.D.

## INTRODUCTION[1]

Rather than explain why Dr. Cowan's damages analysis is sufficiently rigorous to satisfy the standard of Rule 702 and *Daubert v. Merrell Dow Pharms, Inc.*, 509 U.S. 579 (1993), Plaintiffs' Opposition offers a grab-bag of *non sequiturs* and misdirection. But Plaintiffs cannot refute that Dr. Cowan's benchmark analysis fails: Dr. Cowan admittedly did not conduct *any* analysis to determine whether the only significant difference between RIT Online and RIT's campus-based programs is the modality of instruction and services, and, if he had, he would have discovered a multitude of material independent variables that preclude RIT Online as a sound benchmark. And further, Plaintiffs cannot dispute that Dr. Cowan built and then tested his simplistic one-size-fits-all methodology on a sample size of one, without consideration of his own clients' testimony that their theory of damages required an individual assessment of the perceived pedagogical methods used in each of RIT's Spring 2020 courses before and after the transition to distance learning.

In short, Dr. Cowan's expert opinion falls woefully short of the rigorous analysis required for his opinion to be sufficiently reliable. For all of these reasons, Dr. Cowan's opinion should be precluded.

---

[1] Capitalized or abbreviated terms not otherwise defined herein have the same meaning as in RIT's moving memorandum of law. *See* Dkt. No. 84-6 ("Moving Br.").

**ARGUMENT**

I. **Dr. Cowan Failed to Account for Significant Variables, Rendering His Benchmark Analysis Unreliable.**

There is no dispute that Dr. Cowan picked RIT Online as his benchmark based on a single marketing statement. *See* Cowan Dep. Tr. 95:17 – 97:7. There is likewise no dispute that Dr. Cowan undertook no analysis – let alone the requisite rigorous analysis – into whether RIT Online's online modality is the *only* significant variable distinguishing RIT Online and RIT's campus-based programs. *See* Cowan Dep. Tr. 93:9 – 95:16 ("The whole case was about the fact that there's a difference between in-person education versus online. *I don't know what the differences are. I just know that there are differences because there are different prices paid.*") (emphasis added).[2]

The requirement that a selected benchmark control for only a single variable is an axiomatic principle of economic modeling. *See* Wilner Report at 20 (citing Richard A. Pollack, *et al.* CALCULATING LOST PROFITS – PRACTICE AID 06-4 15-16 (American Institute of Certified Public Accountants Business Valuation and Forensic Litigation Services Section, 2013) ¶¶ 68-69).[3] Plaintiffs blow past this fundamental principle by summarily dismissing all of the many material variables distinguishing RIT Online from RIT's campus-based programs as "irrelevant" to the question of whether Dr. Cowan's benchmark analysis is sound. *See* Dkt. 97 ("Opp. Br.") at 4. But these many variables – entirely unconsidered by Plaintiffs' expert – go to the heart of whether Dr. Cowan's chosen benchmark is reasonable, reliable, and scientifically-sound. *See, e.g.*, *Wills v.*

---

[2] Plaintiffs cite no authority for their rhetorical suggestion that reference to a single sentence from an RIT marketing statement satisfies the requirement that Dr. Cowan conduct a "rigorous" analysis under Rule 702. *See* Opp. Br. at 4.
[3] And as detailed thoroughly in RIT's moving memorandum of law and Dr. Wilner's rebuttal report, Dr. Cowan failed to consider a spectrum of economic principles when developing his methodology, including, for example, bundling. The effect of this failure to consider bundling is an easily apparent flaw in his analysis: under Dr. Cowan's model, students taking *less* credits sustained *more* damages, which runs contrary to logic and equity. *See* Moving Br. at 10; Wilner Report at 18.

2

*Amerada Hess Corp.*, 379 F.3d 32, 50 (2d Cir. 2004) ("failure to account for [major variables] strongly indicated that [expert]'s conclusions were not grounded in reliable scientific methods, as required by *Daubert*."); *In re Elec. Books Antitrust Litig.*, No. 11 MD 2293 DLC, 2014 WL 1282298, at *10 (S.D.N.Y. Mar. 28, 2014) ("[Expert]'s ... analysis fails to support his opinions because it fails to control for systematic factors . . . ."); *In re Wireless Tel. Servs. Antitrust Litig.*, 385 F. Supp. 2d 403, 427 (S.D.N.Y. 2005) ("Where an expert conducts a regression analysis and fails to incorporate major independent variables, such analysis may be excluded as irrelevant."). And, despite Plaintiffs' facile suggestion to the contrary, an expert's failure to account for material independent variables in his or her analysis goes directly to admissibility, not merely to weight. *See id.*; *see also, e.g.*, *Fed. Hous. Fin. Agency v. Nomura Holding Am., Inc.*, No. 11CV6201 DLC, 2015 WL 539489, at *5 (S.D.N.Y. Feb. 10, 2015).[4]

Had Dr. Cowan even considered the matter, it would have been readily apparent that RIT Online is not a proper benchmark upon which to base a viable damages model for this case. The classes and programs offered are almost entirely distinct; the administrative support and student services offered are different; marketing and targeted student demographics are different; and – most critically – the availability of financial aid is different[5], with RIT Online providing no institutional aid while students in RIT's campus-based programs receive considerable amounts of such aid. *See generally* Moving Br. at 7-9. Accordingly, there is far more that distinguishes RIT

---

[4] Plaintiffs improperly characterize the applicability of *Nomura*, and seem to suggest that it somehow supports Dr. Cowan's analysis. *Fed. Hous. Fin. Agency v. Nomura Holding Am., Inc.*, No. 11CV6201 DLC, 2015 WL 539489, at *5 (S.D.N.Y. Feb. 10, 2015). It does not. As had the expert at issue in *Nomura*, Dr. Cowan used a benchmark analysis to reach a conclusion that the exclusion of a specific variable (here, in-person instruction and services) resulted in economic damages of a certain degree. *Nomura* cited extensive Second Circuit authority excluding expert analyses that "fail[ed] to account for significant variables" when setting the benchmark. *See id.* at *5 (citing cases). Those cases, and *Nomura*, are applicable here and require the preclusion of Dr. Cowan's opinion.

[5] Contrary to Plaintiffs' assertion, there is no dispute that students who receive financial aid could still have incurred out-of-pocket expenses. *Cf.* Opp. Br. at 5. The flaw in Dr. Cowan's analysis, however, is a failure to properly account for financial aid and an arbitrary decision to include only certain types of financial aid in his model without proper analysis. *See* Moving Br. at 8-9.

3

Online from RIT's campus-based programs – and that contributed to any perceived pricing variations between these two programs – than merely their primary modalities of instruction. But Dr. Cowan admittedly failed to consider any of this, and Plaintiffs' Opposition offers no explanation for this failure or authority suggesting that Dr. Cowan's benchmark analysis could be viable despite it.

Sidestepping Dr. Cowan's manifest failure to conduct any analysis of whether RIT Online is an appropriate benchmark, Plaintiffs' Opposition tries to shift the burden to RIT to offer an "alternative or more appropriate benchmark" when challenging Dr. Cowan's methodology. *Compare* Opp. Br. at 3 *with Capri Sun GmbH v. Am. Beverage Corp.*, 595 F. Supp. 3d 83, 140 (S.D.N.Y. 2022), *motion to certify appeal denied*, No. 19CIV1422PAEVF, 2022 WL 3137131 (S.D.N.Y. Aug. 5, 2022) (explaining in the context of a *Daubert* challenge that a rebuttal expert opinion need not provide an alternative analysis or approach). Not surprisingly, Plaintiffs cite no authority for this erroneous proposition, which inverts Plaintiffs' burden of proof and runs contrary to the purpose of a *Daubert* motion. *See Daubert*, 509 U.S. at 587, 595 (motions to preclude expert opinions test the relevance and reliability of an offered opinion).

Plaintiffs seem to suggest that their benchmark model – despite its readily-apparent flaws – should be deemed adequate because "RIT Online is the only benchmark" available to them. Opp. Br. at 3. Plaintiffs' suggestion that no other benchmarks were available is not supported by Dr. Cowan's report or deposition testimony. Dr. Cowan admitted that he could have – but did not – conduct *any* analysis to determine whether other potential benchmarks were available. Reply Declaration of Qian (Sheila) Shen Ex. 5 (Supp. Cowan Dep. Tr.) at 136:18 – 139:3.

Moreover, this suggestion ignores another readily available benchmark not subject to RIT Online's many flaws: RIT's Fall 2020 campus-based tuition and fee rates, which applied to the

4

same student body composition, the same class types, and the same financial aid structures as the Spring 2020 class, except for the single variable at issue here – a fully remote modality. *See* Wilner Report at 14-17, 20-24.[6] Of course, applying such a benchmark would establish that Plaintiffs' prospective class suffered no damages, given that students in the Fall 2020 semester paid higher standard tuition and fees, despite knowing that instruction would likely not be exclusively in-person due to the ongoing pandemic. Accordingly, Dr. Cowan's flawed use of RIT Online as a benchmark was driven by the results it produced, not by its status as the "only" available benchmark.

## II.     Dr. Cowan Failed to Consider Sufficient Facts and Data to Support His Analysis.

Plaintiffs' Opposition attempts to make much of the "simplicity" of Dr. Cowan's analysis. *See, e.g.*, Opp. Br. at 3. Because, Plaintiffs claim, Dr. Cowan chose RIT Online as his benchmark and arithmetically compared that benchmark to the tuition and fees paid by one student – Plaintiff Quattrociocchi – he need go no further to consider such extraneous facts as the nature of RIT Online or the extent to which Mr. Quattrociocchi's academic and financial situation can fairly be extrapolated across RIT's entire campus-based student population. But the simplicity of Dr. Cowan's model is a shortcoming, not a virtue. Dr. Cowan's blinders to anything beyond his improperly-selected benchmark and one student's tuition and fee payments underscores the lack of reasonableness, reliability, and validity of his analysis.

By failing to consider readily available facts and data – whether that failure arises from Dr. Cowan's own refusal to consider such facts or data or from Plaintiffs' counsel's failure to provide such data to Dr. Cowan – Dr. Cowan's methodology is unreliable as a matter of law. *See Faulkner*

---

[6] To be clear, RIT's expert rejects the use of any benchmark theory as appropriate for this case, because any reasonable and reliable damages approach in this case must take into account the individualized nature of the various student experiences. *See generally*, Wilner Report.

5

*v. Arista Recs. LLC*, 46 F. Supp. 3d 365, 380-81 (S.D.N.Y. 2014) (excluding expert report where expert failed to review data that was produced and available); *see also Celebrity Cruises Inc. v. Essef Corp.*, 434 F. Supp. 2d 169, 182-83 (S.D.N.Y. 2006) (excluding damages expert who was not aware of the availability of "actual performance data" and "declined to incorporate their actual growth rates into her methodology" once she became aware of data).  It does not matter that Dr. Cowan's methodology purports to not require any additional data or facts; his failure to consider all available facts and data shows that he failed to apply a rigorous analysis, rendering his opinion unreliable.  *See Wills*, 379 F.3d at 48 (requiring that an expert opinion "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field") (quoting *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999)).

Plaintiffs concede that "[i]f Dr. Cowan's model required multiple students as examples, then it would be indicative that class certification should <u>not</u> be granted."  Opp. Br. at 5 (emphasis added).  We agree.  Dr. Cowan's attempt to impose a simple *pro rata* calculation for all damages exposes the fatal flaw in his methodology: while the campus closing impacted all campus-based students, it did not impact them equally and Dr. Cowan chose not to analyze, or even acknowledge, those wide-ranging variations.  He offers no basis to distinguish, for example, the alleged damages to computer engineering students who performed most of their work and labs remotely and declined to engage in on-campus extracurricular activities, from students taking courses at the School of Performing Arts who regularly attended classes in-person and whose productions were cancelled or transformed into virtual performances.  Nor does Dr. Cowan's model provide a basis for distinguishing between those students who performed better in the remote environment (as measured by grades and evaluations) from those whose remote performance was on par or

6

substantially worse. *See also* Opp. Br. at 6 (conceding that art history students and engineering students may prefer different pedagogical methods, necessitating an individualized analysis).

And it is not just RIT that thinks that damages in this case (both their existence and their quantum) are inherently individualized; Dr. Cowan's own clients do too.[7] Both Plaintiffs testified during their depositions that their perceived theory of damages is based on their own *individualized* experiences, and that each transitioned class was subject to varying degrees of diminished value based on the pre- and post-transition pedagogical methods used and the utility of such pedagogical methods as perceived by each student. *See* Dkt. No. 71-1 (Bergeron Dep. Tr.) at 117:19 – 121:4; Dkt. No. 71-13 (Quattrociocchi Dep. Tr.) 198:24 – 204:22. But Dr. Cowan's one-size-fits-all damages model ignores any and all such variations, and does not even consider them, let alone attempt to formulate a rigorous damages model that addresses them.

### III. Dr. Cowan Arbitrarily Failed to Analyze the Fees at Issue and Excluded Putative Class Members.

Separately, but on similar grounds, the Court should exclude Dr. Cowan's opinion and report on fee damages. There is no dispute that Dr. Cowan failed to calculate fee damages. *See* Opp. Br. at 8 ("Dr. Cowan stated that he did not offer similar calculations for fees because he did not have the necessary information to provide such calculation at the time of his report."). And while Plaintiffs point to Dr. Cowan's hypothetical model for assessing lab fees, *see id.*, they ignore Dr. Cowan's deposition testimony in which he confirmed that any analysis of fee refunds would require considering what fee-supported services remained available after the transition to distance learning – a consideration he has not undertaken in his report or otherwise. Cowan Dep. Tr. 49:17 – 52:8.

---

[7] This point, aside from showing the shaky foundations of Dr. Cowan's simplistic damages analysis, also underscores why Plaintiffs and Plaintiffs' counsel are inadequate representatives of the putative class and why class certification is inappropriate.

Plaintiffs claim that Dr. Cowan can perform the calculation of fee damages when he is provided with the necessary data, *see* Opp. Br. at 8, but even if that were true, *Dr. Cowan cannot do so now that discovery has closed*. There is no record from which he can perform the referenced calculations, even assuming that he had put forth a reliable methodology (which he has not). Further, Dr. Cowan attempted to provide a damages model only for lab fees, not the Student Activities Fee, the Student Health Fee, or any of the other purported (unidentified) fees that underlie the Plaintiffs' claims. *See* Dkt. 71-25 (Cowan Report) at 11-12 (discussing only a hypothetical model for assessing lab fee refunds based on the unsupported assumption that activities supported by lab fees were terminated after the transition to distance learning). Therefore, at a minimum, he should be precluded from introducing expert testimony on the Student Activity Fee, Student Health Fee, and any other still-unidentified fee for which Plaintiffs seek refunds on behalf of the putative class. Even with respect to the lab fees, Dr. Cowan failed to consider material variables, such as which labs were performed online after the campus closure, and the value assess to such efforts, rendering his opinion on lab fees inadmissible as well. *See* Cowan Report at 8.

Lastly, Plaintiffs do not dispute that Dr. Cowan arbitrarily excluded from his damages analysis various putative class members, including students of the National Technical Institute for the Deaf ("NTID"). *See generally* Opp. Br. In sum, there is no evidentiary basis and no sound methodology for Dr. Cowan to opine reasonably and reliably on fees.

## **CONCLUSION**

For all of the reasons discussed herein, RIT respectfully requests that the Court grant this motion and exclude the expert report and testimony of Plaintiffs' expert, Dr. Charles Cowan, Ph.D.

Dated: New York, New York
January 6, 2023

SANTIAGO BURGER LLP

By: /s *Fernando Santiago*
Fernando Santiago
fernando@litgrp.com
2280 East Avenue, 2nd Floor
Rochester, NY 14610
Tel: (585) 563-2400
Fax: (585) 563-7526

HOLLAND & KNIGHT LLP

By: /s *Qian Shen*
Robert J. Burns
Qian (Sheila) Shen
robert.burns@hklaw.com
qian.shen@hklaw.com
31 West 52nd Street
New York, NY 10019
Tel: (212) 513-3200
Fax: (212) 385-9010

Paul G. Lannon (admitted *pro hac vice*)
paul.lannon@hklaw.com
10 St. James Avenue, 11th Floor
Boston, MA 02116
Tel: (617) 523-2700
Fax: (617) 523-6850