UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

NICHOLAS BERGERON and
NICK QUATTROCIOCCHI, individually
and on behalf of others similarly situated,

                                    Plaintiffs,                    DECISION AND ORDER

vs.                                                               20-CV-6283 (CJS)

ROCHESTER INSTITUTE OF TECHNOLOGY,

                                    Defendant.
_____

## I. INTRODUCTION

Plaintiffs Nicholas Bergeron and Nick Quattrociocchi were students enrolled for the spring semester 2020 in the undergraduate program at Defendant Rochester Institute of Technology ("RIT"), a private not-for-profit educational institution located in Monroe County, New York. In March 2020, consistent with emergency declarations and orders from the state and local governments regarding the Covid-19 pandemic, RIT shut down all on-campus, in-person instruction and shifted to a "remote modality" to instruct and serve its students for the remainder of the semester. Thereafter, Plaintiffs filed this putative class action, alleging that RIT's failure to refund a portion of the tuition and fees it collected from students enrolled in the on-campus program for the spring semester 2020 amounted to either a breach of contract with its students or unjust enrichment. 2d Am. Consolidated Compl., Jan. 14, 2021, ECF No. 48.

The matter is presently before the Court on RIT's motions for summary judgment and to preclude Plaintiffs' expert report, and Plaintiffs' motion for class certification. Mot. for Summ. J., Sept. 20, 2022, ECF No. 68; Mot. to Certify Class, Sept. 20, 2022, ECF No.

73; Mot. to Preclude, Oct. 28, 2022, ECF No. 84. For the reasons stated below, RIT's motion for summary judgment [ECF No. 68] is granted on each of the four counts in Plaintiffs' second consolidated amended complaint, and that complaint is dismissed. Plaintiffs' motion for class certification [ECF No. 73], and RIT's motion to preclude Plaintiffs' expert report [ECF No. 84] are therefore denied as moot.

## II. BACKGROUND[1]

RIT offers a wide variety of programs to undergraduate and graduate students. Most relevant to the present case, it offers (a) "campus-based" programs targeted to generally full-time students pursuing their first Bachelor's degree, and (b) "RIT Online," which is designed for and targeted to part-time and non-traditional students, many of whom are pursuing graduate degrees or continuing professional education. Def. Reply to Pl. Opp'n to Def.'s Statement of Facts ("Facts Reply"), ¶ 83-D, Nov. 18, 2022, ECF No. 92. RIT Online provides limited student support services as compared to resources available to students enrolled in campus-based programs, and RIT Online students are not permitted to receive institutional financial aid from RIT, such as merit scholarships, grants, or the course audit rate. Facts Reply at ¶ 87-D and ¶ 88-D.

---

[1] The following background has been drawn primarily from RIT's reply to Plaintiffs' opposition to RIT's statement of material fact submitted pursuant to Rule 56(a) of the Local Rules of Civil Procedure of the Western District of New York. Def. Reply to Pl. Opp'n to Def.'s Statement of Facts ("Facts Reply"), Nov. 18, 2022, ECF No. 92. This document captures RIT's statement of undisputed fact, Plaintiffs' response, Plaintiffs' own statement of undisputed fact, and RIT's response to Plaintiffs' statement. Because the document includes separate statements of fact from both Plaintiffs and Defendant, the paragraphs will be cited in this decision and order as ¶ (n)-D, and ¶ (n)-P. The Court has also reviewed and considered dozens of supporting exhibits submitted by both parties.

As students enrolled in campus-based undergraduate programs at RIT during the 2019-2020 academic year, both named Plaintiffs in this action executed a Student Financial Responsibility Agreement ("SFRA") in the fall of 2019. *Id.* at ¶ 1-D, ¶ 2-D. The SFRA provided, in pertinent part:

> I understand and agree that when I register for any class at the Rochester Institute of Technology (RIT; university), or receive any service from RIT including student meals plan and/or housing charges or have deferred payments due or incur any liability for damages, I accept full responsibility to pay all tuition, fees, and other associated costs assessed at any time as a result of my registration and/or receipt of services . . . .

*Id.* at ¶ 3-D. In addition, the SFRA incorporates by reference RIT's Refund Tuition Adjustment Policies ("refund policies").[2] *Id.* at ¶ 5-D.

Under the SFRA, Plaintiffs were charged – among other things – tuition, student activities fees, and student health services fees. The student activities fee revenues are managed by RIT's student government, with administrative oversight from the Student Affairs Office, and are used to support student organizations, programs, events, and services "that enhance the quality of student life at RIT." *Id.* at ¶ 39-D, ¶ 7-P. The student health services fees are "allocated to provide support for programs and services offered by the Student Health Center, Student Counseling and Psychological Services and for health promotion initiatives." *Id.* at ¶ 8-P.

---

[2] For full-time, degree seeking undergraduate students such as Plaintiffs, the refund policies provide that the student must officially withdraw from all course in order to be eligible for a partial refund of tuition and fees according to the schedule set forth in the policy. *See, e.g.,* Def.'s Ex. 7, 3, Sept. 20, 2022, ECF No. 71-7. The refund/adjustment schedule is as follows: 100% refund if student withdraws prior to the start of classes for the semester; 90% if student withdraws prior to January 21, 2020; 75% if student withdraws by January 28, 2020; 50% if student withdraws by February 4, 2020; 25% if student withdraws by February 11, 2020; no refund if student withdraws after February 11, 2020, which marked the end of the fourth week of classes. Def. Ex. 7 at 7.

With the exception of one online class in which Plaintiff Bergeron was enrolled, Plaintiffs' professors began the spring 2020 semester teaching on-campus, in-person. *Id.* at ¶ 51-D, ¶ 57-D. However, on or about March 11, 2020, as the Covid-19 virus continued to spread, RIT announced that it was extending spring break by one week, so that its faculty and staff could make adjustments to the delivery of instruction and services to optimize student safety. *Id.* at ¶ 45-D. Soon thereafter,[3] RIT announced that due to the public health emergency caused by Covid-19, all classes and services – including campus-based programs – would be provided in a "remote modality" rather than on-campus, in-person through the remainder of the semester. *Id.* at ¶ 46-D, ¶ 47-D. After the change in modality of instruction and of the provision of services, RIT did not issue any refunds of tuition, the student activities fee, or the student health services fee, except as permitted by its published refund policy for student withdrawals by specified dates. *Id.* at ¶ 9-P.

In addition to receiving instruction on-campus, in-person from the beginning of the spring 2020 semester until the campus was closed in March, Plaintiffs received some form of instruction and received at least pass/fail credit for their courses for the entirety of the semester. *Id.* at ¶ 50-D – ¶ 60-D. Moreover, although students who did not return to campus after spring break did not have access to the student health center, RIT expanded its telehealth services to all students from mid-March through the end of the spring 2020 semester. *Id.* at ¶ 68-D. Further, despite cancelling such major in-person events as the

---

[3] It is undisputed that during this same period, both Monroe County and the state of New York declared a public health emergency due to Covid-19, and directed all schools at all levels to cease providing on-campus, in-person instruction for the remainder of the 2019-2020 academic year. *Id.* at ¶ 48-D.

on-campus spring commencement due to Covid-19 precautions, RIT provided students with remote programs and activities. *Id.* at ¶ 70-D.

Nevertheless, in the first and third causes of action in their complaint, Plaintiffs allege that RIT breached its contract with students of its campus-based programs when it retained Plaintiffs' tuition, student activities fees, and student health fees for spring semester 2020 without providing the in-person product for which they had bargained, and without issuing pro-rated refunds. 2d Am. Consolidated Compl. at ¶ 58–121, ¶ 137–52. In the alternative, in their second and fourth causes of action, Plaintiffs maintain that RIT was unjustly enriched when it failed to issue pro-rated refunds of their tuition and fees. 2d Am. Consolidated Compl. at ¶ 122–36, ¶ 153–66.

The matter survived RIT's motion to dismiss, and by all indications the parties engaged in meaningful discovery. RIT is now before the Court seeking summary judgment on all of Plaintiffs' claims. Additionally, RIT asks the Court to preclude Plaintiffs' expert report from Dr. Charles Cowan. Plaintiffs, on the other hand, are seeking class certification.

## III. RIT'S MOTION FOR SUMMARY JUDGMENT

RIT maintains that Plaintiffs' breach of contract claims regarding both tuition and fees fail as a matter of law and as a matter of fact. First, RIT argues that the claims are meritless because the subject matter is governed by an express contract – the SFRA – which does not contain a promise of in-person instruction or services, and because there were no implied contract terms supplementing the SFRA that required RIT to provide in-person instruction. Additionally, RIT argues that even if the SFRA was supplanted or

supplemented by an implied contract, Plaintiffs have not identified any specific promise that RIT breached in failing to refund the tuition and fees. With respect to Plaintiffs' unjust enrichment claims, RIT maintains that a claim cannot be sustained where a valid contract governs, and that in any event RIT was not unjustly enriched by the transition to remote learning. Lastly, RIT argues that the claims should be dismissed because Plaintiffs have failed to establish any viable theory of damages.

A. Summary Judgment Standard

"[T]he trial court's task at the summary judgment motion stage . . . . is confined . . . . to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Hence, summary judgment may not be granted unless "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts are those which might affect the outcome of the suit under the governing law, and a dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Coppola v. Bear Stearns & Co.*, 499 F.3d 144, 148 (2d Cir. 2007) (internal quotation marks and citation omitted).

On a motion for summary judgment, the evidence – and the inferences drawn from the evidence – must be viewed in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). As the Supreme Court has explained, there can be no genuine dispute as to any material fact where a party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477

U.S. 317, 322 (1986). Further, a "party asserting that a fact . . . cannot be genuinely disputed must support that assertion by . . . citing to particular parts of materials in the record . . . [or] showing that the materials cited do not establish the absence or presence of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1)–(2).

B. Plaintiff's Breach of Contract Claims

To prevail on a breach of contract claim under New York law, a plaintiff must show: "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of the contract by the defendant, and (4) damages." *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004). In denying RIT's motion to dismiss Plaintiffs' breach of contract claims, this Court declined to consider the SFRA as incorporated by reference into the complaint because it was not clear that the document submitted by RIT had actually been signed by named Plaintiffs Bergeron and Quattrociocchi, and because reading the complaint in the light most favorable to Plaintiffs, Plaintiffs plausibly alleged a "multitude of promises" by RIT and RIT's disclaimer on page 370 of its Undergraduate Bulletin was not broad enough to extinguish Plaintiff's claims. *Bergeron v. Rochester Inst. of Tech.*, No. 20-CV-6283 (CJS), 2020 WL 7486682, at *6 (W.D.N.Y. Dec. 18, 2020)

Now in its argument for summary judgment, RIT identifies two reasons that Plaintiffs' breach of contract claims must fail. First, RIT maintains that Plaintiffs cannot show a breach of contract because the issue as to whether Plaintiffs are entitled to a refund of the tuition and fees they paid for the spring semester 2020 is governed by the SFRA, which does not contain a promise of on-campus or in-person instruction. Def.

Mem. of Law, 8–10, Sept. 20, 2022, ECF No. 74. Second, RIT maintains that even if the SFRA does not govern the question, Plaintiffs have failed to produce evidence any specifically designated, discrete promise that could serve as an implied contract that RIT breached by moving to a remote modality without prorating fees or tuition. Def. Mem. of Law at 11–16. After reviewing the parties' papers and the record in this case, the Court agrees with RIT.

*i. Express Contract Analysis*

RIT maintains that the SFRA was the express contract governing the payment and refund of its tuition and fees. As indicated above, the SFRA is signed by each student individually, and provides that upon registration for "any class" at RIT or receipt of "any service" from RIT, the student accepts "full responsibility to pay all tuition, fees, and other associated costs assessed at any time as a result of [his or her] registration and/or receipt of services."

Plaintiffs state that the SFRA cannot be the entire contract because although it contains a promise by the students to pay, it does not include any corresponding covenant to perform by RIT. Pl. Mem. in Opp'n 6–7. In addition, Plaintiffs argue that the plain language of the SFRA does not cover the subject matter of the litigation, which they maintain is in-person instruction and access to on-campus services. Pl. Mem. in Opp'n 8–9.

Both parties point to recent case law from other circuits to support their respective positions. For instance, RIT observes that the district court in *Randall v. Univ. of the Pac.*, No. 5;20-CV-3196-EJD, 2022 WL 1720085, at *5 (N.D. Cal. May 28, 2022) analyzed an

almost identical agreement, found that the SFRA was an express contract governing the students' obligations to pay tuition and fees, and held that the SFRA did not contain any promise of exclusively in-person instruction or access to on-campus services. Def. Mem. of Law at 9. Plaintiffs attempt to distinguish *Randall* based on the fact that the SFRA analyzed in *Randall* also contained a clause specifically stating that registration and acceptance of the terms of the SFRA constituted a promissory note agreement in exchange for which the university would provide "educational services." Pl. Mem. in Opp'n at 7.

In addition, Plaintiffs cite a number of cases that they maintain support their position that the SFRA is only a single part of a larger implied contract in which students agree to pay tuition and mandatory fees in exchange for RIT's provision of in-person, on-campus instruction and access to campus facilities. Pl. Mem. in Opp'n at 7. Plaintiffs' papers discuss at length the 5th Circuit's decision in *Jones v. the Administrators of Tulane University Educ. Fund*, 51 F.4th 101 (5th Cir. 2022), in which the circuit court found that the tuition agreement merely created an "open-end account" under Louisiana law, and did not constitute a contract for educational services. Pl. Mem. in Opp'n at 9–10 (citing also to *In re Univ. of Miami COVID-19 Tuition & Fee Refund Litig.*, 524 F. Supp.3d 1346 (S.D. Fla. 2021); *Fiore v. Univ. of Tampa*, 2021 WL 4925562, at *13–15 (S.D.N.Y. Oct. 20, 2021) (applying Florida law)). In addition, at the motion hearing, Plaintiffs cited another 5th Circuit decision, *King v. Baylor University*, 46 F.4th 344 (5th Cir. 2022), which held that although the tuition agreement was an express contract governing the parties' relationship, the meaning of the term "educational services" in the agreement was

ambiguous, which required remand, so that the district court could interpret the term in light of the circumstances surrounding the contract.

Under New York, law the existence of a binding agreement is generally a question of law for the court to decide. *Vacold LLC v. Cerami*, 545 F.3d 114, 123 (2d Cir. 2008). To find a binding contract, the court must find a manifestation of mutual assent – an objective meeting of the minds – that is sufficiently definite to assure that the parties are truly in agreement with respect to all material terms. *Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*, 487 F.3d 89, 95 (2d Cir. 2007) (quoting *Express Indus. & Terminal Corp. v. N.Y. State Dep't of Transp.*, 715 N.E.2d 1050, 1053 (N.Y. 1999)). An agreement's "material terms" include such items as "subject matter, price, payment terms, quantity, duration, compensation, and the dates of delivery and production, *so that the promises and performance to be rendered by each party are reasonably certain*." *Berkson v. Gogo LLC*, 97 F. Supp.3d 359, 392 (E.D.N.Y. 2015) (quoting 17A Am.Jur.2d Contracts § 190 (2015)) (emphasis added).[4]

Once a contract's existence is established, its "initial interpretation . . . is [also] a matter of law for the court to decide" *Alessi Equip., Inc. v. Am. Piledriving Equip., Inc.*, 578 F. Supp.3d 467, 487 (S.D.N.Y. 2022) (citation omitted). "Included in this initial interpretation is the threshold question of whether the terms of the contract are ambiguous." *Alexander & Alexander Servs., Inc. v. These Certain Underwriters at Lloyd's,*

---

[4] However, "not all terms of a contract need be fixed with absolute certainty." *Express Indus.*, 715 N.E.2d at 1053. "[A]t some point virtually every agreement can be said to have a degree of indefiniteness . . . . Before rejecting an agreement as indefinite, a court must be satisfied that the agreement cannot be rendered reasonably certain by reference to an extrinsic standard that makes its meaning clear." *Cobble Hill Nursing Home v. Henry & Warren Corp.*, 548 N.E.2d 203, 206 (N.Y. 1989) (citing 1 Williston, Contracts § 47, at 153–156 [3d ed. 1957]).

*London, England*, 136 F.3d 82, 86 (2d Cir. 1998) (citing *Cable Science Corp. v. Rochdale Village, Inc*., 920 F.2d 147, 151 (2d Cir. 1990); *Garza v. Marine Transport Lines, Inc*., 861 F.2d 23, 27 (2d Cir.1988)).  "If the court finds that the contract is not ambiguous it should assign the plain and ordinary meaning to each term and interpret the contract without the aid of extrinsic evidence." *Id*. "Contract language is not ambiguous if it has a 'definite and precise meaning . . . concerning which there is no reasonable basis for a difference of opinion." *Hunt Ltd. v. Lifschultz Fast Freight, Inc*., 889 F.2d 1274, 1277 (2d Cir. 1989) (quoting *Breed v. Ins. Co. of N. Am*., 385 N.E.2d 1280 (N.Y. 1978)).[5]

After reviewing the record and the parties' arguments, the Court finds that the SFRA is sufficiently definite to constitute an express contract, and that the contract governs the matter at issue in this case: the payment and adjustment of tuition and fees. The Court further finds that the terms of the contract are not ambiguous. On the contrary, the SFRA establishes a clear agreement: in exchange for the student's promise to pay all assessed tuition and fees, subject to RIT's refund policies, RIT grants the student the privilege of registering for classes and receiving services at the university. Further, under the refund policies incorporated by reference into the contract, in order to qualify for a partial refund or tuition adjustments, full-time students must officially withdraw from the university for an approved reason and part-time students must officially withdraw from their course(s), on the timeline set forth in the policy. There are no provisions in the refund policies that address refunds or tuition adjustments for changes in the modality of

---

[5] The mere fact that litigants advance different interpretations of a contract does not render the contract ambiguous if its language is clear. *Id*. Likewise, "[a]n omission or even a mistake in a contract does not constitute an ambiguity." *In re Coudert Bros*., 487 B.R. 375, 392 (S.D.N.Y. 2013) (collecting New York cases on the issue).

instruction.

The parties do not dispute that the SFRA does not contain any promises of the provision of in-person, on-campus instruction or services. Facts Reply at ¶ 4-D. Given the Court's finding that the SFRA constitutes an integrated, valid, and written agreement governing both the payment of tuition and fees by the student, and the refund or adjustment of tuition and fees by the university, the Court concludes that Plaintiffs have failed to demonstrate either that there is a genuine issue of material fact to be resolved at trial, or that RIT was bound to provide on-campus, in-person instruction or services in exchange for the students' payment of tuition and student activities and student health fees. Therefore, RIT is entitled to summary judgment on both of Plaintiffs' claims for breach of contract.

### ii. Implied Contract Analysis

However, even if the Court had found that the SFRA does not govern the issues in this case, Plaintiffs' claims fail an implied contract analysis.  Specifically, Plaintiffs fail to show that they can satisfy the first element of a breach of contract claim by demonstrating the existence of an implied contract that required RIT to provide on-campus, in-person instruction, experiences, and services for the entire spring semester 2020.

Under New York law, an express contract and an implied contract are equally binding. *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 507 (2d Cir. 2009) *superseded by statute on other grounds* (citing *Maas v. Cornell Univ.*, 721 N.E.2d 966, 970 (N.Y. 1999)). In fact, it is well settled in New York that a university's acceptance of a student for

enrollment creates an implied contract which provides that the university will award the student a degree, so long as "the student complies with the terms prescribed by the university and completes the required courses . . . ." *Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 93 (2d Cir. 2011) (citations and internal quotation marks omitted). The terms of this implied contract "are contained in the university's bulletins, circulars and regulations made available to the student." *Id.*

Nevertheless, "[t]he application of contract principles to the student-university relationship does not provide judicial recourse for every disgruntled student." *Gally v. Columbia Univ.*, 22 F. Supp.2d 199, 207 (S.D.N.Y.1998). In order to sustain a proper claim for breach of an implied contract between a student and the university in which he or she is enrolled, the "student must identify 'specifically designated and discrete promises'" that the university breached. *Nungesser v. Columbia Univ.*, 169 F. Supp.3d 353, 370 (S.D.N.Y. 2016) (quoting *Ward v. New York Univ.*, No. 99-cv-8733, 2000 WL 1448641, at *4 (S.D.N.Y. Sept. 28, 2000)). "'General policy statements' and 'broad and unspecified procedures and guidelines' will not suffice." *Id. See also Doe v. Rensselaer Polytechnic Inst.*, No. 120CV01359BKSCFH, 2020 WL 6544607, at *6–7 (N.D.N.Y. Nov. 6, 2020).

Moreover, "[t]he doctrine of educational malpractice bars claims 'that the school breached its agreement by failing to provide an effective education,' on the theory that 'courts are an inappropriate forum to test the efficacy of educational programs and pedagogical methods.'" *Shak v. Adelphi Univ.*, 549 F. Supp.3d 267, 271 (E.D.N.Y. 2021) (quoting *Paladino v. Adelphi Univ.*, 89 A.D.2d 85, 89–90 (N.Y. App. Div. 1982)). Similarly,

"attacks on the substantive evaluation of . . . academic performance . . . are beyond judicial review," because "assessments of a student's academic performance . . . necessarily involve academic determinations requiring the special expertise of educators." *Dasrath v. Ross Univ. Sch. of Med.*, 494 F. App'x 177, 178 (2d Cir. 2012) (internal citation and quotation marks omitted); *Susan M. v. New York L. Sch.*, 556 N.E.2d 1104, 1106 (N.Y. 1990).

In the present case, Plaintiff's assert that "[t]here is more than sufficient evidence . . . to show an implied contract . . . whereby in exchange for [Plaintiff's] payment of tuition and fees, RIT would provide an in-person, on-campus education." According to Plaintiffs, the existence of this implied contract can be demonstrated by statements in their publications, promotional print materials, and website; plaintiff's registration for "in-person" courses; RIT's fee descriptions; RIT's 2019–20 course catalog; and Plaintiffs' payment of tuition and fees. Pl. Mem. in Opp'n at 11. Moreover, Plaintiffs argue that their enrollment in the campus-based program rather than a cheaper "RIT Online" program "demonstrates the intention of the parties and the nature of the covenant." *Id.* In support of their general argument, Plaintiffs cite several items in the record that they believe to constitute the necessary discrete promise. Pl. Mem. in Opp'n at 11–13. The Court will consider each in turn.

First, Plaintiff's point to communications from RIT regarding the campus shutdown and the transition to a remote modality in spring 2020:

> A message from the Provost to Faculty: Preparing for online instruction: "I write to you as we embark on one of the largest field experiments in the history of higher education – millions of university students, including those at RIT, are transitioning to online classrooms where we will teach them until

14

the end of the spring semester." "Online instruction is a different way to approach learning…" "It is understandable that students cannot have the same kind of course experience they had before spring break but they should still experience a cohesive academic semester." (emphasis added) [Plaintiff's] Ex. 8.

Pl. Mem. of Law at 11–12. The Court finds that the foregoing statement, and other similar statements relied on by Plaintiffs in their papers, do not constitute a specifically designated, discrete promise that RIT will provide an entire semester of on-campus, in-person instruction and experiences, and are not proof of the existence of such a promise.

Rather, the communications serve as an acknowledgement of RIT's significant efforts to honor the requirement implicit in its implied contract with students to "act in good faith in its dealing with its students" by providing the means through which enrolled students could continue to earn course credit toward graduation in the face of a global pandemic. *See Olsson v. Bd. of Higher Educ.*, 402 N.E.2d 1150 (N.Y. 1980). To the extent Plaintiffs imply that they are entitled to a refund because online instruction is somehow inferior to in-person instruction in educational value, the Court notes that New York law does not recognize a claim for "educational malpractice." *Papelino*, 633 F.3d at 93 (citing *Gally*, 22 F. Supp.2d at 207; *Introna v. Huntington Learning Ctrs., Inc.*, 78 A.D.3d 896, 896 (N.Y. App. Div. 2010)).

Second, Plaintiff's cite numerous uses of the term "campus" in the university bulletins, as well as listings of specific physical classroom locations in course descriptions and the university course registration system:

RIT's 2019–2020 Undergraduate and Graduate Bulletins 2019-20, which is communicated to all students and contains over 140 references to "campus", Ex. 22; Ex. 30.

> RIT's online registration portal, Student Information System (SIS), through
> which, for the Spring 2020 semester, RIT listed for all students each class
> by description, meeting time, and physical classroom location, Bergeron
> Decl. ¶ 15; Quattrociocchi Decl. ¶ 16; (Quattrociocchi Dep.) at 101:6–
> 101:12 (Q. "Okay. How, meaning how specifically did you register for
> classes for the spring 2020 term? A. Through RIT's SIS."); (Bergeron Dep.)
> at 55:12–55:17 (A. I believe when you're selecting courses there's a
> description that's generally pretty accurate on what the course will be, so I
> typically just consulted that. Q. This is on SIS? A. Yes.")"

Pl. Mem. of Law at 12. The Court finds that the foregoing statements also do not constitute a specifically designated, discrete promise that RIT will provide an entire semester of on-campus, in-person instruction and experiences, and are not proof of the existence of such a promise. With respect to the RIT Graduate and Undergraduate bulletins, the Court notes that the university has included a clear disclaimer on the very first page, which states in pertinent part: "This [bulletin] does not constitute a contract between the university and its students . . . . It represents RIT's best . . . planning at the time of publication." *See, e.g,* Pl. Ex. 22(a), 3, Nov. 11, 2022, ECF No. 90-23 (the Undergraduate Bulletin). The disclaimer also states that RIT does not assume a contractual obligation based on the bulletins because "unforeseen changes in other aspects of RIT life, sometimes occur after the [bulletin] has been printed . . . ." *Id.*

Furthermore, Plaintiffs have not identified any express statements in the bulletin or elsewhere "promising that these aspects of a course were not subject to change," or suggesting that RIT "relinquished its authority to alter the modality of its course instruction." *Shak*, 2021 WL 3030069, at *3 (internal quotations and citations omitted). As other courts in the Second Circuit have found, mere references in university bulletins, course catalogs, and course registration systems "to specific locations and modes of

instruction do not imply a contractual entitlement to continued instruction in the same location and manner." *See, e.g., Moore v. Long Island Univ*., No. 20-CV-3843 (BMC), 2022 WL 203988, at *4–5 (E.D.N.Y. Jan. 24, 2022) (citing *Morales v. New York University*, No. 20-cv-4418, 2021 WL 1026165 (S.D.N.Y. Mar. 17, 2021); *Fedele v. Marist Coll*., No. 20 CV 3559 (VB), 2021 WL 3540432, at *4 (S.D.N.Y. Aug. 10, 2021). *Contrast In re Columbia Tuition Refund Action*, 523 F. Supp.3d 414, 424 (S.D.N.Y. 2021) ("Marbury's instructional format claim against Pace survives because she alleges that the course registration portal on Pace's website stated that '[o]n-campus' courses would be "taught with only traditional in-person, on-campus class meetings.'")

Third, Plaintiff's cite RIT's tuition and fees schedule, and especially the distinction between the university's pricing for the campus-based programs and RIT Online:

> RIT's standardized tuition and fees pricing applied to all students at RIT's main campus. Ex. 21.
>
> All Class Members enrolled at RIT's main campus, not "RIT Online". SOF ¶ 26-28.
>
> All Class Members did not receive the "reduced tuition rate" offered to RIT Online enrollees because Class Members were enrolled in "on-campus classes". Ex. 1, 3.
>
> All Class Members failed to receive a refund when RIT unilaterally converted all programs and instruction to online only instruction in or around March 15, 2020. Ex. 29 (Concepcion Dep.) at 124:7-124:12.

Pl. Mem. of Law at 12–13. Yet again, the Court finds that the foregoing statements do not constitute a specifically designated, discrete promise that RIT will provide an entire semester of on-campus, in-person instruction and experiences, and are not proof of the existence of such a promise. As a district court in the Southern District of New York has

17

aptly stated, "to the extent [the university] advertised certain academic programs as 'fully online,' students in such programs might be able to claim a contractual entitlement to exclusively online instruction." *In re Columbia Tuition Refund Action*, 523 F. Supp.3d at 423. However, barring Plaintiff's identification of a specific, discrete promise, it does not follow that students in the on-campus program were contractually entitled to exclusively in-person instruction. *Id.*

Likewise, in the absence of an express promise of one modality or the other, a "university's academic and administrative prerogatives may not be impliedly limited by custom." *Id.* at 422–23 (quoting *Gertler v. Goodgold,* 107 A.D.2d 481 (N.Y. Ct. App. 1985) *aff'd*, 489 N.E.2d 748 (N.Y. 1985)). Hence, because the Plaintiffs have not here identified such a promise, the fact as to whether or not a particular course or service was taught or provided in-person or online before the pandemic and RIT's "unilateral conversion" of all services, programs and instruction is not dispositive. *See Ford v. Rensselaer Polytechnic Inst.*, 507 F. Supp.3d 406, 414, No. 20-CV-470 (DNH) (N.D.N.Y. 2020) ("[A]n implied promise for on-campus education based on the nature of defendant's [sic] dealings with the school . . . does not withstand scrutiny.").The fact that RIT provided in-person instruction and services for the first half of the spring 2020 semester for the vast majority of full-time degree seeking students does not imply the students' contractual entitlement to continued instruction and services in the same manner. *Id.* at 423.

Fourth, Plaintiffs cite Plaintiffs' acceptance letters and various other marketing materials that RIT has distributed:

When Plaintiff Bergeron was accepted to RIT, he received an admission letter that stated: "Our students have access to some of the finest

laboratories, technology and computing facilities available on any university campus," "On campus you will find that just about everything you need is available to provide you with a rich and well-rounded college experience, "The diverse array of students, faculty and quality of residential life contribute in many ways to a rewarding campus experience." "We are confident that your years on campus will be challenging and rewarding." (emphasis added). Ex. 32.

When Plaintiff Quattrociocchi was accepted to RIT, similarly, he received an admission letter that states "We are confident that your years on campus will be challenging and rewarding." (emphasis added) Ex. 31.

RIT's states "[a]t RIT, experiential learning enables students to apply what they've learned through lectures, labs, assignments, and projects to a variety of rich experiences outside of the classroom." Ex. 20.

RIT's "Student Life" webpage has links to "Campus Events and Traditions", "Athletics and Recreation", "Dining and Retail", and "Living on Campus." Ex. 15, 16, 17, 18, and 19.

Pl. Mem. in Opp'n at 12–13 (references to the record in the original). Once more, the Court finds that the foregoing statements do not constitute a specifically designated, discrete promise that RIT will provide an entire semester of on-campus, in-person instruction and experiences, and are not proof of the existence of such a promise.

These statements, "although tacitly presupposing and almost certainly envisioning the familiar norm of in-person instruction, do not contain or constitute a specific promise of such." *Aubrey v. New Sch.*, No. 21-CV-4915 (KMK), 2022 WL 3867832, at *11 (S.D.N.Y. Aug. 30, 2022) (quoting *Goldberg v. Pace Univ.*, 535 F. Supp.3d 180, 194 (S.D.N.Y. 2021)). Additionally, RIT's statements regarding the "finest laboratories, technology and computing facilities available," or working side-by-side and networking with world-class faculty members, simply tout the benefits of these potential experiences, services, or facilities when they are available to students. Therefore, they more closely

resemble marketing "'opinion or puffery' that is 'too vague to be enforced as a contract."

*Amable v. New Sch.*, No. 20-CV-3811 (KMK), 2022 WL 1443352, at *8–9 (S.D.N.Y. May

6, 2022) (citing *In re Columbia*, 523 F. Supp. 3d at 423; *Bader v. Siegel*, 238 A.D.2d 272,

272 (N.Y. App. Div. 1997) (finding marketing statements to be mere "opinion or puffery"

that is "too vague to be enforced as a contract")).

　　　　Further, to the extent Plaintiffs rely on RIT's website, even if the Court were to

interpret that such marketing material is "sufficiently specific to be actionable" RIT's

website contains a broad disclaimer:

> . . . . You may use the rit.edu site and content for your personal, noncommercial purposes only. RIT makes the rit.edu website available as a source of information about RIT, as a virtual classroom for distance learning, and as a place for members of the RIT community to express their own views and opinions. The rit.edu website is provided AS IS, and nothing on the rit.edu website is intended to be a representation, offer, inducement, promise, or contract of any kind . . . .

Shen Decl. (Ex. 9), 2, Sept. 20, 2022, ECF No. 71-9. Plainly, this statement disclaims

RIT's intention to make any promises or enter any binding agreements based on the

content of its website. *Amable*, 2022 WL 1443352, at *8–9.

　　　　Lastly, the Court observes that neither of the named Plaintiffs in their depositions

were able to identify specifically designated, discrete promises of on-campus, in-person

instruction for the entirety of the spring 2020 semester. *See* Pl. Ex. 23 and 24, Nov. 11,

2022, ECF Nos. 90-26 and 90-27. For instance, RIT's counsel queried Plaintiff Bergeron

on his campus visit to RIT before enrolling (ECF No. 90-26 at 8); his reasons for enrolling

at RIT (ECF No. 90-26 at 9); his recollection of RIT brochures and bulletins, and

conversations with RIT staff (ECF No. 90-26 at 10, 19); the course descriptions for the

courses he took during the spring 2020 semester; and even his understanding of the contract that RIT breached in this action (ECF No. 90-26 at 17). At no time was Plaintiff Bergeron able to identify a specific, discrete promise for on-campus, in-person instruction for the entire spring 2020 semester. Similarly, when Plaintiff Quattrociocchi was queried about the subject, he frequently responded that he could not recall any specific promises. *See, e.g.,* Pl. Ex. 24, 17, Nov. 11, 2022, ECF No. 90-27.

Plaintiffs have not demonstrated a genuine dispute of material fact by "citing to particulars parts of materials in the record," and they have failed to show that RIT made them a "specifically designated, discrete" promise that in exchange for the payment of tuition and fees they would be provided with on-campus, in-person instruction and services. The Court therefore concludes that RIT is entitled to summary judgment on Plaintiffs' breach of contract claims.

C. Unjust Enrichment

In the alternative to their breach of contract claims, Plaintiffs also allege that RIT was unjustly enriched by its failure to prorate tuition and fees when it moved its classes online for the latter half of the spring 2020 semester. RIT maintains, however, that Plaintiffs cannot sustain a claim for unjust enrichment because the parties' relationship is governed by a valid contract. Def. Mem. of Law at 17. Moreover, they argue that even if the relationship were not governed by a valid contract, RIT was not unjustly enriched by the move to a remote modality. Def. Mem. of Law at 17–18.

To prevail on an unjust enrichment claim in New York, the plaintiff must prove "that (1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience

militate against permitting defendant to retain what plaintiff is seeking to recover." *Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004) (citing *Clark v. Daby*, 300 A.D.2d 732, 751 (N.Y. 2002)). "The theory of unjust enrichment lies as a quasi-contract claim. It is an obligation the law creates in the absence of any agreement." *Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 54 (2d Cir. 2011) (quoting *Goldman v. Metropolitan Life Insurance Co.*, 841 N.E.2d 742 (N.Y. 2005)). Therefore, "[t]he existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in [unjust enrichment] for events arising out of the same subject matter." *Clark–Fitzpatrick, Inc. v. Long Island R.R. Co.*, 516 N.E.2d 190, 193 (N.Y. 1987). However, a plaintiff may seek damages on alternative – and "mutually exclusive" – theories of breach of contract and unjust enrichment where "there is a dispute over the existence, scope, or enforceability of the putative contract." *Reilly v. Natwest Markets Grp. Inc.*, 181 F.3d 253, 263 (2d Cir. 1999). *See also Air Atlanta Aero Eng'g Ltd. v. SP Aircraft Owner I, LLC*, 637 F. Supp.2d 185, 195 (S.D.N.Y. 2009).

Viewing the allegations in the light most favorable to the Plaintiffs at the motion to dismiss stage, this Court permitted Plaintiffs' unjust enrichment claim to go forward. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) ("on a motion to dismiss we presum[e] that general allegations embrace those specific facts that are necessary to support the claim") (citation and internal quotation marks omitted). However, based on the Court's findings that RIT is entitled to summary judgment on Plaintiffs' breach of contract claims, Plaintiffs' unjust enrichment claims can proceed no further. As indicated above, Plaintiffs may maintain an unjust enrichment claim only insofar as "there is a dispute over the existence,

scope, or enforceability of the putative contract." *Reilly*, 181 F.3d at 263. The Court finds at this point that there is no longer a dispute as to the scope of the contract between the parties, as the Court has interpreted the contractual relationship as a matter of law and found that the issues in dispute are governed by an express contract that does not include a promise of in-person, on-campus instruction. *See, e.g., Aubrey*, 2022 WL 3867832, at *15 (dismissing unjust enrichment claim where Plaintiff's sought to recover the "value of enrichment" based on the same tuition and fees as the claims for breach of contract, and where "Plaintiffs failed to allege any facts that rise to the level of tortious or fraudulent conduct sufficient to support an unjust enrichment claim").

Further, even if the existence or the scope of the parties' contract were uncertain, Plaintiffs' claims would still fail. Assuming *arguendo* that the first two elements of an unjust enrichment claim are satisfied in this case, the third element – "equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover" – is not satisfied. As another district court in this circuit has phrased it, "[i]t is quite implausible to view [RIT]'s suspension of in-person instruction as inequitable." *Hewitt v. Pratt Inst.*, No. 20CV2007ERKSJB, 2021 WL 2779286, at *4 (E.D.N.Y. July 2, 2021) (citation omitted). It is undisputed that RIT's students received several weeks of in-person, on-campus instruction prior to March 11, and that the university's move to a remote modality of instruction was necessary given the public health emergency caused by Covid-19 and the subsequent shut-down of all school campuses in New York State. *See, e.g., Goldberg*, 535 F.Supp.3d at 199 (dismissing unjust enrichment in part because "there were compelling—indeed, compulsory—reasons for [the university]'s abrupt move

to online learning"). Moreover, RIT has presented substantial unrefuted evidence that it actually incurred significant additional expenses in moving to a remote modality in order to allow its students to finish out the semester, and obtain appropriate credit toward graduation for the courses they were enrolled in. *See, e.g.,* Concepcion Decl., Sept. 20, 2022, ECF No. 69 (a declaration of RIT's controller regarding the additional, unbudgeted expenses incurred to implement a remote modality during the spring semester 2020).

RIT's motion for summary judgment on Plaintiffs' claims for unjust enrichment with respect to both tuition and fees is therefore granted.

### IV. OTHER PENDING MOTIONS

In addition to RIT's motion for summary judgment, the Court also heard argument on RIT's motion to preclude Plaintiffs' expert report [ECF No. 84], and Plaintiffs' motion for class certification [ECF No. 73]. Because Plaintiffs have no remaining claims before the Court, the Court need not reach a decision on either of the remaining pending motions. Therefore, RIT's motion to preclude Plaintiffs' expert report [ECF No. 84], and Plaintiffs' motion for class certification [ECF No. 73] are denied as moot. *See, e.g.,* Moot, Black's Law Dictionary (11th ed. 2019) (defining moot as "[h]aving no practical significance; hypothetical or academic").

### V. CONCLUSION

For the foregoing reasons, it is hereby

ORDERED that Defendant RIT's motion for summary judgment [ECF No. 68] is granted in all respects; and it is further

ORDERED that Defendant RIT's motion to preclude Plaintiffs' expert report [ECF

No. 84] is denied as moot; and it is further

      ORDERED that Plaintiffs' motion for class certification [ECF No. 73] is denied as

moot; and it is further

      ORDERED that Plaintiffs' Second Consolidated Amended Complaint is dismissed.

The Clerk of Court is directed to close this case.

Dated:       February 3, 2023
              Rochester, New York

                              ENTER:

                              CHARLES J. SIRAGUSA
                              United States District Judge