UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF NEW YORK


- - - - - - - - - - - - - - - X
NICHOLAS BERGERON, ET AL     )        20CV6283
                Plaintiff   )
vs.
                                Rochester, New York
ROCHESTER INSTITUTE OF
TECHNOLOGY,                     January 20, 2023
                Defendant.        12:30 P.M.
- - - - - - - - - - - - - - - X
**ORAL ARGUMENT**

                    TRANSCRIPT OF PROCEEDINGS
        BEFORE THE HONORABLE CHARLES J. SIRAGUSA
                UNITED STATES DISTRICT JUDGE


**FOR PLAINTIFF:**  MATTHEW A. GIRARDI, ESQ.
                    Bursor & Fisher, P.A.
                        -and-
                    BLAKE GARRETT ABBOTT, ESQ.
                    Poulin, Wiley, Anastopoulo, LLC
                        -and-
                    PHILIP FURIA, ESQ.
                    The Sultzer Law Group, P.C.
                        -and-
                    ANTHONY M. ALESANDRO, ESQ.
                    Leeds Brown Law, PC

**FOR DEFENDANT:**  QUIN SHEN, ESQ.
                    ROBERT J. BURNS, ESQ.
                    Holland & Knight, LLP
                        -and-
                    FERNANDO SANTIAGO, ESQ.
                    Santiago Burger, LLP




**COURT REPORTER: Karen J. Clark, Official Court Reporter**
                    **Karenclark1013@AOL.com**
                    **100 State Street**
                    **Rochester, New York 14614**

N. BERGERON, ET AL V. ROCHESTER INSTITUTE OF TECHNOLOGY

P R O C E E D I N G
*                    *                    *




THE COURT:  For the record, this is the matter of Nicholas Bergeron, et al versus Rochester Institute of Technology.  Appearing on behalf of the Plaintiffs, Mr. Abbott, Mr. Furia, Mr. Alesandro, Mr. Girardi.  Appearing on behalf of the Defendant, Mr. Burns, Ms. Shen and Mr. Santiago.

First of all, Mr. Abbott, glad to see you're alive and well.  We're dying -- was it food poisoning?  If so, tell us where you ate so we can all avoid it.

MR. ABBOTT:  It was dinner at the Hyatt and the Hyatt Hotel and it's to be here today, your Honor.

THE COURT:  Hopefully the Hyatt will reimburse you for whatever meals you bought.  But in any event, we are here and there are a number of motions and let me start in with one of the motions and that is the Motion to Seal.  Who will be arguing on behalf of the Plaintiff?  Are you feeling all right to do this?

MR. ABBOTT:  Your Honor, first I want to say sorry about everything that has happened to this point.

N. BERGERON, ET AL V. ROCHESTER INSTITUTE OF TECHNOLOGY

THE COURT:  No apologies necessary.  No one can pick the timing for when you're getting sick.  I want to make sure you're in a position.  The reason I could adjourn this is so you could confer with cocounsel and they would be in a position to at least assist in the argument.  Last thing I want to do is make your condition worse.  But if you're ready to argue, I do have some questions about, first of all, the Motion to Seal.  It appears that still is outstanding.  Is that correct?

MR. ABBOTT:  That's correct, your Honor.

THE COURT:  And here are the questions I have on the Motion to Seal.  The law in this circuit is pretty clear, and I'm reading from *Joy v. North* at 692 F. 2d 860, which is a Second Circuit case from 1982. "We stated definitively, the documents used by parties moving or opposing summary judgment should not remain under seal absent compelling reasons." *Lugrosh v. Pyramid Company of Onondaga*, 435 F. 3d 110, a 2006 Second Circuit case.  "The precedence indicate that the documents submitted to a court for consideration on a summary judgment motion are, as a matter of law, judicial documents to which a strong presumption of access attaches under both common law and First

N. BERGERON, ET AL V. ROCHESTER INSTITUTE OF TECHNOLOGY Amendment."  *Brown v Maxwell*, 929 F. 3d 41, a 2019 Second Circuit case.  "With respect to the first category of materials, it is well settled that documents submitted to a court for its consideration in a summary judgment motion are, as a matter of law, judicial documents to which a strong presumption of access attaches under both the common law and the First Amendment.  In light of this strong First Amendment presumption, continued sealing of the documents may be justified only with specific on-the-record findings that sealing is necessary to preserve higher values and only if the sealing order is narrowly tailored to achieve that aim."

Now, I look at your declaration with respect to sealing.  You want to seal exhibit one, an explanation of fees that defendant posted on his web page.  Exhibit two, defendant's refund tuition adjustment policies posted on the web page.  Exhibit three, Defendant's Corona virus updates, housing campus operations, continued course work, the defendants distributed via e-mail.  Why on Earth would I seal these documents?  Why on Earth would you ask that they be sealed.

MS. SHEN:  Your Honor, if I may just pipe up

N. BERGERON, ET AL V. ROCHESTER INSTITUTE OF TECHNOLOGY for a minute.  We thought this issue had been resolved. We raised exactly the same concerns the Court is raising given that the majority of the documents that were requested to be sealed were public documents, litigation that neither party had identified as "confidential." And we understood that the exhibits that had initially been filed under seal had been re-filed on the public docket.

THE COURT:  You're right, they appear to have been re-filed in connection with the motion for summary judgment.  That is why I asked if the motion for sealing was still outstanding, to which Mr. Abbott responded "yes."  The bottom line is, I'll cut to the chase, clearly, again, whether the exhibits were intentionally or unintentionally filed under seal in connection with, I think, 90 or 86, in connection with the opposition to summary judgment motion, it appears that none of the exhibits, I mean, even to the extent, I don't know why, but even the transcript related to Bergeron or Quattrochiocchi would be sealed, but to the extent there is an outstanding application, it's denied. Clearly the application was not made in accordance with Second Circuit law.  So, it's denied.

If it was withdrawn, so be it, but I looked

N. BERGERON, ET AL V. ROCHESTER INSTITUTE OF TECHNOLOGY on the calendar, there is no indication on the calendar that the motion was withdrawn.

Moving on.  I want to deal with the expert affidavit of Mr. Cowan, I believe his name is.  Here is the law in the circuit.  Expert testimony is admissible only when it will assist the trier of fact to understand evidence to determine an issue.  Expert testimony should be limited to situations where the subject matter is beyond the ken, here is the phrase, beyond the ken of the normal juror.  I look at the report of Dr. Cowan.  Once you get through all his outstanding credentials and everything else and you get to his chart on page 10, why on Earth would we need an expert?  For example, in the case of Mr. Quattrociocchi, he says what Mr. Quattrociocchi agreed to pay apparently in the spring semester is $22,622.  He looked at the online price for the total hours taken.  Again, presumably multiplied the credit hour cost for an online class times the number of credit hours that Mr. Quattrociocchi had to come up with $13,442.  The value received in person portion of the semester.  Do we really need an expert to divide in half to get to the $11,311.  Value received online portion of the semester, again, he is just doing math.  The total value received, again, a mathematical calculation simply

N. BERGERON, ET AL V. ROCHESTER INSTITUTE OF TECHNOLOGY by him determining that the value that they receive for the Covid portion of the semester was half of what they received for the in-person section of the spring semester. So, how is this -- somebody explain to me how is this beyond the ken of the normal juror? I mean, to the extent that, I mean, on value received, he is putting a mathematical figure on it. So I fail to see how this would be properly received as expert testimony. Moreover, obviously, his ultimate calculation of the total amount that he maintains would be somewhere between, for undergraduates, 28 million and 29 million. I mean, that obviously depends on whether class certification was granted and whether it was granted under subdivision of (b)(2) or (b)(3). Because the Plaintiffs argued for (b)(3), but alternatively (b)(2). (B)(2) is opting in and (b)(3) is opting out. It would appear this is just total speculation. I fail to see how this is expert testimony.

And Mr. Abbott or you or one of your cohorts want to explain to me how this is expert testimony, how this is beyond the ken of the normal juror to figure out that the Plaintiff's position is that for the -- and, by the way, there is no dispute, obviously, that certainly would appear that at least for half of the spring

N. BERGERON, ET AL V. ROCHESTER INSTITUTE OF TECHNOLOGY

semester, the Plaintiffs did receive in-person education. So, I don't understand how this is expert testimony. You can make a chart and you can introduce the chart. I don't see that you need expert testimony.

MR. GIRARDI: Matthew Girardi for Plaintiffs. The reason we need Dr. Cowan's testimony, according to the defendant, our baseline comparison of online education to in-person education is not at all appropriate. They say we've chosen a wholly inappropriate basis of comparison.

THE COURT: Where in his opinion does he talk about the basis for comparison? Explain that to me. What opinions is he offering? I have your report in front of me, direct me to the page. I mean, the first page is all his qualifications. I'm setting aside the Daubert issue that the defense has raised. But where -- I mean, he says the price for online education. Okay. You don't need an expert to tell us that. So what are you referring to in his report?

MR. GIRARDI: I don't have a specific cite. I could browse through. The point I'm attempting to make, without Dr. Cowan, our damages analysis is theoretically open to attack by defendant and they could --

N. BERGERON, ET AL V. ROCHESTER INSTITUTE OF TECHNOLOGY

THE COURT:  What is he going to say?  When you say open to attack, all I have in front of me is his report where he essentially says, okay, here is the value, here is what Quattrociocchi paid for the spring semester.  And you know what, he only got in-person instruction for half of the spring semester, so guess what, I'm going to cut that in half.  So he legitimately received $11,312 of value for in-person instruction because he was able to get it for half of the spring semester.  And the other half of the spring semester, I'm just deciding we should value at the online price for the same number of credit hours.  So I'm missing your point.  So, what is your point?  So he is on the stand, what are you worried about?  If I were to allow him to testify, he does these mathematical calculations, correct?

MR. GIRARDI:  Correct.

THE COURT:  Pretend we're at trial, what is he -- what else is he going to say?  He can't get into the quote, unquote, quality of the education.  Doesn't that run afoul of the educational malpractice doctrine or rule, whatever we want to call it.  So what would you ask him?  He is on the stand, ask him something.

MR. GIRARDI:  We could ask him what factors

N. BERGERON, ET AL V. ROCHESTER INSTITUTE OF TECHNOLOGY

he controlled for in selecting the online education or the RIT's offering as a means for assessing like its appropriateness.

THE COURT:  Where does he put this in his report?

MR. GIRARDI:  It's not in his report. However, it is beside the point in that --

THE COURT:  It's hardly beside the point. It's supposed to be his expert report.  Where is it in his report that he determines, and doesn't that impact the educational malpractice doctrine?  I don't know where it is in his report.  The purpose of an expert report in terms of discovery in support of summary judgment -- remember, summary judgment is evidentiary proof in admissible form.  That is what you have to come forward with, evidentiary proof in admissible form. You're offering something not in the report that he is going to testify on his conclusion as to why he decided that halving the cost of the spring semester was appropriate and then calculating the online portion by simply a mathematical formula where he multiplied Quattrociocchi's credit hours by RIT's, by the cost of a credit hour for online is appropriate.  I don't see where he says any of that.

N. BERGERON, ET AL V. ROCHESTER INSTITUTE OF TECHNOLOGY

MR. GIRARDI:  It is, to some degree, from the deposition where he was directly queried on the issues by defense counsel and has testified to that. Additionally, the purposes of the report as written is to provide as per our obligation under *Comcast*, a workable theory of damages so that we can show that the class is, you know, you can make the determination.

THE COURT:  Let me ask you this.  Could you get in your damages without Cowan?  Could you get in your damage theory without Cowan?  Could you -- could you argue that the we maintain that the damages in this case should be the difference between the in-person cost of 22,000 and what he received, and you do that by calculating the Covid portion by referring to the online cost.  Couldn't you argue that without him?

MR. GIRARDI:  We could argue it, we wouldn't have a witness.

THE COURT:  What do you mean you wouldn't have a witness?

MR. GIRARDI:  We wouldn't have anyone to put on the stand.  It's not the Plaintiff's job to figure out like workable mechanical theories is.  That is why we would have an expert.

THE COURT:  It's not a Plaintiff's job to

N. BERGERON, ET AL V. ROCHESTER INSTITUTE OF TECHNOLOGY come forward with a workable economic theory.  Whose job is it?  The defendant?

MR. GIRARDI:  Sorry, I beg your pardon. It's not the named Plaintiff's job.  Same way you wouldn't expect the Plaintiff to understand the intricacies of contract law, that is why we're here.

THE COURT:  Here is how it would work in trial.  You could introduce it through people from RIT to argue, okay, whoever you are from RIT, you have both a cost for in person and you also offer an online program.  How much do you charge per credit hour for online.  We charge this amount.  How much did you charge Mr. Quattrociocchi or Mr. Bergeron for the spring semester for in person.  We charged this amount.  How much of the spring semester -- how much -- for how long of the spring semester was in person offered?  For half. And the other half was online, correct.  Yes.

And you couldn't argue from that the same theory.  I'll consider what you're saying, but I just don't see.

MR. GIRARDI:  Your Honor, one other point to raise is that defense counsel has also submitted an expert report, and we also would use Dr. Cowan to, you know, rebut potential issues with our damages model

N. BERGERON, ET AL V. ROCHESTER INSTITUTE OF TECHNOLOGY raised by that expert.

THE COURT:  Well, that is not the argument in front of me right now.  The argument in front of me, it's in front of me, am I wrong, because the defense has moved to exclude the expert report on this issue for summary judgment.

Let's move on.  Let's move onto the unjust enrichment cost.  Here is the law in the circuit.  First of all, there is no dispute that a contract governs this.  The defense maintains it was an express contractor of FSRA, the student financial responsibility agreement.  The Plaintiff maintains that there was an implied contract between RIT, Mr. Bergeron and Mr. Quattrociocchi, is that correct.

MR. FURIA:  Your Honor, that's correct.  But there is, to go into your broader point about the unjust enrichment claim, a question with regard to scope.  If we accept that the FSRA is a contract, that does not mean that it governs the entire relationship between the parties.  So it's possible that there could be a determination that the FSRA does not govern the situation and the implied contract also does not govern the modality of the education, whether it is in person or online.

N. BERGERON, ET AL V. ROCHESTER INSTITUTE OF TECHNOLOGY

THE COURT:  Explain what this means because I'm reading from the a Second Circuit case, *Aubrey v New School* at 2022 Westlaw 3867832, it says this, it says, "As the Columbia court observed, the New York Court of Appeals has made clear that unjust enrichment is not a catch-all cause of action to be used when others fail. Courts in this district have previously dismissed unjust enrichment claims that were indistinguishable from a contract claim pleaded in the alternative in the same complaint at least where the parties did not dispute that they shared a contractual relationship."

Do the parties dispute they shared a contractual relationship?

MR. FURIA:  No.  It's not that there is a dispute about whether there is any contractual relationship.  It's whether there is a contractual relationship concerning the matter at hand.  Surely if the contract between the parties was completely unrelated to the matter at hand, that would not serve as a bar to a completely unrelated unjust enrichment claim. So there is still a question of scope, and that is why -- on your Honor's Motion to Dismiss, you cited the case law in situations where there is an issue with either the existence of a contract or the scope unjust

N. BERGERON, ET AL V. ROCHESTER INSTITUTE OF TECHNOLOGY enrichment claims can proceed.

THE COURT:  I remember we were talking about going forward from 12(b)(6), we're now at summary judgment.  Why don't you tell me, what are the elements of an unjust enrichment claim.

MR. FURIA:  In New York the elements of an unjust enrichment claim is that where one person is enriched at the expense of another and equity and good conscience require that that enrichment be returned.  And -- I apologize.

THE COURT:  Go ahead, I interrupted you.  Go ahead.

MR. FURIA:  Sure.  Here, if it's determined that the SFRA does not govern the entire relationship and therefore does not govern the modality of learning and it's then determined that there is no implied contract, which is what defendants argue, then our unjust enrichment claim is completely valid because there is no contract governing the matter at issue.

THE COURT:  So I'm trying to follow this.  You're saying if the Court determines there is no contract governing modality.

MR. FURIA:  We know the SFRA exists.  It's just a question of what it covers and what it means.

N. BERGERON, ET AL V. ROCHESTER INSTITUTE OF TECHNOLOGY Because there is nothing in the FSRA that speaks to whether services or whether instruction is going to happen in person or online.  We take the position that it had absolutely nothing to do with how instruction will be given.  And if you look at it, it's not mentioned.  Defendants extrapolate from the words "any services" this broad interpretation of the contract.

THE COURT:  But let's shift gears.  Isn't it your responsibility to show there was a specific agreement that all instruction would be in person?

MR. FURIA:  Well, right.  So, what we say, the SFRA doesn't speak to it.  It's completely irrelevant.  But what there was an implied contract, which under New York law, can exist between a student and university based on the various representations made to the student during the course of --

THE COURT:  Hear me out.  Your position is there was an implied contract governing the modality. Your position is based on the bulletins, et cetera, et cetera, that there was a contractual relationship between the parties which required in-person learning.

MR. FURIA:  Right.

THE COURT:  The defense is maintaining, no, we don't need to look beyond the SFRA, that is the

N. BERGERON, ET AL V. ROCHESTER INSTITUTE OF TECHNOLOGY express contract between the two parties and that did not provide for in-person learning.

MR. FURIA:  Right.

THE COURT:  So, I'm still missing the point, you are both agreeing there is still a contractual relationship between the parties.

MR. FURIA:  I think if you look at it and think of it in terms of the a verdict sheet.  There could be a verdict sheet at the end of the case, the jury would say that, we determine that the SFRA does not have any relationship or does not cover the modality of learning.  And then with regard to the implied contract, they may say we determine that there no implied contract that covers the implied learning.  If those answers are given, the next question is in the absence of a contract that governs the modality --

THE COURT:  Don't you lose if there is no specification covering the modality of the learning? Don't you lose?  It's your burden of proof to show that they made a promise that all instruction would be in person.  Am I missing that point or is that correct?

MR. FURIA:  That is absolutely correct.

THE COURT:  If you can't show that, if you can't show that, if you can't show in your implied

N. BERGERON, ET AL V. ROCHESTER INSTITUTE OF TECHNOLOGY contract that they made a promise somewhere in their bulletins, et cetera, et cetera, that the only modality would be in-person learning, you have the burden of proof, don't you lose?

MR. FURIA:  If we are unable to show that, you're right in that we would, by the law, lose the implied contract claim.  You are also right in that it surely would make it seem as though we have a very weak unjust enrichment claim.  But if you look at the implied contract law at play here, there is this kind of odd subset of law that applies here where there is a student university implied contract and defendants cite to case law that says there has to be this very specific promise you're pointing to.  So we're leaving open the possibility that a jury could say, look, we don't see the specific promise.  But in light of the circumstances, particularly the fact that RIT offers an online program, which they say it's just basically a cheaper way to get the same degree, we find what occurred here amounts to unjust enrichment.

So because the defendants do not agree that there is an implied contract and because we do not agree that the SFRA governs, there is a possibility that we get --

N. BERGERON, ET AL V. ROCHESTER INSTITUTE OF TECHNOLOGY

THE COURT:  How does the case law in the district ever make any sense then?

MR. FURIA:  Pardon me?

THE COURT:  How does the case law saying there is a contractual relationship, how would you ever get to that?  To get to court, there is a dispute.  Your dispute is the implied contract covers in-person learning.  You're saying there is an implied contract between Quattrociocchi, Bergeron and RIT, which, through its bulletins, web sites, et cetera, et cetera, promises in person learning.

MR. FURIA:  Right.

THE COURT:  The defense is saying two things, I think.  First they are saying there is an express contract and you don't need to look further than the express contract.  And guess what?  The express contract doesn't promise in-person learning, so I don't need to look any further.  And they are saying, even if you did, there is still no promise of in-person learning.

I understand what your position is.  I don't know if I agree with it, but I will consider it.

Let's get to the crux of this case, which is the summary judgment motion.  And let's talk a little

N. BERGERON, ET AL V. ROCHESTER INSTITUTE OF TECHNOLOGY bit about summary judgment.  Evidentiary proof in admissible form we all agree with.

MR. FURIA:  Absolutely, your Honor.

THE COURT:  Let's take a look at the affidavits that you submit from Bergeron and Quattrociocchi.  Declaration of Nick Quattrociocchi, paragraph four:  At the time I applied, I expected to receive campus educational service.  How would that come into trial?  If you put him on the stand and said could you tell us what you expected; objection.  How would that possibly come in?  Why wouldn't you have him say here is what I was told.  In terms of, we're not disputing the fact, as I understand it, you have to show a specific promise was made for in-person learning on the contract claim, is that correct?  You, the Plaintiff, has the burden of showing there was a specific promise by RIT that all instruction for Nicholas Quattrociocchi and Bergeron would be in person. Is that a fair statement?

MR. FURIA:  That's right, even under our implied theory, that is required.

THE COURT:  And I'm looking at an example, the affidavit of him saying what is the evidentiary proof in admissible form.  So, clearly, would you agree

N. BERGERON, ET AL V. ROCHESTER INSTITUTE OF TECHNOLOGY that he couldn't testify that I expected to receive?

MR. FURIA:  Well, I do think that speaks to the relevant question of the meeting of the minds.

THE COURT:  Time out, how does it come in? Give me -- if they object and say that is conclusory, how does it come in?  I assume you would object and say it's conclusory, how would it come in.

MR. FURIA:  We would need to explore through a theory of questions how he arrived at that conclusion.

THE COURT:  Why didn't he put it through his affidavit?  Let's go down through it.  Paragraph 11, "Based on everything that I saw, heard and read and received from RIT between application to payment, I expected to receive an in-person and on-campus educational service."  Again, objectionable.  He could have easily said, based on the fact that I was told this by a representative of RIT," that comes in as an admission.  But he doesn't say that.

"I enrolled at RIT with the understanding that all my courses would be taught in person."  Where does the understanding come from?  "I understood and expected that by paying tuition and fees in exchange, RIT would provide me" -- again, this is conclusion. What are you basing this on?  I mean, I don't quite

N. BERGERON, ET AL V. ROCHESTER INSTITUTE OF TECHNOLOGY understand why in these affidavits somebody didn't spell out nor did he really, if I remember the deposition testimony, no one ever identified, I can't remember, was it Bergeron or Quattrociocchi said, "I can't recall."

I can't recall is not evidentiary proof that supports your position.  And the same is true of Bergeron's.  I'm looking now at Bergeron's affidavit, that was Quattrociocchi.  If you understand my point, it's evidentiary proof in admissible form.  So, if we boil this down to its simplest terms, to go forward in this case, the defense is asking me to determine, as a matter of law, under whatever theory, there is no factual dispute that -- they are doing it a little differently.  They are saying that the Plaintiff cannot come forward with evidentiary proof in admissible form that they were promised in person learning.  Because they rely, I butchered the name of the case, the Sulatex, whatever case, they are saying, okay, we've come forward and said you don't have any proof and you have to show where there is evidentiary proof in admissible form.  And by the way, somewhere in the submissions, Rochester Institute of Technology, undergraduate bulletin.  The undergraduate bulletin does not constitute a contract.  Same thing for the graduate

N. BERGERON, ET AL V. ROCHESTER INSTITUTE OF TECHNOLOGY bulletin.  And I'm looking at the date.  This is undergraduate bulletins 2019 to 2020.  Part of the problem, when we were on the Motion to Dismiss documents were submitted after the time of this suit.

Now, the disclaimer -- there would appear to be a problem with a disclaimer that was submitted because that was for the what, fall, of I'm looking for the date.

MR. FURIA:  Are you referring to the date for the SFRA?

THE COURT:  No.  I'm looking for the date that RIT submitted a disclaimer and somehow I thought the disclaimer.

MR. FURIA:  For the Motion to Dismiss?

THE COURT:  No, I'm looking at it.

MR. FURIA:  Okay.

THE COURT:  It's, in any event, you're maintaining that the bulletins, whatever website, et cetera, in looking at that, there is some evidentiary proof in admissible form that there was a specific promise made for in-person learning that should defeat their summary judgment motion?  Is that, essentially, am I stating the defense position in the papers correctly that you're maintaining that the defendant has to come

N. BERGERON, ET AL V. ROCHESTER INSTITUTE OF TECHNOLOGY
forward with evidentiary proof showing a specific promise for? Is that correct.

MS. SHEN: Yes.

THE COURT: So, where is the evidentiary proof that you were promised in person -- a specific promise for in-person learning that would defeat the summary judgment motion? Where in the deposition of Bergeron or Quattrociocchi, let alone their affidavit, do they say, okay, here is the smoking gun, here is where it says, we were going to get -- and, by the way, they did get in person, am I wrong, they did get in-person instruction for half of the semester? So they did receive in person instruction.

MR. FURIA: Not the amount they expected, but, yes.

THE COURT: Let's talk about expected. You're saying there is a contractual obligation to give in-person instruction for the entire spring semester?

MR. FURIA: Right.

THE COURT: Right.

MR. FURIA: Correct.

THE COURT: Show me where -- and you would agree that you have to come forward with specific evidentiary proof that such a promise was made.

N. BERGERON, ET AL V. ROCHESTER INSTITUTE OF TECHNOLOGY

MR. FURIA:  Correct.  I think that the standard, though, if you look at the other cases in New York, which say how do you get from A to B with an implied contract, you have to look at what people were seeing and look at it in context.  We don't have an express contract, we admit that.

THE COURT:  Let's go on the implied theory.  What do you have to show to create -- again, we're talking summary judgment.  You have to create a factual issue as a material fact to allow the case to go forward.

MR. FURIA:  I would point to pages 11 through 13 of our opposition brief and there is --

THE COURT:  Well, your opposition brief is not evidentiary proof unless you're referring to something.  Let's look at pages 11.

MR. FURIA:  Eleven through 13 of the brief, 16 of the 19 through the ECF page numbers.

THE COURT:  All right.  Let me take a look.  Let's give the defense a speaking part.  I've put you on the spot enough.

MR. FURIA:  That's fine.

THE COURT:  Okay.  I'm looking at pages -- here is what the defense position is.  Excuse me, the

N. BERGERON, ET AL V. ROCHESTER INSTITUTE OF TECHNOLOGY Plaintiff's position is.  I guess their position is you don't need any, I'll use the term, instead of specific expressed promise, that, all right, Mr. Bergeron or Mr. Quattrociocchi, you're admitted here, your instruction is all going to be online.  But they are suggesting, as I look at pages 11 through 12, that statements such as "It is understandable that students cannot expect the same kind of course experience they had before spring break."  I'm looking at the highlighted portions.  "But our students have access to some of the finest laboratories, technology and computing facilities available on any university."  "On-campus you will find just about everything you need available."  Number of references to "on-campus."  It's the Plaintiff's position that such comments that they've referred to create a factual issue with respect to whether or not on-campus learning was promised.  And they maintain it's sufficient to defeat summary judgment.  In other words, they are maintaining, okay, you said, look, they can't show this.  And they are coming back and saying here is the evidentiary proof that we can show this, that should defeat the summary judgment motion because we created a summary judgment issue of fact.

The floor is yours.

N. BERGERON, ET AL V. ROCHESTER INSTITUTE OF TECHNOLOGY

MS. SHEN:  Thank you, your Honor.  There are two issues in response to your Honor's question that I want to address.  The first is that both Plaintiffs sat for full day depositions and submitted interrogatory responses in which RIT questioned them at length as to what document and what statements the Plaintiffs believe rose to the level of a specifically designated and concrete promise as required under law.

THE COURT:  Let me just stop you a second because I think that is important.  What does the law require?  When we say specific promise, does there have to be a statement from RIT, we promise that all of your instruction will be in person?

MS. SHEN:  Not only that, but it requires RIT to say, we promise that all of your instruction will be only in person and irrespective of the circumstances for every single day of the semester at issue.  That is what the law would require.  And it must be explicit and it must be in some kind of document put forth by RIT or an oral statement made, basically verbatim, by an RIT representative.

THE COURT:  Let me stop you because there is the dispute.  We've identified the issue.  The defense is saying specific means exactly that specific.  That a

N. BERGERON, ET AL V. ROCHESTER INSTITUTE OF TECHNOLOGY representation by RIT, whether it be in their publications or whether it be by someone who has a position of some type of authority at RIT has to be that specific. Counsel is maintaining not only does it have to say we'll be offering you online instruction, but, if I read it correctly, only, excuse me, in-person instruction. Is she right or wrong?

MR. FURIA: I think she overstates the case because counsel ignores the body of law that explains that you need to look at all of this in context. If you needed to have an exact phrasing that says, we promise X, then there wouldn't be an entire body of case law that says you need to look at what is reasonable under the circumstances. Just says, you don't have to put it word for word. So it's our position that is not a correct statement of the law.

THE COURT: So if you are right, what do you need? Is it enough to say "on-campus," that you'll be living on-campus, is that sufficient to create a promise for only in-person instruction?

MR. FURIA: It is somewhat of a subjective standard, which, in this circumstance, should be submitted to a jury to make that determination. I don't see how that is something that could be determined as a

N. BERGERON, ET AL V. ROCHESTER INSTITUTE OF TECHNOLOGY matter of law.  And we've not seen any citations to cases that it can in a circumstance like this when we have citation after citation to the evidence we would be relying upon.  This is not a circumstance where the Court should put its judgment in the place of the trier of fact.

THE COURT:  Let me go back to Ms. Shen. Distinguished and opposing counsel have indicated you're all wet.  It doesn't have to be, we, RIT or I, RIT, promise that you will only receive in-person instruction for the entire semester as you maintain.  And his point is that if that was the case, we wouldn't have this body of law referring to bulletins, et cetera.  And he, I guess, essentially challenges you.  What case supports your position?

MS. SHEN:  Sure.  I think what counsel is omitting is the body of law that has developed at the Second Circuit and nation wide around these identical Covid tuition refund claims.  In every, nearly every single case within the Second Circuit, the Plaintiffs claims have been dismissed at the 12(b) stage because statements exactly like the ones that Plaintiffs point to in their opposition are vague and ambitious statements of opportunities and access that students may

N. BERGERON, ET AL V. ROCHESTER INSTITUTE OF TECHNOLOGY take advantage of, and those fall far short of that specifically designated promise that is required under New York law.  I mean, I think we discussed at length in our moving papers --

THE COURT:  Let me shift gears for a second. Because really what you're maintaining is, forget this whole implied contract theory, we have an expressed contract here.  Is that fair statement?

MS. SHEN:  That's fair.

THE COURT:  Now if they have an express contract, it would have to contain all of the material terms.

MS. SHEN:  Correct.

THE COURT:  What are the material terms?

MS. SHEN:  The material terms here are what Plaintiffs get in the bargained for exchange when they pay tuition and fees.  And that is explicit enough in the SFRA.

THE COURT:  And does it have to include, for example, the exact price they are paying?  Does it have to include the time frame we're talking about?  Or is it just enough essentially to say, listen, we promise to provide educational services, you promise to pay whatever our designated tuition and fees are.  That is

N. BERGERON, ET AL V. ROCHESTER INSTITUTE OF TECHNOLOGY what you seem to be say.  If we reduce it to its simplest terms, and if I'm wrong, tell me.  You seem to be suggesting that if the agreement that the students sign said -- and I actually have the, bear with me a second, I have the SFRA.  So I want to get the language correct.

I understand, here is what it says, I'm reading from, I think it's Quattrociocchi's, "I understand and agree that when I registered for any class at the Rochester Institute of Technology, RIT University, or receive any service from RIT, including student meals, plan and/or housing charges or have deferred payments due or incur any liability for damages, I accept full responsibility to pay all tuition, fees and other associated cost assessed at any time as a result of my registration and/or receipt of services or liability.  Notwithstanding any anticipated third-party resource, including, but not limited to, financial aid, family, gift, employer reimbursement or other external resource.  I promise to pay for all assessed tuition fees and other associated cost by the published or assigned due date.  I understand and agree that if I drop" -- that paragraph doesn't appear relevant, I already determined that.  So is what I read,

N. BERGERON, ET AL V. ROCHESTER INSTITUTE OF TECHNOLOGY that is the contract?

MS. SHEN:  That is the contract, your Honor. And the key language there is, "I accept full responsibility to pay all tuition, fees and other associated costs at any time as a result of my registration and receipt of any services."  So the student is paying tuition and fees IN exchange for being given the right to register to classes and then of course receive the education from the classes or receive any service from RIT.  That is the bargained for exchange, and that is explicit.  There is no promise of what modality those classes would be or the services would be in that promise.

THE COURT:  So counsel seems to be suggesting that the absent -- you certainly could argue that any services includes modality, but counsel's specific argument is, look, this agreement does not deal with any kind of modality.  And the fact that it doesn't deal with a modality under the facts and circumstances of this case, means maybe while you can consider it, it's not the be all and end all, we still have an implied contract situation.  I think that is the argument.  Is it right, wrong?

MR. FURIA:  That is, but there is actually

N. BERGERON, ET AL V. ROCHESTER INSTITUTE OF TECHNOLOGY another piece that we haven't gotten to.

If this Court determines that this contract governs the entire relationship, it doesn't end the case because then there is a question of what any services or services means.  And this issue came up very recently in a matter called *King v. Baylor*, it is a Fifth Circuit decision.  And we can submit supplemental authority on it.  And I can give you the citation if you would like to see it.  It's 46 --

THE COURT:  Hang on one second.  Okay.  Can you kindly give me the cite?

MR. FURIA:  46 F. 4th 344.  And the matter is called *King v. Baylor*.  And I can point you to the portion of the decision I'm referring to so you don't --

THE COURT:  *King v. Baylor*.  Do you have a pinpoint cite?

PROSPECTIVE JUROR:  I do not, but --

THE COURT:  Give me a word.

MR. FURIA:  Vague.

THE COURT:  Vague, okay.

MR. FURIA:  Vague would do it.  It basically would be, the court there in a situation where there was something called an FRA, financial responsibility agreement, said the term "education services" in and of

N. BERGERON, ET AL V. ROCHESTER INSTITUTE OF TECHNOLOGY itself is, it's either vague such that the Court, the trial court, should have considered parole evidence to determine what it means, or, if it's not vague, the trial court should have at least considered the surrounding circumstances to understand the definition of an indefinite term.  So, everyone if we get to the point here where it's been determined that the SFRA is an expressed contract, we still need to ask a jury what education or here any services means.  And if it means in-person learning, online learning, or all of the above.  It's a fact question and it precludes summary judgment.  I mean, *King v. Baylor*, it resulted in them sending the case back to the trial court.

THE COURT:  I'm reading, but it did not err in dismissing King's implied contract or unjust enrichment claims.

MR. FURIA:  That is under Texas law and Texas law is different.  I'm referring to the interpretation of the express contract aspect of the case.

THE COURT:  I understand.  Okay.  The first portion of the decision says "King has not rebutted the presumption of the CFRA" -- comparable to what we have here -- "was supported by adequate consideration.

N. BERGERON, ET AL V. ROCHESTER INSTITUTE OF TECHNOLOGY Baylor promised to provide King with educational services.  In exchange King committed to pay for all assessed tuition, fees and other associated costs. Whatever educational services means, King attended both in person and online classes and does not claim that Baylor failed to fulfill a promise to provide an effective education."

Same as we have here so far, correct?

MR. FURIA:  Correct.

THE COURT:  "She, therefore, received some benefit after paying tuition and fees, and Baylor shouldered the obligation by providing services to King by benefiting from her payment."  Okay, the FRA was presumptively supported by adequate consideration.

I'm now looking at the portion you referred to.  "The district court determined that Baylor's promise to provide educational services was reasonably certain and definite.  And further determined that Baylor provided educational services as contemplated by the FRA even after administering classes virtually. King argues to the contrary."  "For purposes of determining whether the FRA's validity and enforceability, there was no doubt that the term "educational service" is sufficiently definite to

N. BERGERON, ET AL V. ROCHESTER INSTITUTE OF TECHNOLOGY confirm that both parties actually intended to be contractually bound.  To be sure, "educational services" is a broad term in isolation.  But the FRA specifically uses the term, "class" "classes" "future classes" "class day" and "class schedule" a dozen times suggesting that classes are at the core of the educational services. Thus, at a minimum, Baylor bound itself to conduct classes and King bound himself to pay for those classes in which he chose to enroll.  Whether educational services further includes benefits and services above and beyond basic academic instruction is a question of contract interpretation not validity and the denial of such services may raise a question of breach."  I'm just looking at this, you seem if you go on this case you seem to be conceding that the SFRA was an expressed contract.

          MR. FURIA:  No, just to be clear what I'm saying here, is the terms of the SFRA and FRA are clearly very different.  But, even if you determined that it is a valid contract, which we say it is not, you're then looking at pin cite 361, "faced with the determination as to what services even means."  And it has to be interpreted based upon the surrounding circumstances or if there are two distinct and --

N. BERGERON, ET AL V. ROCHESTER INSTITUTE OF TECHNOLOGY

THE COURT:  No, I understand that.  But I just want to see where you're coming from.  Are you maintaining, since you're citing this case, that while there may be some different terms that if the fifth, this would be the Fifth Circuit, found that the FRA is a valid contract, then wouldn't it follow that if that same circuit would find the SFRA is a valid contract?

MR. FURIA:  I would say that you couldn't necessarily reach that conclusion based on the *King v. Baylor* because the terms of the SFRA and FRA are so different.

THE COURT:  How are they so different?

MR. FURIA:  Because, as your Honor just read that portion of the case where it repeatedly refers to classes and the like, it says the word "class" over and over again.  Here, our agreement is written in such a way that it seems to be just an obligation for the signor to pay if and when they received services and we don't know what that means.  So, I would say there is a distinction between the verbiage, but I point to *King v. Baylor*, as an example of a recent decision by an appellate court, where even where a contract is considered to be valid, valid expressed contract covering the issue, you have to determine what

N. BERGERON, ET AL V. ROCHESTER INSTITUTE OF TECHNOLOGY "services" means.  So you can't dismiss it out of hand without that determination.  So, it's not our primary argument but it just goes to show we don't lose even if Ms. Shen is right.

MS. SHEN:  Your Honor, if I may respond.  I admittedly am looking at the case for the first time as well.

THE COURT:  So am I.  Let's talk about it.

MS. SHEN:  The distinctive language in the FRA considered in the *Baylor* case is exactly why it's completely inapposite to ours.  It's not the Court is looking at the term "services" and finding it ambiguous, the Court is looking at the phrase "educational services" and making a leap to the discussion of classes that are included in that FRA clause.  None of those terms exist in our SFRA.  And in the RIT SFRA, the phrase that is used is "any services."  Any services is not ambiguous.  There is an entire body of case law that says "any" is broad all encompassing.

THE COURT:  So I'm following your argument, in the Texas case, if they left out "educational" and put "services" it would be a different result.

MS. SHEN:  I believe it would, or it could.

MR. FURIA:  And I apologize if citing this

N. BERGERON, ET AL V. ROCHESTER INSTITUTE OF TECHNOLOGY case is muddling the issue, because I really believe this is just a question and example of black letter contractual interpretation.  Right?  When you have a term that is not definite, you have to find what out what it means.  If your Honor determines that the SFRA governs, we still need to ask a jury what services means.  Because the word "any services," it still has to be interpreted in light of the circumstances.  What are the circumstances here?  The circumstances are that these individuals applied specifically for an in-person program.  So we would say those circumstances, along with all of the other things we cite on pages 11 to 13, would mean any services would be interpreted to mean any --

THE COURT:  I understand.  But doesn't this case undercut your argument that the unjust enrichment claim should go forward?  I am looking, the Texas court the like New York courts repeatedly expressed this limit, "Once the court determines that a valid contract describes particular remedies and imposes particular obligations, equity generally must yield."

MR. FURIA:  You're absolutely right.  If one alternative is that you determine that the SFRA governs the entire issue, then we don't have a valid unjust

N. BERGERON, ET AL V. ROCHESTER INSTITUTE OF TECHNOLOGY enrichment claim, we're battling under the express contract claim.  Right?  But if your Honor determines that the SFRA does not govern and then there is a determination that there is no implied contract, we get to that point where the unjust enrichment claim pled in the alternative becomes the main claim, which is why it shouldn't be dismissed at the beginning of the case and shouldn't be dismissed now until those initial precedent questions are answered.

THE COURT:  I'm looking at the dissent in this case.

MR. FURIA:  And, you know, they are looking at Texas contract law, but it's the same everywhere.

THE COURT:  No, I'm looking, it says, "Parties often disagree about what contract terms mean, but that doesn't make the contract ambiguous."

MR. FURIA:  Right.

THE COURT:  "As the majority points out a contract is ambiguous only if both parties offer a reasonable understanding of the disputed language, such that a court may consider extrinsic evidence to determine the parties' intent."

MS. SHEN:  Your Honor, there is one other thing that I think is important in the SFRA here that is

N. BERGERON, ET AL V. ROCHESTER INSTITUTE OF TECHNOLOGY

not analyzed in the *Baylor* decision, which is the SFRA uses a disjunctive in describing what students get in exchange for their payment of tuition refund.  They become obligated to pay when they register for any class at RIT or receive any service.  And there is no dispute here that the Plaintiffs registered for classes and took an entire semester of classes.  And so either triggers their obligation to pay tuition and fees.  And *Baylor* just doesn't address that situation.

THE COURT:  Okay.

MR. FURIA:  Your Honor, I would just say, if you look at it at the absolute base level, what the defendants are asking you to do is render a determination as a matter of law what the term "services" means.  And I do not believe there is any --

THE COURT:  No.  They are not asking me to do that.  They are asking me to render a determination as a matter of law that you have not created an issue as a material fact to defeat summary judgment.

MR. FURIA:  That is correct, but to get there, you would have to determine what "services" means, that is the only way their argument actually works.

MS. SHEN:  Can I also note this is the first

N. BERGERON, ET AL V. ROCHESTER INSTITUTE OF TECHNOLOGY time this argument has been raised.

THE COURT:  I was going to add that.  Is this -- why didn't you raise this?  The fact that there is a case that may support your position wouldn't obviously have precluded you from arguing this in the first instance.

MR. FURIA:  I understand that, your Honor. I think this is not our primary argument, it's not even our secondary argument.  But while we verged upon the question of contractual interpretation, I had this case in my mind because I just briefed another matter before the Fifth Circuit using the same argument.  If we go there, this is the case law that you will see when you're rendering your opinion.

But we advance the position that we don't need to get to any of this because the SFRA is not a contract that governs the circumstances.  So we don't want you to rule --

THE COURT:  I understand that, but we just kind of shifted gears on this.  And.  Obviously, this case, at least at first glance, relevant, and you cited it, so I wanted to pay attention to this case.

Look, I understand the issues.  The basic argument of the defense is that there is an expressed

N. BERGERON, ET AL V. ROCHESTER INSTITUTE OF TECHNOLOGY contract in the form of the FSRA, which governs, and you need look no further than that contract to determine that, as a matter of law, there was no promise of any kind for online -- for in person classes.  I understand the Plaintiff's position.  The Plaintiff's position is, no, what we're dealing here with is an implied contract, the SFRA does not govern because it doesn't specifically -- your argument is it doesn't specifically address the modality and the Court can find a factual dispute as to a promise concerning modality, specifically a promise concerning the fact that RIT represented that they would provide students with in-person instruction by resort to the bulletins, etc.  What is the effect of the one bulletin that says "this isn't a contract."

MR. FURIA:  Well, any time you have an implied contract that is comprised of a number of different representations, it's always going to be comprised of little pieces of information that are not contracts, right?  An implied contract is not made up of a bunch of a little contracts.

THE COURT:  What if it says "this is not a contract," a contract is a promise that has no effect?

MR. FURIA:  No, it is not, because it in and of itself is not a contract.  It's a part of the --

N. BERGERON, ET AL V. ROCHESTER INSTITUTE OF TECHNOLOGY

THE COURT: I got you. Even though it's not a contract, it can be part of an implied contract. Right? That is your position?

MR. FURIA: Right. Just as though a bag of cheese is not a pizza, but it can become one.

THE COURT: I don't know if I follow that analogy, but you get points for originality.

I understand the issues, I will render a written decision. And have a safe trip back to Los Angeles, and you're going to back to New York. And Mr. Abbott, I hope you have a safe trip back to South Carolina.

MR. ABBOTT: Correct. I'm okay. I appreciate my co-counsel helping me out.

THE COURT: I hope you feel better. You don't look well. I suggest you go back to the hotel room and get some rest. Thank you, counsel. I'll render a decision.

MS. SHEN: Thank you, your Honor.

* * *

CERTIFICATE OF REPORTER


I certify that the foregoing is a correct transcript of the record to the best of my ability of proceedings transcribed from the audio in the above-entitled matter.


S/ Karen J. Clark,  RPR

Official Court Reporter